**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

[1] A complete list of each of the Debtors, including each Debtor's tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS, FOREIGN VENDORS, 503(B)(9) CLAIMANTS, AND LIEN CLAIMANTS; (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO UNDISPUTED OBLIGATIONS ON ACCOUNT OF OUTSTANDING ORDERS; AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (the "Motion"):[2]

## Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims (each as defined herein); (b) authorizing the Debtors to, in exchange for payment of their prepetition claims as contemplated herein, require the applicable claimants to provide favorable trade terms for the postpetition procurement of goods and services; (c) granting administrative expense priority to undisputed and unsatisfied obligations on account of goods ordered by or services provided to the Debtors prior to the date hereof that will not be delivered until after the Petition Date (as defined herein) and authorizing the Debtors to satisfy such obligations in the ordinary course of business; and (d) granting related relief. In addition, the Debtors request that the Court schedule a final hearing approximately twenty-five (25) days after

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Rudolph Morando, Co-Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith. Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the First Day Declaration.

the commencement of these chapter 11 cases to consider entry of the Final Order approving the relief requested herein.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363, 503, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1, 9013-1, and 9013-5 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

5. Founded in 1969 and headquartered in Secaucus, New Jersey, the Debtors own and operate a specialty retailer of children's apparel, accessories, and footwear, operating under The Children's Place and Gymboree brands. The Debtors design and source products through third-party manufacturers and sell them at value prices for babies, toddlers, and children. The Debtors reach customers through two digital storefronts, retail stores in North America, and wholesale marketplaces, including Amazon, a key customer acquisition channel. Internationally, various

franchise and wholesale partners distribute the Debtors' products in thirteen countries, generating product sales and royalty revenue for the Debtors.

6. On November 8, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have also filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

**Overview of the Debtors' Vendors**

7. In the course of operating their specialty retail business, the Debtors transacted with a network of vendors, service providers, and independent contractors—both domestic and located outside the United States, including Canada—that supplied merchandise sourcing, manufacturing, and quality inspection services; store-facing operational, technology, and infrastructure support; and transportation, customs clearance, and warehousing services for the Debtors' retail merchandise, packaging materials, and other inventory destined for the Debtors' distribution centers and retail stores. The Debtors seek authority to pay the Critical Vendor Claims, Foreign Vendor Claims, 503(b)(9) Claims, and Lien Claims (collectively, the "Trade Claims," and the holders thereof, the "Trade Claimants") described herein to the extent the Debtors determine, in their business judgment, that such payment is necessary to avoid disruption to their operations, prevent the loss of goods or services essential to their business, or prevent Trade Claimants from exercising remedies against the Debtors' assets in circumstances where the automatic stay cannot practically be enforced or the cost of attempting to do so would exceed the amounts owed.

Preserving the Debtors' ongoing operations and assets for the benefit of their estates and stakeholders is the purpose of the relief requested.

8. As of the Petition Date, the Debtors estimate that there is approximately $10,000,000 of unpaid prepetition Critical Vendor Claims and Lien Claims, approximately all of which are due or will come due between the entry of the Interim Order and the Final Order (the "Interim Period"), in the respective amounts set forth in the table in paragraph eleven (11) below.

9. Critical Vendors (as defined herein) provide specialized goods and services that are necessary to the Debtors' day-to-day retail operations, and many are sole- or limited-source providers for which replacement on comparable terms would be difficult or impossible to obtain on short notice. Foreign Vendors (as defined herein) are uniquely situated from all other creditors in that Foreign Vendors without ties to the United States may ignore the automatic stay and take actions against the Debtors or their properties abroad, which would have a significant disruptive impact. Similarly, Lien Claimants (as defined herein) may assert possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay) in an attempt to secure payment of their prepetition claims. Any delays or material changes in the delivery of such goods and services as a result of the Debtors' nonpayment of the Trade Claims would materially harm the Debtors and their key stakeholders and would impede a smooth transition into these chapter 11 cases.

10. Simply put, the Debtors must have access to merchandise in order to effectuate their business model. In addition, the Debtors rely on certain crucial services that keep their store locations in working order, and in most cases finding replacement vendors for such services would be difficult, if not impossible. What's more, even where alternative vendors may exist, the time and costs associated with switching from one vendor to another could damage the Debtors'

business and cause customers to look elsewhere for the types of products that the Debtors sell. Accordingly, the Debtors request authority, but not direction, to pay certain outstanding prepetition Trade Claims to the extent the Debtors determine, in their business judgment, that such payment is beneficial to the Debtors' estates.

11. The following table summarizes the categories of prepetition Trade Claims and the relief requested pursuant to this Motion. The dollar amounts shown for Critical Vendor Claims and Lien Claims are the respective estimated amounts for those categories of Trade Claims. No aggregate estimate or separate dollar allocation is sought for Foreign Vendor Claims and 503(b)(9) Claims, as any such payment shall be subject to the terms and conditions of any interim or final order entered by the Court authorizing the Debtors to obtain postpetition financing and/or use cash collateral (each, a "Financing Order"), including any budget thereunder. The estimated allocations between Critical Vendor Claims and Lien Claims are not separate category limits. Subject in all respects to any Financing Order and any budget thereunder, the Debtors seek authority to apply amounts not required for Lien Claims to Critical Vendor Claims, and vice versa, without further order of the Court, provided that aggregate payments remain within the applicable combined amount permitted thereunder. This flexibility is not intended to modify any Financing Order or budget thereunder, or increase the aggregate amount available. Final authority is inclusive of, and not in addition to, payments made under the Interim Order. No claim may be paid more than once because it falls within more than one Trade Claim category:

| **Category** | **Description of Goods/Services Provided** | **Requested Relief on an Interim Basis** | **Requested Relief on a Final Basis** |
|---|---|---|---|
| Critical Vendor Claims | Specialized suppliers of goods and services that are critical to the Debtors' day-to-day store, technology, and operational infrastructure, or that are sole- or limited-source providers of goods and services necessary for the uninterrupted operations of the Debtors' business. | $3,500,000 | $3,500,000 |

| Category | Description of Goods/Services Provided | Requested Relief on an Interim Basis | Requested Relief on a Final Basis |
|---|---|---|---|
| Foreign Vendor Claims | Suppliers of goods and services that are based outside of the United States. | Subject to any Financing Order budget and advance notice | Subject to any Financing Order budget and advance notice |
| 503(b)(9) Claims | Suppliers that provided goods to the Debtors that were received within twenty days before the Petition Date, which may give rise to claims under section 503(b)(9) of the Bankruptcy Code. | Subject to any Financing Order budget and advance notice | Subject to any Financing Order budget and advance notice |
| Lien Claims | Suppliers of goods or services utilized by or provided to the Debtors that may assert mechanic's, possessory, or other similar liens. | $6,500,000 | $6,500,000 |
| **Total Amount of Trade Claims (excluding Foreign Vendor Claims and 503(b)(9) Claims)** | | **$10,000,000** | **$10,000,000** |

## I. The Critical Vendor Claims.

12. The Debtors operate in the highly competitive specialty retail industry, and their ability to continue generating revenue and maximize the value of their estates during these chapter 11 cases depends on their ability to sell merchandise through their stores and digital storefronts. In the ordinary course of business, the Debtors engage a limited number of vendors that provide critical performance marketing services on which the Debtors depend to market their products, reach customers, drive customer traffic, and generate sales (collectively, the "Critical Vendors," and the claims held by such vendors in respect of those performance marketing services, the "Critical Vendor Claims"). Without these services, the Debtors would face significant disruptions in their ability to attract customers and generate sales, impairing their ability to monetize inventory and preserve value during the sale and store closing processes and causing immediate and irreparable harm to their business and estates. The Debtors, therefore, must be able to maintain these critical performance marketing services, and timely payment of the Critical Vendor Claims is fundamental to minimizing disruption to their operations and maximizing the value of their estates during these chapter 11 cases.

13. As of the Petition Date, the Debtors estimate that they owe approximately $3,500,000 on account of Critical Vendor Claims, all of which is due or will become due during the Interim Period. The Debtors request authority, but not direction, to pay all outstanding prepetition amounts incurred on account of the Critical Vendor Claims and to continue to make all payments on a postpetition basis in the ordinary course of business, in each case to the extent that the Debtors determine, in their business judgment, that such payment is beneficial to the Debtors' estates.

