**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

1 A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

## DECLARATION OF LORIE BEERS IN SUPPORT OF THE DEBTORS' BIDDING PROCEDURES MOTION

I, Lorie Beers, declare as follows under penalty of perjury:

1. I am a Managing Director and Head of Restructuring & Special Situations at Cascadia Capital, LLC ("Cascadia"), the proposed investment banker to The Children's Place, Inc. and the other above-captioned debtors and debtors in possession (collectively, the "Debtors" and, together with certain non-debtor affiliates, the "Company"). Cascadia's New York office is located at 477 Madison Avenue, Floor 18, New York, New York 10022.

2. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Motion"), filed contemporaneously herewith.[2] Through the Motion, the Debtors seek approval of the proposed bidding procedures attached as **Exhibit 1** to the proposed order attached as **Exhibit A** to the Motion (respectively, the "Bidding Procedures" and the "Bidding Procedures Order"), related dates and deadlines, potential Stalking Horse Bid Protections, notice procedures, and the Assumption and Assignment Procedures in connection with one or more value-maximizing Sale Transactions.

3. Except as otherwise indicated, the statements in this Declaration are based upon my

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion, the Bidding Procedures, the proposed Bidding Procedures Order, or the First Day Declaration (as defined herein), as applicable.

personal knowledge; my review of documents and information concerning the Debtors' business, financial condition, and strategic alternatives; information provided by the Debtors' management and other advisors; information provided by Cascadia professionals working with me and under my supervision; and my professional experience. I am over the age of eighteen and authorized to submit this Declaration. If called as a witness, I could and would testify competently to the facts and opinions set forth herein. Although Cascadia is expected to be compensated for its services as the Debtors' proposed investment banker, I am not being separately compensated for this Declaration or related testimony.

**Professional Background and Qualifications**

4. Cascadia is an independent investment bank serving middle-market clients that provides M&A advisory, capital markets advisory, and special situations advisory services to a range of institutions. Its Restructuring & Special Situations practice advises companies, financial sponsors, lenders, boards of directors, and other stakeholders on distressed mergers and acquisitions and asset sales, chapter 11 restructurings, out-of-court restructurings and recapitalizations, complex financings, liability management transactions, and stakeholder negotiations. The practice is supported by Cascadia's capital markets advisory group and sector-focused investment bankers.

5. I have more than 35 years of experience in restructuring and special situations, spanning investment banking and legal advisory. Prior to joining Cascadia, I was the Head of Special Situations at Intrepid Investment Bankers LLC ("Intrepid"), and prior to joining Intrepid, I was the founder and Group Head of Special Situations Investment Banking at Cowen. I have also held senior banker roles at StormHarbour Securities, Variant Capital Advisors, Seabury Group, KPMG Corporate Finance, and Gordian Group. I began my career as a bankruptcy attorney and was a partner at Kasowitz, Benson, Torres & Friedman. I have participated in dozens of major

bankruptcy cases in numerous capacities, including organizing and running marketing processes for section 363 sale processes for the sale of assets of chapter 11 debtors in possession. I earned a Juris Doctor from the University of Pittsburgh School of Law and a Bachelor of Arts in Economics from Dickinson College.

**Cascadia's Engagement and the Debtors' Sale Strategy**

6. As more fully described in the *Declaration of Rudolph Morando, Co-Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the Company is a specialty retailer of children's apparel, accessories, and footwear operating under The Children's Place and Gymboree brands. Its business includes retail stores, two digital storefronts, wholesale distribution, and international franchise and wholesale relationships.

7. The Company has experienced declining sales and profitability, competitive and promotional pressures, increased costs, and significant liquidity constraints. In September 2026, the Debtors retained Cascadia, Berkeley Research Group, LLC, and White & Case LLP to assist with evaluating restructuring alternatives. Those alternatives included a going-concern sale of all or substantially all of the Debtors' assets, a standalone disposition of "The Children's Place" and/or "Gymboree" brands and related intellectual property, and a potential structure under which intellectual property would be retained in an "IPCo" and licensed to wholesalers and retail store operators while other assets were sold or liquidated.

8. Since its engagement, Cascadia has worked with the Company and its other advisors to evaluate potential strategic and financial counterparties and solicit proposals for going-concern and liquidation transactions. Through this work, Cascadia has become familiar with the Debtors' operations, financial circumstances, liquidity needs, and sale alternatives.

9. The Debtors determined, after considering their available alternatives, to pursue an

in-court marketing and sale process in parallel with orderly inventory sales and store closures. The Debtors selected Tiger Capital Group, LLC, SB360 Capital Partners, LLC, and GA Retail Solutions, LLC (collectively, the "Liquidator") following receipt of three (3) proposals from national liquidation firms and additional negotiations. The Company entered into the GA/TCP Consulting Agreement with the Liquidator on November 2, 2026 (the "Consulting Agreement"), with liquidation sales commencing on November 6, 2026. The Consulting Agreement's fee-based arrangement and ability to halt store closures if an actionable going-concern bid emerges preserve flexibility to pursue a higher-value alternative.

