**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

---

[1] A complete list of each of the Debtors, including each Debtor's tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

# NOTICE OF FILING REVISED ORDER (I) APPROVING THE BIDDING PROCEDURES AND STALKING HORSE BID PROTECTIONS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI) AUTHORIZING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that on November 9, 2026, the above-captioned debtors and debtors in possession filed the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 21] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the proposed *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Proposed Order") was attached to the Motion as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that a revised *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* is attached hereto as **Exhibit A** (the "Revised Proposed Order").

**PLEASE TAKE FURTHER NOTICE** that a redline comparing the Revised Proposed Order to the Proposed Order is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Omni Agent Solutions, Inc. at https://omniagentsolutions.com/TCP. You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 10, 2026

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O’Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*/s/ Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**Exhibit A**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

| In re: | Chapter 11 |
|---|---|
| THE CHILDREN'S PLACE, INC., *et al.*, | Case No. 26-22682 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

**ORDER (I) APPROVING THE BIDDING PROCEDURES AND STALKING HORSE BID PROTECTIONS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI) AUTHORIZING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through and including twenty-two (22), is **ORDERED**.

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

Upon the Debtors' motion (the "Motion")[2] for entry of an order (this "Bidding Procedures Order"): (a) authorizing and approving the proposed marketing, auction, and bidding procedures (the "Bidding Procedures") attached hereto as **Exhibit 1**, by which the Debtors will solicit and, if value maximizing, will select the highest or otherwise best offer(s) for the sale or sales of all, substantially all, or any portion of their Assets; (b) approving the Stalking Horse Bid Protections relating to the Stalking Horse Bidder, if any; (c) establishing certain dates and deadlines related thereto and scheduling an Auction, if needed, to determine the highest or otherwise best Bid available; (d) approving the form and manner of notice of the Auction, if any, and any hearing to approve a sale of some, all, or substantially all of the Debtors' assets, as may be necessary; (e) approving procedures for the assumption and assignment of certain Executory Contracts and Unexpired Leases in connection with the Sale Transaction; and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** as set forth herein.

2. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances. The Bidding Procedures are designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties, including with respect to the proposed procedures for providing Stalking Horse Bid Protections as determined by the Debtors in an exercise of their business judgment in accordance with the Bidding Procedures.

3. The Debtors' proposed notice of the Motion and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and

the Local Rules, and (iii) adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4. Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

**I. Important Dates and Deadlines.**

5. **The Final Bid Deadline**. December 9, 2026, at 5:00 p.m. prevailing Eastern Time, is the deadline by which all Qualified Bids must be ***actually received*** by the parties specified in the Bidding Procedures.

6. **Stalking Horse Bidders and Stalking Horse Bid Protections**. The Debtors, upon entry of this Order, shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment, to designate one or more Stalking Horse Bidders, in consultation with the Consultation Parties, with respect to the applicable Assets and enter into a stalking horse agreement (the "Stalking Horse APA") by no later than November 17, 2026 at 5:00 p.m. (prevailing Eastern time).

7. In the event that the Debtors enter into a Stalking Horse APA with one or more Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court designating a Stalking Horse Bidder and authorizing entry into a Stalking Horse APA (the "Stalking Horse Notice") and serve the Stalking Horse Notice on

the Stalking Horse Bidder and the U.S. Trustee. The Stalking Horse Notice shall: (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Bid submitted by the Stalking Horse Bidder and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Bid submitted by the Stalking Horse Bidder; (d) specify any proposed Stalking Horse Bid Protections (including the amount and calculation thereof); (e) identify the applicable Assets to which the Stalking Horse Bid relates; (f) attach the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (g) set forth the deadline to object to the Stalking Horse Bidder designation and any Stalking Horse Bid Protections. If there are no objections to the Stalking Horse Notice within three (3) business days of filing with the Court (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA, without the need for further hearing. If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

8. Upon entry of an order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA (the "Stalking Horse Order"), the Debtors, in consultation with the Consultation Parties, are authorized, but not directed, to incur and pay (a) the

Break Up Fee, not to exceed three percent (3%) of the Purchase Price, and (b) the Expense Reimbursement, to one or more Stalking Horse Bidders in accordance with the terms of such Stalking Horse Order and Stalking Horse APA. In accordance with any Stalking Horse Order and Stalking Horse APA, (a) the Stalking Horse Bidder shall provide copies of all invoices submitted in connection with the Expense Reimbursement to counsel to the U.S. Trustee and counsel to any statutory committee appointed in these chapter 11 cases, who shall have five (5) business days from receipt to review the invoices for reasonableness; (b) in the event that the U.S. Trustee or any statutory committee files with this Court an objection to any such invoice within five (5) business days of its receipt thereof, the undisputed portion of such invoice shall be paid without further order of the Court, and the portion of such invoice subject to such objection shall not be paid until resolution of such objection by the parties or this Court; and (c) in the event none of the U.S. Trustee or any statutory committee files with this Court an objection to any invoice within five (5) business days of its receipt thereof, such invoice shall be paid in the manner and subject to the terms and conditions set forth in the Stalking Horse Order and Stalking Horse APA without further order of the Court and shall not be subject to any further review, challenge or disgorgement.

9. Except for the Stalking Horse Bid Protections provided to the Stalking Horse Bidder, if any, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for

break-up fees, expense reimbursement, or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

10. **The Auction**. The date and time of the Auction, if needed, is December 11, 2026, at 10:00 a.m. prevailing Eastern Time, which time may be modified by the Debtors, in consultation with the Consultation Parties, upon written notice with the Court. The Auction will be held at the offices of proposed co-counsel to the Debtors: White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, or such other place as the Debtors determine. Only the Debtors, the Qualified Bidders, the Consultation Parties, the U.S. Trustee, and any information officer appointed by the Canadian Court in the Canadian Proceedings, along with their representatives and advisors shall be permitted to attend the Auction in person. Only Qualified Bidders shall be permitted to bid at the Auction and be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction. The Debtors shall send written notice (e-mail being sufficient) of the date, time, and place of any Auction to the Qualified Bidders no later than two (2) business days before such Auction and will post notice of the date, time, and place of such Auction no later than two (2) business days before such Auction on the website of the Debtors' proposed notice, claims, and solicitation agent, Omni Agent Solutions, Inc. (the "Claims and Noticing Agent") at https://omniagentsolutions.com/TCP. The Debtors may suspend or terminate the auction at any time if the Debtors determine, in consultation with the Consultation Parties, in their reasonable

business judgment, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors.

11. **Notice of Successful Bidder**. Within twenty-four (24) hours after the conclusion of the Auction, if any (or, if no Auction is held, the Bid Deadline), the Debtors shall file a Notice of Successful Bidder.

12. **Sale Objection Deadline**. Except for objections governed by paragraph 20.d of this Order, objections to the Sale Transaction(s) and the Sale Order must: (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (c) be filed with the Court and served so as to be ***actually received*** by the Debtors by December 14, 2026, at 5:00 p.m., prevailing Eastern Time ("Sale Objection Deadline").

13. **Failure to Object**. If any party fails to timely file with the Court and serve an objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to any Sale Transaction(s), such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of any Sale Transaction(s), including the transfer of the applicable Assets to a Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to the Sale Transaction(s) for the purposes of section 363(f) of the Bankruptcy Code;

*provided*, that failure to object by the Sale Objection Deadline shall not bar any objection to assumption and assignment, Cure Payments, or adequate assurance of future performance timely filed and served under paragraph 20.d of this Order; *provided*, *further*, that nothing in this Bidding Procedures Order or the Bidding Procedures shall (i) constitute, or be deemed to constitute, the consent of the Prepetition Agents or any agent under a postpetition financing facility to a sale of any Assets free and clear of any liens, or (ii) limit, waive, or impair any right of such parties under sections 363(f) or 363(k) of the Bankruptcy Code, or any order of the court, each of which rights are expressly reserved.

14. **<u>The Sale Hearing</u>**. December 15, 2026, at a time to be announced, subject to Court availability, or as soon thereafter as the Debtors may be heard, is the date and time for the hearing at which the Court will consider approval of the Successful Bid or Successful Bids, if needed (the “<u>Sale Hearing</u>”). The Sale Hearing may be adjourned, in consultation with the Consultation Parties, in the Debtors’ business judgment by announcement in open Court or on the Court’s calendar without any further notice required.

**II. The Auction, Bidding Procedures, Auction Notice, and Related Relief.**

15. The Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>**, are incorporated herein and are approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Bidding

Procedures Order. The Debtors are authorized to take all actions necessary to implement the Bidding Procedures. Notwithstanding anything to the contrary in this Order or the Bidding Procedures, Unexpired Leases may not be purchased on a standalone basis pursuant to the Bidding Procedures, whether individually or in a portfolio. Pursuant to the Bidding Procedures, an Unexpired Lease may be acquired only in connection with the same purchaser's acquisition of Assets other than Unexpired Leases in the applicable Sale Transaction. Subject to the terms of the Bidding Procedures, the Debtors may modify the Bidding Procedures as necessary or appropriate to maximize the value of their estates.

16. Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

17. The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is approved. Within three (3) business days following the entry of this Bidding Procedures Order, the Debtors will cause the Auction Notice to be served upon (a) the office of the United States Trustee for the District of New Jersey; (b) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (c) counsel for any statutory committee appointed in these cases; (d) counsel to the Prepetition ABL Agent; (e) counsel to the Prepetition Term Loan Agent; (f) counsel to any agent under a postpetition financing facility; (g) the U.S. Securities and Exchange Commission;

(h) the United States Attorney's Office for the District of New Jersey; (i) the attorneys general in the states where the Debtors conduct their business operations; (j) the Internal Revenue Service; (k) all parties who have expressed a written interest in the Assets; (l) all known holders of liens, encumbrances, and other claims secured by the Assets; (m) each governmental agency that is an interested party with respect to the Sale Transactions; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. Within three (3) business days after entry of the Order, the Debtors shall post the Auction Notice on the website of the Debtors' proposed Claims and Noticing Agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/TCP and shall publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the Debtors, including, if any Assets of the Canadian Debtors or Assets that are located in Canada are implicated by the Auction, the *Globe and Mail* (National Edition) in English and in Le Devoir in French (or such other French-language newspaper as the Debtors may select).

18. Pursuant to Local Rule 6004-2: (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any bad faith or collusion with respect to the bidding or the Sale Transaction, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly, with in-person attendance limited to the parties specified in paragraph 10 above; and (c) the bidding at the Auction will be documented, recorded, or videotaped.

**III. The Assumption and Assignment Procedures.**

19. The procedures set forth in paragraph 20 below regarding the assumption and assignment of any Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder, if any, pursuant to section 365(f) of the Bankruptcy Code in connection with any Sale Transaction are approved to the extent set forth herein.

20. The Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' Executory Contracts and Unexpired Leases to be assumed and assigned in connection with any Sale Transaction, subject to the payment of any amount necessary to satisfy all defaults and actual pecuniary loss to the counterparty resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the relevant counterparty can assert under an Executory Contract or Unexpired Lease, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to an Executory Contract or Unexpired Lease (the foregoing amounts as stated in the Assumption Notice, the "Cure Payments"):

a. **Notice of Assumption**. On December 11, 2026, after conclusion of any Auction (or, if no Auction is held, the Bid Deadline), the Debtors shall file on the docket and serve a notice of contracts proposed to be assumed and assigned to any Successful Bidder, in substantially the form attached hereto

as **Exhibit 3** (the "Assumption Notice"), via first-class mail on the Contract or Lease Counterparties and their counsel of record, if known. The Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Executory Contract or Unexpired Lease, (ii) the name of the Contract or Lease Counterparty, (iii) the Debtors' good faith estimates of the Cure Payments, if any, required in connection with the Executory Contract or Unexpired Lease, (iv) the identity of the proposed assignee, and (v) the Assumption Objection Deadline (as defined below); *provided*, however, that service of an Assumption Notice shall not constitute an admission that any Executory Contract or Unexpired Lease listed thereon is an executory contract or unexpired lease that such stated Cure Payment constitutes a claim against the Debtors or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. Further, the inclusion of a contract on the Assumption Notice is not a guarantee that such contract will ultimately be assumed and assigned.

b. **Cure Payments**. The payment of the applicable Cure Payments by the Debtors and/or the Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate the applicable Contract or Lease Counterparties for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the Executory Contract or Unexpired Lease by the Debtors and the assignment of such Executory Contract or Unexpired Lease to the Successful Bidder, constitute adequate assurance of future performance thereof.

c. **Supplemental Assumption Notice**. To the extent the Debtors, at any time after the Auction (or, if no Auction is held, the Bid Deadline) (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (ii) remove any Executory Contracts or Unexpired Leases from the list attached to the Assumption Notice, and/or (iii) modify the previously stated Cure Payment associated with any Executory Contract or Unexpired Lease, the Debtors will file with this Court and serve in accordance with the noticing procedures approved for the Assumption Notice attached hereto as **Exhibit 3**, a supplemental notice of contract or lease assumption (a "Supplemental Assumption Notice") on each of the Contract or Lease Counterparties affected by the Supplemental Assumption Notice as soon as is reasonably practicable.

Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts or Unexpired Leases as was included in the Assumption Notice. Except as otherwise provided in any purchase agreement, the Debtors (in consultation with the Successful Bidder) may add or remove Executory Contracts and Unexpired Leases from the list of Executory Contracts and Unexpired Leases to be assumed in connection with the Sale Transaction(s) at any time up to and including two (2) business days prior to Closing.

d. **Objections**. All objections, if any, to the proposed assumption and assignment of any Executory Contract or Unexpired Lease, including objections to the Cure Payment proposed with respect thereto and to adequate assurance of future performance by the proposed assignee, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (a) proposed counsel to the Debtors, (b) counsel to the Successful Bidder, if any, (c) the Office of the United States Trustee for the District of New Jersey, and (d) any other party that has filed a notice of appearance in these chapter 11 cases, so as to be ***actually received*** **no later than December 21, 2026, at 5:00 p.m., prevailing Eastern Time, (the "Assumption Objection Deadline"), or the deadline set forth in a Supplemental Assumption Notice, as applicable, which shall be no earlier than the Assumption Objection Deadline and no less than ten (10) days after service of such Supplemental Assumption Notice and the applicable Adequate Assurance Information**. The Assumption Objection Deadline shall apply to all objections to assumption and assignment, including objections to Cure Payments and adequate assurance of future performance, notwithstanding the Sale Objection Deadline. The Debtors may extend the Assumption Objection Deadline or the deadline set forth in a Supplemental Assumption Notice by filing and serving a notice of such extension on the affected Contract or Lease Counterparties and their counsel of record, if known.

e. **Dispute Resolution**. The assumption and assignment of Executory Contracts and Unexpired Leases shall not be approved at the Sale Hearing or

in the Sale Order entered in connection therewith. If no objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease, including the applicable Cure Payment and adequate assurance of future performance, is timely filed and served by the Assumption Objection Deadline or the applicable deadline set forth in a Supplemental Assumption Notice, the Debtors may submit a proposed order approving such assumption and assignment under a certificate of no objection, without further hearing. Any timely filed objection that remains unresolved shall be heard by this Court on December 29, 2026, at a time to be announced, subject to Court availability (the "Assumption Hearing"), or, for a Supplemental Assumption Notice with an objection deadline that has not expired before such hearing, on such later date as the Court may fix upon notice to the affected Contract or Lease Counterparty and its counsel of record, if known. No Executory Contract or Unexpired Lease subject to a timely filed objection shall be assumed and assigned unless and until such objection is resolved by agreement or by the Court and an order approving such assumption and assignment is entered.

f **Contract or Lease Assumption**. No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date the Sale Transaction has closed.

21. Any party failing to timely file an objection to the Cure Payments or the proposed assumption and assignment of an Executory Contract or Unexpired Lease listed on the Assumption Notice or a Supplemental Assumption Notice is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Executory Contract or Unexpired Lease, (c) the related relief requested in the Motion, (d) adequate assurance of future performance, and (e) the applicable Sale Transaction. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the applicable Executory

Contract or Unexpired Lease, adequate assurance of future performance, the relief requested in the Motion, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to the applicable Executory Contract or Unexpired Lease.

22. The Debtors shall, simultaneously with service of the Assumption Notice or any Supplemental Assumption Notice, serve the Adequate Assurance Information for the proposed assignee on the applicable Executory Contract or Unexpired Lease counterparties, including landlords, and their counsel of record, if known, without the need for a request, demonstrating the proposed assignee's ability to comply with the requirements of adequate assurance of future performance; *provided* that any such evidence that constitutes nonpublic information shall be provided on a confidential basis. All Bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to the applicable Executory Contract or Unexpired Lease counterparties, including landlords, and their counsel of record, if known, via e-mail with such information to be used only for the purpose of assessing the applicable Bidder.

