**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

[1] A complete list of each of the Debtors, including each Debtor's tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**NOTICE OF FILING REVISED INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on November 9, 2026, the above-captioned debtors and debtors in possession filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 54] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the proposed *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, And (VII) Granting Related Relief* (the "Proposed Interim Order") was attached to the Motion as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that a revised *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, And (VII) Granting Related Relief* is attached hereto as **Exhibit A** (the "Revised Proposed Interim Order").

**PLEASE TAKE FURTHER NOTICE** that a redline of changed pages comparing the Revised Proposed Interim Order to the Proposed Order is attached hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Omni Agent Solutions, Inc. at https://omniagentsolutions.com/TCP. You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 10, 2026


/s/ *Michael D. Sirota*

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

\- and -

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

\- and -

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# <u>Exhibit A</u>

## Revised Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**WHITE & CASE LLP**
Gregory F. Pesce (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

Andrew F. O'Neill (*pro hac vice* pending)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

Amanda Parra Criste (*pro hac vice* pending)
Varoon Sachdev (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (*pro hac vice* pending)
Justin R. Alberto (*pro hac vice* pending)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through ninety-one (91), is **ORDERED**.

[1] A complete list of each of the Debtors, including each Debtor's tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

Upon the motion, dated November 9, 2026 (the "DIP Motion") of The Children's Place, Inc. (the "Lead Borrower"), The Children's Place Services Company, LLC, The Children's Place (Canada), LP, TCP Brands, LLC and The Children's Place International, LLC (collectively, with the Lead Borrower the "Borrowers"), and thechildrensplace.com, inc., The Children's Place Canada Holdings, Inc., TCP IH II, LLC, TCP Real Estate Holdings, LLC, TCP International Product Holdings, LLC, TCP Investment Canada I Corp., TCP Investment Canada II Corp., and AMASKIT, LLC (collectively, the "Guarantors"), each as a debtor and debtor in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases"), seeking entry of an order (this "Interim Order") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of New Jersey (the "Local Rules"), *inter alia*:

(i) authorizing the Debtors to obtain senior secured postpetition refinancing on a superpriority basis consisting of a senior secured superpriority revolving credit facility in the aggregate principal amount of up to $166,000,000 (the "DIP ABL Facility") consisting of $146,000,000 in aggregate principal amount of revolving loans (the "DIP Revolving Loans") and commitments and which shall include (a) $20,000,000 sublimit for the issuance of letters of credit and (b) no sublimit for swingline loans (such amounts being inclusive of U.S. and Canadian sublimits for revolving loans, letters of credit, and swingline loans), as set forth in and pursuant to

the terms and conditions of that certain *Senior Secured Superpriority Debtor-In-Possession ABL Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP ABL Credit Agreement"), by and among the Borrowers, the Guarantors, Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacity, the "DIP ABL Agent"), for and on behalf of itself and the lenders party thereto (such lenders, the "DIP ABL Lenders", collectively with the DIP ABL Agent and other Credit Parties as defined in the DIP ABL Credit Agreement, the "DIP ABL Credit Parties"), substantially in the form of Exhibit B, attached to the DIP Motion;

(ii) authorizing the Debtors to obtain a senior secured superpriority term loan credit facility (the "DIP Term Facility", together with the DIP ABL Facility, the "DIP Facilities") consisting of $116,000,000 in aggregate principal amount of term loans (the "DIP Term Loans", together with the DIP Revolving Loans, the "DIP Loans"), pursuant to the terms and conditions of that certain *Senior Secured, Superpriority Debtor-In-Possession Term Loan Credit Agreement* (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Term Credit Agreement", together with the DIP ABL Credit Agreement, the "DIP Credit Agreements"), by and among the Borrowers, the Guarantors, Crystal Financial LLC D/B/A SLR Credit Solutions, as administrative agent and collateral agent (in such capacity, the "DIP Term Agent", together with the DIP ABL Agent, the "DIP Agents"), for and on behalf of themselves and the lenders party thereto (such lenders, the "DIP Term Lenders" (and, together with the DIP ABL Lenders, the "DIP Lenders"), and collectively with the DIP Term Agent and other Credit

Parties as defined in the DIP Term Credit Agreement, the "DIP Term Credit Parties", together with the DIP ABL Credit Parties, the "DIP Credit Parties"), substantially in the form of Exhibit C, attached to the DIP Motion;

(iii) authorizing the Debtors to execute and deliver the DIP Credit Agreements and any other agreements, instruments, pledge agreements, guarantees, control agreements and other Loan Documents (as defined in the respective DIP Credit Agreements) and documents related thereto (including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, or otherwise modified from time to time, and collectively, with the DIP Credit Agreements, the "DIP Documents"; the DIP Documents relating to the DIP ABL Facility, the "DIP ABL Documents"; and the DIP Documents relating to the DIP Term Facility, the "DIP Term Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iv) until the Termination Date (as defined herein) occurs as a result of an ABL Termination Declaration (as defined herein), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Interim Order (including potential funding of the Carve Out after the Termination Date), authorizing the Debtors, prior to the entry of the Final Order (as defined herein), to request extensions of credit under the DIP ABL Facility up to an aggregate principal amount of $131,000,000 at any one time outstanding (the "**Interim ABL Financing**");

(v) granting to the DIP ABL Agent, for the benefit of itself and the DIP ABL Credit

Parties on account of the DIP ABL Facility and all Obligations (as defined in the DIP ABL Credit Agreement) owing thereunder, or secured by, the DIP ABL Documents (the "DIP ABL Obligations"), and granting to the DIP Term Agent, for the benefit of itself and the DIP Term Credit Parties on account of the DIP Term Facility and all Obligations (as defined in the DIP Term Credit Agreement) owing thereunder, or secured by, the DIP Term Documents (the "DIP Term Obligations" and together with the DIP ABL Obligations, the "DIP Obligations") allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein), subject only to the Carve Out (as defined herein), and the Lien Priority Annex attached hereto as **Exhibit A** (the "Lien Priority Annex");

(vi) granting to the DIP ABL Agent and DIP Term Agent, each for the benefit of itself and its respective DIP ABL Credit Parties and DIP Term Credit Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall be subject to the priorities set forth herein;

(vii) authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, letter of credit fees (including issuance and other related charges), commitment fees, closing fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, arrangement fees, upfront fees, administrative agent's fees, the reasonable fees and disbursements of the DIP ABL Agent's and DIP Term Agent's attorneys, advisors, accountants and other

consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(viii) authorizing the Debtors to use the Prepetition Collateral (as defined herein), including the Cash Collateral of the Prepetition Secured Parties under the Prepetition Documents (each as defined herein), and providing adequate protection to the Prepetition Secured Parties on account of the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, the priming of their respective interests in the Prepetition Collateral (including by the Carve Out), including the Cash Collateral and any other diminution in value ("Diminution in Value");

(ix) authorizing the Debtors to roll up the Prepetition ABL Secured Obligations and Prepetition Term Secured Obligations (each as defined herein) on a partial basis upon the entry of this Interim Order and in full upon entry of the Final Order and as set forth herein, subject to the rights of parties in interest described in paragraph 43 of this Interim Order;

(x) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order;

(xi) waiving any applicable stay and provisions for immediate effectiveness of this Interim Order;

(xii) granting related relief; and

(xiii) scheduling a final hearing (the "Final Hearing") within thirty (30) days of the entry of this Interim Order to consider the relief requested in the DIP Motion on a final basis and

approving the form of notice with respect to the Final Hearing; and

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Lorie Beers in Support of the Debtors' DIP Motion* (the "DIP Declaration") and the *Declaration of Rudolph Morando, Co-Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the DIP Documents, and the evidence submitted and argument made at the interim hearing held on November 10, 2026 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014, and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreements is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF**

**LAW:**[1]

A. **Petition Date**. On November 8, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey (the "Court").

B. **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C. **Jurisdiction and Venue**. This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). The statutory and rule bases for the relief granted herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and D.N.J. LBR 4001-3.

D. **Committee Formation**. As of the date hereof, the United States Trustee for the District of New Jersey (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

"Committee").

E. **Notice**. Notice of the DIP Motion and Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F. **Debtors' Stipulations**. Subject only to the rights of parties-in-interest specifically set forth in paragraph 43 of this Interim Order, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xvi) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i) *Prepetition ABL Facility*. Pursuant to that certain Amended and Restated Credit Agreement dated as of May 9, 2019 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with the Loan Documents (as defined in the Prepetition ABL Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the borrowers party thereto (in such capacity, the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors", together with the Prepetition ABL Borrowers, the "Prepetition ABL Obligors"), (c) Wells Fargo Bank, National Association, as administrative agent and collateral agent (in such capacity, the "Prepetition ABL Agent"), and (d) the Revolving Lenders party thereto (as defined in the Prepetition ABL Agreement, and including

the Prepetition ABL Agent, the "Prepetition Revolving Lenders," and collectively with the Prepetition ABL Agent, and the other Credit Parties (as defined in the Prepetition ABL Agreement), the "Prepetition ABL Secured Parties"), the applicable Prepetition ABL Secured Parties provided loans, and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Obligors pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility").

(ii) *Prepetition ABL Secured Obligations*. The Prepetition ABL Facility provided the Prepetition ABL Obligors with, among other things, up to $350,000,000 aggregate principal amount of Revolving Loans (as defined in the Prepetition ABL Agreement, the "Prepetition Revolving Loans"). As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was not less than $130,507,000 (collectively, together with accrued and unpaid interest, outstanding letters of credit, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Obligors' obligations pursuant to, or secured by, the Prepetition ABL Documents, including all Obligations (as defined in the Prepetition ABL Agreement), and all other amounts that may

become allowable under section 506(b) of the Bankruptcy Code, including interest, fees, prepayment premiums, costs and other charges, the "Prepetition ABL Secured Obligations"), including not less than $110,580,000 in outstanding principal amount of Prepetition Revolving Loans, and $19,287,000 of letters of credit.

(iii) *Prepetition ABL Liens and Prepetition ABL Priority Collateral*. As more fully set forth in the Prepetition ABL Documents and the DIP Motion, prior to the Petition Date, the Prepetition ABL Secured Obligations are secured by (i) first priority security interests in and liens on ABL Priority Collateral (as defined in the ICA (as defined below)) (the "Prepetition ABL Priority Collateral") pursuant to the terms of the ICA, and (ii) second priority security interests in and liens on the Term Loan Priority Collateral (as defined in the ICA) (the "Prepetition Term Loan Priority Collateral") pursuant to the terms of the ICA (the Prepetition ABL Priority Collateral and the Prepetition Term Loan Priority Collateral, the "Prepetition Collateral" and the immediately foregoing liens and security interests, the "Prepetition ABL Liens"). Each of the Prepetition ABL Guarantors has jointly and severally, absolutely, unconditionally and irrevocably guaranteed the Prepetition ABL Secured Obligations.

(iv) *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Secured Obligations.* The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition

ABL Liens were senior in priority over any and all other liens on the Prepetition ABL Priority Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Prepetition ABL Permitted Prior Liens"); (c) the Prepetition ABL Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Secured Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Secured Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Secured Obligations; and

(g) the Prepetition ABL Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code, which are entitled to payment of postpetition interest, fees, and indemnities under section 506(b) of the Bankruptcy Code.

(v) *Default by the Debtors.* The Debtors acknowledge and stipulate that they are in default of their obligations under the Prepetition ABL Documents as a result of the Cases and that an Event of Default has occurred under the Prepetition ABL Documents. As of the Petition Date, therefore, interest is accruing on the Prepetition ABL Secured Obligations at the default rate.

(vi) *Prepetition Term Facility.* Pursuant to that certain Credit Agreement dated as of December 16, 2025 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Agreement," and collectively with the Loan Documents (as defined in the Prepetition Term Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Term Documents", together with the Prepetition ABL Documents, the "Prepetition Documents"), among (a) the borrowers party thereto (the "Prepetition Term Borrowers"), (b) the guarantors party thereto (the "Prepetition Term Guarantors", together with the Prepetition Term Borrowers, the "Prepetition Term Obligors"), (c) Crystal Financial LLC D/B/A SLR Credit Solutions, as administrative agent and collateral agent (in such capacity, the "Prepetition Term Agent", together with the Prepetition ABL Agent, the "Prepetition Agents"), and (d) the Lenders party thereto (as defined in the

Prepetition Term Agreement, the "Prepetition Term Lenders," and collectively with the Prepetition Term Agent, and the other Credit Parties (as defined in the Prepetition Term Agreement), the "Prepetition Term Secured Parties", together with the Prepetition ABL Secured Parties, the "Prepetition Secured Parties"), the Prepetition Term Lenders provided term loans, and other financial accommodations to, for the account of, the Prepetition Term Obligors pursuant to the Prepetition Term Documents (the "Prepetition Term Facility" together with the Prepetition ABL Facility, the "Prepetition Facilities").