## II. Identifying the Critical Vendors and Critical Vendor Claims.

14. In light of the foregoing, the Debtors, with the assistance of their advisors, reviewed their books and records, consulted operations and purchasing personnel, reviewed contracts and supply agreements, and analyzed applicable laws, regulations, and historical practices to identify those vendors that are critical to the continued and uninterrupted operation of the Debtors' business. The loss of any of these Critical Vendors would materially harm the Debtors' business by, among other things, reducing their enterprise value and ultimately impairing their ability to effectively administer these chapter 11 cases. At the same time, the Debtors are mindful that paying all prepetition amounts owed to all vendors would create an unsustainable liquidity shortage and impair the Debtors' ability to successfully navigate these chapter 11 cases. Accordingly, the Debtors examined each of their vendor relationships with, among other things, the following criteria in mind, in order to identify which vendors should be eligible to receive payments under the critical vendor program:

- whether certain specifications or contract requirements directly or indirectly prevent the Debtors from obtaining goods or services from alternative sources;
- whether a vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtors' business operations;

- whether the services provided by the vendor are so vital, or the vendor's operations are so commingled with the Debtors' business, that even the briefest disruption would cause significant harm to the Debtors' operations;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- the likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through the use of the tools available in these chapter 11 cases;

- whether the failure to pay all or part of a particular vendor's claim could cause the vendor to hold goods owned by the Debtors, or to refuse to provide critical services on a postpetition basis; and

- whether the failure to pay a particular vendor could cause an inability to properly service the Debtors' customers and result in substantial revenue loss.

15. In addition to these factors, the Debtors and their advisors examined the health of each vendor relationship, the vendor's familiarity with the chapter 11 process, and the extent to which each vendor's prepetition claims could be satisfied elsewhere in the chapter 11 process. Ultimately, the Debtors' selection process balanced the need to ensure that these chapter 11 cases do not disrupt or negatively impact their operations and, relatedly, their customers, while limiting the expenditure of estate resources. Paying the targeted prepetition claims of the Critical Vendors benefits the Debtors' estates, both monetarily and operationally, by preserving liquidity and enabling the Debtors to operate effectively during these chapter 11 cases.

## III. Foreign Vendor Claims.

16. In the ordinary course of business, the Debtors transact with foreign vendors and individual independent contractors located in various jurisdictions (collectively, the "Foreign

Vendors").[3] The Foreign Vendors supplied goods and services in connection with the Debtors' retail business, consisting mostly of overseas apparel, footwear, and accessories manufacturing and sourcing; quality assurance and inspection services; packaging and labeling; sourcing agent and buying office services; and customs compliance and trade documentation support, and certain Foreign Vendors are individuals who provided on-site quality control, production oversight, and consulting services on an independent-contractor basis. In determining whether to pay a particular Foreign Vendor Claim, the Debtors will consider the jurisdiction in which the vendor is located, the nature and value of the Debtors' assets located in that jurisdiction, and the vendor's ability and likelihood to pursue remedies against those assets under local law.

17. While the Debtors do not expect to maintain relationships with all Foreign Vendors during the course of these chapter 11 cases, if a potential going-concern purchaser of the Debtors' assets pursuant to the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief*, filed contemporaneously herewith, requires certain unique "The Children's Place" or "Gymboree" merchandise supplied by a Foreign Vendor in connection with a going-concern sale, the Debtors may determine, in their reasonable business judgment, that payment of the applicable Foreign Vendor Claim is necessary to preserve access to that

---

[3] The term "Foreign Vendors" shall not include foreign vendors, independent contractors, service providers, or other non-governmental entities that are known to have assets within the United States that would be subject to the jurisdiction of the Court and that would otherwise be available to satisfy a judgment entered by the Court if such entities were to violate the automatic stay provisions of section 362 of the Bankruptcy Code or take any action contrary to an order of the Court. In addition, the term "Foreign Vendors" shall not include any non-Debtor affiliate of the Debtors.

merchandise and facilitate a value-maximizing sale, subject in all respects to any Financing Order and any budget thereunder. In that scenario, the Debtors seek authority to address the risk that certain Foreign Vendors may sever their business relationships with the Debtors and otherwise take actions that disrupt the Debtors' business operations, administration of these chapter 11 cases, or property abroad. Suppliers and vendors located in foreign countries are often unfamiliar with the chapter 11 process, frequently react skeptically to various debtor protections, and may consider themselves beyond the jurisdiction of the Court.

18. Accordingly, if certain amounts outstanding on account of prepetition goods delivered and services rendered by the Foreign Vendors (the "Foreign Vendor Claims") are not paid, the Foreign Vendors may take action against the Debtors despite the automatic stay provisions of section 362(a) of the Bankruptcy Code. Although the automatic stay applies to protect the Debtors' assets wherever they are located in the world, attempting to enforce the Bankruptcy Code in foreign countries is often a fruitless exercise. In the absence of enforcement of the automatic stay, the Foreign Vendors could initiate a lawsuit in a foreign court and obtain a judgment against the Debtors to collect prepetition amounts owed to them or seek to attach or seize foreign assets of the Debtors even prior to obtaining a judgment. It would be unduly time-consuming and burdensome for the Debtors to seek to enforce an order of the Court in a Foreign Vendor's country in many instances, thereby compounding the loss and disruption in services.

19. In light of the above, the Debtors seek authorization, but not direction, to pay all or part of particular Foreign Vendor Claims on a case-by-case basis in the reasonable exercise of their business judgment to the extent necessary to preserve estate value. Any payment will be subject to, and in compliance with, any Financing Order, the related financing and cash collateral documentation, and any budget thereunder. No aggregate dollar estimate or separate monetary

allocation is sought for Foreign Vendor Claims, and the requested authority neither earmarks funds nor represents that funds are available or committed for such claims. Before making any payment on account of a Foreign Vendor Claim, the Debtors shall provide at least five (5) business days' advance written notice to the U.S. Trustee and counsel to any statutory committee appointed in these chapter 11 cases, identifying the proposed payee, amount, and basis for payment and its compliance with any Financing Order and any budget thereunder. If either notice recipient objects within that period, the Debtors shall not make the disputed payment absent further order of the Court.

**IV. The 503(b)(9) Claims.**

20. A portion of the Trade Claims may include claims entitled to priority pursuant to section 503(b)(9) of the Bankruptcy Code, which grants administrative expense priority to claims for certain inventory, goods, and/or materials received by the Debtors within the twenty (20) days immediately preceding the Petition Date. 11 U.S.C. § 503(b)(9). In the ordinary course of business, the Debtors may have received inventory and other goods from certain vendors within this twenty-day period (collectively, the "503(b)(9) Claimants"), thereby giving rise to prepetition claims of the 503(b)(9) Claimants (the "503(b)(9) Claims").

21. Many of the Debtors' relationships with the 503(b)(9) Claimants are not governed by long-term contracts or supply agreements. Rather, the Debtors obtain goods from such claimants on an order-by-order basis. As a result, to the extent there are 503(b)(9) Claims, a 503(b)(9) Claimant may refuse to supply new orders if the Debtors do not timely pay the 503(b)(9) Claims. Such refusal would negatively affect the Debtors' estates and would be highly disruptive to the Debtors' chapter 11 process, including any going-concern sale. 503(b)(9) Claimants, if not timely paid, could also demand payment in cash on delivery, which could put unnecessary strain on the Debtors' liquidity. Addressing these demands would be both time-consuming and value-

destructive, especially since 503(b)(9) Claims are already expected to be paid in full as administrative expenses.

22. In light of the above, the Debtors seek authorization, but not direction, to pay all or part of particular 503(b)(9) Claims on a case-by-case basis in the reasonable exercise of their business judgment to the extent necessary to preserve estate value. Any payment will be subject to, and in compliance with, any Financing Order, the related financing and cash collateral documentation, and any budget thereunder. No aggregate dollar estimate or separate monetary allocation is sought for 503(b)(9) Claims, and the requested authority neither earmarks funds nor represents that funds are available or committed for such claims. Before making any payment on account of a 503(b)(9) Claim, the Debtors shall provide at least five (5) business days' advance written notice to the U.S. Trustee and counsel to any statutory committee appointed in these chapter 11 cases, identifying the proposed payee, amount, and basis for payment and its compliance with any Financing Order and any budget thereunder. If either notice recipient objects within that period, the Debtors shall not make the disputed payment absent further order of the Court. Importantly, the Debtors do not seek to accelerate or modify existing payment terms with respect to the 503(b)(9) Claims. Any payments the Debtors elect to make pursuant to this authority will be made as such claims come due in the ordinary course of business, provided that such claimants make commercially reasonable efforts to maintain or restore Customary Trade Terms (as defined herein).