10. The sale process contemplated by the Motion is intended to determine whether one or more transactions (each, a "Sale Transaction") involving all, substantially all, or any portion of the Debtors' assets, including their intellectual property and brands (including "The Children's Place" and "Gymboree" brands), retail footprint, real estate assets and operations (including the Amazon operations) (collectively, the "Assets") can generate greater value than liquidation. The Debtors will pursue a Sale Transaction only if they determine that it is value maximizing, with remaining store operations subject to a court-supervised wind-down.

## The Prepetition Marketing Process

11. In late September 2026, the Debtors, with Cascadia's assistance, launched a formal, comprehensive sale and marketing process for the Assets (the "Prepetition Sale Process"), whether as a going concern or liquidation, or a standalone sale of discrete assets or revenue streams. Cascadia contacted a broad range of strategic and financial parties, including approximately thirty-three (33) strategic prospects and approximately (17) financial prospects. As of the filing of the Motion, at least thirty (30) parties have executed nondisclosure agreements and have been provided with access to the Debtors' virtual data room (the "Data Room"), which includes a confidential information presentation and additional financial, operational, and legal

diligence materials.

12. To date, the Debtors have received nine (9) proposals relating to their Assets, including six (6) proposals for going concern and IP-related transactions, and three (3) "equity" liquidation proposals involving substantially all of the Debtors' assets. These proposals reflect ongoing interest in the Debtors' Assets. Following receipt of these proposals, the Debtors, together with Cascadia, conducted a comprehensive review of each proposal and have engaged and continue to engage in extensive negotiations with the interested parties to refine and enhance their initial bids. The Debtors also received three (3) fee-based liquidation bids for the liquidation of the Debtors' inventory and certain of their assets.

13. The Debtors, with their advisors and after extensive discussions with their secured lenders, determined that the preliminary going-concern and "equity" liquidation proposals are not currently actionable. The Debtors nevertheless continue to engage in earnest with the parties who submitted proposals and numerous other potential bidders regarding a potential going-concern transaction.

14. Cascadia will continue to market the Assets before and after entry of the Bidding Procedures Order, including by following up with previously contacted parties, contacting additional parties, responding to additional expressions of interest, facilitating diligence and access to the Data Room for Acceptable Bidders, and assisting with the evaluation and negotiation of proposals. Accordingly, the postpetition process will build on the prepetition outreach so that the Debtors can determine whether to designate one or more potential purchasers as Stalking Horse Bidders, conduct an Auction, if necessary, and solicit the highest or otherwise best Bids in an effort to maximize value for the Debtors' estates and exit these chapter 11 cases as quickly as possible.

**<u>The Proposed Bidding Procedures and Schedule</u>**

15. As noted in the Motion, the Bidding Procedures establish an orderly process for

Potential Bidders to become Acceptable Bidders, obtain diligence access, and submit binding Bids; for the Debtors to determine which Bids are Qualified Bids and which bidders are Qualified Bidders; for conducting an Auction, if necessary; and for selecting Successful Bidders and Back-Up Bidders. The Bidding Procedures permit consideration of Bids for portions of the Assets and combinations of Bids, allowing the Debtors to compare alternative transaction structures rather than limiting the process to a single sale of the entire business. As a result of the Bidding Procedures, the fairness and reasonableness of consideration to be paid by any Stalking Horse Bidder, if one is selected, or Successful Bidder ultimately will be tested by market exposure and, if necessary, an open and fair Auction. Moreover, notice of this process will be widely circulated to potentially interested parties.

16. I understand from my conversations with the Debtors' management and other advisors that the timeline set forth in the Bidding Procedures and laid out below is calculated to balance the need to provide adequate notice to Potential Bidders and time for such bidders to conduct diligence and formulate bids with the need to run an expeditious and efficient sale process. I also understand from my conversations with the Debtors' management and other advisors that the Bidding Procedures are designed to generate the highest or otherwise best available recoveries for the Debtors' stakeholders by encouraging prospective bidders to submit competitive, value-maximizing Bids. I believe that the Bidding Procedures and the timeline set forth therein will appropriately market the Assets and provide interested parties with sufficient opportunity to participate. Importantly, I understand that the Bidding Procedures recognize the Debtors' fiduciary obligations to seek to maximize value, and, as such, do not impair the Debtors' ability to consider all Qualified Bids and preserve the Debtors' right to modify the Bidding Procedures in accordance with their terms as necessary or appropriate to seek to maximize value for the Debtors'

estates.