23. Adequate assurance of future performance may include, among other things, audited and unaudited financial statements, tax returns, bank account statements, and a description of the business to be conducted at the premises, the specific name of the proposed assignee/tenant,

if not the prospective purchaser, and the proposed name under which the assignee intends to operate; the potential assignee's intended use for the space if different from the present operation; cash flow projections for the proposed assignee; all cash flow projections for the lease(s) subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the lease(s); any documents and other evidence of the potential assignee's experience operating; a contact person for the proposed assignee that landlords may directly contact in connection with the adequate assurance of future performance; and/or such other documentation as the Debtors may reasonably request. To the extent the prospective bidder is a newly formed entity (a "Newco"), written evidence of adequate assurance of future performance may also include when such Newco was formed, how it will be financed, together with evidence of any financial commitments, and identify what credit enhancements, if any, will be available to guarantee the obligations under the leases, and such other documentation as the Debtors may request (the "Adequate Assurance Package"). The Adequate Assurance Package should be submitted in its own compiled PDF document.

24. The inclusion of an Executory Contract or Unexpired Lease in the Assumption Notice or a Supplemental Assumption Notice will not obligate any Debtor to assume such Executory Contract or Unexpired Lease listed thereon or a Successful Bidder to take assignment of such assumed Executory Contract or Unexpired Lease. Only those Executory Contracts and Unexpired Leases that are included on a schedule of assumed and assigned contracts attached to

the executed definitive asset purchase agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the applicable Successful Bidder. No Executory Contract or Unexpired Lease in the Assumption Notice or a Supplemental Assumption Notice shall be assumed other than in connection with (and concurrently with the effectiveness of) the assignment of such Executory Contract or Unexpired Lease to the applicable Successful Bidder.

**IV. Miscellaneous.**

25. Nothing in this Bidding Procedures Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including, but not limited to, the Debtors and the Stalking Horse Bidder, if any, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with respect to the Auction, the Bidding Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

26. Subject to paragraphs 20.d and 20.e of this Order, the Debtors, in consultation with the Consultation Parties, may modify any of the dates and deadlines set forth herein without further order of the Court; *provided* that the Debtors will serve notice (with e-mail from proposed co-counsel to the Debtors being sufficient) to any Qualified Bidder, as applicable and appropriate,

informing them of such modification. The Debtors are further authorized, but not directed, to conduct multiple Sale Transactions and/or Auctions (as necessary) in substantial conformity with the Schedule and Bidding Procedures established through this Bidding Procedures Order.

27. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such provision.

28. In the event of any inconsistencies between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

29. The Debtors may modify any Good Faith Deposit as necessary or appropriate, based on the Assets being sold in consultation with the Consultation Parties.

30. Notwithstanding anything to the contrary herein, nothing contained in the Motion or any actions taken pursuant to this Bidding Procedures Order granting the relief requested by the Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority of, or validity of any particular claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission by the Debtors

as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a waiver of the obligation of any party in interest to file a proof of claim. Nothing contained in this Bidding Procedures Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim on account of such claim not being paid.

31. Notwithstanding the relief granted in this Bidding Procedures Order, any payment made or to be made by the Debtors pursuant to the authority granted herein, and any relief or authorization granted herein, shall be subject to, and in compliance with, any interim or final order (each, a "Financing Order") entered by the Court authorizing the Debtors to obtain postpetition financing and/or use cash collateral, including compliance with any budget (as defined in any Financing Order) in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of any Financing Order. To the extent there is any inconsistency between the terms of any Financing Order and the terms of this Bidding Procedures Order, or any action taken or proposed to be taken hereunder, the terms of any Financing Order and any budget thereunder shall control.

32. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures are satisfied by such notice.

33. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Bidding Procedures Order are immediately effective and enforceable upon its entry.

34. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

35. The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

36. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Bidding Procedures Order.

# **Exhibit 1**

## **Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On November 8, 2026, each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"). On November 9, 2026, THE CHILDREN'S PLACE, INC., as proposed foreign representative (if appointed in such capacity, the "Foreign Representative"), commenced ancillary proceedings in Canada (the "Canadian Proceedings") on behalf of the Debtors' estates under Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 the ( "CCAA") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court").

The Debtors propose to, through one or more transactions, sell or dispose of all, substantially all, or any portion of their assets to the highest or otherwise best bidder through a competitive bidding process (each, a "Sale Transaction") designed to generate maximum value for the Debtors, their estates, and other parties in interest followed by a court-supervised wind-down of the Debtors' remaining store operations.

On [__], 2026, the Court entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Bidding Procedures Order"),[2] approving, among other things, these

---

1 A complete list of each of the debtors, including each debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

2 Capitalized terms used but not defined herein have the meanings ascribed to them later in these Bidding Procedures, in the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Bidding Procedures

bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing process and, if necessary, an auction (the "Auction") for a sale of all, substantially all, or any portion of their assets pursuant to one or more Sale Transactions. On [_], 2026, the Canadian Court granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

| |
|---|
| Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to the Debtors' Claims and Noticing Agent, Omni Agent Solutions, Inc. by calling (866) 205-3149 (U.S. / Canada) or 1 (818) 510-4678 (International) or visiting the Debtors' restructuring website at (https://omniagentsolutions.com/TCP). |

## I. The Assets to be Auctioned.

The Debtors seek to sell all, substantially all, or any portion of their assets to the person or entity making the highest or otherwise best Bid through the process outlined in these Bidding Procedures. These assets being marketed in the sale process include substantially all of the Debtors' assets, including, but not limited to, the Debtors' going-concern business, unexpired leases, executory contracts, real property, equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, and books and records, in each case, free and clear of all liens, claims, interests, or other encumbrances (collectively, the "Assets"). Unexpired Leases may not be purchased on a standalone basis pursuant to these Bidding Procedures, whether individually or in a portfolio. Pursuant to these Bidding Procedures, an Unexpired Lease may be acquired only in connection with the same purchaser's acquisition of Assets other than Unexpired Leases in the applicable Sale Transaction.

## II. Public Announcement of the Auction.

Within three (3) business days after entry of the Bidding Procedures Order, the Debtors shall (a) cause (i) a notice of the Auction substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Auction Notice"), (ii) the Bidding Procedures Order, and (iii) these Bidding Procedures to be served on the parties specified in paragraph 17 of the Bidding Procedures Order; (b) within three (3) business days after entry of the Bidding Procedures Order, post the Auction Notice on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP; and (c) within three (3) business days after entry of the Bidding Procedures Order, publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the Debtors, including, if any Canadian Assets are implicated by the Auction, the *Globe and Mail* (National Edition) in English and in Le Devoir (or such other French-language newspaper as the Debtors may select). Any information officer appointed by the Canadian Court in the Canadian Proceedings will also post the Auction Notice on its case website.

Motion") filed contemporaneously herewith, or in the Bidding Procedures Order, as applicable.

## III. The Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing some or all of the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors and their advisors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

a. an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

b. identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale Transaction;

c. a statement of the portion of the Assets that the Potential Bidder intends to acquire;

d. sufficient information to demonstrate that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors; and

e. a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid.

The Debtors, in consultation with their advisors, and in consultation with the Consultation Parties,[3] will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a Bid (such Potential Bidder, an "Acceptable Bidder"). For the avoidance of doubt, any party that has already executed a Confidentiality Agreement and submitted a non-binding indication of interest prior to the Petition Date and, in the judgment of the Debtors, and in consultation with the Consultation Parties, has provided adequate forms of the preliminary documentation requested above, shall be deemed to be an Acceptable Bidder and automatically be authorized to conduct due diligence and submit a Bid. An Acceptable Bidder shall not be eligible to participate in the Auction unless such Acceptable Bidder meets the requirements set forth in Section IV below.

---

[3] "Consultation Parties" means the Prepetition Agents, any agent under a postpetition financing facility, and any statutory committee appointed in these chapter 11 cases; *provided*, *however*, that to the extent any Prepetition Agent or agent under a postpetition financing facility submits any Bid (including a Credit Bid that is either revocable or subject to amendment) for any Assets, such Prepetition Agent or agent under a postpetition financing facility shall not be a Consultation Party.

## IV. The Qualified Bid Requirements.

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer to purchase some or all of the Assets in the form of a document signed by the Acceptable Bidder (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline:

a. ***Purchased Assets and Assumed Liabilities***. Each Bid must clearly state the following: (i) which particular Assets are to be included in the applicable Sale Transaction; (ii) if applicable, the liabilities and obligations to be assumed, including any cure costs to be assumed; and (iii) any executory contracts (the "Executory Contracts") and unexpired leases (the "Unexpired Leases") proposed to be assumed by the Debtors and assigned to the Acceptable Bidder; *provided*, that any Bid proposing to acquire an Unexpired Lease must also provide for the Acceptable Bidder's purchase of Assets other than Unexpired Leases in the applicable Sale Transaction, and no Bid solely for one or more Unexpired Leases shall be accepted;

b. ***Good Faith Deposit***. Each Bid must be accompanied by a cash deposit equal to ten percent (10%) of the applicable Purchase Price, to be held in an escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). The Debtors may modify any Good Faith Deposit as necessary or appropriate, based on the Assets being sold in consultation with the Consultation Parties. To the extent that a Bid is modified to increase its proposed Purchase Price at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit such that it equals ten percent (10%) of the increased aggregate Purchase Price promptly and in no event later than one (1) business day following the conclusion of the Auction. Each Bid shall include a written acknowledgement from the bidder that, in the event of the Acceptable Bidder's breach of, or failure to perform under the applicable purchase agreement, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages to the Debtors and their estates resulting from such breach or failure to perform, and the Debtors shall be entitled to pursue all other available legal and equitable remedies that may be available to the Debtors. The Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved;

c. ***Purchase Price***. Each Bid must: (i) clearly specify the purchase price to be paid for the applicable Assets (the "Purchase Price"); (ii) identify separately any cash and non-cash components of the Purchase Price; and (iii) indicate the allocation of the Purchase Price among the applicable Assets (including liabilities and obligations to be assumed in connection with any Sale Transaction), including an allocation of the Purchase Price to any Assets of the Canadian Debtors or other Assets located in Canada. The Purchase Price should be a single point value in U.S. dollars on a cash-free, debt-free basis. Any Bid

for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all of the Assets or whether the Bid should be viewed as a separate Bid for one or more sets of Assets;

d. ***Sources of Financing***. To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, such Bid must include evidence of committed financing from a reputable financing institution, documented to the satisfaction of the Debtors, that demonstrates that the Acceptable Bidder has received sufficient funding commitments to satisfy the Acceptable Bidder's obligations under the applicable Sale Transaction as well as any other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals and shall have covenants and conditions acceptable to the Debtors. The Debtors will view more positively Acceptable Bidders that have, or have immediate access to, the cash necessary to fund the Purchase Price directly themselves;

e. ***Bid Documents***. Each Bid must include duly executed and non-contingent transaction documents necessary to effectuate any Sale Transaction contemplated in the Bid (the "Bid Documents") and must be submitted by the Bid Deadline. The Bid Documents shall include, at a minimum: (i) a purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (the "Form APA"), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate any Sale Transaction, along with copies that are marked to reflect any amendments and modifications from the Form APA, which amendments and modifications may not be materially more burdensome than the Form APA or otherwise inconsistent with these Bidding Procedures; (ii) a schedule of Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors and assigned to the Acceptable Bidder pursuant to the applicable Bid; (iii) a statement from the Acceptable Bidder specifying what, if any, other materials, conditions, due diligence, documents, exhibits, schedules, and/or ancillary materials are integral to such Bid or the Debtors' consideration thereof; (iv) any other material documents integral to such Bid; and (v) a statement from the Acceptable Bidder that (A) it is prepared to consummate the applicable Sale Transaction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder in such Bid Documents and (B) to the extent such Acceptable Bid is designated as a Qualified Bid pursuant to these Bidding Procedures, such Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "Back-Up Bid")) until the consummation of the applicable Sale Transaction;

f. ***No Qualified Bidder Bid Protections***: Unless such Qualified Bid is selected as a stalking horse bid (a "Stalking Horse Bid"), a Qualified Bid must include a statement that the bid does not entitle such bidder to any break-up fee,

termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

g. ***Employee Obligations***. Each Bid must indicate whether the Acceptable Bidder intends to hire all employees of the Debtors. If the Acceptable Bidder does not intend to hire all employees of the Debtors, the Acceptable Bidder must include a description of the Acceptable Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees who are employed primarily in connection with the applicable Assets, and a description of any contemplated incentive plan, to the extent applicable;

h. ***Contingencies; No Financing or Diligence Outs***. The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects), and all diligence must be completed before the Bid Deadline;

i. ***Identity & Corporate Authority***. Each Bid must: (i) fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners, sponsors, or other co-investors), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the applicable Sale Transaction on the terms contemplated by the parties; and (ii) include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid. A Bid must also fully disclose any business relationships, affiliations, or agreements with the Debtors, any other known, potential, prospective bidder, Acceptable Bidder, or Qualified Bidder, or any officer, director, or equity security holder of the Debtors. Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

j. ***As-Is, Where-Is***. Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the applicable Sale Transaction prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the applicable Assets in making its Bid; (iii) did not rely, is not relying, and will not rely, on or receive from any person or entity (including any of the Debtors or their advisors or other representatives, or any information officer appointed by the Canadian Court in the Canadian Proceedings) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether

express, implied, by operation of law, or otherwise, including regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement; and (iv) agrees that, upon Closing, the Debtors shall sell and transfer to the Successful Bidder, and the Successful Bidder shall accept, the Assets identified in the Successful Bidder's proposed purchase agreement, to the extent expressly provided in the Court's order approving the applicable Sale Transaction with respect to such Assets. Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining or relating to the Assets that the Debtors, any advisor, or any agent representing or purporting to represent the Debtors might have made or furnished, directly or indirectly, orally or in writing, to any person whatsoever unless (with respect to the Debtors only) specifically set forth in the Court's order approving a Sale Transaction with respect to such Assets;

k. ***Adequate Assurance of Future Performance and Information***. Each Bid must: (i) identify the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned in connection with the applicable Sale Transaction; (ii) provide for payment of Cure Payments (as defined in the Bidding Procedures Order) related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder; (iii) be accompanied by financial and other information (the "Adequate Assurance Information") that, in the Debtors' business judgment, is sufficient and adequate to demonstrate that such Acceptable Bidder (A) has the financial wherewithal and ability to consummate the applicable Sale Transaction, and (B) can satisfy the adequate assurance requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code; and (iv) identify a contact person that parties may contact to obtain additional Adequate Assurance Information;

l. ***Privacy Policies***. The Acceptable Bidder must comply in all respects with the Debtors' consumer privacy practices, which do not restrict the transfer of the personally identifiable information of its customers, and, with respect to the personal information of individuals in Canada, with applicable Canadian federal and provincial privacy legislation, and each Bid must contain a statement acknowledging such compliance;

m. ***No Collusion***. The Acceptable Bidder must acknowledge in writing: (i) that it has not engaged in any collusion with respect to any Bids or the applicable Sale Transaction, including specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (ii) that it agrees not to engage in any collusion with respect to any Bids, the Auction, or the applicable Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (with e-mail from the Debtors' advisors being sufficient);

n. ***Joint Bids***. The Debtors will be authorized to approve joint Bids in their reasonable business judgment on a case-by-case basis, so long as a joint bid meets the Qualified Bid requirements and the applicable bidders otherwise comply with these Bidding Procedures;

o. ***Acknowledgement of Compliance with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, and Non-Bankruptcy Law***. Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, the CCAA and any orders of the Canadian Court in the Canadian Proceedings (if applicable), and any applicable non-bankruptcy law;

p. ***Good Faith Offer***. Each Bid must constitute a good faith, *bona fide* offer to consummate any Sale Transaction;

q. ***Back-Up Bid***. Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder if the Acceptable Bidder's Bid is, in the Debtors' business judgment, the next highest or otherwise best bid for some or all of the Assets after the Successful Bid and that, in the event such Bid is chosen as the Back-Up Bid, it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

r. ***Regulatory Approvals and Covenants***. Each Bid must set forth each regulatory and third-party approval, if any, required for the Acceptable Bidder to consummate the applicable Sale Transaction and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the applicable purchase agreement and/or confirmation of the Debtors' chapter 11 plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible), and any further information necessary for, or related to the likelihood of, obtaining such approvals;

s. ***Expected Closing Date***. Each Bid must state the Acceptable Bidder's expected date of closing of the applicable Sale Transaction (the "Closing"). A Bid by an Acceptable Bidder must be reasonably likely, in the Debtors' business judgment, to be consummated within a time frame acceptable to the Debtors;

t. ***No Fees***. Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Sale Transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive any payments or amounts analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation; *provided* that the Debtors are authorized to provide the Stalking Horse Bid Protections (as defined below) to one or more Stalking Horse Bidders (as defined below) in accordance with these Bidding Procedures.

u. ***Adherence to Bidding Procedures***. By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after the conclusion of the Auction;

v. ***Consent to Jurisdiction***. Any Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale Transaction(s), and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable, and must also submit to the jurisdiction of the Canadian Court with respect to any matter relating to the Assets of the Canadian Debtors or other Assets located in Canada or any Canadian Sale Order;

w. ***Conditions to Closing***. Each Bid must identify with particularity any conditions to Closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required; and

x. ***Transition Services***. Each Bid must describe the types of transition services, if any, the Acceptable Bidder would require of and/or provide to the Debtors or any of the Debtors' non-Debtor affiliates, including an estimate of the time any such transition services would be required of and/or provided to the Debtors or any of the Debtors' non-Debtor affiliates, and that the Acceptable Bidder will be responsible for the actual costs of providing any such services.