(vii) *Prepetition Term Secured Obligations*. The Prepetition Term Facility provided the Prepetition Term Obligors with, among other things, up to $100,000,000 aggregate principal amount of Term Loans (as defined in the Prepetition Term Agreement, the "Prepetition Term Loans"). As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Term Facility was not less than $100,000,000 (collectively, together with accrued and unpaid interest, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), prepayment premiums, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Term Obligors' obligations pursuant to, or secured by, the Prepetition Term Documents, including all Obligations (as defined in the Prepetition Term Agreement), and all other amounts that may become allowable under section

506(b) of the Bankruptcy Code, the "Prepetition Term Secured Obligations" and, together with the Prepetition ABL Secured Obligations, the "Prepetition Secured Obligations"), including not less than $100,000,000 in outstanding principal amount of Prepetition Term Loans.

(viii) *Prepetition Term Liens and Prepetition Term Loan Priority Collateral*. As more fully set forth in the Prepetition Term Documents and the DIP Motion, prior to the Petition Date, the Prepetition Term Secured Obligations are secured by (i) first priority security interests in and liens on the Prepetition Term Loan Priority Collateral pursuant to the terms of the ICA, and (ii) second priority security interests in and liens on the Prepetition ABL Priority Collateral pursuant to the terms of the ICA (the immediately foregoing liens and security interests, the "Prepetition Term Liens" together with the Prepetition ABL Liens, the "Prepetition Liens"). Each of the Prepetition Term Guarantors has jointly and severally, absolutely, unconditionally and irrevocably guaranteed the Prepetition Term Secured Obligations.

(ix) *Validity, Perfection, and Priority of Prepetition Term Liens and Prepetition Term Secured Obligations.* The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition Term Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Term Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Liens were senior in priority over any and all other liens on the Prepetition Term Loan Priority Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the Prepetition Term Documents (solely to the extent any such permitted liens were valid,

properly perfected, non-avoidable, and senior in priority to the Prepetition Term Liens as of the Petition Date, the "Prepetition Term Permitted Prior Liens", together with the Prepetition ABL Permitted Prior Liens, the "Prepetition Permitted Prior Liens"); (c) the Prepetition Term Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Term Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term Liens or Prepetition Term Secured Obligations exist, and no portion of the Prepetition Term Liens or Prepetition Term Secured Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Term Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Term Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Term Secured Obligations; and (g) the Prepetition Term Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code, which are entitled to payment

of postpetition interest, fees, and indemnities under section 506(b) of the Bankruptcy Code.

(x) *Default by the Debtors.* The Debtors acknowledge and stipulate that they are in default of their obligations under the Prepetition Term Documents as a result of the Cases, and that an Event of Default has occurred under the Prepetition Term Documents. As of the Petition Date, therefore, interest is accruing on the Prepetition Term Secured Obligations at the default rate.

(xi) *ICA.* Except as otherwise expressly set out herein, (x) the DIP Agents, DIP Lenders, Prepetition ABL Agent, Prepetition Term Agent, and the Prepetition Secured Parties shall remain bound by the terms and conditions set forth in that certain Intercreditor Agreement, dated as of December 16, 2025 (as amended by that certain acknowledgement and consent to intercreditor agreement dated on or about the date hereof (the "ICA Acknowledgment"), and as further amended, restated, amended and restated, supplemented, replaced, or otherwise modified from time to time, the "ICA"), including with respect to the Prepetition Collateral and DIP Collateral, (y) nothing contained in this Interim Order shall be deemed to abrogate or limit the respective rights, claims and obligations of each of the DIP Agents, DIP Lenders, Prepetition ABL Agent, Prepetition Term Agent, and the Prepetition Secured Parties under the ICA, and (z) the ICA shall apply and govern the respective rights, obligations, and priorities of the DIP Agents, DIP Lenders, Prepetition ABL Agent, the Prepetition Term Agent, and the Prepetition Secured Parties with respect to the Prepetition Collateral and DIP Collateral in these Cases. The Prepetition ABL Agent, the Prepetition Term Agent and the Debtors stipulate

and agree that the ICA is a "subordination agreement" within the meaning of section 510(a) of the Bankruptcy Code.

(xii) *No Challenges / Claims*. Subject to an investigation by the Committee and the challenge rights pursuant to paragraphs 41 and 43 herein, the Debtors' estates have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, causes of action, and/or choses in action against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition Documents, the Prepetition Secured Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance, recovery, disallowance, disgorgement, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents. The Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code. Subject to paragraph 43 herein, the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Liens.

(xiii) *Cash Collateral*. Except as otherwise provided in the Prepetition Documents, all of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition

Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Parties, subject to the ICA and the Lien Priority Annex.

(xiv) *Debtors' Stipulations Regarding Initial Funding.* In accordance with this Interim Order, this Court authorized, among other things: (a) the Borrowers to obtain financing under the DIP Facilities pursuant to the DIP Credit Agreements; (b) the Guarantors to jointly and severally guarantee the DIP Loans and the other DIP Obligations; and (c) the Debtors to execute and deliver the DIP Documents, and perform under the DIP Credit Agreements in accordance with and subject to the terms of this Interim Order and the DIP Documents. Upon entry of this Interim Order, the Debtors shall be authorized to incur the Interim ABL Financing on the terms and conditions set forth in the DIP Documents and in this Interim Order.

(xv) *No Control.* None of the DIP Agents, the DIP Lenders, the Prepetition Agents, or the other Prepetition Secured Parties, controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or any of their affiliates by virtue of any of the actions taken through the date of this Interim Order with respect to, in connection with, related to, or arising from this Interim Order, the DIP Facilities, the DIP Documents, the Prepetition Secured Obligations, and/or the Prepetition Documents.

(xvi) Effective as of the date of entry of this Interim Order and subject to

the rights of all parties-in-interest hereunder (including with respect to a Challenge (as defined herein)), other than the Debtors or their affiliates, as set forth in paragraph 43 herein, each of the Debtors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, and solely to the extent permitted under applicable law, hereby forever, unconditionally, permanently, and irrevocably releases, discharges, and acquits each of the following solely in their capacity as such: DIP Agents, the DIP Credit Parties, the Prepetition Agents, the other Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, advisors, sub-fund advisors, and collateral managers, and each of their respective heirs, predecessors, successors, and assigns, in each case solely in their capacity as such (collectively, the "***Released Parties***") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), actions, suits, controversies, proceedings, losses, damages, injuries, debts, liens, actions, judgments, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, pending, or threatened, arising under, in connection with, or relating to the DIP Obligations or DIP Documents, the Prepetition Secured Obligations or the Prepetition Documents, including, without limitation: (a) any so-called "lender liability" or equitable subordination claims or defenses; (b) Claims and

causes of action arising under the Bankruptcy Code; and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, the DIP Documents, the DIP Liens (as defined herein), the Prepetition Secured Obligations, the Prepetition Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the DIP Obligations and the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or related to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of this Interim Order. For the avoidance of doubt, nothing in this paragraph F(xvi) shall relieve the DIP Agents, the DIP Lenders, or the Debtors of their obligations hereunder or under the DIP Obligations.

G. **Permitted Prior Liens**. Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agents, the Prepetition Secured Parties, or the

Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Prior Lien and/or security interests. Given the continuing liens of the Prepetition Secured Parties and the integrated nature of the transactions contemplated of this Interim Order, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Prior Lien; rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claims had with respect to the Prepetition Liens.

H. **Findings Regarding Corporate Authority**. Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

I. **Findings Regarding Postpetition Financing**

(i) *Request for Postpetition Financing.* The Debtors seek authority to (a) use Cash Collateral on the terms described herein to administer their Cases and fund their operations, (b) enter into each DIP Facility on the terms described herein and in the DIP Documents, (c) apply proceeds of DIP Collateral in accordance with paragraph 23 of this Interim Order, and (d) upon entry of the Final Order (1) refinance any remaining Prepetition Revolving Loans into DIP Revolving Loans and (2) refinance any remaining Prepetition Secured Obligations into DIP Term Loan Obligations. At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cash Collateral arrangements pursuant to a proposed

final order (the "Final Order"), which shall be in form and substance acceptable to the DIP Agents and Prepetition Agents.

(ii) *Priming of the Prepetition Liens*. The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by each DIP Facility and the relative priorities set forth in the Lien Priority Annex, will enable the Debtors to obtain each DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors. The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii) *Need for Postpetition Financing and Use of Cash Collateral*. The Debtors have a need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facilities in order to, among other things, administer and preserve the value of their estates. The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facilities and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business pending the Final Hearing without the DIP Facilities and authorized use of Cash

Collateral.

(iv) *No Credit Available on More Favorable Terms*. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Credit Parties on terms more favorable than the DIP Facilities. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. As described in the DIP Declaration, financing on a postpetition basis on better terms is not otherwise available without granting each DIP Agent, for the benefit of itself and its respective DIP ABL Credit Parties and DIP Term Credit Parties: (1) perfected security interests in and liens on (each as provided herein) substantially all of the Debtors' existing and after-acquired assets with the relative priorities set forth herein; (2) superpriority claims and liens; (3) application of proceeds of DIP Collateral in accordance with paragraph 23 of this Interim Order; (4) upon entry of a Final Order, a roll-up of any remaining Prepetition Revolving Loans into DIP Revolving Loans, and a roll-up of any remaining Prepetition Term Secured Obligations under the Prepetition Term Agreement into the DIP Term Obligations.

(v) *Use of Proceeds of the DIP Facilities*. As a condition to entry into

the DIP Credit Agreements, the extensions of credit under the DIP Facilities, and the authorization to use Cash Collateral, the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facilities shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with the budget attached as **Exhibit B** hereto (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as are permitted in the DIP Credit Agreements, and as set forth in paragraph 19 hereof, the "Budget"), solely for: (a) the Roll-Up, subject to the rights preserved in paragraph 43 of this Interim Order; provided, that all Letters of Credit and Bank Products shall be deemed DIP ABL Obligations upon entry of this Interim Order; (b) the paydown of the Prepetition Revolving Loans with the Interim Term Financing, (c) working capital and letters of credit; (d) permitted payment of costs of administering the Cases; (e) payment of such other prepetition obligations as are set forth in the Budget or otherwise approved by the DIP Agents and Prepetition Agents in their sole discretion, and as approved by the Court; (f) payment of interest, fees, expenses and other amounts (including legal and other professionals' fees and expenses of the DIP Agents) owed under the DIP Documents; (g) payment of certain adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraph 15 hereof; (h) payment of the costs, fees, and expenses related to the Recognition Proceedings (as defined in the DIP Credit Agreements), including as permitted under the Canadian Recognition Orders (as defined in the DIP Credit Agreements) and (i) other general corporate purposes of the Debtors permitted by the Budget and the DIP Documents.

(vi) *Application of Proceeds of Collateral*. As a condition to entry into the DIP Credit Agreements, the extension of credit under the DIP ABL Facility and authorization to use Cash Collateral, the Debtors, the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Interim Order including as set forth in paragraph 23 hereof and as provided in the DIP Documents. The extension of credit under the DIP Facilities, the application of proceeds of DIP Collateral under paragraph 23 hereof, and upon entry of the Final Order, the DIP ABL Roll-Up Loans and the DIP Term Roll-Up Loans (each as defined herein) are part of a single, integrated transaction.

(vii) *Roll-up of Prepetition Revolving Loans.*

(a) As a condition to providing the ABL DIP Facility, the DIP ABL Credit Parties have required that the Debtors (i) obtain approval as part of the Interim ABL Financing upon entry of this Interim Order, without any further action by the Debtors or any other party, of (1) proceeds of DIP ABL Priority Collateral being applied to the repayment of Prepetition ABL Secured Obligations as set forth in paragraph 23 of this Interim Order (the "Interim ABL Roll-Up"), (2) all cash management services, bank products, and Letters of Credit issued for the account of the Debtors under the Prepetition ABL Agreement continuing in place and all obligations under or in connection therewith being subject to the DIP ABL Credit Agreement and shall constitute DIP ABL Obligations, and (3) all accrued interest, expenses, fees and other sums due and payable in respect of the Revolving Loans being paid in full, in cash on the Closing Date

(as defined in the DIP Credit Agreement); and (ii) upon entry of the Final Order without any further action by the Debtors or any other party, the repayment and refinancing of any outstanding amount of Prepetition ABL Secured Obligations (together with the Interim ABL Roll-Up, the "ABL Roll-Up" and all amounts repaid and refinanced under the ABL Roll-Up, the "DIP ABL Roll-Up Loans", which constitute DIP Revolving Loans).

(b) The Interim ABL Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP ABL Lenders to fund amounts, and provide other consideration to the Debtors, under the DIP ABL Facility and not as adequate protection for any Prepetition Secured Obligations or any accommodation made by the Prepetition ABL Credit Parties. The Interim ABL Roll-Up is justified because the DIP ABL Facility will enable the Debtors to obtain urgently needed financing that they need to administer these Cases and fund their operations. Because the ABL Roll-Up is subject to the rights set forth in paragraph 43 below, the ABL Roll-Up will not prejudice the right of any other party in interest.