**V. Lien Claims.**

23. The Debtors regularly transact business with a number of third parties—including commercial common carriers, air and ocean freight forwarders and consolidators, customs brokers, warehousers, and other third-party logistics providers—that transported, cleared through customs, and stored the Debtors' retail merchandise, packaging materials, and other inventory as such

property moved from overseas manufacturing and sourcing locations to the Debtors' distribution centers and retail stores (collectively, the "Lien Claimants"). Certain Lien Claimants may remain in possession of such property on account of shipments and storage arrangements that were unpaid as of the Petition Date. Under applicable non-bankruptcy law, the Lien Claimants have, or may in the future assert, shipper's, warehouse, possessory, or other similar liens against the Debtors' property in their possession and, if unpaid, may refuse to release such property, may continue to accrue storage, demurrage, and related charges against it, and may ultimately seek to sell it to satisfy their claims.

24. Under the laws of most states and certain foreign laws, these parties will, in certain circumstances, have a lien on property in their possession that secures the charges or expenses incurred in connection with the transportation or storage of goods or the supply of labor (the "Lien Claims").[4] Thus, if the Lien Claims are not satisfied, the Lien Claimants may refuse to release the Debtors' property, thereby disrupting the Debtors' operations and, ultimately, harming the Debtors' estates.

25. To the extent any Lien Claimant has perfected a lien on any of the Debtors' property or, in the Debtors' judgment, could assert and perfect a lien on any such property, it is imperative that the Debtors be authorized to pay such Lien Claimants, regardless of whether their claims arose prior to or after the Petition Date. Such payment will secure the release of any such lien and the Debtors' continued uninterrupted access to the goods and services provided by the Lien Claimants. As a specialty retailer, the Debtors' ability to generate revenue depends on a consistent and

---

4 For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." *See* U.C.C. § 7-307(a) (2005).

uninterrupted flow of merchandise from their sourcing locations through their distribution centers to their retail stores and digital storefronts; any disruption in that flow—even a brief one—would directly impair the Debtors' ability to stock their stores and serve their customers. Moreover, the value of the assets in the possession of the Lien Claimants generally exceeds the value of their respective prepetition claims. The refusal of Lien Claimants to deliver or return the Debtors' goods as a result of not being paid would severely disrupt the Debtors' administration of these chapter 11 cases and could potentially cost the Debtors a substantial amount of value for the Debtors' estates. The Debtors' ability to maintain access to goods and services is critical to the continued viability of the Debtors' business operations and administration of these chapter 11 cases.

26. In light of the above, the Debtors seek entry of the Interim Order and Final Order granting them authorization to make payments, but not direction, in their sole discretion and business judgment, on account of the Lien Claims estimated at approximately $6,500,000, all of which is due or will become due during the Interim Period and is requested to be made available upon entry of the Interim Order, subject to the allocation flexibility described herein and, in all respects, any Financing Order and any budget thereunder.

**VI. The Outstanding Orders.**

27. Prior to the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (the "Outstanding Orders"). In the mistaken belief that they would be general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods (or may recall such shipments) with respect to such Outstanding Orders unless the Debtors issue substitute purchase orders postpetition—potentially disrupting the Debtors' ongoing business operations and requiring the Debtors to expend substantial time and effort in issuing such substitute orders. As set forth in greater detail below, because the Outstanding Orders are likely

characterized as administrative expenses of the Debtors' estates, the Debtors request that the Court confirm the administrative expense priority of all undisputed obligations of the Debtors arising from the acceptance of goods subject to the Outstanding Orders pursuant to section 503(b) of the Bankruptcy Code and authorize the Debtors to pay amounts due on account of Outstanding Orders in the ordinary course of business.

## Basis for Relief Requested

### I. The Court Should Grant the Relief Requested in this Motion Pursuant to Sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code.

28. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments to critical vendors and lien claimants, where necessary to protect and preserve the estate. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims.

29. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound

business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also In re Diocese of Camden*, 653 B.R. 722, 741 (Bankr. D.N.J. 2023) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. at 153)); *In re James A. Phillips*, 29 B.R. at 397 (relying on section 363 of the Bankruptcy Code to allow a contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b) of the Bankruptcy Code). In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, an implied duty to "protect and preserve the estate, including an operating business' going-concern value." *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

30. Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re Just for Feet*, 242 B.R. at 824–25. Specifically, the Court may use its equitable power under section 105(a) of the Bankruptcy Code to authorize

payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *In re Ionosphere Clubs*, 98 B.R. at 176.

31. Indeed, the United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (noting that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet*, 242 B.R. at 824–25 (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same); *In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136-BLS, 2009 WL 330993, at *2 n.5 (D. Del. Feb. 10, 2009) (describing the doctrine of necessity as "a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor"). At least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

32. The Debtors have a sound business purpose for the relief requested herein. The authority to honor unpaid, prepetition Trade Claims in the initial days of these chapter 11 cases, without disrupting the Debtors' operations, will facilitate the Debtors' continued operations and allow the Debtors to efficiently administer these chapter 11 cases.

33. The resulting harm to the Debtors' estates far outweighs the costs associated with paying the Debtors' prepetition obligations to the Trade Claimants. As discussed, if the Debtors do not pay Trade Claims, Trade Claimants may simply refuse to do business with the Debtors unless and until they receive payment on account of their prepetition claims, or take other precipitous actions against the Debtors based on the incorrect belief they are not bound by the automatic stay. As a result, the Debtors would be unable to procure necessary services that support the core functions of their business, potentially causing the Debtors to fail or delay providing services to their customers, or harm their going-concern sale efforts. Thus, the Debtors' other creditors will be no worse off, and likely fare better, if the Debtors are empowered to negotiate such payments to achieve a smooth transition into chapter 11 with minimal disruption to their operations. As such, the Debtors believe the relief sought in this Motion will not burden the Debtors but will help them maximize the value of their estates, and that for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the Trade Claims.

34. Courts in this district have granted relief similar to the relief requested herein in other chapter 11 cases. *See, e.g., In re LIV Golf New Jersey LLC*, 26-20189 (MBK) (Bankr. D.N.J. Oct. 8, 2026) (authorizing payment of certain prepetition foreign vendor claims and lien claims on a final basis); *In re Eddie Bauer LLC*, No. 26-11422 (SLM) (Bankr. D.N.J. Mar. 3, 2026) (authorizing payment of certain prepetition trade claims on a final basis); *In re Multi-Color Corp.*, No. 26-10910 (MB) (Bankr. D.N.J. Mar. 3, 2026) (same); *In re STG Logistics, Inc.*, No. 26-10258 (MEH) (Bankr. D.N.J. Feb. 10, 2026) (same); *In re Del Monte Foods Corp. II*, No. 25-16984 (MBK) (Bankr. D.N.J. Jul. 3, 2025) (authorizing payment of prepetition trade claims); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Mar. 1, 2024) (same); *In re Invitae*

*Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (same); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Nov. 8, 2023) (same).[5]

## II. The Court Should Authorize the Payment of Claims Entitled to Priority Pursuant to Section 503(b)(9) of the Bankruptcy Code.

35. Section 503(b)(9) of the Bankruptcy Code provides administrative priority for "the value of any goods received by the debtor within twenty days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). Any 503(b)(9) Claim must be paid in full for the Debtors to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(A). Consequently, payment of such claims now only provides such parties with what they would be entitled to receive under a chapter 11 plan. Moreover, the timing of such payments lies squarely within the Court's discretion. *See In re Glob. Home Prods., LLC*, No. 06-10340 (KG), 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (agreeing with parties that "the timing of the payment of that administrative expense claim is left to the discretion of the Court"). Here, if the Debtors do not make payment on 503(b)(9) Claims on a case-by-case basis and subject to any budget pursuant to any Financing Order at the outset of these chapter 11 cases—which permits payment before plan confirmation without modifying existing contractual payment terms—the Debtors could be denied access to the goods necessary to maintain the Debtors' operations and maximize the value of the Debtors' estates, which could negatively impact their going-concern sale efforts. Moreover, the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation. As administrative claims incurred in the ordinary course of business, the Debtors believe they may pay such claims

---

5 Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

in accordance with their reasonable business judgment pursuant to section 363(c)(1) of the Bankruptcy Code. *See, e.g.*, Transcript of Hearing held on October 31, 2006, at 49, *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Nov. 6, 2006) ("THE COURT: I think arguably the debtor could pay its 503(b)(9) claimants without court approval."). Again, the timing of such payments lies squarely within the Court's discretion. *See In re Glob. Home Prods., LLC*, 2006 WL 3791955, at *3.