17. To effectuate their sale process, the Debtors propose the following sale schedule (the "Schedule") to establish a clear and open process for the solicitation, receipt, and evaluation of Bids:

| Action | Description | Deadline |
|---|---|---|
| **Stalking Horse Deadline** | The deadline by which the Debtors may choose a Stalking Horse Bidder and enter into a Stalking Horse APA. | November 17, 2026, at 5:00 p.m. prevailing Eastern Time. |
| **Bid Deadline** | The deadline by which any Acceptable Bidders must submit all binding Bids to be evaluated as Qualified Bids to participate in the Auction, if any. | December 9, 2026, at 5:00 p.m. prevailing Eastern Time. |
| **Auction (if necessary)** | The date and time of the Auction, if one is needed, which will be held at the offices of White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020. | December 11, 2026, at 10:00 a.m. prevailing Eastern Time. |
| **Notice of Successful Bidder** | As soon as reasonably practicable after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline), the Debtors will file on the docket, but not serve, a notice identifying the Successful Bidder (as defined in the Bidding Procedures), Assets, and key terms of the agreement. | As soon as reasonably practicable after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline). |
| **Sale Objection Deadline** | The deadline by which objections to the entry of an order by the Court approving any Sale Transaction or objections to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Executory | December 14, 2026, at 5:00 p.m. prevailing Eastern Time. |

| Action | Description | Deadline |
| --- | --- | --- |
| | Contract or Unexpired Lease (the "Sale Objection Deadline") must be filed with the Court and served so as to be actually received by the appropriate notice parties. | |
| **Sale Objection Reply Deadline** | Deadline for the Debtors and any other parties supporting the Sale Transaction(s) to respond to any objections to such Sale Transaction(s). | The Debtors and any other parties supporting the Sale Transaction(s) will respond to any objections to such Sale Transactions at the Sale Hearing. |
| **Sale Hearing** | Date for a hearing at which the Court will consider approving any Sale Transaction(s) to one or more prospective purchasers. A hearing to consider approval of each Canadian Sale Order shall be scheduled following entry of the applicable Sale Order to the extent a Successful Bid includes Assets of the Canadian Debtors. | December 15, 2026, or such other date as may be scheduled by the Court, at a time to be announced. |

18. I understand that the Debtors, in their business judgment, reserve the right to alter the timing of the Schedule as necessary under the circumstances, or to conduct multiple Sale Transactions across one or more Auctions in order to seek to maximize the value of their estates, in each case in accordance with the Bidding Procedures.

19. Additionally, as noted in the Motion, I understand that the Debtors also seek approval of certain Stalking Horse Bid Protections. Specifically, the Debtors seek authority to provide a Break-Up Fee not to exceed three percent (3%) of the Purchase Price and Expense Reimbursement for reasonable and documented out-of-pocket fees and expenses in the event the Debtors decide in their business judgment to offer Stalking Horse Bid Protections to a Stalking

Horse Bidder in connection with a Stalking Horse APA, in accordance with the applicable Stalking Horse Order.

**The Proposed Bidding Procedures,**
**Stalking Horse Bid Protections, and Schedule Are Reasonable**

20. Based on my experience, and my involvement in the process here, I believe that the Bidding Procedures are designed to encourage participation by financially capable parties and facilitate competitive, executable Bids. The procedures permit the Debtors to consider the business as a whole, discrete asset packages, or combinations of proposals, while assessing both price and the likelihood of consummation. These features are particularly important given the alternatives evaluated during the Prepetition Sale Process and the need to determine whether a sale can exceed liquidation value.

21. With respect to the Schedule, as noted above, the Debtors, with the assistance of Cascadia, began outreach to strategic and financial investors almost two month ago and will continue the Prepetition Sale Process with respect to those strategic and financial parties, including any such parties who previously declined to pursue a bid, as well as any other parties who express interest in the Assets. In my opinion, the Schedule provides appropriate time for the Debtors to run their comprehensive marketing process, receive and evaluate Bids, and, if necessary, hold an Auction. Under the circumstances of these cases, I believe that, based on my experience, this timeline, although expedited with respect to the continued postpetition marketing efforts, provides the Debtors with an appropriate amount of time to conduct a marketing process for the Assets and to solicit and identify competitive, value-maximizing Bids. Additionally, at the Auction, as set forth in the proposed Bidding Procedures, the Debtors would have an opportunity to consider competing Qualified Bids and select the highest or otherwise best Bid or combination of Bids for the Assets.

22. To the extent the Debtors seek to appoint a Stalking Horse Bidder, the Stalking Horse Bid Protections identified in the Motion are, in my view and based on my experience, customary and reasonable and are in line with bid protections that stalking horse bidders typically require in similar situations. In the event the Debtors seek to appoint a Stalking Horse Bidder, such appointment and any proposed Stalking Horse Bid Protections will be subject to notice and an opportunity to object in accordance with the Bidding Procedures and Bidding Procedures Order. I believe that the allowance of the Stalking Horse Bid Protections is in the best interests of the Debtors' estates and their creditors, as a Stalking Horse Bidder, if designated, would establish a floor for bidding that may ultimately increase the consideration received by the Debtors in exchange for the Assets. I believe the ability to appoint a Stalking Horse Bidder and provide such bidder with Stalking Horse Bid Protections provides the Debtors the necessary flexibility to pursue a value-maximizing transaction.

[*Remainder of Page Intentionally Left Blank*]

23. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 9, 2026

*/s/ Lorie Beers*
Lorie Beers
Managing Director and Head of
Restructuring & Special Situations
Cascadia Capital, LLC