Only Bids fulfilling all of the preceding requirements contained in this Section IV, or otherwise in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, may be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids, as determined in the Debtors' reasonable business judgment in consultation with the Consultation Parties, may be deemed to be "Qualified Bidders."

None of the Debtors, any information officer appointed by the Canadian Court in the Canadian Proceedings or any of their respective advisors or representatives are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Assets and any liabilities and obligations to be assumed in connection with any Sale Transaction, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of any Sale Transaction with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets. All Acceptable Bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Assets, except to the extent expressly provided in the Court's Sale Order and the Canadian Court's Sale Order, if applicable. None of the Debtors, any information officer appointed by the Canadian Court in the Canadian Proceedings or any of their respective advisors or representatives will be liable for or bound by any express or implied warranties, guaranties,

statements, representations, or information pertaining or relating to the Assets that the Debtors, any advisor, or any agent representing or purporting to represent the Debtors might have made or furnished, directly or indirectly, orally or in writing, to any person whatsoever unless (with respect to the Debtors only) specifically set forth in the Court's Sale Order and the Canadian Sale Order (as defined below), if applicable.

There shall be no communications between or among Potential Bidders and/or Acceptable Bidders unless the Debtors' advisors have authorized such communication in writing (with e-mail from the Debtors' advisors being sufficient). The Debtors reserve the right, in their business judgment, in consultation with the Consultation Parties, to disqualify any Potential Bidders or Acceptable Bidders that have made communications between or among themselves without the prior authorization of the Debtors. For the avoidance of doubt, the joining of Bids between Potential Bidders or Acceptable Bidders may be permitted by the Debtors in their business judgment, in consultation with the Consultation Parties.

In advance of the Auction, as is reasonably practicable, the Debtors shall determine which Acceptable Bidders are Qualified Bidders, in consultation with the Consultation Parties, and will notify the Acceptable Bidders whether their Bids constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction. The Debtors shall not consider any Bid that they deem is not a Qualified Bid; *provided* that, if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors, in consultation with the Consultation Parties, may provide (but shall not be obligated to provide) the applicable Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction. The Debtors shall have the right, in their business judgment, to deem a Bid a Qualified Bid even if such Bid does not conform to one or more of the requirements above.

## V. The Right to Credit Bid.

Notwithstanding anything set forth in these Bidding Procedures, any Qualified Bidder who has a valid, perfected, and unavoidable lien on any Assets of the Debtors' estates (each, a "Secured Creditor") shall have the right, subject to any intercreditor subordination agreement enforceable under section 510(a) of the Bankruptcy Code, to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured (each, a "Credit Bid").

Any Credit Bid made by a Secured Creditor or their respective assignees, as applicable, will be deemed to be a cash Bid solely for purposes of evaluating Bids (including evaluating Qualified Bids and subsequent Bids). Any Secured Creditor who submits a Credit Bid that satisfies the requirements of these Bidding Procedures before the Bid Deadline shall be deemed to be an Acceptable Bidder, shall be deemed to have submitted a Qualified Bid, and may participate in any Auction with respect to any Assets constituting collateral of such Secured Creditor. For the avoidance of doubt, the Prepetition Agents and any agent under a postpetition financing facility may, to the extent permitted by their applicable loan documents and subject to the terms of the Intercreditor Agreement (as defined in the First Day Declaration), Credit Bid all or any portion of the outstanding Prepetition Obligations, and any obligations under such postpetition financing facility, as applicable. Any Credit Bid shall be a Qualified Bid without the need to provide any Deposit, and the Prepetition Agents and any agent under a postpetition financing facility shall each

be a Qualified Bidder in connection with any such Credit Bid and shall not be required to satisfy the requirements of Section IV of these Bidding Procedures with respect to minimum bidding amounts, Good Faith Deposits, financing, or Adequate Assurance Information or any Back-up Bidder requirements. Notwithstanding the foregoing, any Credit Bid in respect of Assets of the Canadian Debtors or other property in Canada shall provide for the payment in cash on closing of all amounts secured by any charges granted by the Canadian Court in the Canadian Proceedings, and any other liens, charges, or encumbrances on such Assets, that rank in priority to the liens of the applicable Secured Creditor, unless otherwise agreed by the holders thereof.

## VI. Obtaining Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors; *provided* that such access may be terminated by the Debtors in their reasonable discretion, including if: (a) an Acceptable Bidder does not become a Qualified Bidder; (b) the Debtors determine any bidder is no longer an Acceptable Bidder; or (c) these Bidding Procedures are terminated. ***No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***. Beginning on the date the Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request.

Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline, and after the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction. For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, or otherwise presents a *bona fide* competitive or strategic concern, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

### A. Communications with Acceptable Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Acceptable Bidders (including any Qualified Bidders) shall be through the Debtors' proposed investment banker, Cascadia Capital, LLC ("Cascadia").

**The Debtors have designated Lorie Beers and Carl Comstock of Cascadia to coordinate all reasonable requests for additional information and due diligence access. They may be reached at lbeers@cascadiacapital.com and ccomstock@cascadiacapital.com.**

### B. Due Diligence from Acceptable Bidders (including Qualified Bidders).

Each Acceptable Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors, in consultation with the Consultation Parties, regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated Sale Transaction. Failure by an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder, if any) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that such bidder is no longer an Acceptable Bidder or that a Bid made by such bidder is not a Qualified Bid.

## VII. The Bid Deadline.

Binding Bids must be submitted in writing to the following parties (the "Notice Parties") so as to be ***actually received*** no later than 5:00 p.m. (prevailing Eastern Time) on December 9, 2026 (the "Bid Deadline"): proposed co-counsel to the Debtors: (A) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn.: Gregory F. Pesce (gregory.pesce@whitecase.com); Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparracriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com), and (B) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Seth Van Aalten, Esq. (svanaalten@coleschotz.com), Justin R. Alberto, Esq. (jalberto@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com); and Cascadia, 477 Madison Avenue, Floor 18, New York, New York 10022, Attn: Lorie Beers (lbeers@cascadiacapital.com) and Carl Comstock (ccomstock@cascadiacapital.com).

The Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline for any reason whatsoever in their business judgment for all or certain Acceptable Bidders.

## VIII. Evaluation of Qualified Bids.

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid, or combination of Qualified Bids that are, in the Debtors' business judgment, in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid or combination of Qualified Bids for the Assets, as applicable (the "Starting Bid").

When determining the highest or otherwise best Qualified Bid or combination of Qualified Bids, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration, which may include, but is not limited to, assumed liabilities; (b) the number, type, and nature of any changes to the Form APA requested by each bidder in connection with each proposed asset purchase agreement, including the Assets to be acquired; (c) the likelihood of

the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (e) the Debtors' regulatory requirements; (f) the tax consequences of such Qualified Bid; (g) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code (and the CCAA, if applicable); (h) the certainty of a Qualified Bid leading to a confirmed chapter 11 Plan, and (i) any other consideration that may impact the Debtors or their stakeholders. Prior to commencing the Auction, the Debtors shall notify the Stalking Horse Bidder, if any, and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable Assets. At such time, the Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder, if any, and each Qualified Bidder.

## IX. The Stalking Horse Bid Protections.

Pursuant to the Bidding Procedures Order, the Debtors may designate, in consultation with the Consultation Parties, one or more Bidders to be a stalking horse bidder (each a "Stalking Horse Bidder"), which are entitled to certain bid protections in the amounts set forth in, and in accordance with the terms of the Bidding Procedures Order, consisting of (a) a break-up fee (the "Break-Up Fee") not to exceed three percent (3%) of the aggregate amount of the Purchase Price and/or (b) reimbursement of reasonable and documented out of pocket fees and expenses (the "Expense Reimbursement" and together with the Break-Up Fee, the "Stalking Horse Bid Protections"). For the avoidance of doubt, except for the Stalking Horse Bidder, and as otherwise set forth herein, no other party submitting an offer, a Bid, or a Qualified Bid shall be entitled to any Expense Reimbursement, Break-Up Fee, termination fee, or similar fee or payment.

In the event that the Debtors receive multiple Qualified Bids, at any time until November 17, 2026, at 5:00 p.m. (prevailing Eastern Time), the Debtors shall be authorized, but not obligated, in their reasonable business judgment, in consultation with the Consultation Parties, to (a) select one or more Acceptable Bidders to act as the Stalking Horse Bidder in connection with the Auction, and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (a "Stalking Horse APA") agree to provide the Stalking Horse Bid Protections, consisting of (A) a Break-Up Fee not to exceed three percent (3%) of the Purchase Price and (B) reimbursement of the reasonable and documented out of pocket fees and expenses of such Stalking Horse Bidder(s).

In the event that the Debtors enter into a Stalking Horse APA with one or more Stalking Horse Bidders, within two (2) business days of entry, the Debtors shall file a notice and proposed form of order with the Court designating a Stalking Horse Bidder and authorizing entry into a Stalking Horse APA (the "Stalking Horse Notice") and serve the Stalking Horse Notice on the Stalking Horse Bidder and the U.S. Trustee. The Stalking Horse Notice shall: (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Bid submitted by the Stalking Horse Bidder and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Bid submitted by the Stalking Horse Bidder; (d) specify any proposed Stalking Horse Bid Protections (including the amount and calculation thereof); (e) specify which Assets the Bid submitted by the Stalking Horse Bidder includes; (f) attach the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (g) set forth the deadline to object to the Stalking Horse

Bidder designation and any Stalking Horse Bid Protections. If there are no objections to the Stalking Horse Notice within three (3) business days of filing with the Court (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA, without the need for further hearing. If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

Upon entry of an order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA (the "Stalking Horse Order"), the Debtors, in consultation with the Consultation Parties, are authorized, but not directed, to incur and pay (a) the Break-Up Fee in an amount not to exceed three percent (3%) of the proposed Purchase Price and (b) the Expense Reimbursement to each Stalking Horse Bidder in accordance with the terms of such Stalking Horse Order and Stalking Horse APA.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder, shall be entitled to any Expense Reimbursement, Break-Up Fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for Expense Reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

**X. No Qualified Bids.**

If no Qualified Bids other than a Bid submitted by a Stalking Horse Bidder, if any, are received for the Assets included in such Stalking Horse Bid by the applicable Bid Deadline, then the Debtors, in consultation with the Consultation Parties, may cancel the Auction with respect to such Assets. If any Stalking Horse Bid is the only Qualified Bid received by the applicable Bid Deadline, the Debtors may decide, in their business judgment, in consultation with the Consultation Parties, to designate such Stalking Horse Bid as the Successful Bid as to the applicable Assets and pursue entry of an order approving a Sale Transaction with respect to such Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA. The Debtors shall, as soon as reasonably practicable, file notice of any cancellation of the Auction and/or designation of the Stalking Horse Bid, where applicable, as the Successful Bid with the Court.

**XI. The Auction.**

Except as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Assets or portion of Assets by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder (or Back-Up Bidder, as applicable) in their reasonable business judgment with respect to such Assets or portion of Assets in accordance with the Auction Procedures.

The Auction, if necessary, shall commence on December 11, 2026 at 10:00 a.m. (prevailing Eastern Time), or such later time or other place as the Debtors determine. The Auction shall be held at the offices of White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

The Auction, if necessary, will be conducted in accordance with the following procedures (the "Auction Procedures"):

a. except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction;

b. the Qualified Bidders, including the Stalking Horse Bidder, if any, must appear in person or through duly authorized representatives at the Auction; *provided* that Qualified Bidders may appear through a duly authorized representative bearing a valid and enforceable power of attorney or other written proof evidencing their ability to bind the applicable Qualified Bidder, which document(s) shall be delivered to the Debtors and their advisors prior to the commencement of the Auction;

c. only the Debtors, the Qualified Bidders, the Consultation Parties, the U.S. Trustee, if applicable, and any information officer appointed by the Canadian Court in the Canadian Proceedings, in each case, along with their representatives and advisors may attend the Auction in person; all other parties in interest and landlords whose counsel have filed a notice of appearance in these chapter 11 cases may attend the Auction remotely upon affirmatively contacting the Notice Parties no later than two (2) days prior to the Auction;

d. the Debtors, with the assistance of their advisors, shall direct and preside over any Auction;

e. at the commencement of the Auction, the Debtors may announce modified or additional procedures for conducting the Auction and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s), or otherwise modify these Bidding Procedures;

f. bidding shall begin with the Starting Bid;

g. subsequent bids (each, an "Overbid") may only be made at the Auction and shall be at least (i) a $250,000 increase in cash, cash equivalents, or other such consideration that the Debtors, in their reasonable business judgment, deem equivalent over the previous bid *plus* (ii) in the event that the Debtors have entered into a Stalking Horse APA to which the Overbid relates, the aggregate amount of Stalking Horse Bid Protections (including, for the avoidance of doubt, any Break-Up Fees and/or Expense Reimbursements) under such Stalking Horse APA (a "Minimum Overbid"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid. The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, announce increases or reductions to the Minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their reasonable business judgment

deem equivalent that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid; *provided*, that a Credit Bid may be increased at the Auction on a dollar for dollar basis by additional Credit Bid amounts, and no credit bidder shall be required to include cash consideration in any overbid except as required by section 363(k) of the Bankruptcy Code or any order of the court, each of which rights are expressly reserved;

h. each Qualified Bidder will be permitted a reasonable time, as determined by the Debtors, to respond to previous bids at the Auction; *provided* that, unless the Debtors determine otherwise, a failure to respond and submit successive bid(s) at the Auction may result in disqualification from participating in the Auction;

i. during the course of the Auction, the Debtors shall, after the submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view, the highest or otherwise best bid(s) with respect to the Assets;

j. the Debtors may require each Qualified Bidder to submit an Overbid with respect to each round of bidding in order to remain eligible to participate in the Auction, and, to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, the Debtors may disqualify such Qualified Bidder from continuing to participate in the Auction;

k. the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

l. each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction. For the avoidance of doubt, this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent (with e-mail from the Debtors' advisors being sufficient);

m. each Qualified Bidder will be required to confirm on the record that its Bid is a good faith, *bona fide* offer and that it intends to consummate the applicable Sale Transaction if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction);

n. subject to each Debtor's fiduciary obligations, including as set forth herein, the Court and the Debtors will not consider Bids made after the Auction has concluded;

o. the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, the CCAA or any orders of the Canadian Court in the Canadian Proceedings (if applicable), or the terms and

conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Debtors, their estates, and/or their stakeholders;

p. the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the Sale Transaction contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

q. the Debtors, in consultation with the Consultation Parties, may choose to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Debtors and Qualified Bidders; (ii) allow Qualified Bidders the opportunity to consider how they wish to proceed; and (iii) allow Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale Transaction at the prevailing amount, or to clarify any Bid; and

r. the Debtors reserve the right to further amend, waive, or otherwise modify the Auction Procedures at any time, in consultation with the Consultation Parties.

For the avoidance of doubt, nothing in these Bidding Procedures, including the Auction Procedures, will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as determined by the Debtors in consultation with counsel).

**XII. Acceptance of the Successful Bid.**

The Auction shall continue until: (a) there is only one Qualified Bid or a combination of Qualified Bids with respect to all or any portion of the Assets that the Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, and in consultation with the Consultation Parties, is the highest or otherwise best Bid to purchase the applicable Assets (each, a "Successful Bid"); and (b) the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, the Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration, which may include, but is not limited to, assumed liabilities; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (d) the Debtors' regulatory requirements; (e) the tax consequences of such Qualified Bid; (f) whether the Qualified Bid contemplates a Sale Transaction that would be

consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code (and the CCAA, if applicable); (g) the certainty of a Qualified Bid leading to a confirmed chapter 11 Plan, and (h) any other consideration that may impact the Debtors or their stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the Assets contemplated for purchase pursuant to such Successful Bid. The Debtors shall file notice of the Successful Bid and the Successful Bidder with the Court as soon as reasonably practicable, but in no event later than three (3) business days after conclusion of the Auction (or if no Auction is held, the Bid Deadline). Following conclusion of the Auction and selection of one or more Successful Bidders, the Debtors shall present the results of the Auction at a hearing with the Court and shall seek the Sale Order, among other things, (a) making certain findings from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors' estates, and (b) authorizing the applicable Debtors to enter into one or more binding purchase agreements with the Successful Bidder or Successful Bidders on the terms of the Successful Bid or Successful Bids; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that the Debtors determined, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law. If applicable, the Foreign Representative shall seek an Order of the Canadian Court (the "Canadian Sale Order") pursuant to section 49 of the CCAA, among other things, (x) recognizing and enforcing the Sale Order in Canada, and (y) if necessary, approving the sale of the Assets of the Canadian Debtors or Assets otherwise located in Canada to the applicable Successful Bidder or Successful Bidders in accordance with the applicable binding purchase agreement or binding purchase agreements.