(viii) *Roll-up of Prepetition Term Loans.*

(a) As a condition to providing the DIP Term Facility, the DIP Term Credit Parties have required that the Debtors obtain approval, (1) upon entry of (A) this Interim Order, (i) to borrow $16,000,000 in new principal amount of DIP Term Loans under the DIP Term Loan Facility (the "Interim Term Financing") with $15,000,000 of such proceeds to be utilized solely to pay down the Prepetition Revolving Loans, and (ii) $16,000,000 in principal

amount of Prepetition Term Loans shall be replaced and refinanced into DIP Term Loans (the "Interim Term Roll-Up"), and (B) the Final Order, any outstanding amount of Prepetition Term Secured Obligations shall be replaced and refinanced into DIP Term Obligations (together with the Interim Term Roll-Up, the "DIP Term Roll-Up Loans" and together with the ABL Roll-Up, the "Roll-Up"), and (2) in connection with entry of this Interim Order, all accrued interest, expenses, fees and other sums due and payable in respect of the Prepetition Term Loans shall be paid in full, in cash as of the Closing Date.

(b) The Interim Term Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the DIP Term Lenders to fund amounts, and provide certain other consideration to the Debtors under the DIP Term Facility, and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Term Secured Obligations or any accommodation made by the Prepetition Term Credit Parties. The Interim DIP Term Roll-Up Loans are justified because the DIP Term Facility will enable the Debtors to obtain urgently needed financing that they need to administer these Cases and fund their operations. Because the DIP Term Roll-Up Loans will be subject to the reservation of rights in paragraph 43 below, the DIP Term Roll-Up Loans will not prejudice the right of any party in interest.

J. **Adequate Protection**. Each Prepetition Agent, for the benefit of itself and its respective Prepetition ABL Secured Parties and Prepetition Term Secured Parties, is entitled to receive adequate protection to the extent of any Diminution in Value of its interests in the

Prepetition Collateral. Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection the Prepetition Secured Parties will receive (a) Adequate Protection Liens (as defined herein) and Adequate Protection Superpriority Claims (as defined herein), as more fully set forth in paragraphs 11 and 13 herein, and (b) as set forth herein, current payment of interest at the default rate, reasonable and documented fees and out-of-pocket expenses (including legal and other professionals' fees and expenses of the Prepetition ABL Agent and the Prepetition Term Agent whether arising before or after the Petition Date), as more fully set forth in paragraph 15 herein.

K. **Sections 506(c) and 552(b).** In light of: (i) the DIP Agents' and DIP Credit Parties' agreement that their liens and superpriority claims shall be subject to the Carve Out, (ii) the Prepetition Agents' and the Prepetition Secured Parties agreement that their liens and Adequate Protection Superpriority Claims shall be subject to the Carve Out and subordinate to the DIP Liens, DIP Superpriority Claims (as defined herein), and (iii) the payment of expenses as set forth in the Budget in accordance with and subject to the terms and conditions of this Interim Order, the DIP Documents, (a) subject to entry of a Final Order, the Prepetition Secured Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L. **Good Faith of the DIP Agents and DIP Credit Parties**.

(i) *Willingness to Provide Financing*. The DIP Credit Parties have indicated a willingness to provide financing to the Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facilities and the DIP Documents; (c) application of proceeds of DIP Collateral in accordance with paragraph 23 of this Interim Order, and, subject to entry of a Final Order, (1) an immediate roll-up of any remaining Prepetition Revolving Loans into DIP Revolving Loans, and (2) an immediate roll-up of any remaining Prepetition Term Secured Obligations into DIP Term Obligations; (d) satisfaction of the closing conditions set forth in the DIP Documents; and (e) findings by this Court that the DIP Facilities are essential to the Debtors' estates, that the DIP Agents and DIP Credit Parties are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agents' and DIP Credit Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii) *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms and conditions of the DIP Facilities and the DIP Documents, and the interest and fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facilities and the use of Cash Collateral were negotiated in good faith and at arms' length among

the Debtors, the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties, with the assistance and counsel of their respective advisors. Use of Cash Collateral and credit to be extended under the DIP Facilities shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

M. **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

N. **Interim Hearing**. Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 30 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Agent; (iv) counsel to the Prepetition Term Agent; and (v) all other parties entitled to notice under the Local Rules. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion, the DIP Declaration, the First Day Declaration, and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1. Interim ABL Financing Approved. The DIP Motion is granted, the Interim

ABL Financing and Interim Term Financing are authorized and approved, and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents and this Interim Order. All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled. Each of the Prepetition Agents has consented to entry of this Interim Order and approval of the DIP ABL Facility and DIP Term Facility, respectively, under the ICA.

**DIP Facilities Authorization**

2. Authorization of the DIP Facilities. The DIP Facilities, including the Interim ABL Financing, are hereby approved. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facilities and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Documents, including each Debtor providing its joint and several guarantee of all of the DIP Obligations and such acts as shall be necessary or desirable in order to effect the Interim ABL Financing. The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts become earned, due and payable and without need to obtain further Court approval, including closing fees, letter of credit fees (including issuance, fronting, and other

related charges), unused line fees, arrangement fees, structuring fees, servicing fees, audit fees, appraisal fees, liquidator fees, administrative agent's fees, the reasonable fees and disbursements of the DIP ABL Agent's and the DIP Term Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order and/or the DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order and/or the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3. Authorization to Borrow. To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Date (as defined herein), and subject to the terms, conditions, limitations on availability and reserves (as applicable) set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request extensions of credit (in the form of loans and letters of credit) up to an aggregate outstanding principal amount of not greater than (i) $131,000,000 at any one time outstanding under the DIP ABL Facility and (ii) $116,000,000 at any one time outstanding under the DIP Term Facility (less any outstanding

Prepetition Term Loans). No other corporate action is required for the Debtors to execute and deliver the DIP Documents, perform their obligations thereunder or request any extension of credit under the DIP Facilities as set forth herein.

4. DIP Obligations. The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including any trustee or other estate representative appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon entry of this Interim Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agents or any of the DIP Credit Parties, in each case, under, or secured by, the DIP Documents or this Interim Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents. Without limiting the foregoing, the DIP ABL Obligations shall include Letters of Credit, cash management, and bank product exposure and derivative and swap exposure and obligations (if any) to the extent described in, or secured by, the Prepetition ABL Documents (to the extent outstanding as of the Petition Date), and DIP ABL Documents (on and after the Petition Date), including all Other Liabilities (as defined in the DIP ABL Credit Agreement). Upon entry of this Interim Order, all cash management services, bank products and Letters of Credit issued for the account of the Debtors under the

Prepetition ABL Agreement shall continue in place and all obligations under or in connection therewith shall be subject to the DIP ABL Credit Agreement and shall constitute DIP ABL Obligations. The Interim ABL Roll-Up and the Interim Term Roll-Up are approved as provided, and on the terms contained, herein. The Debtors shall be jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date (as defined herein), except as provided in paragraphs 10 and 33 herein. No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens, and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 43 below.

5. DIP ABL Liens.

(a) As security for the DIP ABL Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d)

of the Bankruptcy Code, the DIP ABL Agent, for the benefit of itself and the DIP ABL Credit Parties, is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP ABL Liens") all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each Debtor, including: (a) Prepetition Collateral, (b) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Debtors, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (c) all owned real property interests, and all proceeds of leased real property; (d) all proceeds of claims or causes of actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral and any and all recoveries and settlements thereof; (e) subject to entry of a Final Order,

the proceeds ("Avoidance Proceeds") of any claims and causes of action to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (collectively, the "Avoidance Actions"), but not such Avoidance Actions themselves; and (f) all other Collateral (as defined in DIP Documents), in each case whether or not subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (the "DIP Collateral", with all property identified in this paragraph 5(a), to the extent it constitutes Prepetition ABL Priority Collateral, the "DIP ABL Priority Collateral"), subject to the Carve Out, the ICA, and the relative priorities set forth in the Lien Priority Annex. Notwithstanding the foregoing, DIP Collateral shall not include (i) the Debtors' real property leases, but shall include all proceeds of such leases, (ii) any contract or license under which the granting of the DIP Liens thereon would constitute a breach or termination thereof that would not be excused by operation of the Bankruptcy Code, but shall include the proceeds of such contracts and licenses, and (iii) any other assets or property specifically excluded under the DIP Documents.

(b) As security for the DIP Term Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Term Agent, for the benefit of itself and the DIP Term Credit Parties, is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Term Liens" and, together with the DIP ABL Liens, the "DIP Liens") the DIP Collateral,

with all property identified in this paragraph 5, to the extent constituting Term Priority Collateral (as defined in the ICA), the "DIP Term Priority Collateral" together with Prepetition Term Loan Priority Collateral "Term Priority Collateral"), subject to the Carve Out, the ICA, and the relative priorities set forth in the Lien Priority Annex.

(c) Effective upon the entry of this Interim Order, (i) all DIP Liens and the Carve Out shall each be and remain at all times senior to the Prepetition Liens, subject to the terms hereof (including the Lien Priority Annex and ICA), (ii) all existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements (including, without limitation, any intercompany subordination agreements), and freight forwarder agreements entered into or in connection with Prepetition Documents, and all existing Uniform Commercial Code and PPSA filings and all existing filings with the United States Patent and Trademark Office, the United States Copyright Office or the Canadian Intellectual Property Office with respect to the recordation of an interest in the intellectual property of the Debtors, which in each case were filed by one or both of the Prepetition Agents, shall in each case be deemed to be delivered and/or filed in connection with the DIP Facilities, shall constitute DIP Documents and shall remain in full force and effect without any further action by the Debtors, the DIP Agents or any other person, and in each case the DIP Agents shall be deemed to be a party thereto, (iii) any and all references in any such agreements

or documents referred to in clause (ii) above to the "Credit Agreement" shall hereafter be deemed to mean and refer to the Prepetition ABL Agreement, Prepetition Term Agreement, and the DIP Credit Agreements, and (iv) any and all references in any such agreements or documents referred to in clause (ii) above to the "Loan Documents" shall hereafter be deemed to mean and refer to the Prepetition Documents and the DIP Documents, in each case as amended, modified, supplemented or restated and in effect from time to time.

6. DIP Lien Priority. The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject to the Carve Out, and the relative priorities set forth in the Lien Priority Annex. Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens. Except as otherwise expressly set out herein: (x) the DIP Agents, the DIP Lenders, the Prepetition ABL Agent, the Prepetition Term Agent, and the Prepetition Secured Parties shall remain bound by the

terms and conditions set forth in the ICA, including with respect to the Prepetition Collateral and the DIP Collateral, (y) nothing contained in this Interim Order shall be deemed to abrogate or limit the respective rights, claims and obligations of each of the DIP Agents, the DIP Lenders, the Prepetition ABL Agent, the Prepetition Term Agent, and the Prepetition Secured Parties under the ICA, and (z) the ICA shall apply and govern the respective rights, obligations, and priorities of each of the DIP Agents, the DIP Lenders, the Prepetition ABL Agent, the Prepetition Term Agent, and the Prepetition Secured Parties with respect to the Prepetition Collateral and the DIP Collateral in these Cases. All loans and advances made by the DIP Agents and/or DIP Lenders pursuant to and under the DIP Facilities and all other DIP Obligations outstanding thereunder shall be deemed to be "ABL Obligations" or "Term Obligations" as applicable under the ICA. The DIP ABL Agent is hereby deemed to be the successor to the Prepetition ABL Agent and the DIP Term Agent is hereby deemed to be the successor to the Prepetition Term Agent under the terms of the ICA and each shall have all of the rights, remedies and obligations accorded to the "ABL Agent" or "Term Agent", as applicable, under the ICA. Except as expressly set forth herein, nothing in this Interim Order shall be deemed to impair or otherwise modify the rights of the Prepetition ABL Agent or the Prepetition Term Agent under the ICA as in effect prior to the date hereof.

7. Superpriority Claims.

(a) *DIP ABL Superpriority Claim.* Upon entry of this Interim Order, the DIP ABL Agent, on behalf of itself and its respective DIP ABL Credit Parties is hereby granted, pursuant to section 364(c)(1), 503, and 507 of the Bankruptcy Code, an allowed superpriority

administrative expense claim in each of the Cases and any Successor Cases (collectively, the "DIP ABL Superpriority Claims") for all DIP ABL Obligations subject only to paragraph 7(b) hereof, the Carve Out, and the relative priorities in the Lien Priority Annex, having priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code;

(b) Upon entry of this Interim Order, the DIP Term Agent, on behalf of itself and its respective DIP Term Credit Parties is hereby granted, pursuant to section 364(c)(1), 503, and 507 of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "DIP Term Superpriority Claims" and, together with the DIP ABL Superpriority Claims, the "DIP Superpriority Claims") for all DIP Term Obligations subject only to paragraph 7(a) hereto, the Carve Out, and the relative priorities set forth in the Lien Priority Annex, having priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other

provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code.