36. For these reasons, courts in this district have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business. *In re Eddie Bauer LLC*, No. 26-11422 (SLM) (Bankr. D.N.J. Mar. 3, 2026) (authorizing payment of 503(b)(9) claims on a final basis); *In re Multi-Color Corp.*, No. 26-10910 (MB) (Bankr. D.N.J. Mar. 3, 2026) (same); *In re STG Logistics, Inc.*, No. 26-10258 (MEH) (Bankr. D.N.J. Feb. 10, 2026) (same); *In re Del Monte Foods Corp. II*, No. 25-16984 (MBK) (Bankr. D.N.J. Jul. 3, 2025) (authorizing payment of 503(b)(9) claims on an interim basis); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Mar. 1, 2024) (same); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (same); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same); *In re WeWork Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Nov. 8, 2023) (same).

## III. The Court Should Authorize the Payment of Lien Claims.

37. Certain Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claims. Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code,

is expressly excluded from the automatic stay.[6] 11 U.S.C. § 362(b)(3). As a result, the Debtors anticipate that certain Lien Claimants may assert or perfect liens, refuse to turn over goods in their possession, or stop performing their ongoing obligations. Even absent a valid lien, to the extent that certain Lien Claimants have possession of the Debtors' goods and materials, mere possession or retention would disrupt the Debtors' operations.

38. Additionally, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of a valid possessory lien to the extent that the Debtors use or sell the estate property against which a Lien Claim is asserted. Given that the value of such property will generally far exceed the value of the related Lien Claim, creditors will not be harmed—and, in fact, will be benefited—by the satisfaction of certain amounts owed to the Lien Claimants. Those payments will facilitate the use and/or sale of estate property against which liens may otherwise be asserted, helping to preserve the going-concern value of the Debtors' business and enabling the Debtors to smoothly transition into chapter 11.

39. For these reasons, courts in this district have authorized the payment of prepetition lien claims under similar circumstances in recent chapter 11 cases. *See, e.g., In re LIV Golf New Jersey LLC*, 26-20189 (MBK) (Bankr. D.N.J. Oct. 8, 2026) (authorizing payment of certain lienholder claims on a final basis); *In re FreshRealm, Inc.*, No. 26-14656 (MEH) (Bankr. D.N.J. June 2, 2026) (same); *In re Eddie Bauer LLC*, No. 26-11422 (SLM) (Bankr. D.N.J. Mar. 3, 2026) (same); *In re STG Logistics, Inc.*, No. 26-10258 (MEH) (Bankr. D.N.J. Feb. 10, 2026) (same); *In re Del Monte Foods Corp. II*, No. 25-16984 (MBK) (Bankr. D.N.J. Aug. 13, 2025) (same); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Mar. 18, 2024) (same); *In re Thrasio*

[6] *See* 11 U.S.C. § 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection").

*Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Mar. 1, 2024) (same); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Jan. 24, 2024) (same). Accordingly, for the reasons set forth herein, the Debtors submit that it is appropriate for the Court to authorize the Debtors to satisfy the Lien Claims.

**IV. Customary Trade Terms Condition.**

40. Subject to the Court's approval, the Debtors intend to pay the Trade Claims only to the extent necessary to preserve the value of their estates. To that end, in return for paying a portion of the Trade Claims, the Debtors propose that they be authorized to require the Trade Claimants to provide favorable trade terms for the postpetition procurement of their goods and services.

41. The Debtors seek authority, but not direction, to condition payment of the Trade Claims upon each Trade Claimant's written agreement (including in writing, at the Debtors' discretion) to continue—or resume—supplying such products and services to the Debtors in accordance with trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) that are at least as favorable to the Debtors as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed to by the Debtors in their discretion and reasonable business judgment (the "Customary Trade Terms"), and, additionally, to support (and not take any action adverse to) the Debtors' restructuring process (including any proposed sale or chapter 11 plan proposed in these cases). The Debtors reserve the right to require additional favorable trade terms with any Trade Claimant as a condition to payment of any Trade Claim. The Debtors also seek authorization to require, at their discretion, that the Customary Trade Terms be commemorated in writing, including by email or through a trade agreement, as a condition to payment, the form of which is attached to the Interim Order as Exhibit 1 the (the "Form Trade Agreement").

42. Courts in this district have granted relief similar to the relief requested herein in other chapter 11 cases. *See, e.g., In re Eddie Bauer LLC*, No. 26-11422 (SLM) (Bankr. D.N.J. Feb. 10, 2026) (approving customary trade terms and form of trade agreement on an interim basis); *In re New Rite Aid, LLC*, No. 25-14861 (MBK) (Bankr. D.N.J. May 7, 2025) (same); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 4, 2024) (approving customary trade terms and form of trade agreement on an interim basis); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (same). Accordingly, the Debtors submit that the Court approve the Customary Trade Terms and the Form Trade Agreement and should authorize the Debtors to condition payment of Trade Claims upon a Trade Claimant's written agreement to the Customary Trade Terms in the ordinary course of business.

## V. The Court Should Confirm that Outstanding Orders are Administrative Expense Priority Claims and that Payment of Such Claims is Authorized.

43. Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the estate postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809–10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered postpetition are entitled to administrative priority). Thus, granting the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than they otherwise would have absent such relief and will not prejudice any other party-in-interest.

44. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of such administrative priority. The attendant disruption and delay to the continuous and timely flow

of critical inventory and merchandise and other goods to the Debtors would force the Debtors to potentially halt operations, disrupt the Debtors' business, and lead to a loss of revenue, all to the detriment of the Debtors and their creditors.

45. Courts in this district have granted relief similar to the relief requested herein in other chapter 11 cases. *See, e.g., In re Eddie Bauer LLC*, No. 26-11422 (SLM) (Bankr. D.N.J. Feb. 10, 2026) (granting administrative expense priority to undisputed obligations on account of outstanding orders on an interim basis); *In re Multi-Color Corp.*, No. 26-10910 (MBK) (Bankr. D.N.J. Feb. 2, 2026) (same); *In re Pretium Packaging L.L.C.*, No. 26-10896 (CMG) (Bankr. D.N.J. Jan. 30, 2026) (same); *STG Logistics, Inc.*, No. 26-10258 (MEH) (Bankr. D.N.J. Jan. 14, 2026) (same); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 4, 2024) (granting administrative expense priority to undisputed obligations on account of outstanding orders on a final basis); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Mar. 18, 2024) (same); *In re Careismatic Brands, LLC*, No. 24-10561 (VFP) (Bankr. D.N.J. Feb. 29, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Dec. 20, 2023) (same). Accordingly, the Debtors submit that the Court should confirm the administrative expense priority status of the Outstanding Orders and should authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

46. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, anticipated debtor-in-possession financing, and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those

relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**The Requirements of Bankruptcy Rule 6003(a) Are Satisfied**

47. Bankruptcy Rule 6003(a) empowers a court to grant relief within the first twenty-one (21) days after the Petition Date to the extent that "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). As set forth in this Motion, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm. The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and the Court should grant the requested relief.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

48. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons set forth herein.

**Reservation of Rights**

49. Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an implication or admission as to the amount of, basis for, or validity

of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request, approval, or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code (or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code); (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; or (i) a waiver of the obligation of any party in interest to file a proof of claim. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Final Hearing**

50. The Debtors request that the Court schedule a final hearing approximately twenty-five (25) days after the commencement of these chapter 11 cases to consider entry of the Final Order approving the relief requested herein.

**No Prior Request**

51. No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Notice**

52. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) Wells Fargo Bank, National Association, as Prepetition ABL Agent; (d) Crystal Financial LLC d/b/a SLR Credit Solutions, as Prepetition Term Loan Agent; (e) Mithaq Capital SPC, as prepetition unsecured lender; (f) the office of the attorney general for each of the states in which the Debtors operate; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank.*]

**WHEREFORE**, the Debtors request that the Court enter Interim and Final Orders, in substantially the forms submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: November 9, 2026

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*/s/ Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# Exhibit A

## Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS, FOREIGN VENDORS, 503(B)(9) CLAIMANTS, AND LIEN CLAIMANTS; (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO UNDISPUTED OBLIGATIONS ON ACCOUNT OF OUTSTANDING ORDERS; AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through fourteen (14), is **ORDERED**.

[1] A complete list of each of the Debtors, including each Debtor's tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants; (II) Granting Administrative Expense Priority to Undisputed Obligations on Account of Outstanding Orders; and (III) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an interim order (this "Interim Order") (a) authorizing the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Vendor Claims, (iii) 503(b)(9) Claims, and (iv) Lien Claims; (b) authorizing the Debtors to, in exchange for payment of their prepetition claims as contemplated herein, require the applicable claimants to provide Customary Trade Terms for the postpetition procurement of goods and services; (c) granting administrative expense priority to undisputed and unsatisfied obligations on account of goods ordered by or services provided to the Debtors prior to the date hereof that will not be delivered until after the Petition Date and authorizing the Debtors to satisfy such obligations in the ordinary course of business; (d) granting related relief; and (e) scheduling a final hearing (the "Final Hearing") to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and

2 Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter an interim order consistent with Article III of the United States Constitution; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on an interim basis as set forth herein.