Within one business day of the selection of the Successful Bidder, such Successful Bidder (including both the Stalking Horse Bidder, if any, and Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price such that the Successful Bidder's total cash deposit is equal to ten percent (10%) of the aggregate purchase price contemplated in the Successful Bid, which amount shall be submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement. Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII. The Designation of a Back-Up Bidder.

The party that submits the Back-Up Bid, if any, to purchase any applicable Assets (the "Back-Up Bidder") will be determined by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. The Debtors' selection of a Back-Up Bid shall be deemed final, and the Debtors shall not accept any further bids or offers to submit a bid after such selection.

Subject to the assumption and assignment procedures set forth below, the Debtors will be authorized, but not required, to consummate the Sale Transaction with the Back-Up Bidder without further order of the Court (or the Canadian Court, if applicable), so long as such Back-Up Bid shall have been approved in connection with the Court's (and Canadian Court's, if applicable) approval of the Successful Bid, or, if not, subject to Court (and Canadian Court, if applicable) approval.

If, for any reason, a Successful Bidder fails to consummate the purchase of the applicable Assets within the time permitted, then the Back-Up Bidder will, unless otherwise determined by the Debtors in their business judgment, automatically be deemed to have submitted the Successful Bid, and the Back-Up Bidder shall be deemed a Successful Bidder and shall be required to consummate any Sale Transaction with the Debtors as soon as is reasonably practicable subject to the assumption and assignment procedures set forth below, without further order of the Court (or Canadian Court, if applicable) approving the Sale Transaction. To the extent any objections to such sale are raised and remain unresolved, the Court (and Canadian Court, if applicable) may schedule a hearing on an expedited basis to adjudicate such objections.

Notwithstanding anything to the contrary herein, to the extent a Back-Up Bid contemplates the assumption and assignment of any Executory Contracts or Unexpired Leases, the Debtors shall, on December 11, 2026, file and serve on the affected Contract or Lease Counterparties, including landlords, and their counsel of record, if known, notice of the proposed assumption and assignment to the Back-Up Bidder, identifying the Back-Up Bidder, the applicable Executory Contracts and Unexpired Leases and the proposed Cure Payments, together with the Back-Up Bidder's Adequate Assurance Information. The notice shall state that all objections to the proposed assumption and assignment to the Back-Up Bidder, including objections to Cure Payments and adequate assurance of future performance, must be filed and served in accordance with paragraph 20.d of the Bidding Procedures Order by the Assumption Objection Deadline of December 21, 2026, at 5:00 p.m., prevailing Eastern Time. Any subsequent addition of an Executory Contract or Unexpired Lease or change to the proposed assignment or Cure Payment shall be subject to a Supplemental Assumption Notice and the applicable objection deadline under paragraph 20.d of the Bidding Procedures Order. If the Debtors proceed with the Back-Up Bid and no objection is timely filed and served, the Debtors may submit a proposed order approving the applicable assumption and assignment under a certificate of no objection, without further hearing. Any timely filed objection that remains unresolved shall be heard at the Assumption Hearing on December 29, 2026, at a time to be announced, subject to Court availability, or, where the applicable supplemental objection deadline has not expired, on such later date as the Court may fix upon notice to the affected Contract or Lease Counterparty and its counsel of record, if known. No Executory Contract or Unexpired Lease subject to a timely filed objection shall be assumed and assigned to the Back-Up Bidder unless and until such objection is resolved by agreement or by the Court and an order approving such assumption and assignment is entered.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (a) ninety days following the hearing to consider the applicable order approving the Sale Transaction(s) (the "Sale Order"), (b) the effective date of a chapter 11 Plan, (c) the consummation of the applicable Successful Bids, and (d) the release of such Back-Up Bid by the Debtors in writing (the "Back-Up Termination Date"). The Debtors shall return the Back-Up Bidder's deposit owed within five business days of the Back-Up Termination Date.

## XIV. Approval of the Sale Transaction(s).

A hearing to consider approval of each Sale Transaction (the "Sale Hearing"), is currently scheduled to take place on December 15, 2026, at a time to be announced, or as soon thereafter as the Debtors may be heard, before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey at 50 Walnut Street, Newark, New Jersey 07102, or conducted consistent with the procedures established pursuant to the Court's standing orders. A hearing to consider approval of each Canadian Sale Order shall be scheduled to the extent a Successful Bid includes Assets of the Canadian Debtors or Assets otherwise located in Canada.

At the Sale Hearing, the Debtors shall present the results of the Auction at a hearing and shall seek the Sale Order, among other things (a) making certain findings from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors' estates, and (b) authorizing the applicable Debtors to enter one or more binding purchase agreements with the Successful Bidder or Successful Bidders on the terms of the Successful Bid or Successful Bids. **The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice to creditors or other parties in interest prior to, or by making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including any Stalking Horse Bidder, if any). The Sale Hearing may be the confirmation hearing with respect to the Debtors' Plan**. If applicable, the Foreign Representative shall seek the Canadian Sale Order, from the Canadian Court in the Canadian Proceedings as soon as reasonably practicable following entry of the applicable Sale Order.

Except for objections to assumption and assignment, Cure Payments, or adequate assurance of future performance governed by paragraph 20.d of the Bidding Procedures Order, objections to the Sale Transaction(s) and the Sale Order must: (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (c) be filed with the Court and served so as to be ***actually received*** by the Debtors by December 14, 2026, at 5:00 p.m., prevailing Eastern Time.

## XV. Return of Good Faith Deposit.

The Good Faith Deposit(s) of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit(s) of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably

forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposits of any unsuccessful Qualified Bidders (except for any Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the applicable Sale Transaction or upon the permanent withdrawal of the applicable proposed Sale Transaction.

The Good Faith Deposit(s) of any Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five business days of the Back-Up Termination Date.

The return of any Good Faith Deposits of any Stalking Horse Bidders will be subject to the terms of the applicable Stalking Horse APA. All such Good Faith Deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court.

**XVI. Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures in good faith to further the goal of attaining the highest or otherwise best offer or impose, at or prior to the Auction (if held), additional terms and conditions on the Sale Transaction(s) in any manner that will best promote the goals of the bidding process including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if held); (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable Minimum Overbid. Notwithstanding anything to the contrary herein, the Debtors may elect to consummate the Sale with the Successful Bidder or Successful Bidders under section 363 of the Bankruptcy Code (and the CCAA, if applicable) as opposed to pursuant to the Plan.

**XVII. Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale Transaction(s), and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties. Further, all Qualified Bidders at the Auction will also be deemed to have attorned to the jurisdiction of the Canadian Court with respect to any matter relating to the Assets of the Canadian Debtors or other property in Canada or any Canadian Sale Order.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

**XVIII. Fiduciary Out.**

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to any Sale Transaction or these Bidding Procedures, to the extent such Debtor, board of directors, board of managers, or such similar governing body determines, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, until the entry of the Sale Order, the Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to: (a) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each, an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

**XIX. Commissions.**

The Debtors shall be under no obligation to pay any commissions, fees, or expenses to any Potential Bidder's agent, advisor, or broker. All commissions, fees, or expenses for any such agents, advisors, or brokers shall be paid by the applicable Potential Bidder at such Potential Bidder's discretion. In no case shall any commissions, fees, or expenses for any Potential Bidder's agent, advisor, or broker be deducted from any proceeds derived from any Sale Transaction including the Assets.

# Exhibit 2

## Auction Notice

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**NOTICE OF SALE BY AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). On [_], 2026, the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of all, substantially all, or any portion of their assets (the "Assets") consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order. Unexpired Leases may not be purchased on a standalone basis pursuant to the Bidding Procedures, whether individually or in a portfolio. Pursuant to the Bidding Procedures, an Unexpired Lease may be acquired only in connection with the same purchaser's acquisition of Assets other than Unexpired Leases in the applicable Sale Transaction. **All interested bidders should carefully read the Bidding Procedures and the Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all binding bids must be actually received pursuant to the Bidding Procedures is **December 9, 2026, at 5:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Assets **on December 11, 2026, at 10:00 a.m. (prevailing Eastern Time)** at the offices of proposed co-counsel to the Debtors: White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Qualified Bidders, the Consultation Parties, the U.S. Trustee, and any information officer appointed by the Canadian Court in the Canadian Proceedings, in each case, along with their representatives and advisors may attend the Auction in person. All other parties in interest and landlords whose counsel have filed a notice of appearance in these chapter 11 cases may attend the Auction remotely upon affirmatively contacting the Notice Parties no later than two (2) days prior to the Auction. Only Qualified Bidders shall be entitled to bid or make Overbids (as defined in the Bidding Procedures) at

---

[2] Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order or Bidding Procedures, respectively.

the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.** Copies of the Bidding Procedures, the Bidding Procedures Order, and any other related documents are available upon request to the Debtors' Claims and Noticing Agent, Omni Agent Solutions, Inc., by calling (866) 205-3149 (U.S. / Canada) or (818) 510-4678 (International) or visiting the Debtors' restructuring website at https://omniagentsolutions.com/TCP.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction(s) at a hearing scheduled to commence on December 15, 2026, at a time to be announced, subject to Court availability, or as soon thereafter as the Debtors may be heard (the "Sale Hearing") before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey at 50 Walnut Street, Newark, New Jersey 07102, or conducted consistent with the procedures established pursuant to the Court's standing orders. A hearing to consider approval of each Canadian Sale Order may be scheduled once the Debtors determine whether a Successful Bid is likely to include Assets of the Canadian Debtors or Assets otherwise located in Canada.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to the consummation or approval of the Sale Transaction(s), other than objections to Cure Payments, the assumption and assignment of Executory Contracts or Unexpired Leases, or adequate assurance of future performance, must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** on or before **December 14, 2026, at 5:00 p.m., prevailing Eastern Ti**me, by the following parties: (i) the Debtors, THE CHILDREN'S PLACE, INC., 500 Plaza Drive, Secaucus, New Jersey 07094, Attn: [ ● ] ([●]); (ii) proposed co-counsel to the Debtors, (A) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn.: Gregory F. Pesce (gregory.pesce@whitecase.com); Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparracriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com), and (B) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Seth Van Aalten, Esq. (svanaalten@coleschotz.com), Justin R. Alberto, Esq. (jalberto@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com).

**PLEASE TAKE FURTHER NOTICE** that the Assumption Notice and the applicable Adequate Assurance Information shall be served on December 11, 2026, on affected Contract or Lease Counterparties, including landlords, and their counsel of record, if known. All objections to assumption and assignment, including objections to Cure Payments and adequate assurance of future performance, must be filed and served in accordance with paragraph 20.d of the Bidding Procedures Order by December 21, 2026, at 5:00 p.m., prevailing Eastern Time, or the applicable deadline set forth in a Supplemental Assumption Notice. Assumption and assignment shall not be approved at the Sale Hearing or in the Sale Order entered in connection therewith. If no objection is timely filed and served, the Debtors may submit a proposed assumption and assignment order under a certificate of no objection, without further hearing. Timely filed objections that remain unresolved shall be heard on December 29, 2026, at a time to be announced, subject to Court availability, or on such later date as provided in paragraph 20.e of the Bidding Procedures Order.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**EXCEPT FOR OBJECTIONS TO ASSUMPTION AND ASSIGNMENT, CURE PAYMENTS, OR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE GOVERNED BY PARAGRAPH 20.d OF THE BIDDING PROCEDURES ORDER, ANY PARTY OR ENTITY THAT FAILS TO TIMELY MAKE AN OBJECTION TO A SALE TRANSACTION, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Dated: [●], 2026

*/s/ Michael D. Sirota*

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (pro hac vice pending)
Justin R. Alberto (pro hac vice pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**Exhibit 3**

**Assumption Notice**

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (pro hac vice pending)
Justin R. Alberto (pro hac vice pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

1 A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. [__]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). On [__], 2026, the Ontario Superior Court of Justice (Commercial List) granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder the Executory Contracts and Unexpired Leases listed on **Exhibit A** to which you are a counterparty, subject to entry of a separate order approving such assumption and assignment in accordance with paragraph 20.e of the Bidding Procedures Order. The Debtors have conducted a review of their books and records and have determined that the Cure Payment under such Executory Contract or Unexpired Lease is as set forth on **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Adequate Assurance Information for the proposed assignee is being served simultaneously with this Assumption Notice on the affected Contract or Lease Counterparties, including landlords, and their counsel of record, if known, subject to the confidentiality provisions of paragraph 22 of the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Payment, object on any ground to the proposed assumption and assignment to the Successful Bidder of your Executory Contract or Unexpired Lease, or dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract, your objection must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments, state the correct Cure Payments alleged to be owed to the objecting Contract or Lease Counterparty, together with any applicable and appropriate documentation in support thereof; and (d) be filed with the Court and served and **actually received no later than December 21, 2026, at 5:00 p.m. (prevailing Eastern Time) (the "Assumption Objection Deadline")** by the Court

[2] Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

and the following parties: (i) proposed co-counsel to the Debtors (A) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn.: Gregory F. Pesce (gregory.pesce@whitecase.com); Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparracriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com), and (B) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn.: Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine (wusatine@coleschotz.com), Seth Van Aalten (svanaalten@coleschotz.com); Justin R. Alberto (jalberto@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com); (ii) counsel to the Successful Bidder, if any; (iii) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele (fran.b.steele@usdoj.gov) and Aiden Murphy (aiden.murphy@usdoj.gov); and (iv) any other party that has filed a notice of appearance in these chapter 11 cases; *provided* that the Debtors may extend the Assumption Objection Deadline by filing and serving notice of such extension in accordance with paragraph 20.d of the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that if no objection to the Cure Payments, the proposed assignment and assumption of any Executory Contract or Unexpired Lease, or adequate assurance of the Successful Bidder's ability to perform is filed by the Assumption Objection Deadline (or the applicable deadline set forth in a Supplemental Assumption Notice), then (i) you will be deemed to have stipulated that the Cure Payments as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Payments are due under the Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of any Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that the assumption and assignment of Executory Contracts and Unexpired Leases shall not be approved at the Sale Hearing or in the Sale Order entered in connection therewith. If no objection is timely filed and served by the Assumption Objection Deadline (or the applicable deadline set forth in a Supplemental Assumption Notice), the Debtors may submit a proposed order approving such assumption and assignment under a certificate of no objection, without further hearing. Any timely filed objection to assumption and assignment, including objections to Cure Payments or adequate assurance of future performance, that remains unresolved shall be heard at the Assumption Hearing on December 29, 2026, at a time to be announced, subject to Court availability, or on such later date as provided in paragraph 20.e of the Bidding Procedures Order. No Executory Contract or Unexpired Lease subject to a timely filed objection shall be assumed and assigned unless and until such objection is resolved by agreement or by the Court and an order approving such assumption and assignment is entered.

**PLEASE TAKE FURTHER NOTICE** that, notwithstanding anything herein, the listing of any Executory Contract or Unexpired Lease on the Assumption Notice or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed or assumed and assigned by the Debtors, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved. Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the

Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

Dated: [●], 2026

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O’Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*/s/ Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (pro hac vice pending)
Justin R. Alberto (pro hac vice pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# **Exhibit A**

## Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases

**Exhibit B**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

| In re: | Chapter 11 |
|---|---|
| THE CHILDREN'S PLACE, INC., *et al.*, | Case No. 26-22682 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

**ORDER (I) APPROVING THE BIDDING PROCEDURES AND STALKING HORSE BID PROTECTIONS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI) AUTHORIZING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through and including ~~twenty~~twenty-two (~~20~~22), is **ORDERED**.

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

Upon the Debtors' motion (the "Motion")[2] for entry of an order (this "Bidding Procedures Order"): (a) authorizing and approving the proposed marketing, auction, and bidding procedures (the "Bidding Procedures") attached hereto as **Exhibit 1**, by which the Debtors will solicit and, if value maximizing, will select the highest or otherwise best offer(s) for the sale or sales of all, substantially all, or any portion of their Assets; (b) approving the Stalking Horse Bid Protections relating to the Stalking Horse Bidder, if any; (c) establishing certain dates and deadlines related thereto and scheduling an Auction, if needed, to determine the highest or otherwise best Bid available; (d) approving the form and manner of notice of the Auction, if any, and any hearing to approve a sale of some, all, or substantially all of the Debtors' assets, as may be necessary; (e) approving procedures for the assumption and assignment of certain Executory Contracts and Unexpired Leases in connection with the Sale Transaction; and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and

2 Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** as set forth herein.

2. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances. The Bidding Procedures are designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties, including with respect to the proposed procedures for providing Stalking Horse Bid Protections as determined by the Debtors in an exercise of their business judgment in accordance with the Bidding Procedures.

3. The Debtors' proposed notice of the Motion and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4. Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

**I. Important Dates and Deadlines.**

5. **The Final Bid Deadline**. December 9, 2026, at 5:00 p.m. prevailing Eastern Time, is the deadline by which all Qualified Bids must be ***actually received*** by the parties specified in the Bidding Procedures.