8. No Obligation to Extend Credit. The DIP Agents and DIP Credit Parties shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agents and in accordance with the terms of the applicable DIP Credit Agreement. Consistent with the DIP Documents (including the ICA Acknowledgment), the prepetition Reserves (as defined in the Prepetition ABL Credit Agreement or the Prepetition Term Credit Agreement, as applicable) set forth on **Exhibit D** hereto shall (i) in the case of those Reserves listed in Section (i) of **Exhibit D**, be released as of the closing date of the DIP Credit Agreements and (ii) in the case of those Reserves listed in Section (ii) of **Exhibit D**, be released on the dates outlined for such Reserve in such Section and, in each case, such prepetition Reserves shall not be instituted or reinstituted, except as permitted under the ICA Acknowledgment, in accordance with the DIP Credit Documents (including the ICA Acknowledgment).

9. Use of Proceeds of DIP Facilities. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facilities, in accordance with the Budget (subject to such variances as are permitted in the DIP Credit Agreements), only for the purposes specifically set forth in this Interim Order and the DIP Documents, and in compliance with the

terms and conditions in this Interim Order and the DIP Documents.

**Authorization to Use Cash Collateral**

10. Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order, the DIP Facilities, and the DIP Documents and in accordance with the Budget (subject to such variances as are permitted in the DIP Documents), the Debtors are authorized to use Cash Collateral until the Termination Date; *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely to meet payroll obligations (other than severance) and pay expenses that the DIP ABL Agent approves as critical to keeping the Debtors' business operating in accordance with the Budget, or as otherwise agreed by the DIP Agents in their sole discretion, and the Carve Out Account (as defined herein) shall be funded (without duplication of amounts funded to the Professional Fee Escrow Account (as defined herein)) following delivery of the Carve Out Trigger Notice (as defined herein) as provided in paragraph 40 of this Interim Order. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facilities, the DIP Documents, and in accordance with the Budget.

11. Adequate Protection Liens.

(a) *ABL Adequate Protection Liens*. Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Secured Parties in the Prepetition Collateral solely to the extent of any

Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "ABL Adequate Protection Liens")

(b) *Term Adequate Protection Liens*. Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Secured Parties in the Prepetition Collateral solely to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Agent, for the benefit of itself and the Prepetition Term Secured Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "Term Adequate Protection Liens" and together with the ABL Adequate Protection Liens, the "Adequate Protection Liens").

12. Priority of Adequate Protection Liens.

(a) The Adequate Protection Liens shall be subject to the Carve Out, and the relative priorities set forth in the Lien Priority Annex, and otherwise the Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(b) Except as provided herein or in the DIP Credit Agreements, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and

enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

13. Adequate Protection Superpriority Claims.

(a) As further adequate protection of the interests of the Prepetition ABL Secured Parties in the Prepetition Collateral solely to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Secured Parties, is hereby granted an allowed administrative claim against the Debtors' estates under Section 503 of the Bankruptcy Code with priority over all administrative expense claim and unsecured claims in each of the Cases and any Successor Cases as provided by Section 507(b) of the Bankruptcy Code, subject to the Carve Out, and relative priorities set forth in the Lien Priority Annex (the "ABL Adequate Protection Superpriority Claim")

(b) As further adequate protection of the interests of the Prepetition Term Secured Parties in the Prepetition Collateral solely to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Agent, on behalf of itself and the Prepetition Term Secured Parties, is hereby granted an allowed administrative claim against the Debtors' estates under Section 503 of the Bankruptcy Code with

priority over all administrative expense claim and unsecured claims in each of the Cases and any Successor Cases as provided by Section 507(b) of the Bankruptcy Code, subject to the Carve Out, and relative priorities set forth in the Lien Priority Annex (the "Term Adequate Protection Superpriority Claim" together with the ABL Adequate Protection Superpriority Claim, the "Adequate Protection Superpriority Claims").

14. Priority of the Adequate Protection Superpriority Claims. The Adequate Protection Superpriority Claims shall be subject to the Carve Out and the relative priorities set forth in the Lien Priority Annex and otherwise the Adequate Protection Superpriority Claims shall have priority over all other administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code.

15. Adequate Protection Payments and Protections for Prepetition Secured Parties. As further adequate protection, the Debtors are authorized and directed to provide adequate protection to the Prepetition Secured Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (i) to the extent any Prepetition Secured Obligations remain outstanding after entry of this Interim Order, interest (at the default rate) and principal due under the Prepetition ABL Documents and Prepetition Term Documents, subject to the rights preserved in paragraph 43 below, (ii) immediately upon entry of

this Interim Order, payment of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent and the Prepetition Term Agent arising prior to the entry of this Interim Order, and (iii) the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition ABL Agent and the Prepetition Term Agent arising subsequent to the entry of this Interim Order, subject to the ICA. As part of the adequate protection provided under this paragraph 15, the Prepetition ABL Agent, the Prepetition Term Agent, and, subject to the terms of the Prepetition ABL Agreement and Prepetition Term Agreement, the Prepetition Secured Parties, shall be entitled to current payment of all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred in connection with contingent indemnification, reimbursement or similar continuing obligations arising under the Prepetition ABL Agreement, the Prepetition Term Agreement, the other Prepetition Documents or otherwise in respect of the Prepetition Secured Obligations (the "Prepetition Indemnification Obligations"), including in connection with or responding to (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 43 hereof, or (2) any Challenge (as defined herein) against the Prepetition ABL Agent, the Prepetition Term Agent, or Prepetition Secured Parties related to the

Prepetition Documents, the Prepetition Secured Obligations, or the Prepetition Liens granted to the Prepetition Agents, as applicable, whether in these Cases or independently in another forum, court, or venue. Subject to paragraph 36 of this Interim Order, payment of costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred in connection with the Prepetition Indemnification Obligations shall be made as and when they arise, without further notice to or consent from the Debtors, the Committee (if appointed), or any other parties in interest and without further order of this Court; *provided*, that (i) any such indemnification claims shall be subject to the terms of the applicable Prepetition Documents (including with respect to application of proceeds), (ii) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 36 hereof, and (iii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).

16. [Reserved].

17. Adequate Protection Reservation. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases. The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected. Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral

or for additional adequate protection, and the rights of all parties-in-interest are reserved with respect thereto.

**Provisions Common to DIP Facilities**
**<u>and Use of Cash Collateral</u>**

18. <u>Amendment of the DIP Documents</u>. The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) non-material or non-adverse to the Debtors and (b) in accordance with the DIP Documents. In the case of a material amendment, modification, or supplement to the DIP Documents that is adverse to the Debtors' estates, the Debtors shall provide notice (which may be provided through electronic mail or facsimile) to counsel to the Committee (if appointed), the DIP Agents, the Prepetition Agents, and the U.S. Trustee (collectively, the "<u>Notice Parties</u>"), each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement. If all Notice Parties indicate that they have no objection to the amendment, modification or supplement (or if no objections are timely received), the Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution. If a Notice Party timely objects to such amendment, modification or supplement, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; *provided* that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard. Any material modification, amendment or supplement that becomes effective in accordance with this paragraph 18 shall be

filed with the Court.

19. Budget Maintenance. The use of borrowings and letters of credit under the DIP Facilities and the use of Cash Collateral shall be in accordance with the Budget, subject in all respects to the variances set forth in the DIP Credit Agreements. As set forth in the DIP Credit Agreements, the Budget shall depict, on a weekly and line item basis, (a) projected cash receipts, (b) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees of the Debtors' professionals and advisors and any Information Officer (as defined in the DIP Credit Agreements) and its counsel, and any other fees and expenses relating to the DIP Credit Agreements, (c) projected net cash flow, (d) projected inventory receipts and levels, and (e) projected U.S. Revolving Borrowing Base, Canadian Revolving Borrowing Base, Term Borrowing Base and Excess Availability (each as defined in the DIP Credit Agreements) for the first thirteen (13) weeks from the Closing Date, with a break-out for stores being closed or proposed to be closed, and shall be in form and substance satisfactory to, and approved by, the DIP Agents and Prepetition Agents in their sole discretion. On or before Wednesday of each week, the Debtors shall deliver to the DIP Agents and Prepetition Agents an Approved Budget Variance Report (as defined in the DIP ABL Credit Agreement) (with delivery of the same to the U.S. Trustee, any Information Officer, and the Committee, if any, each week after delivery to the DIP Agents). During the fifth (5th) week of the initial Budget and thereafter during the fifth (5th) week of each subsequent Budget, the Debtors shall submit a budget for the next successive 13-week period (it being understood that, unless otherwise agreed by the DIP

Agents and Prepetition Agents, each updated budget shall only add projections for periods not previously covered by any Budget and shall not modify any prior periods) to the DIP Agents and Prepetition Agents (with delivery of the same to the U.S. Trustee, any Information Officer, and the Committee, if any, after delivery to the DIP Agents), which budget shall be in form and substance satisfactory to and approved by the DIP Agents and Prepetition Agents in accordance with the DIP Credit Agreements. Until a budget has been approved, the existing Budget shall remain in full force and effect. Each Budget delivered to the DIP Agents and Prepetition Agents shall be accompanied by such supporting documentation as reasonably requested by the DIP Agents and Prepetition Agents and shall be prepared in good faith based upon assumptions the Debtors believe to be reasonable. A copy of any Budget (or updated Budget) shall be delivered to counsel for the Committee (if appointed), any Information Officer, and the U.S. Trustee, after (or if) it has been approved by the DIP Agents and Prepetition Agents.

20. Budget Compliance. It shall be an Event of Default if the Debtors fail to comply with the Budget, on the terms and subject to the variances set forth in the DIP Credit Agreements. The Debtors shall provide all reports and other information as required in the DIP Credit Agreements (subject to the grace periods, if any, provided therein).

21. Modification of Automatic Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Adequate Protection Superpriority

Claims; (b) permit the Debtors to perform such acts as the DIP ABL Agent, DIP Term Agent, the Prepetition ABL Agent and Prepetition Term Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agents, DIP Credit Parties, and Prepetition Secured Parties under the DIP Documents, the DIP Facilities, and this Interim Order, as applicable; and (d) authorize the Debtors to pay, and the DIP ABL Agent, the DIP Term Agent, the DIP Credit Parties, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order and the DIP Documents.

22. Perfection of DIP Liens and Adequate Protection Liens. This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to evidence or entitle the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agents and Prepetition Agents is authorized to file, in the applicable registries of deeds and other appropriate public records, as it in its sole discretion deems necessary or advisable, (i) notice of this Interim Order, and (ii) such

financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agents and the Prepetition Agents all such financing statements, mortgages, notices, and other documents as the DIP Agents, and the Prepetition Agents may reasonably request. Each DIP Agent, and Prepetition Agent, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument. To the extent that a Prepetition Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other collateral documents or relevant Prepetition Documents then automatically and without further action, (i) the DIP Agents shall be deemed to be a secured party under such documents, (ii) the DIP Facilities, together with any refinancings or replacements thereof, shall be deemed to be secured obligations under such documents, and (iii) the applicable provisions of such documents shall apply to the DIP Facilities; all as fully and completely as if each DIP Agent was an original secured party in such documents and each DIP

Facility was an original secured obligation in such documents. To the extent a Prepetition Agent is listed as loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agents shall also be deemed to be the secured party under such documents or to be the loss payee or additional insured, as applicable. The Prepetition Agents shall serve as agent for the DIP Agents for purposes of perfecting the DIP Agents' liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Interim Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

23. Application of Proceeds of DIP Collateral. As a condition to the entry of the DIP Documents, the extension of credit under the DIP Facilities and the authorization to use Cash Collateral, the Debtors have agreed that upon entry of this Interim Order, (i) all proceeds of DIP ABL Priority Collateral received by the DIP ABL Agent or any other Credit Party (as defined in the DIP ABL Credit Agreement) and all proceeds realized by the Debtors on account of the DIP ABL Priority Collateral (whether pursuant to cash dominion or arising from realization on DIP ABL Priority Collateral, setoff or otherwise) shall be applied first to the Prepetition ABL Secured Obligations until paid in full in cash, and second, to the DIP ABL Obligations until paid in full in cash, subject to and as more specifically set forth in the DIP ABL Credit Agreement; and (ii) all net proceeds of Term Priority Collateral shall be deposited into the Term Priority Account; provided, that (a) until the occurrence of a Termination Date under the DIP Term Facility the proceeds of Franchise Receivables (as defined in the ICA) shall be transferred to the Debtors' operating account and may be used in accordance with the Budget; and (b) net proceeds of all other

Term Priority Collateral may be applied in accordance with the DIP Term Credit Agreement and the ICA.