2. The Final Hearing on the Motion will be held on _______**, 2026 at _____________ (Eastern Time)**. Objections, if any, that relate to the Motion shall be filed and served so as to be actually received by the following parties on or before _______________**, 2026 at 4:00 p.m. (Eastern Time)**: (i) proposed co-counsel to the Debtors, (a) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com), Andrew F. O'Neill (aoneill@whitecase.com), Amanda Parra Criste (aparracriste@whitecase.com), and Varoon Sachdev (varoon.sachdev@whitecase.com) and (b) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com),

Seth Van Aalten (svanaalten@coleschotz.com), Justin R. Alberto (jalberto@coleschotz.com), and Daniel J. Harris (dharris@coleschotz.com); (ii) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, New Jersey 07102, Attn: Fran B. Steele (fran.b.steele@usdoj.gov) and Aiden Murphy (aiden.murphy@usdoj.gov); (iii) counsel to Wells Fargo Bank, National Association, as Prepetition ABL Agent, (a) Choate, Hall and Stewart LLP, Two International Place, Boston, Massachusetts, 02110, Attn: Kevin J. Simard (ksimard@choate.com) and Michael E. Comerford (mcomerford@choate.com) and (b) McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102, Attn: Joseph Lubertazzi (jlubertazzi@McCarter.com) and Jeffrey Testa (jtesta@mccarter.com); (iv) counsel to Crystal Financial LLC d/b/a SLR Credit Solutions, as Prepetition Term Loan Agent, (a) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts, 02110, Attn: Sandra J. Vrejan (sandra.vrejan@morganlewis.com) and Christopher Carter (christopher.carter@morganlewis.com) and (b) McGrail & Bensinger LLP, 888-C Eighth Avenue, #107, New York, New York, 10019, Attn: Ilana Volkov (ivolkov@mcgrailbensinger.com); (v) counsel to Mithaq Capital SPC, as prepetition unsecured lender, Wollmuth Maher & Deutsch LLP, 500 5th Ave, New York, New York 10110, Attn: David Wollmuth (dwollmuth@wmd-law.com) and Paul DeFilippo (pdefilippo@wmd-law.com); (vi) if any statutory committee has been appointed in these chapter 11 cases, counsel to such committee; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002. If no objections are filed to the Motion, the

Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

3. Any objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

4. Notwithstanding the relief granted in this Interim Order, any payment made or to be made by the Debtors pursuant to the authority granted herein, and any relief or authorization granted herein, shall be subject to, and in compliance with, any interim or final order (each, a "Financing Order") entered by the Court authorizing the Debtors to obtain postpetition financing and/or use cash collateral, including compliance with any budget (as defined in any Financing Order) in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of any Financing Order. To the extent there is any inconsistency between the terms of any Financing Order and the terms of this Interim Order, or any action taken or proposed to be taken hereunder, the terms of any Financing Order and any budget thereunder shall control.

5. The Debtors are authorized, but not directed, in their discretion in the ordinary course of business and the reasonable exercise of their business judgment, consistent with prepetition practices to honor, pay all or part of, and otherwise satisfy and discharge, on a case-by-case basis, the Trade Claims, subject, in the case of Foreign Vendor Claims and 503(b)(9) Claims, to paragraph six (6) below; *provided* that, as a condition to payment of any Lien Claim, the Debtors may require that the applicable Lien Claimant release any lien securing such Lien

Claim and, to the extent such lien has been perfected, take all actions reasonably necessary to evidence the release of such lien. Subject in all respects to any Financing Order and any budget thereunder, the estimated allocations between Critical Vendor Claims and Lien Claims do not constitute separate category limits. To the extent permitted by any Financing Order and any budget thereunder, the Debtors may apply amounts not required for Lien Claims to Critical Vendor Claims, and vice versa, without further order of the Court, provided that aggregate payments remain within the applicable combined amount permitted thereunder. Nothing herein modifies any Financing Order or any budget thereunder or increases the aggregate amount available. No claim may be paid more than once because it falls within more than one Trade Claim category.

6. Notwithstanding the general authorization to pay Trade Claims in this Interim Order, the Debtors are authorized, but not directed, to pay particular Foreign Vendor Claims and 503(b)(9) Claims on a case-by-case basis to preserve estate value, subject to any Financing Order, Financing Order documentation, and any budget thereunder. Before making any Foreign Vendor Claim payment or 503(b)(9) Claim Payment, the Debtors shall provide at least five (5) business days' advance written notice to the U.S. Trustee and counsel to any statutory committee appointed in these chapter 11 cases, identifying the proposed payee, amount, and basis for payment and its compliance with any Financing Order and any budget thereunder. If no written objection to such notice is filed with the Court and served on the Debtors within five (5) business days, the proposed Foreign Vendor Claim payment or 503(b)(9) Payment shall be deemed authorized under this Interim Order without further order of the Court and paid.

7. All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code; *provided*, however, that the Debtors may terminate any outstanding orders prior to delivery, and any canceled orders are not afforded administrative priority.

8. The Debtors are authorized, but not directed, to pay all undisputed amounts relating to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

9. The Debtors are authorized, but not directed, to condition the payment of any Trade Claim upon the applicable Trade Claimant's written agreement (e-mail being sufficient) (a) to continue or recommence providing goods and/or services to the Debtors in accordance with the Customary Trade Terms at least as favorable to the Debtors as those in place during the twelve months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment, (b) that such Trade Claimants shall not cancel any contract or agreement pursuant to which they provide goods or services to the Debtors, and (c) to support (and not take any action adverse to) the Debtors' restructuring process (including any proposed sale or chapter 11 plan proposed in these cases). The Debtors reserve the right to require additional favorable terms with any Trade Claimant as a condition to payment of any Trade Claim.

10. The Form Trade Agreement, substantially in the form attached hereto as **Exhibit 1**, is approved in its entirety, and the Debtors are authorized, but not directed, to negotiate, modify, or amend the Form Trade Agreement in their reasonable business judgment.

11. If any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of claims, or otherwise.

12. Nothing in this Interim Order shall prejudice the Debtors' right to request authority to pay additional amounts owed on account of Trade Claims, which right is expressly and fully reserved and preserved.

13. The Debtors are authorized, but not directed, on an interim basis, to permit the setoff of any prepetition cash deposits held by a Trade Claimant against prepetition obligations. Solely for the purposes of determining compliance with the amounts set forth in the Motion, any payment of prepetition claims to a Trade Claimant by the Debtors shall be reduced by the amount of any prepetition deposit released to the Debtors in connection with such prepetition cash deposits.

14. Any Trade Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Interim Order shall be deemed to (a) agree to the terms and provisions of this Interim Order and (b) have waived, to the extent so paid, Trade Claims of any type, kind, or priority (including any reclamation claim and any lien or security interest asserted on account of such claims), against the Debtors, their assets, and properties, and the assets and properties of their estates. No Trade Claimant shall be granted a lien on or security interest in any property of the Debtors' estates on account of any Trade Claim absent further order of the Court. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Interim Order, the Debtors shall provide such Trade Claimant with a copy of this Interim Order (unless previously provided to such Trade Claimant).

15. Nothing herein shall impair or prejudice the Debtors' ability to contest, in their discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Trade Claimant. The Debtors do not concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority, of such claims.

16. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise

or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request, approval, or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code (or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code); (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; or (i) a waiver of the obligation of any party in interest to file a proof of claim. Nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim on account of such claim not being paid.

17. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts

owed in connection with the relief granted herein and to the extent authorized by this Interim Order.

18. Nothing herein shall impair or prejudice the rights of the U.S. Trustee and any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Interim Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider to the Debtors. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall, to the extent reasonably practical, provide three (3) calendar days' advance notice to, and opportunity to object by the U.S. Trustee, counsel to the respective Prepetition Agents, counsel to any agent under a postpetition financing facility, and counsel to any statutory committee appointed in these chapter 11 cases; *provided* that if any party objects to the payment, the Debtors shall not make such payment without further order of the Court.