6. **Stalking Horse Bidders and Stalking Horse Bid Protections**. The Debtors, upon entry of this Order, shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment, to designate one or more Stalking Horse Bidders, in consultation with the Consultation Parties, with respect to the applicable Assets and enter into a stalking horse agreement (the "Stalking Horse APA") by no later than November 17, 2026 at 5:00 p.m. (prevailing Eastern time).

7. In the event that the Debtors enter into a Stalking Horse APA with one or more Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court designating a Stalking Horse Bidder and authorizing entry into a Stalking Horse APA (the "Stalking Horse Notice") and serve the Stalking Horse Notice on the Stalking Horse Bidder and the U.S. Trustee. The Stalking Horse Notice shall: (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of

the Bid submitted by the Stalking Horse Bidder and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Bid submitted by the Stalking Horse Bidder; (d) specify any proposed Stalking Horse Bid Protections (including the amount and calculation thereof); (e) identify the applicable Assets to which the Stalking Horse Bid relates; (f) attach the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (g) set forth the deadline to object to the Stalking Horse Bidder designation and any Stalking Horse Bid Protections. If there are no objections to the Stalking Horse Notice within ~~two~~three (~~2~~3) business days of filing with the Court (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA, without the need for further hearing. If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

8. Upon entry of an order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA (the "Stalking Horse Order"), the Debtors, in consultation with the Consultation Parties, are authorized, but not directed, to incur and pay (a) the Break Up Fee, not to exceed three percent (3%) of the Purchase Price, and (b) the Expense Reimbursement, to one or more Stalking Horse Bidders in accordance with the terms of such Stalking Horse Order and Stalking Horse APA. In accordance with any Stalking Horse

Order and Stalking Horse APA, (a) the Stalking Horse Bidder shall provide copies of all invoices submitted in connection with the Expense Reimbursement to counsel to the U.S. Trustee and counsel to any statutory committee appointed in these chapter 11 cases, who shall have five (5) business days' from receipt to review the invoices for reasonableness; (b) in the event that the U.S. Trustee or any statutory committee files with this Court an objection to any such invoice within five (5) business days' of its receipt thereof, the undisputed portion of such invoice shall be paid without further order of the Court, and the portion of such invoice subject to such objection shall not be paid until resolution of such objection by the parties or this Court; and (c) in the event none of the U.S. Trustee or any statutory committee files with this Court an objection to any invoice within five (5) business days' of its receipt thereof, such invoice shall be paid in the manner and subject to the terms and conditions set forth in the Stalking Horse Order and Stalking Horse APA without further order of the Court and shall not be subject to any further review, challenge or disgorgement.

9. Except for the Stalking Horse Bid Protections provided to the Stalking Horse Bidder, if any, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for break-up fees, expense reimbursement, or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

10. **The Auction**. The date and time of the Auction, if needed, is December 11, 2026, at 10:00 a.m. prevailing Eastern Time, which time may be modified by the Debtors, in consultation with the Consultation Parties, upon written notice with the Court. The Auction will be held at the offices of proposed co-counsel to the Debtors: White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, or such other place as the Debtors determine. Only the Debtors, the Qualified Bidders, the Consultation Parties, the U.S. Trustee, and any information officer appointed by the Canadian Court in the Canadian Proceedings ~~and any other parties as the Debtors, in consultation with the Consultation Parties, may determine in their reasonable discretion, in each case~~, along with their representatives and advisors,~~,~~ shall be ~~entitled to participate in~~permitted to attend the Auction~~, and only~~ in person. Only Qualified Bidders ~~will~~shall be permitted to bid at the Auction and be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction. The Debtors shall send written notice (e-mail being sufficient) of the date, time, and place of any Auction to the Qualified Bidders no later than two (2) business days before such Auction and will post notice of the date, time, and place of such Auction no later than two (2) business days before such Auction on the website of the Debtors' proposed notice, claims, and solicitation agent, Omni Agent Solutions, Inc. (the "Claims and Noticing Agent") at https://omniagentsolutions.com/TCP. The Debtors may suspend or terminate the auction at any time if the Debtors determine, in consultation with the Consultation

Parties, in their reasonable business judgment, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors.

11. **Notice of Successful Bidder**. ~~As soon as reasonably practicable upon~~Within twenty-four (24) hours after the conclusion of the Auction, if any (or, if no Auction is held, the Bid Deadline), the Debtors shall file a Notice of Successful Bidder.

12. **Sale Objection Deadline**. ~~Objections~~Except for objections governed by paragraph 20.d of this Order, objections to the Sale Transaction(s) and the Sale Order must: (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (c) be filed with the Court and served so as to be ***actually received*** by the Debtors by December 14, 2026, at 5:00 p.m., prevailing Eastern Time ("Sale Objection Deadline").

13. **Failure to Object**. If any party fails to timely file with the Court and serve an objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to any Sale Transaction(s), such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of any Sale Transaction(s), including the transfer of the applicable Assets to a Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to the Sale Transaction(s) for the purposes of section 363(f) of the Bankruptcy Code;

*provided*, that failure to object by the Sale Objection Deadline shall not bar any objection to assumption and assignment, Cure Payments, or adequate assurance of future performance timely filed and served under paragraph 20.d of this Order; *provided*, *further*, that nothing in this Bidding Procedures Order or the Bidding Procedures shall (i) constitute, or be deemed to constitute, the consent of the Prepetition Agents or any agent under a postpetition financing facility to a sale of any Assets free and clear of ~~the~~ any liens, or (ii) limit, waive, or impair any right of such parties under sections 363(f) or 363(k) of the Bankruptcy Code, or any order of the court, each of which rights are expressly reserved.

14. **The Sale Hearing**. December 15, 2026, at a time to be announced, subject to Court availability, or as soon thereafter as the Debtors may be heard, is the date and time for the hearing ~~for~~at which the Court ~~to~~will consider approval of the Successful Bid or Successful Bids, if needed (the "Sale Hearing"). The Sale Hearing may be adjourned, in consultation with the Consultation Parties, in the Debtors' business judgment by announcement in open Court or on the Court's calendar without any further notice required.

## II. The Auction, Bidding Procedures, Auction Notice, and Related Relief.

15. The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Bidding

Procedures Order. The Debtors are authorized to take all actions necessary to implement the Bidding Procedures. Notwithstanding anything to the contrary in this Order or the Bidding Procedures, Unexpired Leases may not be purchased on a standalone basis pursuant to the Bidding Procedures, whether individually or in a portfolio. Pursuant to the Bidding Procedures, an Unexpired Lease may be acquired only in connection with the same purchaser's acquisition of Assets other than Unexpired Leases in the applicable Sale Transaction. Subject to the terms of the Bidding Procedures, the Debtors may modify the Bidding Procedures as necessary or appropriate to maximize the value of their estates.

16. Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

17. The Auction Notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, is approved. ~~As soon as reasonably practicable~~Within three (3) business days following the entry of this Bidding Procedures Order, the Debtors will cause the Auction Notice to be served upon (a) the ~~parties that received notice of the Motion. In addition, as soon as practicable~~office of the United States Trustee for the District of New Jersey; (b) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (c) counsel for any statutory committee appointed in these cases; (d) counsel to the Prepetition ABL Agent; (e) counsel to the Prepetition Term

Loan Agent; (f) counsel to any agent under a postpetition financing facility; (g) the U.S. Securities and Exchange Commission; (h) the United States Attorney's Office for the District of New Jersey; (i) the attorneys general in the states where the Debtors conduct their business operations; (j) the Internal Revenue Service; (k) all parties who have expressed a written interest in the Assets; (l) all known holders of liens, encumbrances, and other claims secured by the Assets; (m) each governmental agency that is an interested party with respect to the Sale Transactions; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. Within three (3) business days after entry of the Order, the Debtors shall post the Auction Notice on the website of the Debtors' proposed Claims and Noticing Agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/TCP and shall publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the Debtors, including, if any Assets of the Canadian Debtors or Assets that are located in Canada are implicated by the Auction, the *Globe and Mail* (National Edition) in English and in Le Devoir in French (or such other French-language newspaper as the Debtors may select).

18. Pursuant to Local Rule 6004-2: (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any bad faith or collusion with respect to the bidding or the Sale Transaction, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly ~~and all~~, with in-person attendance limited to the parties ~~in interest will be~~

~~permitted to attend~~specified in paragraph 10 above; and (c) the bidding at the Auction will be documented, recorded, or videotaped.

**III. The Assumption and Assignment Procedures.**

19. The procedures set forth in paragraph 20 below regarding the assumption and assignment of any Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder, if any, pursuant to section 365(f) of the Bankruptcy Code in connection with any Sale Transaction are approved to the extent set forth herein.

20. The Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' Executory Contracts and Unexpired Leases to be assumed and assigned in connection with any Sale Transaction, subject to the payment of any amount necessary to satisfy all defaults and actual pecuniary loss to the counterparty resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the relevant counterparty can assert under an Executory Contract or Unexpired Lease, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to an Executory Contract or Unexpired Lease (the foregoing amounts as stated in the Assumption Notice, the "Cure Payments"):

a. **Notice of Assumption**. ~~As soon as reasonably practicable upon~~On December 11, 2026, after conclusion of any Auction (or, if no Auction is held, the Bid Deadline), the Debtors shall file on the docket and serve a notice of contracts proposed to be assumed and assigned to any Successful Bidder, in substantially the form attached hereto as **Exhibit 3** (the "Assumption Notice"), via first-class mail on the Contract or Lease Counterparties and their counsel of record, if known. The Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Executory Contract or Unexpired Lease, (ii) the name of the Contract or Lease Counterparty, (iii) the Debtors' good faith estimates of the Cure Payments, if any, required in connection with the Executory Contract or Unexpired Lease, ~~and~~ (iv) the ~~Sale~~identity of the proposed assignee, and (v) the Assumption Objection Deadline (as defined below); *provided*, however, that service of an Assumption Notice shall not constitute an admission that any Executory ~~Contracts and~~Contract or Unexpired ~~Leases~~Lease listed thereon is an executory contract or unexpired lease that such stated Cure Payment constitutes a claim against the Debtors or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. Further, the inclusion of a contract on the Assumption Notice is not a guarantee that such contract will ultimately be assumed and assigned.

b. **Cure Payments**. The payment of the applicable Cure Payments by the Debtors and/or the Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate the applicable Contract or Lease Counterparties for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the Executory Contract or Unexpired Lease by the Debtors and the assignment of such Executory Contract or Unexpired Lease to the Successful Bidder, constitute adequate assurance of future performance thereof.

c. **Supplemental Assumption Notice**. To the extent the Debtors, at any time after the Auction (or, if no Auction is held, the Bid Deadline) (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (ii) remove any Executory Contracts or Unexpired Leases from the list attached to the Assumption Notice, and/or (iii) modify the previously stated Cure

Payment associated with any Executory Contract or Unexpired Lease, the Debtors will file with this Court and serve in accordance with the noticing procedures approved for the Assumption Notice attached hereto as **Exhibit 3**, a supplemental notice of contract or lease assumption (a "Supplemental Assumption Notice") on each of the Contract or Lease Counterparties affected by the Supplemental Assumption Notice as soon as is reasonably practicable. Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts or Unexpired Leases as was included in the Assumption Notice. Except as otherwise provided in any purchase agreement, the Debtors (in consultation with the Successful Bidder) may add or remove Executory Contracts and Unexpired Leases from the list of Executory Contracts and Unexpired Leases to be assumed in connection with the Sale Transaction(s) at any time up to and including two (2) business days prior to Closing.

d. **Objections**. ~~Objections~~All objections, if any, to the proposed assumption and assignment ~~or~~of any Executory Contract or Unexpired Lease, including objections to the Cure Payment proposed with respect thereto and to adequate assurance of future performance by the proposed assignee, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (a) proposed counsel to the Debtors, (b) counsel to the Successful Bidder, if any, (c) the Office of the United States Trustee for the District of New Jersey, and (d) any other party that has filed a notice of appearance in these chapter 11 cases, so as to be ***actually received*** **no later than December ~~14~~21, 2026, at 5:00 p.m., prevailing Eastern Time, (the "Assumption Objection Deadline"), or the deadline set forth in a Supplemental Assumption Notice, as applicable**~~. The Debtors may modify~~**, which shall be no earlier than the Assumption Objection Deadline and no less than ten (10) days after service of such Supplemental Assumption Notice and the applicable Adequate Assurance Information**. The Assumption Objection Deadline shall apply to all objections to assumption and assignment, including objections to Cure Payments and adequate

assurance of future performance, notwithstanding the Sale Objection Deadline~~ and~~. The Debtors may extend the Assumption Objection Deadline or the deadline set forth in a Supplemental Assumption Notice by filing and serving a notice of such ~~modification with the Court~~extension on the affected Contract or Lease Counterparties and their counsel of record, if known.

~~e. **Dispute Resolution**. In the event that the Debtors and a Contract or Lease Counterparty cannot resolve an objection to a Cure Payment, the Executory Contract or Unexpired Lease at issue may be assumed by the Debtors and assigned to the Successful Bidder; *provided* that the Debtors shall segregate the Cure Payment that the Contract or Lease Counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties. If an objection to the proposed assumption and assignment of a contract or related Cure Payment proposed in connection with any Sale Transaction remains unresolved as of the Sale Hearing, the Debtors shall seek a hearing before this Court to determine such Cure Payments, if any, and approve the assumption of the applicable Executory Contracts or Unexpired Leases.~~

e. **Dispute Resolution**. The assumption and assignment of Executory Contracts and Unexpired Leases shall not be approved at the Sale Hearing or in the Sale Order entered in connection therewith. If no objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease, including the applicable Cure Payment and adequate assurance of future performance, is timely filed and served by the Assumption Objection Deadline or the applicable deadline set forth in a Supplemental Assumption Notice, the Debtors may submit a proposed order approving such assumption and assignment under a certificate of no objection, without further hearing. Any timely filed objection that remains unresolved shall be heard by this Court on December 29, 2026, at a time to be announced, subject to Court availability (the "Assumption Hearing"), or, for a Supplemental Assumption Notice with an objection deadline that has not expired before such hearing, on such later date as the Court may fix upon notice to the affected Contract or Lease Counterparty and its counsel of record, if known. No Executory Contract or Unexpired Lease subject to a timely filed objection shall be assumed and assigned unless

and until such objection is resolved by agreement or by the Court and an order approving such assumption and assignment is entered.

f **Contract or Lease Assumption**. No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date the Sale Transaction has closed.

21. Any party failing to timely file an objection to the Cure Payments or the proposed assumption and assignment of an Executory Contract or Unexpired Lease listed on the Assumption Notice or a Supplemental Assumption Notice is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Executory Contract or Unexpired Lease, (c) the related relief requested in the Motion, (d) adequate assurance of future performance, and (e) the applicable Sale Transaction. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the applicable Executory Contract or Unexpired Lease, adequate assurance of future performance, the relief requested in the Motion, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to the applicable Executory Contract or Unexpired Lease.

22. The Debtors shall, ~~at the request of~~simultaneously with service of the Assumption Notice or any Supplemental Assumption Notice, serve the Adequate Assurance Information for

the proposed assignee on the applicable Executory Contract or Unexpired Lease ~~counterparty, provide evidence to such Executory Contract or Unexpired Lease counterparty that~~counterparties, including landlords, and their counsel of record, if known, without the need for a request, demonstrating the proposed ~~assignee has the~~assignee's ability to comply with the requirements of adequate assurance of future performance; *provided* that any such evidence that constitutes nonpublic information shall be provided on a confidential basis. All Bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to ~~counsel for~~ the applicable Executory Contract or Unexpired Lease counterparties, including landlords, and their counsel of record, if known, via e-mail with such information to be used only for the purpose of assessing the applicable Bidder.

23. Adequate assurance of future performance may include, among other things, audited and unaudited financial statements, tax returns, bank account statements, and a description of the business to be conducted at the premises, the specific name of the proposed assignee/tenant, if not the prospective purchaser, and the proposed name under which the assignee intends to operate; the potential assignee's intended use for the space if different from the present operation; cash flow projections for the proposed assignee; all cash flow projections for the lease(s) subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the lease(s); any documents and other evidence of the potential assignee's experience operating; a contact person for the proposed

assignee that landlords may directly contact in connection with the adequate assurance of future performance; and/or such other documentation as the Debtors may reasonably request. To the extent the prospective bidder is a newly formed entity (a "Newco"), written evidence of adequate assurance of future performance may also include when such Newco was formed, how it will be financed, together with evidence of any financial commitments, and identify what credit enhancements, if any, will be available to guarantee the obligations under the leases, and such other documentation as the Debtors may request (the "Adequate Assurance Package"). The Adequate Assurance Package should be submitted in its own compiled PDF document.

24. ~~23.~~ The inclusion of an Executory Contract or Unexpired Lease in the Assumption Notice or a Supplemental Assumption Notice will not obligate any Debtor to assume such Executory Contract or Unexpired Lease listed thereon or a Successful Bidder to take assignment of such assumed Executory Contract or Unexpired Lease. Only those Executory Contracts and Unexpired Leases that are included on a schedule of assumed and assigned contracts attached to the executed definitive asset purchase agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the applicable Successful Bidder. No Executory Contract or Unexpired Lease in the Assumption Notice or a Supplemental Assumption Notice shall be assumed other than in connection with (and concurrently with the effectiveness

of) the assignment of such Executory Contract or Unexpired Lease to the applicable Successful Bidder.