24. Protections of Rights of DIP Agents, DIP Credit Parties and Prepetition Secured Parties.

(a) Unless the DIP ABL Agent, the DIP Term Agent, and the Prepetition Agents, as applicable, shall have provided their prior written consent, or all DIP Obligations and all Prepetition Secured Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly Paid in Full[2] and the lending commitments under the DIP Facilities have terminated, it shall be an Event of Default if any order shall have been entered in any of these Cases or any Successor Cases (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage,

[2] "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, prepayment premiums, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted) under the applicable credit facility, the cash collateralization or repayment in full in cash of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case in accordance with the terms of the applicable credit facility. No facility shall be deemed to have been Paid in Full until such time as, with respect to the applicable facility, (a) the commitments to lend thereunder have been terminated, (b) with respect to the Challenge Deadline (i) the Challenge Deadline shall have occurred without the timely and proper commencement of a Challenge or (ii) if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge and (c) the Debtors have entered into a customary and mutually agreeable payoff letter with the applicable DIP Credit Parties and/or Prepetition Secured Parties providing for a release of the applicable DIP Credit Parties and/or Prepetition Secured Parties from any further obligations or liabilities of any kind, including with respect to the Carve Out.

or collateral interest or other lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents and this Interim Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the DIP ABL Agent's, the DIP Term Agent's, the DIP Credit Parties', or the Prepetition Secured Parties' rights under this Interim Order, the DIP Documents or the Prepetition Documents, as applicable, with respect any DIP Obligations or Prepetition Secured Obligations.

(b) Until the DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly Paid in Full in cash, the Debtors shall (i) maintain books, records, and accounts to the extent and as required by the DIP Documents (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the DIP Agents all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by either of the DIP Agents) to provide under the DIP Documents or the provisions of this Interim Order; (iii) upon reasonable

advance notice, permit the DIP ABL Agent, DIP Term Agent and each such Agent's respective advisors to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide information with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Documents; (iv) permit the DIP Agents, the Prepetition Agents and each such Agent's respective advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (v) upon reasonable advance notice, permit the DIP Agents and the Prepetition Agents to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, inventory appraisals, real estate appraisals, intellectual property appraisals at reasonable times in respect of any or all of the DIP Collateral and Prepetition Collateral in accordance with the DIP Documents and the Prepetition Documents.

25. Credit Bidding. Subject to paragraph 43 hereof, in connection with any sale process authorized by the Court, (i) the DIP Agents, DIP Credit Parties, and the Prepetition Agents may credit bid up to the full amount of their applicable outstanding DIP Obligations or Prepetition Secured Obligations, in each case including any accrued interest and expenses (each a "Credit Bid") in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale

is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, subject in each case to the rights and duties of the parties under the DIP Documents and the Prepetition Documents and to the provision of consideration sufficient to pay in full in cash any senior liens on the collateral that is subject to the credit bid, and (ii) each of the DIP Agents, the DIP Credit Parties, and the Prepetition Agents shall be considered a "Qualified Bidder" with respect to its rights to acquire all or any of the assets by Credit Bid. The Prepetition ABL Secured Parties and DIP ABL Credit Parties may not Credit Bid for Term Priority Collateral unless in connection with such Credit Bid the Prepetition Term Secured Obligations and DIP Term Obligations are paid in full, in cash, and, the Prepetition Term Secured Parties and DIP Term Secured Parties may not Credit Bid for DIP ABL Priority Collateral unless in connection with such Credit Bid the Prepetition ABL Secured Obligations and DIP ABL Obligations are paid in full, in cash, upon the closing of any such transaction.

26. Proceeds of Subsequent Financing. If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the DIP Documents at any time prior to the indefeasible repayment in full of all DIP Obligations, and the termination of the DIP Agents' and the DIP Credit Parties' obligations to extend credit under the respective DIP Facilities, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such

credit or debt shall immediately be turned over to the applicable DIP Agent to be applied in accordance with this Interim Order, the DIP Documents, and the relative priorities set forth in the Lien Priority Annex.

27. Cash Collection. From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP ABL Priority Collateral (except as otherwise set forth in the DIP Credit Agreements) that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same lock-box and/or deposit accounts into which the collections and proceeds of Prepetition ABL Priority Collateral were deposited under the Prepetition ABL Documents (or in such other accounts as are designated by the DIP ABL Agent from time to time) (collectively, the "Cash Collection Accounts") (all collections and proceeds of any Term Priority Collateral shall be deposited as set forth in paragraph 23 hereof), which accounts (except as otherwise set forth in the DIP ABL Credit Agreement) shall be subject to the sole dominion and control of the DIP ABL Agent. All proceeds and other amounts in the Cash Collection Accounts shall be remitted to the DIP ABL Agent for application in accordance with the DIP Documents, this Interim Order, and the relative priorities set forth in the Lien Priority Annex. Unless otherwise agreed to in writing by the DIP Agents, or otherwise provided for herein, the Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order"). The Debtors and the financial institutions where the Cash Collection Accounts are maintained (including those accounts identified in any Cash Management Order) are authorized

and directed to remit, without offset or deduction, funds in such Cash Collection Accounts upon receipt of any direction to that effect from the DIP ABL Agent.

28. Maintenance of DIP Collateral. Until the indefeasible Payment in Full of all DIP Obligations, all Prepetition Secured Obligations, and the termination of the DIP Agents' and the DIP Credit Parties' obligations to extend credit under the DIP Facilities, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facilities or the Prepetition Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order, or as otherwise required by the DIP Documents or this Interim Order.

29. Disposition of DIP Collateral. Until the indefeasible Payment in Full of all DIP Obligations and Prepetition Secured Obligations, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Agents and Prepetition Agents, as applicable (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agents, DIP Credit Parties, the Prepetition Agents, or the Prepetition Secured Parties, or from any order of this Court), except as otherwise provided for in the DIP Documents or otherwise ordered by the Court.

30. Termination Date. Upon the occurrence of a Termination Date (as defined herein) under either the DIP ABL Credit Agreement and/or DIP Term Credit Agreement: (a) all applicable DIP ABL Obligations or DIP Term Obligations, as applicable, shall be immediately

due and payable, all commitments to extend credit under the DIP ABL Facility and/or DIP Term Facility, as applicable, will terminate, other than as required in paragraph 40 hereof with respect to the Carve Out, all treasury and cash management, hedging obligations and bank product obligations constituting Obligations (as defined in the applicable DIP Credit Agreement) shall be cash collateralized, and all letters of credit and bankers' acceptances outstanding shall be cash collateralized in an amount equal to 105% of the face amount thereof (and in the case of letters of credit denominated in a currency other than Dollars, in an amount at least equal to 110%), and once funded such cash collateral shall not be subject to or subordinate to the Carve Out; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral strictly in accordance with paragraphs 10 and 33 of this Interim Order; *provided further* that following delivery of the Carve Out Trigger Notice (as defined herein), the Debtors shall be entitled to fund the Carve Out Account (as defined herein) in accordance with paragraph 40 of this Interim Order; and (c) upon the expiration of the Remedies Notice Period, the DIP Agents, as applicable, shall be entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim Order (including paragraph 33 hereof), subject to the Canadian Recognition Orders with respect to the Collateral of the Canadian Loan Parties (as defined in the DIP Credit Agreements) or Collateral otherwise located in Canada.

31. Events of Default. The occurrence of any of the following events, unless waived by the DIP Agents and Prepetition Agents in writing and in accordance with the terms of

the DIP Credit Agreements, shall constitute an event of default (an "Event of Default"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order, including the failure to comply with the Case Milestones (as defined herein), or (b) the occurrence of an Event of Default (as defined in the DIP Credit Agreements). For the avoidance of doubt, each Prepetition Agent shall be entitled to declare an Event of Default (as defined in the DIP Credit Agreements) with respect to its applicable DIP Credit Facility, but in no event shall (i) the DIP Term Agent or Prepetition Term Agent be authorized to terminate the DIP ABL Documents, or (ii) the DIP ABL Agent or Prepetition ABL Agent be authorized to terminate the DIP Term Documents.

32. Case Milestones. As a condition to the DIP Facilities and the use of Cash Collateral, if shall be an Event of Default if the Debtors fail to comply with the Milestones (as defined in the DIP Credit Agreements), which are set forth on **Exhibit C** hereto (as may be amended from time to time in accordance with the DIP Documents, the "Case Milestones").

33. Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default, under the applicable DIP Credit Agreement, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order (and, with respect to the Collateral of the Canadian Loan Parties or Collateral otherwise located in Canada, the Canadian Recognition Orders, (1) (i) the DIP ABL Agent and/or Prepetition ABL Agent may declare (an "ABL Termination Declaration") that all DIP ABL

Obligations and Prepetition ABL Secured Obligations are immediately due and payable; the termination, reduction, or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP ABL Facility; and termination of the DIP ABL Facility as to any future liability or obligation of the DIP ABL Agent and DIP ABL Credit Parties, and/or (ii) the DIP Term Agent and/or the Prepetition Term Agent may declare (a "Term Termination Declaration" and, together with the ABL Termination Declaration, each, a "Termination Declaration") all DIP Term Obligations and Prepetition Term Secured Obligations to be immediately due and payable; and the termination of the DIP Term Facility and DIP Term Documents as to any future liability or obligation of the DIP Term Agent, and the DIP Term Credit Parties, but in both (i) and/or (ii), without affecting any of the DIP Liens or the DIP Obligations, (2) that the application of the Carve Out has occurred through the delivery by one of the DIP Agents or Prepetition Agents of the Carve Out Trigger Notice (as defined herein) to the Debtors, the other DIP Agent, the U.S. Trustee, any Information Officer, and counsel to the Committee (if appointed); and (3) any of the DIP Agents or Prepetition Agents may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (the earliest date on which a Termination Declaration is delivered with respect to a DIP Facility, the "Termination Date" for such DIP Facility); *provided* that, during the Remedies Notice Period, the Debtors may use Cash Collateral, as set forth in paragraph 10 hereof to fund the Carve Out. Each Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee (if appointed), counsel to the non-declaring DIP Agent, any Information

Officer, and the U.S. Trustee. The automatic stay in the Cases otherwise applicable to the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties is hereby modified so that three (3) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"), the DIP Agents and the DIP Credit Parties shall be entitled to exercise their rights and remedies in accordance with the DIP Documents and this Interim Order to satisfy their respective DIP Obligations, DIP Superpriority Claims, and DIP Liens; *provided* that upon the Payment in Full of the DIP Obligations, to the extent there are Prepetition Secured Obligations outstanding, the Prepetition Secured Parties shall be entitled to exercise their rights and remedies in accordance with the Prepetition Documents and this Interim Order, subject to the ICA, to satisfy the Prepetition Secured Obligations, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims. During the Remedies Notice Period, the Debtors and/or the Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period; *provided, further*, that the Debtors have agreed not to raise in connection with any such emergency hearing any argument that this Interim Order or any of the DIP Documents should be modified or that the provisions thereof are unenforceable. Upon expiration of the Remedies Notice Period, unless during the Remedies Notice Period the Court orders otherwise, (i) the automatic stay, as to DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties, as applicable, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, (ii) the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP Documents or the Prepetition

Documents, as applicable, subject to the ICA, and as otherwise available at law without further order of or application or motion to the Court, and (iii) the DIP Agents and any liquidator or other professional will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations that the Debtors have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP Collateral, including pursuant to any Court approved sale process. Notwithstanding the foregoing, the DIP Agents, DIP Credit Parties, and Prepetition Secured Parties may only enter upon the Debtors' leased premises following an Event of Default in accordance with (a) a separate written agreement between the DIP Agents, DIP Credit Parties, or Prepetition Secured Parties, as applicable, and the applicable landlord, (b) pre-existing rights of the DIP Agents, DIP Credit Parties, or Prepetition Secured Parties under applicable non-bankruptcy law, or (c) entry of a further order of this Court after notice to the applicable landlord and an opportunity to be heard.

34. [Reserved].

35. <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>. The DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with sections 364(e) and 363(m) of the Bankruptcy Code, in the event any or all of the

provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code to the maximum extent set forth therein.

36. DIP and Other Expenses. The Debtors are authorized and directed to pay and the DIP Agents and Prepetition Agents, as applicable, are authorized to make advances or charges against the applicable loan account to pay (a) all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition Secured Parties in accordance with the Prepetition Documents subject to the ICA; and (b) all reasonable and documented prepetition and postpetition professional and advisory fees and out-of-pocket expenses of the DIP Agents, and their respective DIP Lenders, in connection with the DIP Facilities, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of such fees and expenses. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Agents, the DIP Lenders, and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information

constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for the Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Debtors. Any objections raised by the Debtors, the U.S. Trustee, or the Committee (if appointed) with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice; if after ten (10) days such objection remains unresolved, it will be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties incurred on or prior to such date without the need for any professional engaged by the DIP Agents, the DIP Credit Parties, or the Prepetition Secured Parties to first deliver a copy of its invoice as provided for herein. No attorney or advisor to the DIP Agents, the DIP Credit Parties or any Prepetition Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the (i) DIP ABL Agent, the DIP Term Agent or DIP Credit Parties in connection with or with respect to the DIP Facilities; and (ii) Prepetition Secured Parties in connection or with respect to these matters, are hereby approved in full and shall not be subject to

avoidance, disgorgement or any similar form of recovery by the Debtors or any other person (subject to paragraph 43 hereof solely with respect to the Prepetition Secured Obligations, including with respect to the Roll-Up).