19. The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; (d) the total amount of the claim; (e) the date of payment; and (f) whether the payee has agreed in writing to the Customary Trade Terms. Upon entry of this Interim Order, the Debtors shall provide a copy of such matrix/schedule to (a) the U.S. Trustee, (b) counsel to any statutory committees appointed in these chapter 11 cases, (c) Choate, Hall & Stewart LLP, counsel to the Prepetition ABL Agent, (d) Morgan, Lewis & Bockius LLP, counsel to the Prepetition Term Loan Agent, and

(e) Wollmuth Maher & Deutsch LLP, counsel to Mithaq Capital SPC within fifteen (15) calendar days of the end of each calendar month beginning upon entry of this Interim Order.

20. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

21. Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

22. The requirements set forth in Bankruptcy Rule 6003(a) are satisfied by the contents of the Motion or otherwise deemed waived.

23. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

24. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Interim Order shall be effective and enforceable immediately upon entry hereof.

25. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

26. The Debtors shall serve by email (if available) or by regular mail (if email is unavailable) a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f).

27. Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

28. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

# Exhibit 1

## Form Trade Agreement

# TRADE CLAIMANT LETTER AGREEMENT

**NOTWITHSTANDING ANY PROVISION HEREIN, THE DEBTORS AND VENDOR ACKNOWLEDGE AND AGREE THAT THIS TRADE CLAIMANT LETTER AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE AN OFFER WITH RESPECT TO ANY SECURITIES OR SOLICITATION OF VOTES FOR THE ACCEPTANCE OF A PLAN OF REORGANIZATION FOR PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE. ANY SUCH OFFER OR SOLICITATION WILL BE MADE ONLY IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND PROVISIONS OF THE BANKRUPTCY CODE.**

1. This Trade Claimant Letter Agreement (the "Letter Agreement"), dated as of [●], is by and between THE CHILDREN'S PLACE, INC. and certain of its affiliates (collectively, the "Debtors" or the "Company") and [●] ("Vendor" and, together with the Company, the "Parties").

2. As Vendor is aware, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") on November 8, 2026 (the "Petition Date").

3. The Company is continuing to work with its vendors during the chapter 11 cases and intends to pay vendors in full in the ordinary course for goods and services provided on or after the filing date; however, the Bankruptcy Code prohibits the Company from paying amounts owed on account of goods received and services rendered prior to the filing date without specific approval by the Bankruptcy Court. Pursuant to the attached order (the "Order") entered by the Bankruptcy Court, the Debtors have received authority to pay a limited amount of claims of certain vendors that qualify as "Trade Claimants," subject to such vendors' agreement in writing to be bound by certain terms. Specifically, the Order requires that prior to receiving a Trade Claimant's payment, a vendor must agree to continue providing goods and services to the Company in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) that are at least as favorable to the Company as those in place during the twelve (12) months prior to the chapter 11 filing (the "Customary Trade Terms"), and, additionally, to support (and not take any action adverse to) the Debtors' restructuring process (including any proposed sale or chapter 11 plan proposed in the chapter 11 cases).

4. Any party that accepts payment from the Company on account of a Trade Claimant's claim is deemed to have agreed to the terms and provisions of the Order (subject to the modifications provided herein), including the Company's ability to recover any payment made on account of a prepetition claim in the event the Vendor does not continue supplying goods or services to the Company in accordance with Customary Trade Terms.

5. As Vendor is aware, debtor [●] and Vendor are party to a distribution agreement dated [●] (as subsequently amended, the "Prepetition Agreement"). Typically, vendors that are party to an agreement that existed prior to the filing, like the Prepetition Agreement, are not entitled to treatment as a Trade Claimant because the "automatic stay" provided under the Bankruptcy Code prevents such parties from refusing to perform due to the Company's inability to pay prepetition amounts.

6. Nevertheless, given the importance of the Company's relationship with Vendor and without waiving any rights to assert the applicability of the automatic stay, the Debtors have agreed to designate Vendor as a Trade Claimant pursuant to the Order for a portion of Vendor's prepetition claim, subject to Vendor's written agreement to the terms outlined in this Letter Agreement (the "Terms") which modify, in part, the terms of the Prepetition Agreement. Upon execution of this Letter Agreement, the Debtors shall issue (i) postpetition payments of $[●] owed to Vendor for billed postpetition balances due

on account of goods shipped from the Petition Date through [●] within ten (10) business days of the Parties' execution of this Letter Agreement, (ii) postpetition payments of amounts owed to Vendor for shipments after [●], if any, on the first Friday that falls on or after fifteen (15) days after receiving an invoice in accordance with the Prepetition Agreement, and (iii) the amounts owed to Vendor, pursuant to section 503(b)(9) of the Bankruptcy Code, in the amount of [●] (the "Payment"), no later than five (5) business days after the Debtors consummate a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code, or such other date as is mutually agreed upon by the Debtors and Vendor in writing. In the event that the Company fails to make a postpetition payment in accordance with this paragraph, Vendor's rights to request shorter credit terms are preserved.

7. Additionally, the Parties stipulate that the remaining prepetition amount on account of accounts receivable under the Prepetition Agreement after the Payment is $[●] (the "Agreed Prepetition Amount"). The Parties stipulate that the Agreed Prepetition Amount shall constitute an allowed prepetition general unsecured claim under section 502 of the Bankruptcy Code with respect to prepetition amounts due on account of accounts receivable under the Prepetition Agreement, the full amount of which shall be allowed against each Debtor. Notwithstanding the foregoing, Vendor reserves all rights to assert other claims under the Prepetition Agreement, if any, and Debtors reserve any and all rights to challenge any such claims. The parties further agree that if the Company "assumes" the Prepetition Agreement and/or "assumes and assigns" the Prepetition Agreement to any purchaser under section 365 of the Bankruptcy Code or section 1123 of the Bankruptcy Code, the Agreed Prepetition Amount will be the total amount necessary to "cure" all "defaults" and "actual pecuniary losses" under section 365(b)(1) of the Bankruptcy Code or section 1123 of the Bankruptcy Code related to prepetition amounts due on account of accounts receivable under the Prepetition Agreement. Subject to the terms hereof, Vendor waives all rights to challenge or object to such amount related to accounts receivable under the Prepetition Agreement in connection with assumption or assumption and assignment of the Prepetition Agreement pursuant to section 365 of the Bankruptcy Code or otherwise; *provided, however*, Vendor reserves its rights with respect to any other amounts unrelated to accounts receivable that may be required to "cure" all defaults under section 365(b)(1) of the Bankruptcy Code or section 1123 of the Bankruptcy Code and Debtors reserve any and all rights to challenge any such claims.

8. In exchange for the terms set forth above, Vendor agrees:

i. to provide goods and services to the Company on Customary Trade Terms, as modified herein, and, additionally, to support (and not take any action adverse to) the Debtors' restructuring process and chapter 11 cases (including, without limitation, any proposed actions involving the Debtors' operations, employees, or compensation arrangements, or any proposed sale of some or substantially all of the Debtors' assets);

ii. solely to the extent that the Bankruptcy Court enters an order approving a disclosure statement and solicitation materials as containing, among other things, "adequate information" as required by section 1125 of the Bankruptcy Code with respect to a chapter 11 plan that treats Vendor's claim in a manner that is at least equivalent to similarly situated trade vendors, (a) to vote or cause to be voted its claims to accept any such chapter 11 plan by delivering its duly executed and completed ballot or ballots, as applicable, accepting such plan on a timely basis following the commencement of the solicitation of the plan and its actual receipt of the solicitation materials and ballot and not change or withdraw such vote (or cause or direct such vote to be changed or withdrawn), and (b) to the extent it is permitted to elect whether to opt out of the releases set forth in any such chapter 11 plan, to provide, and to not opt-out of, the releases in such plan;

iii. not to separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim (other than the Payment) pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Letter Agreement;

iv. not to file or otherwise assert against the Company, its assets, or any other person or entity, including the Company's customers, or any of their respective assets or property (real or personal), any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Vendor by the Company arising from prepetition agreements or transactions;

v. to the extent Vendor has taken steps to file or assert such a lien prior to entering into this Letter Agreement, to promptly take all necessary actions to remove such liens; and

vi. to provide at least equal priority to the needs of the Company in comparison to Vendor's other customers when Vendor recommences shipment of goods specified under the Prepetition Agreement.

9. To the extent applicable, nothing in this Letter Agreement shall require Vendor to take any action, or to refrain from taking any action, to the extent that doing so would be inconsistent with Vendor's fiduciary obligations as a member of the Official Committee of Unsecured Creditors under applicable law.