**IV. Miscellaneous.**

25. 24. Nothing in this Bidding Procedures Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including, but not limited to, the Debtors and the Stalking Horse Bidder, if any, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with respect to the Auction, the Bidding Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

26. 25. TheSubject to paragraphs 20.d and 20.e of this Order, the Debtors, in consultation with the Consultation Parties, may modify any of the dates and deadlines set forth herein without further order of the Court; *provided* that the Debtors will serve notice (with e-mail from proposed co-counsel to the Debtors being sufficient) to any Qualified Bidder, as applicable and appropriate, informing them of such modification. The Debtors are further authorized, but not directed, to conduct multiple Sale Transactions and/or Auctions (as necessary) in substantial conformity with the Schedule and Bidding Procedures established through this Bidding Procedures Order.

27. ~~26.~~ The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such provision.

28. ~~27.~~ In the event of any inconsistencies between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

29. ~~28.~~ The Debtors may modify any Good Faith Deposit as necessary or appropriate, based on the Assets being sold in consultation with the Consultation Parties.

30. ~~29.~~ Notwithstanding anything to the contrary herein, nothing contained in the Motion or any actions taken pursuant to this Bidding Procedures Order granting the relief requested by the Motion is intended as or should be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, priority of, or validity of any particular claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a waiver of the obligation of any party in interest to file a proof of claim. Nothing contained in this Bidding Procedures Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim on account of such claim not being paid.

31. ~~30.~~ Notwithstanding the relief granted in this Bidding Procedures Order, any payment made or to be made by the Debtors pursuant to the authority granted herein, and any relief or authorization granted herein, shall be subject to, and in compliance with, any interim or final order (each, a "Financing Order") entered by the Court authorizing the Debtors to obtain postpetition financing and/or use cash collateral, including compliance with any budget (as defined in any Financing Order) in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of any Financing Order. To the extent there is any inconsistency between the terms of any Financing Order and the terms of this Bidding Procedures Order, or any action taken or proposed to be taken hereunder, the terms of any Financing Order and any budget thereunder shall control.

32. ~~31.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules, the Local Rules, and the Complex Case Procedures are satisfied by such notice.

33. ~~32.~~ Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Bidding Procedures Order are immediately effective and enforceable upon its entry.

34. ~~33.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

35. ~~34.~~ The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

36. ~~35.~~ This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Bidding Procedures Order.

**Exhibit 1**

**Bidding Procedures**

*[Different first page setting changed from off in original to on in modified.].*
*[Different first page link-to-previous setting changed from on in original to off in modified.].*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHILDREN'S PLACE, INC., *et al.*, | Case No. 26-22682 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

**BIDDING PROCEDURES FOR THE SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On November 8, 2026, each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"). On November 9, 2026, THE CHILDREN'S PLACE, INC., as proposed foreign representative (if appointed in such capacity, the "Foreign Representative"), commenced ancillary proceedings in Canada (the "Canadian Proceedings") on behalf of the Debtors' estates under Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 the ("CCAA") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court").

The Debtors propose to, through one or more transactions, sell or dispose of all, substantially all, or any portion of their assets to the highest or otherwise best bidder through a competitive bidding process (each, a "Sale Transaction") designed to generate maximum value for the Debtors, their estates, and other parties in interest followed by a court-supervised wind-down of the Debtors' remaining store operations.

On [_], 2026, the Court entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Bidding Procedures Order"),[2] approving, among other things, these

[1] A complete list of each of the debtors, including each debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them later in these Bidding Procedures, in the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Bidding Procedures Motion") filed contemporaneously herewith, or in the Bidding Procedures Order, as applicable.

bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing process and, if necessary, an auction (the "Auction") for a sale of all, substantially all, or any portion of their assets pursuant to one or more Sale Transactions. On [__], 2026, the Canadian Court granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

| |
|---|
| Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to the Debtors' Claims and Noticing Agent, Omni Agent Solutions, Inc. by calling (866) 205-3149 (U.S. / Canada) or 1 (818) 510-4678 (International) or visiting the Debtors' restructuring website at (https://omniagentsolutions.com/TCP). |

## I. The Assets to be Auctioned.

The Debtors seek to sell all, substantially all, or any portion of their assets to the person or entity making the highest or otherwise best Bid through the process outlined in these Bidding Procedures. These assets being marketed in the sale process include substantially all of the Debtors' assets, including, but not limited to, the Debtors' going-concern business, unexpired leases, executory contracts, real property, equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, and books and records, in each case, free and clear of all liens, claims, interests, or other encumbrances (collectively, the "Assets"). Unexpired Leases may not be purchased on a standalone basis pursuant to these Bidding Procedures, whether individually or in a portfolio. Pursuant to these Bidding Procedures, an Unexpired Lease may be acquired only in connection with the same purchaser's acquisition of Assets other than Unexpired Leases in the applicable Sale Transaction.

## II. Public Announcement of the Auction.

~~As soon as reasonably practicable~~Within three (3) business days after entry of the Bidding Procedures Order, the Debtors shall (a) cause (i) a notice of the Auction substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Auction Notice"), (ii) the Bidding Procedures Order, and (iii) these Bidding Procedures to be served on the parties ~~that received notice~~specified in paragraph 17 of the Bidding Procedures ~~Motion~~Order; (b) within three (3) business days after entry of the Bidding Procedures Order, post the Auction Notice on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP; and (c) within three (3) business days after entry of the Bidding Procedures Order, publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the Debtors, including, if any Canadian Assets are implicated by the Auction, the *Globe and Mail* (National Edition) in English and in Le Devoir (or such other French-language newspaper as the Debtors may select). Any information officer appointed by the Canadian Court in the Canadian Proceedings will also post the Auction Notice on its case website.

## III. The Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing

*[Different first page setting changed from off in original to on in modified.].*

some or all of the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors and their advisors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

a. an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

b. identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale Transaction;

c. a statement of the portion of the Assets that the Potential Bidder intends to acquire;

d. sufficient information to demonstrate that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors; and

e. a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid.

The Debtors, in consultation with their advisors, and in consultation with the Consultation Parties,[3] will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a Bid (such Potential Bidder, an "Acceptable Bidder"). For the avoidance of doubt, any party that has already executed a Confidentiality Agreement and submitted a non-binding indication of interest prior to the Petition Date and, in the judgment of the Debtors, and in consultation with the Consultation Parties, has provided adequate forms of the preliminary documentation requested above, shall be deemed to be an Acceptable Bidder and automatically be authorized to conduct due diligence and submit a Bid. An Acceptable Bidder shall not be eligible to participate in the Auction unless such Acceptable Bidder meets the requirements set forth in Section IV below.

## IV. The Qualified Bid Requirements.

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer to purchase some or all of the Assets in the form

[3] "Consultation Parties" means the Prepetition Agents, any agent under a postpetition financing facility, and any statutory committee appointed in these chapter 11 cases; *provided*, *however*, that to the extent any Prepetition Agent or agent under a postpetition financing facility submits any Bid (including a Credit Bid that is either revocable or subject to amendment) for any Assets, such Prepetition Agent or agent under a postpetition financing facility shall not be a Consultation Party.

*[Different first page setting changed from off in original to on in modified.].*

of a document signed by the Acceptable Bidder (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline:

a. ***Purchased Assets and Assumed Liabilities***. Each Bid must clearly state the following: (i) which particular Assets are to be included in the applicable Sale Transaction; (ii) if applicable, the liabilities and obligations to be assumed, including any cure costs to be assumed; and (iii) any executory contracts (the "Executory Contracts") and unexpired leases (the "Unexpired Leases") proposed to be assumed by the Debtors and assigned to the Acceptable Bidder; *provided*, that any Bid proposing to acquire an Unexpired Lease must also provide for the Acceptable Bidder's purchase of Assets other than Unexpired Leases in the applicable Sale Transaction, and no Bid solely for one or more Unexpired Leases shall be accepted;

b. ***Good Faith Deposit***. Each Bid must be accompanied by a cash deposit equal to ten percent (10%) of the applicable Purchase Price, to be held in an escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). The Debtors may modify any Good Faith Deposit as necessary or appropriate, based on the Assets being sold in consultation with the Consultation Parties. To the extent that a Bid is modified to increase its proposed Purchase Price at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit such that it equals ten percent (10%) of the increased aggregate Purchase Price promptly and in no event later than one (1) business day following the conclusion of the Auction. Each Bid shall include a written acknowledgement from the bidder that, in the event of the Acceptable Bidder's breach of, or failure to perform under the applicable purchase agreement, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages to the Debtors and their estates resulting from such breach or failure to perform, and the Debtors shall be entitled to pursue all other available legal and equitable remedies that may be available to the Debtors. The Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved;

c. ***Purchase Price***. Each Bid must: (i) clearly specify the purchase price to be paid for the applicable Assets (the "Purchase Price"); (ii) identify separately any cash and non-cash components of the Purchase Price; and (iii) indicate the allocation of the Purchase Price among the applicable Assets (including liabilities and obligations to be assumed in connection with any Sale Transaction), including an allocation of the Purchase Price to any Assets of the Canadian Debtors or other Assets located in Canada. The Purchase Price should be a single point value in U.S. dollars on a cash-free, debt-free basis. Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all of the Assets or whether the Bid should be viewed as a separate Bid for one or more sets of Assets;

*[Different first page setting changed from off in original to on in modified.].*

d. ***Sources of Financing***. To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, such Bid must include evidence of committed financing from a reputable financing institution, documented to the satisfaction of the Debtors, that demonstrates that the Acceptable Bidder has received sufficient funding commitments to satisfy the Acceptable Bidder's obligations under the applicable Sale Transaction as well as any other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals and shall have covenants and conditions acceptable to the Debtors. The Debtors will view more positively Acceptable Bidders that have, or have immediate access to, the cash necessary to fund the Purchase Price directly themselves;

e. ***Bid Documents***. Each Bid must include duly executed and non-contingent transaction documents necessary to effectuate any Sale Transaction contemplated in the Bid (the "Bid Documents") and must be submitted by the Bid Deadline. The Bid Documents shall include, at a minimum: (i) a purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (the "Form APA"), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate any Sale Transaction, along with copies that are marked to reflect any amendments and modifications from the Form APA, which amendments and modifications may not be materially more burdensome than the Form APA or otherwise inconsistent with these Bidding Procedures; (ii) a schedule of Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors and assigned to the Acceptable Bidder pursuant to the applicable Bid; (iii) a statement from the Acceptable Bidder specifying what, if any, other materials, conditions, due diligence, documents, exhibits, schedules, and/or ancillary materials are integral to such Bid or the Debtors' consideration thereof; (iv) any other material documents integral to such Bid; and (v) a statement from the Acceptable Bidder that (A) it is prepared to consummate the applicable Sale Transaction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder in such Bid Documents and (B) to the extent such Acceptable Bid is designated as a Qualified Bid pursuant to these Bidding Procedures, such Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "Back-Up Bid")) until the consummation of the applicable Sale Transaction;

f. ***No Qualified Bidder Bid Protections***: Unless such Qualified Bid is selected as a stalking horse bid (a "Stalking Horse Bid"), a Qualified Bid must include a statement that the bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

g. ***Employee Obligations***. Each Bid must indicate whether the Acceptable Bidder intends to hire all employees of the Debtors. If the Acceptable Bidder does not intend to hire all employees of the Debtors, the Acceptable Bidder must include a description of the Acceptable Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees who are employed primarily in connection with the applicable Assets, and a description of any contemplated incentive plan, to the extent applicable;

h. ***Contingencies; No Financing or Diligence Outs***. The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects), and all diligence must be completed before the Bid Deadline;

i. ***Identity & Corporate Authority***. Each Bid must: (i) fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners, sponsors, or other co-investors), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the applicable Sale Transaction on the terms contemplated by the parties; and (ii) include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid. A Bid must also fully disclose any business relationships, affiliations, or agreements with the Debtors, any other known, potential, prospective bidder, Acceptable Bidder, or Qualified Bidder, or any officer, director, or equity security holder of the Debtors. Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

j. ***As-Is, Where-Is***. Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the applicable Sale Transaction prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the applicable Assets in making its Bid; (iii) did not rely, is not relying, and will not rely, on or receive from any person or entity (including any of the Debtors or their advisors or other representatives, or any information officer appointed by the Canadian Court in the Canadian Proceedings) any written or oral statements, representations, promises, warranties, or guaranties whatsoever,

whether express, implied, by operation of law, or otherwise, including regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement; and (iv) agrees that, upon Closing, the Debtors shall sell and transfer to the Successful Bidder, and the Successful Bidder shall accept, the Assets identified in the Successful Bidder's proposed purchase agreement, to the extent expressly provided in the Court's order approving the applicable Sale Transaction with respect to such Assets. Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining or relating to the Assets that the Debtors, any advisor, or any agent representing or purporting to represent the Debtors might have made or furnished, directly or indirectly, orally or in writing, to any person whatsoever unless (with respect to the Debtors only) specifically set forth in the Court's order approving a Sale Transaction with respect to such Assets;

k. ***Adequate Assurance of Future Performance and Information***. Each Bid must: (i) identify the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned in connection with the applicable Sale Transaction; (ii) provide for payment of Cure Payments (as defined in the Bidding Procedures Order) related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder; (iii) be accompanied by financial and other information (the "Adequate Assurance Information") that, in the Debtors' business judgment, is sufficient and adequate to demonstrate that such Acceptable Bidder (A) has the financial wherewithal and ability to consummate the applicable Sale Transaction, and (B) can satisfy the adequate assurance requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code; and (iv) identify a contact person that parties may contact to obtain additional Adequate Assurance Information;

l. ***Privacy Policies***. The Acceptable Bidder must comply in all respects with the Debtors' consumer privacy practices, which do not restrict the transfer of the personally identifiable information of its customers, and, with respect to the personal information of individuals in Canada, with applicable Canadian federal and provincial privacy legislation, and each Bid must contain a statement acknowledging such compliance;

m. ***No Collusion***. The Acceptable Bidder must acknowledge in writing: (i) that it has not engaged in any collusion with respect to any Bids or the applicable Sale Transaction, including specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (ii) ~~agree~~that it agrees not to engage in any collusion with respect to any Bids, the Auction, or the applicable Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (with e-mail from the Debtors' advisors being sufficient);

n. ***Joint Bids***. The Debtors will be authorized to approve joint Bids in their reasonable business judgment on a case-by-case basis, so long as a joint bid meets the Qualified Bid requirements and the applicable bidders otherwise comply with these Bidding Procedures;

o. ***Acknowledgement of Compliance with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, and Non-Bankruptcy Law***. Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, the CCAA and any orders of the Canadian Court in the Canadian Proceedings (if applicable), and any applicable non-bankruptcy law;

p. ***Good Faith Offer***. Each Bid must constitute a good faith, *bona fide* offer to consummate any Sale Transaction;

q. ***Back-Up Bid***. Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder if the Acceptable Bidder's Bid is, in the Debtors' business judgment, the next highest or otherwise best bid for some or all of the Assets after the Successful Bid and that, in the event such Bid is chosen as the Back-Up Bid, it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

r. ***Regulatory Approvals and Covenants***. Each Bid must set forth each regulatory and third-party approval, if any, required for the Acceptable Bidder to consummate the applicable Sale Transaction and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the applicable purchase agreement and/or confirmation of the Debtors' chapter 11 plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible), and any further information necessary for, or related to the likelihood of, obtaining such approvals;

s. ***Expected Closing Date***. Each Bid must state the Acceptable Bidder's expected date of closing of the applicable Sale Transaction (the "Closing"). A Bid by an Acceptable Bidder must be reasonably likely, in the Debtors' business judgment, to be consummated within a time frame acceptable to the Debtors;

t. ***No Fees***. Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Sale Transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive any payments or amounts analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation; *provided* that the Debtors are authorized to provide the Stalking Horse Bid Protections (as defined below) to one or more Stalking Horse Bidders (as

defined below) in accordance with these Bidding Procedures.

u. ***Adherence to Bidding Procedures***. By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after the conclusion of the Auction;

v. ***Consent to Jurisdiction***. Any Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale Transaction(s), and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable, and must also submit to the jurisdiction of the Canadian Court with respect to any matter relating to the Assets of the Canadian Debtors or other Assets located in Canada or any Canadian Sale Order;

w. ***Conditions to Closing***. Each Bid must identify with particularity any conditions to Closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required; and

x. ***Transition Services***. Each Bid must describe the types of transition services, if any, the Acceptable Bidder would require of and/or provide to the Debtors or any of the Debtors' non-Debtor affiliates, including an estimate of the time any such transition services would be required of and/or provided to the Debtors or any of the Debtors' non-Debtor affiliates, and that the Acceptable Bidder will be responsible for the actual costs of providing any such services.