37. Indemnification.

(a) The Debtors shall indemnify and hold harmless the DIP ABL Agent and the DIP ABL Credit Parties in accordance with the terms and conditions of the DIP ABL Credit Agreement.

(b) The Debtors shall indemnify and hold harmless the DIP Term Agent and the DIP Term Credit Parties in accordance with the terms and conditions of the DIP Term Credit Agreement.

38. Proofs of Claim. The DIP Agents, the DIP Credit Parties, and Prepetition Secured Parties shall not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein. Each of the Prepetition Agents on behalf of itself and the Prepetition Secured Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases with respect to the Prepetition Secured Obligations. Any proof of claim filed by the Prepetition Agents shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to any claim of the DIP Agents, the DIP Credit Parties, and the Prepetition

Secured Parties arising under, or in connection with, the DIP Documents or the Prepetition Documents, as applicable.

39. [Reserved].

40. Carve Out.

(a) DIP Carve Out. As used in this Interim Order, the "Carve Out" means, subject, in each case, to application of any retainers that may be held by the applicable professionals, without duplication: (i) unpaid professional fees and disbursements incurred by the Debtors (including in the Recognition Proceedings), any Information Officer and its counsel, and any statutory committees appointed in the Cases pursuant to sections 327 and 1102 of the Bankruptcy Code (the "Case Professionals") at any time prior to the delivery of the Carve Out Trigger Notice (as defined below) to the extent (A) in the case of Case Professionals other than the professionals retained by the Debtors in the Recognition Proceedings, the Information Officer and the Information Officer's counsel, allowed by this Court, and (B) in the case of the professionals retained by the Debtors in the Recognition Proceedings, the Information Officer and the Information Officer's counsel, permitted under the Canadian Supplemental Order (the "Allowed Professional Fees); (ii) after delivery of a notice by any of the DIP Agents or Prepetition Agents, pursuant to the applicable DIP Credit Agreement or Prepetition Documents, to the Debtors that an Event of Default has occurred and is continuing and that the application of the Carve Out has occurred (the "Carve Out Trigger Notice"), the payment of allowed (or in the case of the professionals retained by the Debtors in the Recognition Proceedings, the Information Officer and

the Information Officer's counsel, permitted under the Canadian Supplemental Order) and unpaid professional fees and disbursements incurred by the Case Professionals following the delivery of the Carve Out Trigger Notice (the "Carve Out Trigger Date") in an aggregate amount not in excess of $1,500,000 (the "Wind Down Carve Out Amount"), *plus* (iii) the payment of fees pursuant to 28 U.S.C. § 1930(a) and any fees required to be paid to the Clerk of the Court, which fees shall not be limited to amounts that may be set forth in the Budget, and the reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code. The Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, as set forth in the Lien Priority Annex.

(b) Delivery of Weekly Statements. Not later than 2:00 p.m. New York time on the last business day of each week starting with the second week following the Petition Date, each Case Professional shall deliver to the Debtors, the DIP Agents, and the Prepetition Agents, a statement setting forth the amount of the fees and expenses (collectively, "Professional Fees") incurred during the preceding week (or since the Petition Date in the case of the first such statement) by such Case Professional (through Saturday of such week, the "Calculation Date"), along with a cumulative total and a statement of the amount of such fees and expenses which have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided that* within one business day of the Carve Out Trigger Date, each Case Professional shall deliver an additional Weekly Statement setting forth the amount and a description of the fees and expenses incurred during the period commencing on the calendar day after the prior Calculation Date and

concluding on the Carve Out Trigger Date; *provided further* that if any Case Professional fails to deliver a Weekly Statement when due, such Case Professional's entitlement (if any) to any funds in the Carve Out Account shall be limited to the Budget for such Case Professional for such week. None of the DIP Credit Parties or the Prepetition Secured Parties shall be responsible for funding into the Carve Out Account any "success", "restructuring", "transaction" or similar fee payable to the Debtors' investment banker or financial advisor, and in no event shall any such amounts be paid out of the Carve Out or any funds in the Carve Out Account, as of the Calculation Date prior to the Carve Out Trigger Date. For the avoidance of doubt, the DIP Agents shall be entitled to maintain a reserve against the borrowing base, and the Debtors shall reflect in each borrowing base report delivered to the DIP Agents and Prepetition Agents by the Debtors, an amount equal to (i) the Wind Down Carve Out Amount, *plus* (ii) any additional amount to the extent of any insufficient funding of the Professional Fee Escrow Account (as defined below) as of the most recent Calculation Date, *plus* (iii) the amounts contemplated under paragraph (a)(iii) above, *plus* (iv) an amount equal to the amount of fees and expenses set forth in the Budget for the Case Professionals for the first two weeks following the Calculation Date.

(c) Professional Fee Escrow Account. Notwithstanding anything to the contrary contained in this Interim Order, until the Carve Out Trigger Date, the Debtors shall be permitted to borrow under the DIP ABL Facility or use Cash Collateral, as applicable, in accordance with this Interim Order, on a weekly basis to fund and maintain an amount equal to the greater of (a) the budgeted amount of unpaid Professional Fees through the prior week, and (b) the

amount of unpaid fees and expense incurred through the prior week for Case Professionals set forth in the Weekly Statements (provided, that if a Case Professional fails to timely submit a Weekly Statement for a given week, solely the budgeted amount of unpaid Professional Fees for such Case Professional for the prior week shall be funded) into a segregated non-interest bearing account and such funds held in escrow solely for the benefit of the Case Professionals (the "Professional Fee Escrow Account"). The Debtors shall be permitted to pay, or cause to be paid from the Professional Fee Escrow Account, as and when the same may become due and payable, the allowed professional fees of Case Professionals regardless of whether an Event of Default or the Termination Date has occurred. None of the provisions of this Interim Order or any DIP Documents shall prohibit or restrict the payment of the fees and expenses of any Case Professionals from any retainers held by such Case Professional. Any amounts remaining in the Professional Fee Escrow Account after the payment in full of (i) the allowed professional fees of Case Professionals for the period prior to the Carve Out Trigger Date pursuant to, other than any of the professionals retained by the Debtors in the Recognition Proceedings, the Information Officer, and the Information Officer's counsel, final fee applications and orders, and (ii) the amounts secured by the CCAA Priority Charges, shall be returned to the Debtors, the amounts which shall be applied in accordance with paragraph 23 hereof. Notwithstanding anything to the contrary in this Interim Order, the fees and disbursements of the professionals retained by the Debtors in the Recognition Proceedings, the Information Officer and the Information Officer's counsel shall, in accordance with the Canadian Supplemental Order (as defined in the DIP Credit Agreements), not be subject

to approval by the Bankruptcy Court.

(d) Payment of Allowed Professional Fees. Notwithstanding the foregoing, so long as no Carve Out Trigger Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code or the Canadian Supplemental Order (as applicable), as the same may be due and payable and otherwise allowed and payable by order of the Court or the Canadian Court (as applicable), and the same shall not reduce the Wind Down Carve Out Amount. Subject to the CCAA Priority Charges, all such payments shall be made solely from the Professional Fee Escrow Account. No portion of the Carve Out may be used in contravention of the restrictions or the limitations on the use of the Carve Out set forth in this Interim Order.

(e) No Direct Obligation to Pay Professional Fees. Except for funding and/or permitting the funding of the Carve Out Account (as defined herein) and the Professional Fee Escrow Account in accordance with the terms hereof, the DIP Agents, the DIP Credit Parties and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agents, the DIP Credit Parties or the Prepetition Secured Parties, in any way to directly pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f) Funding of Carve Out Following Delivery of Carve Out Trigger Notice. Delivery of the Carve Out Trigger Notice by the DIP Agents or Prepetition Agents to the Debtors shall be deemed a draw request and notice of borrowing by the Debtors for DIP Revolving Loans under the DIP ABL Credit Agreement, or the use of Cash Collateral, in an amount equal to the Carve Out, but without duplication of any amounts that were previously funded into the Professional Fee Escrow Account. The funded amounts in respect of the Carve Out shall be deposited and held in a segregated non-interest bearing account (the "Carve Out Account"), such account being the Professional Fee Escrow Account.

(g) Payment of Carve Out After Carve Out Trigger Notice. Any payment or reimbursement made on or after the delivery of the Carve Out Trigger Notice in respect of any Allowed Professional Fees incurred after the Carve Out Trigger Date shall permanently reduce the Wind Down Carve Out Amount on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to and made a part of the DIP ABL Obligations, which obligations shall be secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code and applicable law.

41. Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out. The DIP Facilities, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) preventing, hindering, or delaying any of the DIP Agents, the DIP Credit Parties', or the Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral; (b) using or seeking to use Cash Collateral except as

provided for in this Interim Order and the DIP Documents; (c) except as permitted in the DIP Documents, selling or otherwise disposing of DIP Collateral without the consent of the DIP Agents; (d) except as permitted in the DIP Documents, using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agents; (e) except as permitted in the DIP Documents, incurring Indebtedness (as defined in the DIP Credit Agreement) without the prior consent of the DIP Agents; (f) seeking to amend or modify any of the rights granted to the DIP Agents, DIP Credit Parties, or the Prepetition Secured Parties under this Interim Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (g) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the DIP Collateral (including Cash Collateral) or, as the case may be, Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agents, the DIP Credit Parties, or the Prepetition Secured Parties, respectively; (h) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agents, the DIP Credit Parties, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (i) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, the Prepetition Secured Obligations or any other rights or interests of any of the DIP Agents,

the DIP Credit Parties, or the Prepetition Secured Parties; or (j) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided*, *however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed, subject to the Final Order, $50,000 in the aggregate (the "Investigation Budget Amount", with the rights of the Committee (if appointed) to object to such amount in connection with final approval preserved), incurred solely by the Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens and the Prepetition Secured Obligations, in accordance with paragraph 43 of this Interim Order.

42. Payment of Compensation. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses or shall affect the right of the DIP Agents, the DIP Credit Parties, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses. The Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code or the Canadian Supplemental Order (as applicable), as the same may be due and payable, solely from the Professional Fee Escrow Account.

43. Effect of Stipulations on Third Parties.

(a) *Generally*. The Debtors' Stipulations are and shall be binding on the Debtors. In addition, the Debtors' Stipulations shall be binding on any subsequent trustee,

examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including the Committee (if appointed), unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 43) challenging the Debtors' Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (a) 60 days from the date of formation of the Committee (if appointed), or (b) 75 days following the entry of this Interim Order in the case that no Committee is appointed (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Agents, or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. The Roll-Up shall be subject to any and all potential Challenges that may apply to the applicable Prepetition Loans that were refinanced as part of the ABL Roll-Up or the Term Roll-Up, as applicable.

(b) *Binding Effect*. To the extent no Challenge is timely and properly

commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Debtors' Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Debtors' Stipulations shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including a trustee, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Debtors' Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Debtors' Stipulations is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection, subject to the Carve Out. Upon a successful Challenge brought pursuant to this paragraph 43, the Court may fashion any appropriate remedy.

44. No Third Party Rights. Except as explicitly provided for herein, this Interim

Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

45. Section 506(c) Claims. Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agents, the DIP Credit Parties, the Prepetition Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agents, the DIP Credit Parties or the Prepetition Secured Parties, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

46. No Marshaling/Applications of Proceeds. Subject to entry of a Final Order, the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

47. Section 552(b). Subject to entry of a Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits

of any of the Prepetition Collateral.

48. Limits on Lender Liability. Subject to entry of a Final Order, nothing in this Interim Order, any of the DIP Documents, Prepetition Documents, or any other documents related thereto, if any, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Credit Parties or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases. The DIP Agents and the DIP Credit Parties shall not, solely by reason of having made loans under the DIP Facilities, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Credit Parties, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

49. Insurance Proceeds and Policies. Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agents (on behalf of the DIP Credit Parties) and the Prepetition Agents (on behalf of the Prepetition Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on

each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral; *provided* that any liens or rights granted herein relating to the Debtors' insurance policies shall not supersede any rights held by a landlord under such policies to any such insurance proceeds for damage to landlord's property.

50. Joint and Several Liability. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facilities and the DIP Documents.

51. No Superior Rights of Reclamation. Based on the findings and rulings herein regarding the integrated nature of the DIP Facilities and the Prepetition Facilities and the relation back of the DIP Liens to the Prepetition Liens, the right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien; rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Liens as such claims had with respect to the Prepetition Liens.