10. This Letter Agreement is not and shall not be deemed to be a solicitation for votes on a chapter 11 plan. The votes of the holders of claims against the Debtors will not be solicited until such holders who are entitled to vote have received the chapter 11 plan, the disclosure statement, and related solicitation materials, including the ballots. In addition, this Letter Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

11. This Letter Agreement is not and shall not be deemed to constitute a promise of "assumption" of the Prepetition Agreement under the Bankruptcy Code. The Prepetition Agreement remains subject to assumption or rejection based on the final determination by the Company and/or any applicable purchaser in a sale and approval by the Bankruptcy Court.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

**DEBTORS:**

By_______________________________
Name_____________________________
Its_______________________________

**[•]:**

By_______________________________
Name_____________________________
Its_______________________________

# **Exhibit B**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS, FOREIGN VENDORS, 503(B)(9) CLAIMANTS, AND LIEN CLAIMANTS; (II) GRANTING ADMINISTRATIVE EXPENSE PRIORITY TO UNDISPUTED OBLIGATIONS ON ACCOUNT OF OUTSTANDING ORDERS; AND (III) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twelve (12), is **ORDERED**.

[1] A complete list of each of the Debtors, including each Debtor's tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(b)(9) Claimants, and Lien Claimants; (II) Granting Administrative Expense Priority to Undisputed Obligations on Account of Outstanding Orders; and (III) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of a final order (this "Final Order") (a) authorizing the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Vendor Claims, (iii) 503(b)(9) Claims, and (iv) Lien Claims; (b) authorizing the Debtors to, in exchange for payment of their prepetition claims as contemplated herein, require the applicable claimants to provide Customary Trade Terms for the postpetition procurement of goods and services; (c) granting administrative expense priority to undisputed and unsatisfied obligations on account of goods ordered by or services provided to the Debtors prior to the date hereof that will not be delivered until after the Petition Date and authorizing the Debtors to satisfy such obligations in the ordinary course of business; and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion.

---

to 28 U.S.C. §§ 1408 and 1409; and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that the Debtors' notice of the Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on a final basis as set forth herein.

2. Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3. Notwithstanding the relief granted in this Final Order, any payment made or to be made by the Debtors pursuant to the authority granted herein, and any relief or authorization granted herein, shall be subject to, and in compliance with, any interim or final order (each, a "Financing Order") entered by the Court authorizing the Debtors to obtain postpetition financing and/or use cash collateral, including compliance with any budget (as defined in any Financing Order) in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of any Financing Order. To the extent there is any inconsistency between the terms of any

---

Financing Order and the terms of this Final Order, or any action taken or proposed to be taken hereunder, the terms of any Financing Order and any budget thereunder shall control.

4. The Debtors are authorized, but not directed, in their discretion in the ordinary course of business and the reasonable exercise of their business judgment, consistent with prepetition practices to honor, pay all or part of, and otherwise satisfy and discharge, on a case-by-case basis, the Trade Claims, subject, in the case of Foreign Vendor Claims and 503(b)(9) Claims, to paragraph five (5) below, without further order of the Court; *provided* that, as a condition to payment of any Lien Claim, the Debtors may require that the applicable Lien Claimant release any lien securing such Lien Claim and, to the extent such lien has been perfected, take all actions reasonably necessary to evidence the release of such lien. Subject in all respects to any Financing Order and any budget thereunder, the estimated allocations between Critical Vendor Claims and Lien Claims do not constitute separate category limits. To the extent permitted any Financing Order and any budget thereunder, the Debtors may apply amounts not required for Lien Claims to Critical Vendor Claims, and vice versa, without further order of the Court, provided that aggregate payments remain within the applicable combined amount permitted thereunder. Nothing herein modifies any Financing Order or any budget thereunder or increases the aggregate amount available. No claim may be paid more than once because it falls within more than one Trade Claim category.

5. Notwithstanding the general authorization to pay Trade Claims in this Final Order, the Debtors are authorized, but not directed, to pay particular Foreign Vendor Claims and

503(b)(9) Claims on a case-by-case basis to preserve estate value, subject to any Financing Order, Financing Order documentation, and any budget thereunder. Before making any Foreign Vendor Claim payment or 503(b)(9) Claim Payment, the Debtors shall provide at least five (5) business days' advance written notice to the U.S. Trustee and counsel to any statutory committee appointed in these chapter 11 cases, identifying the proposed payee, amount, and basis for payment and its compliance with any Financing Order and any budget thereunder. If no written objection to such notice is filed with the Court and served on the Debtors within five (5) business days, the proposed Foreign Vendor Claim payment or 503(b)(9) Payment shall be deemed authorized under this Final Order without further order of the Court and paid.

6. All undisputed obligations related to the Outstanding Orders are granted administrative expense priority in accordance with section 503(b)(1)(A) of the Bankruptcy Code; provided, however, that the Debtors may terminate any outstanding orders prior to delivery, and any canceled orders are not afforded administrative priority.

7. The Debtors are authorized, but not directed, to pay all undisputed amounts relating to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

8. The Debtors are authorized, but not directed, to condition the payment of any Trade Claim upon the applicable Trade Claimant's written agreement (e-mail being sufficient) (a) to continue or recommence providing goods and/or services to the Debtors in accordance with the Customary Trade Terms at least as favorable to the Debtors as those in place during the twelve

---

months prior to the Petition Date, or as otherwise agreed by the Debtors in their reasonable business judgment, (b) that such Trade Claimants shall not cancel any contract or agreement pursuant to which they provide goods or services to the Debtors, and (c) to support (and not take any action adverse to) the Debtors' restructuring process (including any proposed sale or chapter 11 plan proposed in these cases). The Debtors reserve the right to require additional favorable terms with any Trade Claimant as a condition to payment of any Trade Claim.

9. The Form Trade Agreement, substantially in the form attached hereto as **Exhibit 1**, is approved in its entirety, and the Debtors are authorized, but not directed, to negotiate, modify, or amend the Form Trade Agreement in their reasonable business judgment.

10. If any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as the Customary Trade Terms, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for

---

payment of claims, or otherwise.

11. The Debtors are authorized, but not directed, to permit the setoff of any prepetition cash deposits held by a Trade Claimant against prepetition obligations. Solely for the purposes of determining compliance with the amounts set forth in the Motion, any payment of prepetition claims to a Trade Claimant by the Debtors shall be reduced by the amount of any prepetition deposit released to the Debtors in connection with such prepetition cash deposits.

12. Nothing in this Final Order shall prejudice the Debtors' right to request authority to pay additional amounts owed on account of Trade Claims, which right is expressly and fully reserved and preserved.

13. Any Trade Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Final Order shall be deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent so paid, Trade Claims of any type, kind, or priority (including any reclamation claim and any lien or security interest asserted on account of such claims), against the Debtors, their assets, and properties, and the assets and properties of their estates. No Trade Claimant shall be granted a lien on or security interest in any property of the Debtors' estates on account of any Trade Claim absent further order of the Court. Notwithstanding anything to the contrary herein, prior to making any payment pursuant to this Final Order, the Debtors shall provide such Trade Claimant with a copy of this Final Order (unless previously provided to such Trade Claimant).

---

14. Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Trade Claimant. The Debtors do not concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority, of such claims.

15. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Final Order or the Motion or any order granting the relief requested by the Motion; (e) a request, approval, or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code (or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code); (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) a concession by the Debtors that any liens (contractual, common law,

---

statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; or (i) a waiver of the obligation of any party in interest to file a proof of claim. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

16. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein and to the extent authorized by this Final Order.

17. Nothing herein shall impair or prejudice the rights of the U.S. Trustee and any statutory committee appointed in these chapter 11 cases, which are expressly reserved, to object to any payment made pursuant to this Final Order to an insider (as such term is defined in section 101(31) of the Bankruptcy Code), or an affiliate of an insider to the Debtors. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall, to the extent reasonably practical, provide three (3) calendar days' advance notice to, and opportunity to object by the U.S. Trustee, counsel to the respective Prepetition Agents, counsel to any agent under a postpetition financing facility, and counsel to any statutory committee appointed in these chapter 11 cases; *provided* that if any party objects to the payment, the Debtors shall not make such payment without further order of the Court.

18. The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Final Order, including the following information: (a) the names of the payee; (b) the amount of the payment; (c) the category or type of payment; (d) the total amount of the claim; (e) the date of payment; and (f) whether the payee has agreed in writing to the Customary Trade Terms. The Debtors shall provide a copy of such matrix/schedule to (a) the U.S. Trustee, (b) counsel to any statutory committees appointed in these chapter 11 cases, (c) Choate, Hall & Stewart LLP, counsel to the Prepetition ABL Agent, (d) Morgan, Lewis & Bockius LLP, counsel to the Prepetition Term Loan Agent, and (e) Wollmuth Maher & Deutsch LLP, counsel to Mithaq Capital SPC as of fourteen (14) calendar days after entry of this Final Order, and as of the last day of each calendar month thereafter. Each such report shall be delivered within seven (7) calendar days after the relevant measurement date.

19. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

20. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

21. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Final Order shall be effective and enforceable immediately upon entry hereof.

22. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

23. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

# **Exhibit 1**

## **Form Trade Agreement**

# TRADE CLAIMANT LETTER AGREEMENT

**NOTWITHSTANDING ANY PROVISION HEREIN, THE DEBTORS AND VENDOR ACKNOWLEDGE AND AGREE THAT THIS TRADE CLAIMANT LETTER AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE AN OFFER WITH RESPECT TO ANY SECURITIES OR SOLICITATION OF VOTES FOR THE ACCEPTANCE OF A PLAN OF REORGANIZATION FOR PURPOSES OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE OR OTHERWISE. ANY SUCH OFFER OR SOLICITATION WILL BE MADE ONLY IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND PROVISIONS OF THE BANKRUPTCY CODE.**

1. This Trade Claimant Letter Agreement (the "Letter Agreement"), dated as of [●], is by and between THE CHILDREN'S PLACE, INC. and certain of its affiliates (collectively, the "Debtors" or the "Company") and [●] ("Vendor" and, together with the Company, the "Parties").

2. As Vendor is aware, the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") on November 8, 2026 (the "Petition Date").

3. The Company is continuing to work with its vendors during the chapter 11 cases and intends to pay vendors in full in the ordinary course for goods and services provided on or after the filing date; however, the Bankruptcy Code prohibits the Company from paying amounts owed on account of goods received and services rendered prior to the filing date without specific approval by the Bankruptcy Court. Pursuant to the attached order (the "Order") entered by the Bankruptcy Court, the Debtors have received authority to pay a limited amount of claims of certain vendors that qualify as "Trade Claimants," subject to such vendors' agreement in writing to be bound by certain terms. Specifically, the Order requires that prior to receiving a Trade Claimant's payment, a vendor must agree to continue providing goods and services to the Company in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) that are at least as favorable to the Company as those in place during the twelve (12) months prior to the chapter 11 filing (the "Customary Trade Terms"), and, additionally, to support (and not take any action adverse to) the Debtors' restructuring process (including any proposed sale or chapter 11 plan proposed in the chapter 11 cases).

4. Any party that accepts payment from the Company on account of a Trade Claimant's claim is deemed to have agreed to the terms and provisions of the Order (subject to the modifications provided herein), including the Company's ability to recover any payment made on account of a prepetition claim in the event the Vendor does not continue supplying goods or services to the Company in accordance with Customary Trade Terms.

5. As Vendor is aware, debtor [●] and Vendor are party to a distribution agreement dated [●] (as subsequently amended, the "Prepetition Agreement"). Typically, vendors that are party to an agreement that existed prior to the filing, like the Prepetition Agreement, are not entitled to treatment as a Trade Claimant because the "automatic stay" provided under the Bankruptcy Code prevents such parties from refusing to perform due to the Company's inability to pay prepetition amounts.

6. Nevertheless, given the importance of the Company's relationship with Vendor and without waiving any rights to assert the applicability of the automatic stay, the Debtors have agreed to designate Vendor as a Trade Claimant pursuant to the Order for a portion of Vendor's prepetition claim, subject to Vendor's written agreement to the terms outlined in this Letter Agreement (the "Terms") which modify, in part, the terms of the Prepetition Agreement. Upon execution of this Letter Agreement, the Debtors shall issue (i) postpetition payments of $[●] owed to Vendor for billed postpetition balances due on account of goods shipped from the Petition Date through [●] within ten (10) business days of the Parties'

execution of this Letter Agreement, (ii) postpetition payments of amounts owed to Vendor for shipments after [●], if any, on the first Friday that falls on or after fifteen (15) days after receiving an invoice in accordance with the Prepetition Agreement, and (iii) the amounts owed to Vendor, pursuant to section 503(b)(9) of the Bankruptcy Code, in the amount of [●] (the "Payment"), no later than five (5) business days after the Debtors consummate a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code, or such other date as is mutually agreed upon by the Debtors and Vendor in writing. In the event that the Company fails to make a postpetition payment in accordance with this paragraph, Vendor's rights to request shorter credit terms are preserved.

7. Additionally, the Parties stipulate that the remaining prepetition amount on account of accounts receivable under the Prepetition Agreement after the Payment is $[●] (the "Agreed Prepetition Amount"). The Parties stipulate that the Agreed Prepetition Amount shall constitute an allowed prepetition general unsecured claim under section 502 of the Bankruptcy Code with respect to prepetition amounts due on account of accounts receivable under the Prepetition Agreement, the full amount of which shall be allowed against each Debtor. Notwithstanding the foregoing, Vendor reserves all rights to assert other claims under the Prepetition Agreement, if any, and Debtors reserve any and all rights to challenge any such claims. The parties further agree that if the Company "assumes" the Prepetition Agreement and/or "assumes and assigns" the Prepetition Agreement to any purchaser under section 365 of the Bankruptcy Code or section 1123 of the Bankruptcy Code, the Agreed Prepetition Amount will be the total amount necessary to "cure" all "defaults" and "actual pecuniary losses" under section 365(b)(1) of the Bankruptcy Code or section 1123 of the Bankruptcy Code related to prepetition amounts due on account of accounts receivable under the Prepetition Agreement. Subject to the terms hereof, Vendor waives all rights to challenge or object to such amount related to accounts receivable under the Prepetition Agreement in connection with assumption or assumption and assignment of the Prepetition Agreement pursuant to section 365 of the Bankruptcy Code or otherwise; *provided, however*, Vendor reserves its rights with respect to any other amounts unrelated to accounts receivable that may be required to "cure" all defaults under section 365(b)(1) of the Bankruptcy Code or section 1123 of the Bankruptcy Code and Debtors reserve any and all rights to challenge any such claims.

8. In exchange for the terms set forth above, Vendor agrees:

i. to provide goods and services to the Company on Customary Trade Terms, as modified herein, and, additionally, to support (and not take any action adverse to) the Debtors' restructuring process and chapter 11 cases (including, without limitation, any proposed actions involving the Debtors' operations, employees, or compensation arrangements, or any proposed sale of some or substantially all of the Debtors' assets);

ii. solely to the extent that the Bankruptcy Court enters an order approving a disclosure statement and solicitation materials as containing, among other things, "adequate information" as required by section 1125 of the Bankruptcy Code with respect to a chapter 11 plan that treats Vendor's claim in a manner that is at least equivalent to similarly situated trade vendors, (a) to vote or cause to be voted its claims to accept any such chapter 11 plan by delivering its duly executed and completed ballot or ballots, as applicable, accepting such plan on a timely basis following the commencement of the solicitation of the plan and its actual receipt of the solicitation materials and ballot and not change or withdraw such vote (or cause or direct such vote to be changed or withdrawn), and (b) to the extent it is permitted to elect whether to opt out of the releases set forth in any such chapter 11 plan, to provide, and to not opt-out of, the releases in such plan;

iii. not to separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim (other

than the Payment) pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Letter Agreement;

iv. not to file or otherwise assert against the Company, its assets, or any other person or entity, including the Company's customers, or any of their respective assets or property (real or personal), any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Vendor by the Company arising from prepetition agreements or transactions;

v. to the extent Vendor has taken steps to file or assert such a lien prior to entering into this Letter Agreement, to promptly take all necessary actions to remove such liens; and

vi. to provide at least equal priority to the needs of the Company in comparison to Vendor's other customers when Vendor recommences shipment of goods specified under the Prepetition Agreement.

9. To the extent applicable, nothing in this Letter Agreement shall require Vendor to take any action, or to refrain from taking any action, to the extent that doing so would be inconsistent with Vendor's fiduciary obligations as a member of the Official Committee of Unsecured Creditors under applicable law.

10. This Letter Agreement is not and shall not be deemed to be a solicitation for votes on a chapter 11 plan. The votes of the holders of claims against the Debtors will not be solicited until such holders who are entitled to vote have received the chapter 11 plan, the disclosure statement, and related solicitation materials, including the ballots. In addition, this Letter Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

11. This Letter Agreement is not and shall not be deemed to constitute a promise of "assumption" of the Prepetition Agreement under the Bankruptcy Code. The Prepetition Agreement remains subject to assumption or rejection based on the final determination by the Company and/or any applicable purchaser in a sale and approval by the Bankruptcy Court.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized officers as of the date first above written.

**DEBTORS:**

By________________________________
Name______________________________
Its_________________________________

**[●]:**

By________________________________
Name______________________________
Its_________________________________