Only Bids fulfilling all of the preceding requirements contained in this Section IV, or otherwise in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, may be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids, as determined in the Debtors' reasonable business judgment in consultation with the Consultation Parties, may be deemed to be "Qualified Bidders."

None of the Debtors, any information officer appointed by the Canadian Court in the Canadian Proceedings or any of their respective advisors or representatives are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Assets and any liabilities and obligations to be assumed in connection with any Sale Transaction, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of any Sale Transaction with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets. All Acceptable Bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Assets, except to the extent expressly provided in the Court's Sale Order and the Canadian Court's Sale Order, if applicable. None of

the Debtors, any information officer appointed by the Canadian Court in the Canadian Proceedings or any of their respective advisors or representatives will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining or relating to the Assets that the Debtors, any advisor, or any agent representing or purporting to represent the Debtors might have made or furnished, directly or indirectly, orally or in writing, to any person whatsoever unless (with respect to the Debtors only) specifically set forth in the Court's Sale Order and the Canadian Sale Order (as defined below), if applicable.

There shall be no communications between or among Potential Bidders and/or Acceptable Bidders unless the Debtors' advisors have authorized such communication in writing (with e-mail from the Debtors' advisors being sufficient). The Debtors reserve the right, in their business judgment, in consultation with the Consultation Parties, to disqualify any Potential Bidders or Acceptable Bidders that have made communications between or among themselves without the prior authorization of the Debtors. For the avoidance of doubt, the joining of Bids between Potential Bidders or Acceptable Bidders may be permitted by the Debtors in their business judgment, in consultation with the Consultation Parties.

In advance of the Auction, as is reasonably practicable, the Debtors shall determine which Acceptable Bidders are Qualified Bidders, in consultation with the Consultation Parties, and will notify the Acceptable Bidders whether their Bids constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction. The Debtors shall not consider any Bid that they deem is not a Qualified Bid; *provided* that, if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors, in consultation with the Consultation Parties, may provide (but shall not be obligated to provide) the applicable Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction. The Debtors shall have the right, in their business judgment, to deem a Bid a Qualified Bid even if such Bid does not conform to one or more of the requirements above.

**V. The Right to Credit Bid.**

Notwithstanding anything set forth in these Bidding Procedures, any Qualified Bidder who has a valid, perfected, and unavoidable lien on any Assets of the Debtors' estates (each, a "Secured Creditor") shall have the right, subject to any intercreditor subordination agreement enforceable under section 510(a) of the Bankruptcy Code, to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured (each, a "Credit Bid").

Any Credit Bid made by a Secured Creditor or their respective assignees, as applicable, will be deemed to be a cash Bid solely for purposes of evaluating Bids (including evaluating Qualified Bids and subsequent Bids). Any Secured Creditor who submits a Credit Bid that satisfies the requirements of these Bidding Procedures before the Bid Deadline shall be deemed to be an Acceptable Bidder, shall be deemed to have submitted a Qualified Bid, and may participate in any Auction with respect to any Assets constituting collateral of such Secured Creditor. For the avoidance of doubt, the Prepetition Agents and any agent under a postpetition financing facility may, to the extent permitted by their applicable loan documents and subject to the terms of the Intercreditor Agreement (as defined in the First Day Declaration), Credit Bid all or any portion of the outstanding Prepetition Obligations, and any obligations under such

postpetition financing facility, as applicable. Any Credit Bid shall be a Qualified Bid without the need to provide any Deposit, and the Prepetition Agents and any agent under a postpetition financing facility shall each be a Qualified Bidder in connection with any such Credit Bid and shall not be required to satisfy the requirements of Section IV of these Bidding Procedures with respect to minimum bidding amounts, Good Faith Deposits, financing, or Adequate Assurance Information or any Back-up Bidder requirements. Notwithstanding the foregoing, any Credit Bid in respect of Assets of the Canadian Debtors or other property in Canada shall provide for the payment in cash on closing of all amounts secured by any charges granted by the Canadian Court in the Canadian Proceedings, and any other liens, charges, or encumbrances on such Assets, that rank in priority to the liens of the applicable Secured Creditor, unless otherwise agreed by the holders thereof.

## VI. Obtaining Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors; *provided* that such access may be terminated by the Debtors in their reasonable discretion, including if: (a) an Acceptable Bidder does not become a Qualified Bidder; (b) the Debtors determine any bidder is no longer an Acceptable Bidder; or (c) these Bidding Procedures are terminated. ***No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***. Beginning on the date the Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request.

Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline, and after the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction. For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, or otherwise presents a *bona fide* competitive or strategic concern, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

### A. Communications with Acceptable Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Acceptable Bidders (including any

*[Different first page setting changed from off in original to on in modified.].*

Qualified Bidders) shall be through the Debtors' proposed investment banker, Cascadia Capital, LLC ("Cascadia").

**The Debtors have designated Lorie Beers and Carl Comstock of Cascadia to coordinate all reasonable requests for additional information and due diligence access. They may be reached at lbeers@cascadiacapital.com and ccomstock@cascadiacapital.com.**

**B. Due Diligence from Acceptable Bidders (including Qualified Bidders).**

Each Acceptable Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors, in consultation with the Consultation Parties, regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated Sale Transaction. Failure by an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder, if any) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that such bidder is no longer an Acceptable Bidder or that a Bid made by such bidder is not a Qualified Bid.

## VII. The Bid Deadline.

Binding Bids must be submitted in writing to the following parties (the "Notice Parties") so as to be ***actually received*** no later than 5:00 p.m. (prevailing Eastern Time) on December 9, 2026 (the "Bid Deadline"): proposed co-counsel to the Debtors: (A) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn.: Gregory F. Pesce (gregory.pesce@whitecase.com); Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparracriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com), and (B) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Seth Van Aalten, Esq. (svanaalten@coleschotz.com), Justin R. Alberto, Esq. (jalberto@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com); and Cascadia, 477 Madison Avenue, Floor 18, New York, New York 10022, Attn: Lorie Beers (lbeers@cascadiacapital.com) and Carl Comstock (ccomstock@cascadiacapital.com).

The Debtors may, in consultation with the Consultation Parties, extend the Bid Deadline for any reason whatsoever in their business judgment for all or certain Acceptable Bidders.

## VIII. Evaluation of Qualified Bids.

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid, or combination of Qualified Bids that are, in the Debtors' business judgment, in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid or combination of Qualified Bids for the Assets, as applicable (the "Starting Bid").

When determining the highest or otherwise best Qualified Bid or combination of Qualified Bids, as compared to other Qualified Bids, the Debtors may consider the following factors, in

addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration, which may include, but is not limited to, assumed liabilities; (b) the number, type, and nature of any changes to the Form APA requested by each bidder in connection with each proposed asset purchase agreement, including the Assets to be acquired; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (e) the Debtors' regulatory requirements; (f) the tax consequences of such Qualified Bid; (g) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code (and the CCAA, if applicable); (h) the certainty of a Qualified Bid leading to a confirmed chapter 11 Plan, and (i) any other consideration that may impact the Debtors or their stakeholders. Prior to commencing the Auction, the Debtors shall notify the Stalking Horse Bidder, if any, and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable Assets. At such time, the Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder, if any, and each Qualified Bidder.

## IX. The Stalking Horse Bid Protections.

Pursuant to the Bidding Procedures Order, the Debtors may designate, in consultation with the Consultation Parties, one or more Bidders to be a stalking horse bidder (each a "Stalking Horse Bidder"), which are entitled to certain bid protections in the amounts set forth in, and in accordance with the terms of the Bidding Procedures Order, consisting of (a) a break-up fee (the "Break-Up Fee") not to exceed three percent (3%) of the aggregate amount of the Purchase Price and/or (b) reimbursement of reasonable and documented out of pocket fees and expenses (the "Expense Reimbursement" and together with the Break-Up Fee, the "Stalking Horse Bid Protections"). For the avoidance of doubt, except for the Stalking Horse Bidder, and as otherwise set forth herein, no other party submitting an offer, a Bid, or a Qualified Bid shall be entitled to any Expense Reimbursement, Break-Up Fee, termination fee, or similar fee or payment.

In the event that the Debtors receive multiple Qualified Bids, at any time until November 17, 2026, at 5:00 p.m. (prevailing Eastern Time), the Debtors shall be authorized, but not obligated, in their reasonable business judgment, in consultation with the Consultation Parties, to (a) select one or more Acceptable Bidders to act as the Stalking Horse Bidder in connection with the Auction, and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (a "Stalking Horse APA") ~~(i)~~ agree to provide the Stalking Horse Bid Protections, consisting of (A) a Break-Up Fee not to exceed three percent (3%) of the Purchase Price and (B) reimbursement of the reasonable and documented out of pocket fees and expenses of such Stalking Horse Bidder(s).

In the event that the Debtors enter into a Stalking Horse APA with one or more Stalking Horse Bidders, within two (2) business days of entry, the Debtors shall file a notice and proposed form of order with the Court designating a Stalking Horse Bidder and authorizing entry into a Stalking Horse APA (the "Stalking Horse Notice") and serve the Stalking Horse Notice on the Stalking Horse Bidder and the U.S. Trustee. The Stalking Horse Notice shall: (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Bid

submitted by the Stalking Horse Bidder and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Bid submitted by the Stalking Horse Bidder; (d) specify any proposed Stalking Horse Bid Protections (including the amount and calculation thereof); (e) specify which Assets the Bid submitted by the Stalking Horse Bidder includes; (f) attach the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (g) set forth the deadline to object to the Stalking Horse Bidder designation and any Stalking Horse Bid Protections. If there are no objections to the Stalking Horse Notice within ~~two~~three (3) business days of filing with the Court (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA, without the need for further hearing. If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

Upon entry of an order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA (the "Stalking Horse Order"), the Debtors, in consultation with the Consultation Parties, are authorized, but not directed, to incur and pay (a) the Break-Up Fee in an amount not to exceed three percent (3%) of the proposed Purchase Price and (b) the Expense Reimbursement to each Stalking Horse Bidder in accordance with the terms of such Stalking Horse Order and Stalking Horse APA.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder, shall be entitled to any Expense Reimbursement, Break-Up Fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for Expense Reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

**X. No Qualified Bids.**

If no Qualified Bids other than a Bid submitted by a Stalking Horse Bidder, if any, are received for the Assets included in such Stalking Horse Bid by the applicable Bid Deadline, then the Debtors, in consultation with the Consultation Parties, may cancel the Auction with respect to such Assets. If any Stalking Horse Bid is the only Qualified Bid received by the applicable Bid Deadline, the Debtors may decide, in their business judgment, in consultation with the Consultation Parties, to designate such Stalking Horse Bid as the Successful Bid as to the applicable Assets and pursue entry of an order approving a Sale Transaction with respect to such Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA. The Debtors shall, as soon as reasonably practicable, file notice of any cancellation of the Auction and/or designation of the Stalking Horse Bid, where applicable, as the Successful Bid with the Court.

**XI. The Auction.**

Except as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Assets or portion of Assets by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder (or Back-Up Bidder, as applicable) in their reasonable business judgment with respect to such Assets or portion of Assets in accordance with the Auction Procedures.

*[Different first page setting changed from off in original to on in modified.].*

The Auction, if necessary, shall commence on December 11, 2026 at 10:00 a.m. (prevailing Eastern Time), or such later time or other place as the Debtors determine. The Auction shall be held at the offices of White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

The Auction, if necessary, will be conducted in accordance with the following procedures (the "Auction Procedures"):

a. except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction;

b. the Qualified Bidders, including the Stalking Horse Bidder, if any, must appear in person or through duly authorized representatives at the Auction; *provided* that Qualified Bidders may appear through a duly authorized representative bearing a valid and enforceable power of attorney or other written proof evidencing their ability to bind the applicable Qualified Bidder, which document(s) shall be delivered to the Debtors and their advisors prior to the commencement of the Auction;

c. only the Debtors, the Qualified Bidders, the Consultation Parties, the U.S. Trustee, if applicable, and any information officer appointed by the Canadian Court in the Canadian Proceedings, ~~and such parties'~~in each case, along with their representatives and advisors may attend the Auction~~;~~ in person; all other parties in interest and landlords whose counsel have filed a notice of appearance in these chapter 11 cases may attend the Auction remotely upon affirmatively contacting the Notice Parties no later than two (2) days prior to the Auction;

d. the Debtors, with the assistance of their advisors, shall direct and preside over any Auction;

e. at the commencement of the Auction, the Debtors may announce modified or additional procedures for conducting the Auction and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s), or otherwise modify these Bidding Procedures;

f. bidding shall begin with the Starting Bid;

g. subsequent bids (each, an "Overbid") may only be made at the Auction and shall be at least (i) a $250,000 increase in cash, cash equivalents, or other such consideration that the Debtors, in their reasonable business judgment, deem equivalent over the previous bid *plus* (ii) in the event that the Debtors have entered into a Stalking Horse APA to which the Overbid relates, the aggregate amount of Stalking Horse Bid Protections (including, for the avoidance of doubt, any Break-Up Fees and/or Expense Reimbursements) under such Stalking Horse APA (a "Minimum Overbid"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not

less than the Minimum Overbid. The Debtors may, in their reasonable business judgment, in consultation with the Consultation Parties, announce increases or reductions to the Minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their reasonable business judgment deem equivalent that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid; *provided*, that a Credit Bid may be increased at the Auction on a dollar for dollar basis by additional Credit Bid amounts, and no credit bidder shall be required to include cash consideration in any overbid except as required by section 363(k) of the Bankruptcy Code or any order of the court, each of which rights are expressly reserved;

h. each Qualified Bidder will be permitted a reasonable time, as determined by the Debtors, to respond to previous bids at the Auction; *provided* that, unless the Debtors determine otherwise, a failure to respond and submit successive bid(s) at the Auction may result in disqualification from participating in the Auction;

i. during the course of the Auction, the Debtors shall, after the submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view, the highest or otherwise best bid(s) with respect to the Assets;

j. the Debtors may require each Qualified Bidder to submit an Overbid with respect to each round of bidding in order to remain eligible to participate in the Auction, and, to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, the Debtors may disqualify such Qualified Bidder from continuing to participate in the Auction;

k. the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

l. each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction. For the avoidance of doubt, this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent (with e-mail from the Debtors' advisors being sufficient);

m. each Qualified Bidder will be required to confirm on the record that its Bid is a good faith, *bona fide* offer and that it intends to consummate the applicable Sale Transaction if selected as the Successful Bid in accordance with these

Bidding Procedures (as may be modified in accordance herewith at the Auction);

n. subject to each Debtor's fiduciary obligations, including as set forth herein, the Court and the Debtors will not consider Bids made after the Auction has concluded;

o. the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, the CCAA or any orders of the Canadian Court in the Canadian Proceedings (if applicable), or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Debtors, their estates, and/or their stakeholders;

p. the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the Sale Transaction contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

q. the Debtors, in consultation with the Consultation Parties, may choose to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Debtors and Qualified Bidders; (ii) allow Qualified Bidders the opportunity to consider how they wish to proceed; and (iii) allow Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale Transaction at the prevailing amount, or to clarify any Bid; and

r. the Debtors reserve the right to further amend, waive, or otherwise modify the Auction Procedures at any time, in consultation with the Consultation Parties.

For the avoidance of doubt, nothing in these Bidding Procedures, including the Auction Procedures, will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as determined by the Debtors in consultation with counsel).

## XII. Acceptance of the Successful Bid.

The Auction shall continue until: (a) there is only one Qualified Bid or a combination of Qualified Bids with respect to all or any portion of the Assets that the Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties

*[Different first page setting changed from off in original to on in modified.].*

and outlined below in further detail, and in consultation with the Consultation Parties, is the highest or otherwise best Bid to purchase the applicable Assets (each, a "Successful Bid"); and (b) the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, the Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration, which may include, but is not limited to, assumed liabilities; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (d) the Debtors' regulatory requirements; (e) the tax consequences of such Qualified Bid; (f) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code (and the CCAA, if applicable); (g) the certainty of a Qualified Bid leading to a confirmed chapter 11 Plan, and (h) any other consideration that may impact the Debtors or their stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the Assets contemplated for purchase pursuant to such Successful Bid. The Debtors shall file notice of the Successful Bid and the Successful Bidder with the Court as soon as reasonably practicable, but in no event later than three (3) business days after conclusion of the Auction (or if no Auction is held, the Bid Deadline). Following conclusion of the Auction and selection of one or more Successful Bidders, the Debtors shall present the results of the Auction at a hearing with the Court and shall seek the Sale Order, among other things, (a) making certain findings from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors' estates, and (b) authorizing the applicable Debtors to enter into one or more binding purchase agreements with the Successful Bidder or Successful Bidders on the terms of the Successful Bid or Successful Bids; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that the Debtors determined, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law. If applicable, the Foreign Representative shall seek an Order of the Canadian Court (the "Canadian Sale Order") pursuant to section 49 of the CCAA, among other things, (x) recognizing and enforcing the Sale Order in Canada, and (y) if necessary, approving the sale of the Assets of the Canadian Debtors or Assets otherwise located in Canada to the applicable Successful Bidder or Successful Bidders in accordance with the applicable binding purchase agreement or binding ~~purchaser~~purchase agreements.