52. Rights Preserved. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the DIP Documents, the Prepetition Documents and the ICA, as applicable: (a) the DIP Agents, the DIP Credit Parties' and the Prepetition Secured Parties' right to seek any

other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agents, the DIP Credit Parties, and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Agents, the DIP Credit Parties, or the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order. Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order.

53. No Waiver by Failure to Seek Relief. The failure of the DIP Agents, the DIP Credit Parties, or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agents, the DIP Credit Parties, the Prepetition Secured Parties, the Committee (if appointed), or any party in interest.

54. Binding Effect of Interim Order. Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agents, the DIP Credit Parties, the Prepetition Secured Parties, all other creditors of any of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

55. No Modification of Interim Order. Until and unless the DIP Obligations and the Prepetition Secured Obligations (other than contingent obligations with respect to then unasserted claims) have been indefeasibly paid in full in cash, and all letters of credit under the DIP Facilities shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facilities which survive such discharge by their terms), and all commitments to extend credit under the DIP Facilities have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agents (or the Prepetition Agents), (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP

Superpriority Claims or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agents (or the Prepetition Agents) for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Agents, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents (including the Carve Out); or (d) without the prior written consent of the Prepetition Agents, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens (other than the DIP Liens and the Carve Out). The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agents (or the Prepetition Agents), and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agents or the Prepetition Agents.

56. DIP Obligations Paid in Full and Commitments Terminated. In connection with the (i) DIP ABL Obligations and/or DIP Term Obligations being Paid in Full (such payment being without prejudice to any terms or provisions contained in either DIP Facility which survive such discharge by their terms), and (ii) all commitments to extend credit under the DIP ABL Facility and/or DIP Term Facility being terminated, all obligations of the DIP ABL Credit Parties and/or DIP Term Credit Parties to pay or otherwise satisfy any obligations under this Interim Order (including, without limitation, with respect to the Carve Out) and/or the applicable DIP Documents shall be terminated.

57. Interim Order Controls. In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control; *provided* that, solely with respect to the CCAA Priority Charges, the ABL DIP Charge, the Term DIP Charge, and the Collateral of the Canadian Loan Parties or Collateral otherwise located in Canada, the Canadian Recognition Orders shall govern and control.

58. Canadian Recognition Proceedings. Notwithstanding anything to the contrary in this Interim Order, the Lien Priority Annex or the DIP Documents: (a) with respect to the Collateral of the Canadian Loan Parties or Collateral otherwise located in Canada, the DIP Liens, the Adequate Protection Liens, the Prepetition Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims shall be subject and subordinate to the CCAA Priority Charges, and neither the granting of the CCAA Priority Charges nor any payment secured thereby shall constitute a breach of this Interim Order or an Event of Default; (b) the DIP Liens and the Adequate Protection Liens on the Collateral of the Canadian Loan Parties or Collateral otherwise located in Canada, and the guarantees and security granted by the Canadian Loan Parties under the DIP Documents shall be effective upon entry of this Interim Order; provided that the ABL DIP Charge and the Term DIP Charge shall become effective in Canada only upon the granting of the Canadian Interim DIP Recognition Order; (c) the fees and disbursements of the professionals retained by the Debtors in the Recognition Proceedings, the Information Officer and the Information Officer's counsel shall be paid in accordance with paragraph 40 of this Interim Order and the Canadian Supplemental Order (and to the extent of any conflict between paragraph 40 of

this Interim Order and the Canadian Recognition Orders, the Canadian Supplemental Order shall govern); (d) the exercise of any rights or remedies against the Collateral of the Canadian Loan Parties or Collateral otherwise located in Canada, including following the expiration of the Remedies Notice Period, shall be subject to the Canadian Recognition Orders, and nothing in this Interim Order shall lift or modify any stay of proceedings granted by the Canadian Court in the Recognition Proceedings; and (e) nothing in this Interim Order shall limit the jurisdiction of the Canadian Court in the Recognition Proceedings.

59. Discharge. The DIP Obligations and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan of reorganization, unless each of the DIP Agents, the DIP Credit Parties, and the Prepetition Agents, as applicable, has otherwise agreed in writing.

60. Survival. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and

provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the DIP Agents, DIP Credit Parties, and Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until: (i) in respect of the DIP Facilities, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash (other than contingent obligations with respect to then unasserted claims) and all letters of credit under the DIP ABL Facility shall have been cancelled or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facilities which survive such discharge by their terms), and all commitments to extend credit under the DIP Facilities are terminated, and (ii) in respect of the Prepetition Facilities, all of the Prepetition Secured Obligations pursuant to the Prepetition Documents and this Interim Order, have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted) and the Challenge Deadline has passed without a Challenge being asserted. The terms and provisions concerning the indemnification of the DIP Agents and the DIP Credit Parties shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the indefeasible repayment of the DIP Obligations.

61. Final Hearing. The Final Hearing to consider entry of the Final Order and

final approval of the DIP Facilities is scheduled for **[_____] [__], 2026 at [__]:00 [].m. (EST)** before the Honorable [_________], United States Bankruptcy Judge at the United States Bankruptcy Court for the District of New Jersey. On or before [_____] [__], 2026, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for the Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on **[_____] [__], at []:00 p.m. (EST)**, which objections shall be served so as to be received on or before such date by: (i) proposed co-counsel to the Debtors, (a) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: Gregory F. Pesce (gregory.pesce@whitecase.com), Andrew F. O'Neill (aoneill@whitecase.com), Amanda Parra Criste (aparracriste@whitecase.com), and Varoon Sachdev (varoon.sachdev@whitecase.com) and (b) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota (msirota@coleschotz.com), Warren A. Usatine (wusatine@coleschotz.com), Seth Van Aalten (svanaalten@coleschotz.com), Justin R. Alberto (jalberto@coleschotz.com), and Daniel J. Harris (dharris@coleschotz.com); (ii) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, New Jersey 07102, Attn: Fran

B. Steele (fran.b.steele@usdoj.gov) and Aiden Murphy (aiden.murphy@usdoj.gov); (iii) counsel to Wells Fargo Bank, National Association, as Prepetition ABL Agent, (a) Choate, Hall and Stewart LLP, Two International Place, Boston, Massachusetts, 02110, Attn: Kevin J. Simard (ksimard@choate.com) and Michael E. Comerford (mcomerford@choate.com) and (b) McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102, Attn: Joseph Lubertazzi (jlubertazzi@McCarter.com) and Jeffrey Testa (jtesta@mccarter.com); (iv) counsel to Crystal Financial LLC d/b/a SLR Credit Solutions, as Prepetition Term Loan Agent, (a) Morgan, Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts, 02110, Attn: Sandra J. Vrejan (sandra.vrejan@morganlewis.com) and Christopher Carter (christopher.carter@morganlewis.com) and (b) McGrail & Bensinger LLP, 888-C Eighth Avenue, #107, New York, New York, 10019, Attn: Ilana Volkov (ivolkov@mcgrailbensinger.com); (v) counsel to Mithaq Capital SPC, as prepetition unsecured lender, Wollmuth Maher & Deutsch LLP, 500 5th Ave, New York, New York 10110, Attn: David Wollmuth (dwollmuth@wmd-law.com) and Paul DeFilippo (pdefilippo@wmd-law.com); (vi) if any statutory committee has been appointed in these chapter 11 cases, counsel to such committee; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002. If no objections are filed to the Motion, the Court may enter an order approving the relief requested in the Motion on a final basis without further notice or hearing.

62. *Nunc Pro Tunc* Effect of this Interim Order. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take

effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof. Any applicable stay of the effectiveness of this Interim Order is hereby waived and shall not apply to this Interim Order.

63. Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce the terms of any and all matters arising from or related to the DIP Facilities, and/or this Interim Order.

# Exhibit A

## Lien Priority Annex

The DIP ABL Liens, the DIP Term Liens, the ABL Adequate Protection Liens, the Term Adequate Protection Liens, the Prepetition ABL Liens and the Prepetition Term Liens shall in each case be subject to the Carve Out, and otherwise have the following priority on the DIP Collateral and the applicable Prepetition Collateral of the applicable Debtor entities obligated on the DIP ABL Obligations, the DIP Term Obligations, and the Prepetition Secured Obligations, as applicable, in each case subject to the terms of the ICA. The DIP Liens, Prepetition Liens, DIP Superpriority Claims, Adequate Protection Liens, and Adequate Protection Superpriority Claims shall, for the avoidance of doubt, be subject to the CCAA Priority Charges solely with respect to the Canadian Loan Parties and Collateral located in Canada.

| **Assets of the type constituting both DIP Collateral and DIP ABL Priority Collateral and Avoidance Proceeds with respect to such assets** | **Assets of the type constituting both DIP Collateral and DIP Term Priority Collateral and Avoidance Proceeds with respect to such assets.** |
|---|---|
| 1. Carve Out | 1. Carve Out |
| 2. Prepetition ABL Permitted Prior Liens | 2. Prepetition Term Permitted Prior Liens |
| 3. DIP ABL Liens | 3. DIP Term Liens |
| 4. ABL Adequate Protection Liens | 4. Term Adequate Protection Liens |
| 5. Prepetition ABL Liens | 5. Prepetition Term Liens |
| 6. DIP Term Liens | 6. DIP ABL Liens |
| 7. Term Adequate Protection Liens | 7. ABL Adequate Protection Liens |
| 8. Prepetition Term Liens | 8. Prepetition ABL Liens |

**Priorities of Administrative Expense Claims**

| |
|---|
| **Carve Out** |
| **DIP Superpriority Claims** |
| **Adequate Protection Superpriority Claims** |

**The DIP Superpriority Claims granted to the (x) DIP ABL Credit Parties shall, at all times be in respect of the DIP ABL Priority Collateral and Avoidance Proceeds with respect to such assets, senior to the DIP Superpriority Claims granted to the DIP Term Credit Parties, (y) the DIP Term Credit Parties shall, at all times be in respect of the DIP Term Priority Collateral and Avoidance Proceeds with respect to such assets, senior to the DIP Superpriority Claims granted

to the DIP ABL Credit Parties, and (z) the DIP ABL Credit Parties and DIP Term Credit Parties shall be *pari passu* in right of payment as to the proceeds of any assets not described in the foregoing clauses (x) or (y).

# **Exhibit B**

**Initial Budget**

[see attached]

**TCP**
**Cash Flow - Filing**
**$ in 000s**

| Forecast Week | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WE Date | | Filing | 14-Nov | 21-Nov | 28-Nov | 5-Dec | 12-Dec | 19-Dec | 26-Dec | 2-Jan | 9-Jan | 16-Jan | 23-Jan | 30-Jan | 6-Feb | 13 WK |
| Actual / Forecast | | Act | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst |
| **I. Cash Flow & Liquidity** | | | | | | | | | | | | | | | | |
| | Net Cash Flow | | | | | | | | | | | | | | | |
| 1.) | Total Operating Receipts | | 33,532 | 41,785 | 43,114 | 41,894 | 41,202 | 38,929 | 37,672 | 64,464 | 28,474 | 26,748 | 25,646 | 53,936 | 23,557 | 500,954 |
| 2.) | Total Operating Disbursements | | (5,434) | (7,568) | (22,507) | (14,887) | (16,556) | (8,818) | (17,165) | (13,532) | (14,148) | (4,665) | (18,819) | (7,990) | (17,182) | (169,271) |
| 3.) | **Total Operating Cash Flow** | | **28,099** | **34,217** | **20,607** | **27,007** | **24,646** | **30,111** | **20,507** | **50,931** | **14,326** | **22,083** | **6,827** | **45,947** | **6,375** | **331,683** |
| 4.) | Total Non-Operating Disbursements | | (7,113) | (5,507) | (6,618) | (9,030) | (8,539) | (4,498) | (6,148) | (7,788) | (6,018) | (3,328) | (3,308) | (3,758) | (3,052) | (74,706) |
| 5.) | **Total Net Cash Flow** | | **20,986** | **28,710** | **13,989** | **17,977** | **16,107** | **25,612** | **14,359** | **43,143** | **8,308** | **18,756** | **3,519** | **42,189** | **3,323** | **256,977** |
| | Liquidity | | | | | | | | | | | | | | | |
| 6.) | Availability | | 9,948 | 20,557 | 10,011 | 12,312 | 22,365 | 30,913 | 12,776 | 36,952 | 22,186 | 24,514 | 10,721 | 31,213 | - | - |
| 7.) | + Cash | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 19,359 | 20,000 | 20,000 | 20,000 | 20,000 | 25,994 | 29,317 | 29,317 |
| 8.) | **Total Liquidity** | | **14,948** | **25,557** | **15,011** | **17,312** | **27,365** | **35,913** | **32,135** | **56,952** | **42,186** | **44,514** | **30,721** | **57,207** | **29,317** | **29,317** |
| | Debt Balances | | | | | | | | | | | | | | | |
| 9.) | Pre-petition ABL Balance | 110,581 | 62,204 | 20,418 | - | - | - | - | - | - | - | - | - | - | - | - |
| 10.) | Pre-petition LC Balance | 19,928 | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 11.) | DIP ABL Balance | - | 33,470 | 46,546 | 52,975 | 34,998 | 18,891 | - | - | - | - | - | - | - | - | - |
| 12.) | Total ABL Balance | 130,509 | 95,674 | 66,964 | 52,975 | 34,998 | 18,891 | - | - | - | - | - | - | - | - | - |
| 13.) | Pre-petition Term Loan Balance | 100,000 | 84,000 | 84,000 | 84,000 | 84,000 | - | - | - | - | - | - | - | - | - | - |
| 14.) | DIP Term Loan Balance | - | 32,000 | 32,000 | 32,000 | 32,000 | 116,000 | 109,279 | 109,279 | 66,777 | 58,469 | 39,713 | 36,194 | - | - | - |
| 15.) | Total Term Loan Balance | 100,000 | 116,000 | 116,000 | 116,000 | 116,000 | 116,000 | 109,279 | 109,279 | 66,777 | 58,469 | 39,713 | 36,194 | - | - | - |
| 16.) | **Total Debt Balance** | **230,509** | **211,674** | **182,964** | **168,975** | **150,998** | **134,891** | **109,279** | **109,279** | **66,777** | **58,469** | **39,713** | **36,194** | **-** | **-** | **-** |

# Exhibit C

## Milestones

The Debtors shall achieve each of the following milestones, in each case on terms and conditions, and subject to documentation (including, in all cases, forms of all applicable orders), in form and substance reasonably acceptable to the DIP Agents and Prepetition Agents in all respects. Each order referred to below shall have been entered by the Bankruptcy Court, shall be in full force and effect, and shall not have been stayed, reversed, vacated or modified without the written reasonable consent of the DIP Agents and Prepetition Agents.

(a) DIP and Related Pleading Milestones.

(i) On the Petition Date (i.e., November 8, 2026), the Debtors shall have filed with the Bankruptcy Court:

(A) a motion seeking approval of the DIP Facilities on an interim and final basis;

(B) a motion seeking approval of the Cash Management Order on an interim and final basis; and

(C) a motion seeking authorization for retention of the CRO.

(ii) On or before November 10, 2026 (i.e., 2 days after the Petition Date), the Bankruptcy Court shall have entered:

(A) the Interim Order; and

(B) an interim Cash Management Order.

(iii) On or before November 20, 2026 (i.e., 12 days after the Petition Date), the Debtors shall have filed a motion requesting, and on or before December 18, 2026 (i.e., 40 days after the Petition Date), shall have obtained, an order of the Bankruptcy Court extending the lease assumption/rejection period such that such period shall be 210 days from the Petition Date.

(iv) On or before November 30, 2026 (i.e., 22 days after the Petition Date), the Bankruptcy Court shall have entered a final Cash Management Order.

(v) On or before December 8, 2026 (i.e., 30 days after the Petition Date), the Bankruptcy Court shall have entered:

(A) the Final Order; and

(B) an order approving the appointment and retention of the CRO.

(vii) On or before November 20, 2026 (i.e., 12 days after the Petition Date), a motion seeking approval to retain a real estate broker acceptable to the DIP Agents and

Prepetition Agents for the sale of all or substantially all of the Debtors' real estate property located at 1377 Airport Road, Fort Payne Alabama (the "Real Property Sale").

(vii) On or before November 20, 2026 (i.e., 12 days after the Petition Date), a motion seeking approval to retain a sales consultant acceptable to the DIP Agents and Prepetition Agents for the sale of all or substantially all of the Debtors' intellectual property (the "IP Sale"); *provided*, *however*, that this section (a)(vii) shall only be enforceable if the Debtors and the DIP Agents mutually agree as to the means to fund and budgetary implications regarding such retention, including the potential provision of budgetary relief or lifting of reserves.

(b) Sale Milestones.

(i) By November 9, 2026, the Debtors shall have filed with the Bankruptcy Court:

(A) a motion seeking approval of the Bid Procedures for the sale of all or substantially all assets (i.e., DIP Collateral) of the Debtors (each, a "Sale" and collectively, including with respect to any Real Property Sale, the "Sales"), including designation of a Stalking Horse Bidder in a Stalking Horse Purchase Agreement; and

(B) a motion seeking entry into the Specified Liquidation Agreement, and to conduct Specified Store Closing Sales thereunder.

(ii) On or before November 10, 2026 (i.e., 2 days after the Petition Date), the Bankruptcy Court shall have entered an interim order approving the Specified Liquidation Agreement, which shall authorize the continuation of the Specified Store Closing Sales.

(iii) On or before November 10, 2026 (i.e., 2 days after the Petition Date), the Bankruptcy Court shall have entered an order approving the Bid Procedures, which shall, among other things:

(A) contemplate the Sales;

(B) establish the following deadlines:

December 10, 2026 (i.e., 32 days after the Petition Date) for submission of binding bids;

December 14, 2026 (i.e., 36 days after the Petition Date) as an auction date, and

December 17, 2026 (i.e., 39 days after the Petition Date) as hearing date for approval of Sale(s);

(C) require that the proceeds of any Sale or Sales be in a minimum amount satisfactory to the DIP Agents and Prepetition Agents in their sole and absolute discretion and be applied in accordance with the waterfall provisions of the DIP Documents and Interim and Final Orders;

(D) provide for the solicitation of bids for the Sales, such that a back-up bid under such clause is selected at the conclusion of the auction.

(v) On or before December 8, 2026 (i.e., 30 days after the Petition Date), the Bankruptcy Court shall have entered an order approving, on a final basis, the Specified Liquidation Agreement and, if applicable, designation of the Stalking Horse Bidder.

(vi) On or before December 10, 2026 (i.e., 32 days after the Petition Date), the Debtors shall provide the DIP Agents and Prepetition Agents with copies of all bids received by the Debtors or their advisors in connection with a Sale(s).

(vii) On or before December 14, 2026 (i.e., 36 days after the Petition Date), the Debtors shall complete the auction and, subject to the consent of the DIP Agents and Prepetition Agents, declare a winning bidder(s) and a back-up bidder(s) for the Sale(s). The terms of each winning bid and back-up bid shall be acceptable to the DIP Agents.

(viii) On or before December 17, 2026 (i.e., 39 days after the Petition Date), (A) the Bankruptcy Court shall have entered one or more orders approving (1) the Sale to the winning bidder(s) and (2) to the extent not previously approved, the Specified Store Closing Sales, in each case in a manner satisfactory to the DIP Agents and Prepetition Agents, and (B) the Debtors shall have executed a Purchase Agreement and all other relevant definitive documentation in connection therewith.

(ix) On or before December 31, 2026 (i.e., 53 days after the Petition Date), a Sale(s), if any, will be consummated pursuant to a Purchase Agreement and an applicable order of the Bankruptcy Court.

(x) Within two (2) Business Days after the earlier, as applicable, of (A) entry of an order that does not approve a Sale and/or (B) or termination of a Purchase Agreement, a back-up Sale, if any, shall be consummated.

(c) Canadian Recognition Milestones. The Loan Parties shall, and shall cause each of their respective Subsidiaries to:

(i) commence the Recognition Proceedings in accordance with applicable Laws and with proper notice through an application in form and substance satisfactory to the DIP Agents and Prepetition Agents for the Canadian Initial Recognition Order, the Canadian Supplemental Order and the Canadian Interim DIP Recognition Order within two (2) Business Days following entry of the Interim Order;

(ii) obtain the Canadian Initial Recognition Order, the Canadian Supplemental Order and the Canadian Interim DIP Recognition Order, in each case in form and substance satisfactory to the DIP Agents and Prepetition Agents, within five (5) Business Days following the entry of the Interim Order (the "Canadian Interim Order Date");

(iii) serve and file, in accordance with applicable Laws and with proper notice, a motion in the Recognition Proceedings in form and substance satisfactory to the DIP Agents and Prepetition Agents for the Canadian Final DIP Recognition Order, within two (2) Business Days following the entry of the Final Order; and

(iv) obtain, subject to the Canadian Court's availability, the Canadian Final DIP Recognition Order, in form and substance satisfactory to the DIP Agents and Prepetition Agents, within seven (7) Business Days following the entry of the Final Order (the "Canadian Final Order Date").

# Exhibit D

## Released Reserves

Section (i)

Day 1:

- Freight & Duty Reserve (25% Eligible In Transit): $3,894,985
- Landlord Lien State Rent Reserve (2 months) - WA, PA, VA: $ $1,319,780
- One Month's Rent Reserve $1,516,000
- Texas Sales Tax $1,155,000
- Texas Personal Property Reserve $231,000
- Amex Contra (102.5% Gross Up) $72,309
- Contra Accounts (102.5% Gross Up) $47,701
- Restructuring Reserve $22,500,000 -> ABL portion goes to zero, but Term Loan portion increases to $37.5M, which reflects a net $7.5M reduction in the reserve

## Anticipated Released Reserves

Section (ii)

Forecasted:

- Off-Site Storage (removal following the week ending 1/2/27)
- E Comm / Retail Store Returns Reserve (removal following the week ending 12/12/26, so long as, at such time, the Loan Parties have ceased accepting returns of Inventory)
- IP Reserve (removal following the week ending 12/19/26, so long as the Auction shall have occurred by such date in accordance with the DIP Credit Agreements)
- Restructuring Reserve (reduced to $30,000,000 following week ending 11/28; full removal following week ending 12/5/26)

**<u>Exhibit B</u>**

**Redline of Changed Pages**

order, (ii) the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP Documents or the Prepetition Documents, as applicable, subject to the ICA, and as otherwise available at law without further order of or application or motion to the Court, and (iii) the DIP Agents and any liquidator or other professional will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property and any warehouse, distribution centers, store or other locations that the Debtors have a right to occupy to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the DIP Collateral, including pursuant to any Court approved sale process. Notwithstanding the foregoing, the DIP Agents, DIP Credit Parties, and Prepetition Secured Parties may only enter upon the Debtors' leased premises following an Event of Default in accordance with (a) a separate written agreement between the DIP Agents, DIP Credit Parties, or Prepetition Secured Parties, as applicable, and the applicable landlord, (b) pre-existing rights of the DIP Agents, DIP Credit Parties, or Prepetition Secured Parties under applicable non-bankruptcy law, or (c) entry of a further order of this Court after notice to the applicable landlord and an opportunity to be heard.

34. [Reserved].

35. Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order. The DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy

Prepetition Agents, pursuant to the applicable DIP Credit Agreement or Prepetition Documents, to the Debtors that an Event of Default has occurred and is continuing and that the application of the Carve Out has occurred (the "Carve Out Trigger Notice"), the payment of allowed (or in the case of the professionals retained by the Debtors in the Recognition Proceedings, the Information Officer and the Information Officer's counsel, permitted under the Canadian Supplemental Order) and unpaid professional fees and disbursements incurred by the Case Professionals following the delivery of the Carve Out Trigger Notice (the "Carve Out Trigger Date") in an aggregate amount not in excess of $1,500,000 (the "Wind Down Carve Out Amount"), *plus* (iii) the payment of fees pursuant to 28 U.S.C. § 1930(a) and any fees required to be paid to the Clerk of the Court, which fees shall not be limited to amounts that may be set forth in the Budget, and the reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code. The Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, as set forth in the Lien Priority Annex.

(b) Delivery of Weekly Statements. Not later than 2:00 p.m. New York time on the last business day of each week starting with the second week following the Petition Date, each Case Professional shall deliver to the Debtors, the DIP Agents, and the Prepetition Agents, a statement setting forth the amount of the fees and expenses (collectively, "Professional Fees") incurred during the preceding week (or since the Petition Date in the case of the first such statement) by such Case Professional (through Saturday of such week, the

Credit Parties, or the Prepetition Secured Parties, respectively; (h) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agents, the DIP Credit Parties, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; (i) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, the Prepetition Secured Obligations or any other rights or interests of any of the DIP Agents, the DIP Credit Parties, or the Prepetition Secured Parties; or (j) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed, subject to the Final Order, $50,000 in the aggregate (the "Investigation Budget Amount", with the rights of the Committee (if appointed) to object to such amount in connection with final approval preserved), incurred solely by the Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens and the Prepetition Secured Obligations, in accordance with paragraph 43 of this Interim Order.

42. Payment of Compensation. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses or shall affect the right of the DIP Agents,

Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agents, the DIP Credit Parties, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

49. Insurance Proceeds and Policies. Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agents (on behalf of the DIP Credit Parties) and the Prepetition Agents (on behalf of the Prepetition Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral; *provided* that any liens or rights granted herein relating to the Debtors' insurance policies shall not supersede any rights held by a landlord under such policies to any such insurance proceeds for damage to landlord's property.

50. Joint and Several Liability. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facilities and the DIP Documents.

51. No Superior Rights of Reclamation. Based on the findings and rulings herein regarding the integrated nature of the DIP Facilities and the Prepetition Facilities and the