Within one business day of the selection of the Successful Bidder, such Successful Bidder (including both the Stalking Horse Bidder, if any, and Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price such that the Successful Bidder's total cash deposit is equal to

*[Different first page setting changed from off in original to on in modified.].*

ten percent (10%) of the aggregate purchase price contemplated in the Successful Bid, which amount shall be submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement. Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII. The Designation of a Back-Up Bidder.

The party that submits the Back-Up Bid, if any, to purchase any applicable Assets (the "Back-Up Bidder") will be determined by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. The Debtors' selection of a Back-Up Bid shall be deemed final, and the Debtors shall not accept any further bids or offers to submit a bid after such selection. ~~The~~Subject to the assumption and assignment procedures set forth below, the Debtors will be authorized, but not required, to consummate the Sale Transaction with the Back-Up Bidder without further order of the Court (or the Canadian Court, if applicable), so long as such Back-Up Bid shall have been approved in connection with the Court's (and Canadian Court's, if applicable) approval of the Successful Bid, or, if not, subject to Court (and Canadian Court, if applicable) approval.

If, for any reason, a Successful Bidder fails to consummate the purchase of the applicable Assets within the time permitted, then the Back-Up Bidder will, unless otherwise determined by the Debtors in their business judgment, automatically be deemed to have submitted the Successful Bid, and the Back-Up Bidder shall be deemed a Successful Bidder and shall be required to consummate any Sale Transaction with the Debtors as soon as is reasonably practicable subject to the assumption and assignment procedures set forth below, without further order of the Court (or Canadian Court, if applicable) approving the Sale Transaction. To the extent any objections to such sale are raised and remain unresolved, the Court (and Canadian Court, if applicable) may schedule a hearing on an expedited basis to adjudicate such objections.

Notwithstanding anything to the contrary herein, to the extent a Back-Up Bid contemplates the assumption and assignment of any Executory Contracts or Unexpired Leases, the Debtors shall, on December 11, 2026, file and serve on the affected Contract or Lease Counterparties, including landlords, and their counsel of record, if known, notice of the proposed assumption and assignment to the Back-Up Bidder, identifying the Back-Up Bidder, the applicable Executory Contracts and Unexpired Leases and the proposed Cure Payments, together with the Back-Up Bidder's Adequate Assurance Information. The notice shall state that all objections to the proposed assumption and assignment to the Back-Up Bidder, including objections to Cure Payments and adequate assurance of future performance, must be filed and served in accordance with paragraph 20.d of the Bidding Procedures Order by the Assumption Objection Deadline of December 21, 2026, at 5:00 p.m., prevailing Eastern Time. Any subsequent addition of an Executory Contract or Unexpired Lease or change to the proposed assignment or Cure Payment shall be subject to a Supplemental Assumption Notice and the applicable objection deadline under paragraph 20.d of the Bidding Procedures Order. If the Debtors proceed with the Back-Up Bid and no objection is timely filed and served, the Debtors may submit a proposed order approving the applicable assumption and assignment under a

*[Different first page setting changed from off in original to on in modified.].*

certificate of no objection, without further hearing. Any timely filed objection that remains unresolved shall be heard at the Assumption Hearing on December 29, 2026, at a time to be announced, subject to Court availability, or, where the applicable supplemental objection deadline has not expired, on such later date as the Court may fix upon notice to the affected Contract or Lease Counterparty and its counsel of record, if known. No Executory Contract or Unexpired Lease subject to a timely filed objection shall be assumed and assigned to the Back-Up Bidder unless and until such objection is resolved by agreement or by the Court and an order approving such assumption and assignment is entered.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (a) ninety days following the hearing to consider the applicable order approving the Sale Transaction(s) (the "Sale Order"), (b) the effective date of a chapter 11 Plan, (c) the consummation of the applicable Successful Bids, and (d) the release of such Back-Up Bid by the Debtors in writing (the "Back-Up Termination Date"). The Debtors shall return the Back-Up Bidder's deposit owed within five business days of the Back-Up Termination Date.

## XIV. Approval of the Sale Transaction(s).

A hearing to consider approval of each Sale Transaction (the "Sale Hearing"), is currently scheduled to take place on December 15, 2026, at a time to be announced, or as soon thereafter as the Debtors may be heard, before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey at 50 Walnut Street, Newark, New Jersey 07102, or conducted consistent with the procedures established pursuant to the Court's standing orders. A hearing to consider approval of each Canadian Sale Order shall be scheduled to the extent a Successful Bid includes Assets of the Canadian Debtors or Assets otherwise located in Canada.

At the Sale Hearing, the Debtors shall present the results of the Auction at a hearing and shall seek the Sale Order, among other things (a) making certain findings from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors' estates, and (b) authorizing the applicable Debtors to enter one or more binding purchase agreements with the Successful Bidder or Successful Bidders on the terms of the Successful Bid or Successful Bids. **The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice to creditors or other parties in interest prior to, or by making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (including any Stalking Horse Bidder, if any). The Sale Hearing may be the confirmation hearing with respect to the Debtors' Plan**. If applicable, the Foreign Representative shall seek the Canadian Sale Order, from the Canadian Court in the Canadian Proceedings as soon as reasonably practicable following entry of the applicable Sale Order.

~~Objections~~Except for objections to assumption and assignment, Cure Payments, or adequate assurance of future performance governed by paragraph 20.d of the Bidding Procedures Order, objections to the Sale Transaction(s) and the Sale Order must: (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules,

*[Different first page setting changed from off in original to on in modified.].*

Local Rules, and all orders of the Court; and (c) be filed with the Court and served so as to be ***actually received*** by the Debtors by December 14, 2026, at 5:00 p.m., prevailing Eastern Time.

## XV. Return of Good Faith Deposit.

The Good Faith Deposit(s) of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit(s) of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposits of any unsuccessful Qualified Bidders (except for any Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five (5) business days after consummation of the applicable Sale Transaction or upon the permanent withdrawal of the applicable proposed Sale Transaction.

The Good Faith Deposit(s) of any Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five business days of the Back-Up Termination Date.

The return of any Good Faith Deposits of any Stalking Horse Bidders will be subject to the terms of the applicable Stalking Horse APA. All such Good Faith Deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court.

## XVI. Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures in good faith to further the goal of attaining the highest or otherwise best offer or impose, at or prior to the Auction (if held), additional terms and conditions on the Sale Transaction(s) in any manner that will best promote the goals of the bidding process including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if held); (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable Minimum Overbid. Notwithstanding anything to the contrary herein, the Debtors may elect to consummate the Sale with the Successful Bidder or Successful Bidders under section 363 of the Bankruptcy Code (and the CCAA, if applicable) as opposed to pursuant to the Plan.

*[Different first page setting changed from off in original to on in modified.].*

**XVII. Consent to Jurisdiction.**

All Qualified Bidders at the Auction will be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale Transaction(s), and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties. Further, all Qualified Bidders at the Auction will also be deemed to have attorned to the jurisdiction of the Canadian Court with respect to any matter relating to the Assets of the Canadian Debtors or other property in Canada or any Canadian Sale Order.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

**XVIII. Fiduciary Out.**

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to any Sale Transaction or these Bidding Procedures, to the extent such Debtor, board of directors, board of managers, or such similar governing body determines, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, until the entry of the Sale Order, the Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to: (a) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each, an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

**XIX. Commissions.**

The Debtors shall be under no obligation to pay any commissions, fees, or expenses to any Potential Bidder's agent, advisor, or broker. All commissions, fees, or expenses for any such

*[Different first page setting changed from off in original to on in modified.].*

agents, advisors, or brokers shall be paid by the applicable Potential Bidder at such Potential Bidder's discretion. In no case shall any commissions, fees, or expenses for any Potential Bidder's agent, advisor, or broker be deducted from any proceeds derived from any Sale Transaction including the Assets.

*[Different first page setting changed from off in original to on in modified.].*

**Exhibit 2**

**Auction Notice**

[Different first page setting changed from off in original to on in modified.].

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

1 A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

*[Different first page setting changed from off in original to on in modified.].*

# NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). On [_], 2026, the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of all, substantially all, or any portion of their assets (the "Assets") consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order. Unexpired Leases may not be purchased on a standalone basis pursuant to the Bidding Procedures, whether individually or in a portfolio. Pursuant to the Bidding Procedures, an Unexpired Lease may be acquired only in connection with the same purchaser's acquisition of Assets other than Unexpired Leases in the applicable Sale Transaction. **All interested bidders should carefully read the Bidding Procedures and the Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all binding bids must be actually received pursuant to the Bidding Procedures is **December 9, 2026, at 5:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Assets **on December 11, 2026, at 10:00 a.m. (prevailing Eastern Time)** at the offices of proposed co-counsel to the Debtors: White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the ~~U.S. Trustee, the~~ Qualified Bidders, the Consultation Parties, ~~any~~the U.S. Trustee, and any information officer appointed by the Canadian Court in the Canadian Proceedings, ~~and any other parties as the Debtors, in consultation with the Consultation Parties, may determine in their reasonable~~

2 Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order or Bidding Procedures, respectively.

discretion, in each case, along with their representatives and advisors, may attend the Auction in person. All other parties in interest and landlords whose counsel have filed a notice of appearance in these chapter 11 cases may attend the Auction remotely upon affirmatively contacting the Notice Parties no later than two (2) days prior to the Auction. Only Qualified Bidders shall be entitled to participate in the Auction, and only Qualified Bidders will be entitled tobid or make Overbids (as defined in the Bidding Procedures) at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.** Copies of the Bidding Procedures, the Bidding Procedures Order, and any other related documents are available upon request to the Debtors' Claims and Noticing Agent, Omni Agent Solutions, Inc., by calling (866) 205-3149 (U.S. / Canada) or (818) 510-4678 (International) or visiting the Debtors' restructuring website at https://omniagentsolutions.com/TCP.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction(s) at a hearing scheduled to commence on December 15, 2026, at a time to be announced, subject to Court availability, or as soon thereafter as the Debtors may be heard (the "Sale Hearing") before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey at 50 Walnut Street, Newark, New Jersey 07102, or conducted consistent with the procedures established pursuant to the Court's standing orders. A hearing to consider approval of each Canadian Sale Order may be scheduled once the Debtors determine whether a Successful Bid is likely to include Assets of the Canadian Debtors or Assets otherwise located in Canada.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to the consummation or approval of the Sale Transaction(s) and any, other than objections to proposed cure payments or Cure Payments, the assumption and assignment of Executory Contracts or Unexpired Leases, or adequate assurance of future performance, must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** on or before **December 14, 2026, at 5:00 p.m., prevailing Eastern Ti**me, by the following parties: (i) the Debtors, THE CHILDREN'S PLACE, INC., 500 Plaza Drive, Secaucus, New Jersey 07094, Attn: [ ● ] ([●]); (ii) proposed co-counsel to the Debtors, (A) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn.: Gregory F. Pesce (gregory.pesce@whitecase.com); Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparracriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com), and (B) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Seth Van Aalten, Esq. (svanaalten@coleschotz.com), Justin R. Alberto, Esq. (jalberto@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com).

**PLEASE TAKE FURTHER NOTICE** that the Assumption Notice and the applicable Adequate Assurance Information shall be served on December 11, 2026, on affected Contract or Lease Counterparties, including landlords, and their counsel of record, if known. All objections to assumption and assignment, including objections to Cure Payments and adequate assurance of future performance, must be filed and served in accordance with paragraph 20.d of the Bidding

*[Different first page setting changed from off in original to on in modified.].*

Procedures Order by December 21, 2026, at 5:00 p.m., prevailing Eastern Time, or the applicable deadline set forth in a Supplemental Assumption Notice. Assumption and assignment shall not be approved at the Sale Hearing or in the Sale Order entered in connection therewith. If no objection is timely filed and served, the Debtors may submit a proposed assumption and assignment order under a certificate of no objection, without further hearing. Timely filed objections that remain unresolved shall be heard on December 29, 2026, at a time to be announced, subject to Court availability, or on such later date as provided in paragraph 20.e of the Bidding Procedures Order.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**EXCEPT FOR OBJECTIONS TO ASSUMPTION AND ASSIGNMENT, CURE PAYMENTS, OR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE GOVERNED BY PARAGRAPH 20.d OF THE BIDDING PROCEDURES ORDER, ANY PARTY OR ENTITY THAT FAILS TO TIMELY MAKE AN OBJECTION TO A SALE TRANSACTION, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

Dated: [●], 2026

*/s/ Michael D. Sirota*

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (pro hac vice pending)
Justin R. Alberto (pro hac vice pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*[Different first page setting changed from off in original to on in modified.].*

**Exhibit 3**

**Assumption Notice**

*[Different first page setting changed from off in original to on in modified.].*

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (pro hac vice pending)
Justin R. Alberto (pro hac vice pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHILDREN'S PLACE, INC., *et al.*, | Case No. 26-22682 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

## NOTICE TO CONTRACT PARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. [_]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). On [__], 2026, the Ontario Superior Court of Justice (Commercial List) granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder the Executory Contracts and Unexpired Leases listed on **Exhibit A** to which you are a counterparty, ~~upon approval of any Sale Transaction~~subject to entry of a separate order approving such assumption and assignment in accordance with paragraph 20.e of the Bidding Procedures Order. The Debtors have conducted a review of their books and records and have determined that the Cure Payment under such Executory Contract or Unexpired Lease is as set forth on **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that the Adequate Assurance Information for the proposed assignee is being served simultaneously with this Assumption Notice on the affected Contract or Lease Counterparties, including landlords, and their counsel of record, if known, subject to the confidentiality provisions of paragraph 22 of the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Payment, object on any ground to ~~a~~the proposed assumption and assignment to the Successful Bidder of your Executory Contract or Unexpired Lease, or dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract, your objection must: (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments, state the correct Cure Payments alleged to be owed to the objecting

2 Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

Contract or Lease Counterparty, together with any applicable and appropriate documentation in support thereof; and (d) be filed with the Court and served and **actually received no later than December ~~14~~21, 2026, at 5:00 p.m. (prevailing Eastern Time) (the "~~Sale~~Assumption Objection Deadline")** by the Court and the following parties: (i) proposed co-counsel to the Debtors (A) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn.: Gregory F. Pesce (gregory.pesce@whitecase.com); Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparracriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com), and (B) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn.: Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine (wusatine@coleschotz.com), Seth Van Aalten (svanaalten@coleschotz.com); Justin R. Alberto (jalberto@coleschotz.com), and Daniel J. Harris, Esq. (dharris@coleschotz.com); (ii) counsel to the Successful Bidder, if any; (iii) the Office of the United States Trustee for the District of New Jersey, Attn: Fran B. Steele (fran.b.steele@usdoj.gov) and Aiden Murphy (aiden.murphy@usdoj.gov); and (iv) any other party that has filed a notice of appearance in these chapter 11 cases; *provided* that the Debtors may ~~modify~~extend the ~~Sale~~Assumption Objection Deadline by filing ~~a~~and serving notice of such ~~modification on the Court's docket~~extension in accordance with paragraph 20.d of the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that if no objection to ~~(a)~~ the Cure Payments, the proposed assignment and assumption of any Executory Contract or Unexpired Lease, or adequate assurance of the Successful Bidder's ability to perform is filed by the ~~Sale~~Assumption Objection Deadline (or the applicable deadline set forth in a Supplemental Assumption Notice), then (i) you will be deemed to have stipulated that the Cure Payments as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Payments are due under the Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of any Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that ~~any objection to~~ the ~~proposed~~ assumption and assignment of ~~an~~Executory Contracts and Unexpired Leases shall not be approved at the Sale Hearing or in the Sale Order entered in connection therewith. If no objection is timely filed and served by the Assumption Objection Deadline (or the applicable deadline set forth in a Supplemental Assumption Notice), the Debtors may submit a proposed order approving such assumption and assignment under a certificate of no objection, without further hearing. Any timely filed objection to assumption and assignment, including objections to Cure Payments or adequate assurance of future performance, that remains unresolved shall be heard at the Assumption Hearing on December 29, 2026, at a time to be announced, subject to Court availability, or on such later date as provided in paragraph 20.e of the Bidding Procedures Order. No Executory Contract or Unexpired Lease ~~or related Cure Payments in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing shall be heard at a later date as may be fixed by the Court.~~subject to a timely filed objection shall be assumed and assigned unless and until such objection is resolved by agreement or by the Court and an order approving such assumption and assignment is entered.

*[Different first page setting changed from off in original to on in modified.].*

*[Different first page setting changed from off in original to on in modified.].*

**PLEASE TAKE FURTHER NOTICE** that, notwithstanding anything herein, the listing of any Executory Contract or Unexpired Lease on the Assumption Notice or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed or assumed and assigned by the Debtors, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved. Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

Dated: [●], 2026

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*/s/ Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (pro hac vice pending)
Justin R. Alberto (pro hac vice pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*[Different first page setting changed from off in original to on in modified.].*

**<u>Exhibit A</u>**

**Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases**