**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHILDREN'S PLACE, INC., *et al.*, | Case No. 26-22682 (SLM) |
| Debtors.[1] | (Jointly Administered) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

# DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND VOTING PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF

TO THE HONORABLE STACEY L. MEISEL, UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (this "Motion"):[2]

## Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") granting the following relief:

a. ***Conditionally Approving the Adequacy of the Disclosure Statement***. Conditionally approving the Disclosure Statement, attached to the Order as Exhibit 1, as containing "adequate information" pursuant to section 1125(a)(1) of the Bankruptcy Code and providing Holders of Claims or Interests, and other parties in interest, with sufficient notice of, and the identities of the entities subject to, the injunction, exculpation, and release provisions contained in the Plan in satisfaction of the requirements of Rules 2002(c)(3) and 3016(b) and (c) of the Bankruptcy Rules; with such approval without prejudice to the right of any party in interest to argue at the Combined Hearing (as defined herein) that the Disclosure Statement does not contain adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code, and the Order shall be without preclusive effect as to

---

[2] A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Rudolph Morando, Co-Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 56]. Capitalized terms used herein but not defined in this Motion shall have the meanings ascribed to them in (a) the First Day Declaration, (b) the *Joint Plan of The Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "Plan"), (c) the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and its Debtor Affiliates* filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "Disclosure Statement"), or (d) later in this Motion.

any determination by the Court at the Combined Hearing solely regarding the adequacy of the information contained in the Disclosure Statement within the meaning of section 1125(a)(1) of the Bankruptcy Code;

b. ***Solicitation and Voting Procedures***. Approving procedures for (i) soliciting, receiving, and tabulating votes on the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "Solicitation and Voting Procedures"), substantially in the form attached to the Order as Exhibit 2;

c. ***Ballots and Release Elections***. Approving the forms of Ballots for the Voting Classes, substantially in the forms attached to the Order as Exhibit 3A, Exhibit 3B, and Exhibit 3C (the "Ballots");

d. ***Notice of Non-Voting Status***. Approving (i) the form of notice to Holders of Claims or Interests that are (A) Unimpaired under the Plan and that are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan, (B) Impaired under the Plan and that are, pursuant to section 1126(g) of the Bankruptcy Code, deemed to reject the Plan, and (C) subject to a pending objection and that are not entitled to vote the disputed portion of such Claims or Interests, substantially in the form attached to the Order as Exhibit 4 (the "Notice of Non-Voting Status"); and (ii) the release opt-out form, substantially in the form attached to the Order as Exhibit 4A (the "Opt-Out Form");

e. ***Cover Letter***. Approving the form of letter that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan describing the contents of the Solicitation Package and recommending that such parties vote in favor of the Plan, substantially in the form attached to the Order as Exhibit 5 (the "Cover Letter");

f. ***Combined Hearing Notice***. Approving the form and manner of notice of the Combined Hearing and the procedures for objecting thereto (such notice, the "Combined Hearing Notice"), substantially in the form attached to the Order as Exhibit 6;

g. ***Plan Supplement Notice***. Approving the form of notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as Exhibit 7 (the "Plan Supplement Notice");

h. ***Assumption and Rejection Notice***. Approving the forms of notice to counterparties to executory contracts and unexpired leases that will be (i) assumed pursuant to the Plan (the "Assumption Notice"), substantially in the form attached to the Order as Exhibit 8, or (ii) rejected pursuant to the Plan (the "Rejection Notice"), substantially in the form attached to the Order as Exhibit 9;

i. ***Solicitation Package***. Finding that the solicitation materials and documents included in the solicitation package (the "Solicitation Package") that will be sent to, among others, Holders of Claims entitled to vote to accept or reject the Plan, comply with Bankruptcy Rules 2002(b) and 3017(d);

j. ***Waiver of Local Rule 3018-1***. Waiving the requirement pursuant to Local Rule 3018-1 that the Ballots must be returned not later than seven (7) days prior to the Combined Hearing; and

k. ***Confirmation Dates***. Establishing the following dates and deadlines with respect to Confirmation of the Plan, subject to modification as necessary (the "Confirmation Dates"):[3]

[3] All dates calculated in accordance with Bankruptcy Rule 9006(a).

| Event | Date | Description |
|---|---|---|
| Voting Record Date | December 15, 2026 | With respect to Claims that either (a) are listed in the Schedules or (b) with respect to which a valid proof of claim (a "Proof of Claim") is filed before December 15, 2026 (such claims, the "Known Eligible Claims"),[4] the date to determine which Holders of such Claims are entitled to vote to accept or reject the Plan (the "Voting Record Date"). If a valid Proof of Claim for a Claim in a Voting Class (a) that is not listed in the Schedules and (b) with respect to which a valid Proof of Claim has not been filed as of the Voting Record Date (an "Unknown Eligible Claim") is filed on or after the Voting Record Date and on or before January 6, 2027, at 11:59 p.m., prevailing Eastern Time, the general claims bar date (the "Claims Bar Date") established in connection with the Bar Date Order,[5] then the Claims and Noticing Agent will distribute a Solicitation Package to the Holder of such Unknown Eligible Claim within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent. Such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline for such Ballot to be counted. The foregoing record-date and Proof of Claim cutoffs are subject to the provisional voting rights of counterparties to Unexpired Leases under the Solicitation and Voting Procedures. |
| Combined Hearing Notice and Publication Deadline | December 21, 2026, or, with respect to the Publication Notice, as soon as practicable thereafter. | The date by which the Debtors will (a) distribute, or cause to be distributed, the Combined Hearing Notice to the Holders of Claims or Interests, and (b) publish the Combined Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Combined Hearing Notice and Publication Deadline"). |
| Solicitation Package Mailing Deadline | Five (5) business days following entry of the Order. | The deadline by which the Debtors must distribute, or cause to be distributed, the Solicitation Package, including the Ballots, to Holders of Known Eligible Claims entitled to vote to accept or reject the Plan (the "Solicitation Package Mailing Deadline"). |
| Plan Supplement Filing Deadline | January 13, 2027 | The date by which the Debtors shall file the Plan Supplement (the "Plan Supplement Filing Deadline"). |

[4] Pursuant to the *Debtors' Motion Seeking Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs, and (II) Granting Related Relief* [Docket No. 7], the Debtors must file their schedules of assets and liabilities (the "Schedules") and statements of financial affairs by December 11, 2026.

[5] The "Bar Date Order" means the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 75].

| Event | Date | Description |
|---|---|---|
| Voting and Opt-Out Deadline | January 20, 2027 at 3:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and Opt-Out Forms must be properly executed, completed, and submitted so that they are actually received by Omni Agent Solutions, Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent," and such deadline, the "Voting and Opt-Out Deadline"). |
| Combined Objection Deadline | January 20, 2027 at 3:00 p.m., prevailing Eastern Time | The deadline by which objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court (the "Combined Objection Deadline"). |
| Voting Report Deadline | January 22, 2027 at 3:00 p.m., prevailing Eastern Time | The date by which the report tabulating the voting results with respect to the Plan (the "Voting Report") shall be filed with the Court (such date, the "Voting Report Deadline"). |
| Confirmation Brief Deadline | January 22, 2027 | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan (the "Confirmation Brief Deadline"). |
| Combined Hearing Date | January 26, 2027 | The date of the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing," and such date, the "Combined Hearing Date"). |

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title II*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtors consent to entry of a final order to the extent it is determined that, absent consent, the Court cannot enter a final order consistent with Article III of the United States Constitution.

3. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3001, 3003, 3016, 3017, 3018, 3019, 3020, 9006, 9007, and 9036 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Rules 3018-1, 9004-1, and 9013-1 through 9013-4 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "Local Rules").

## Background

5. On November 8, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On November 10, 2026, the Court entered an order directing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 70]. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

6. Additional information concerning the Debtors' business, capital structure, and the circumstances leading to these Chapter 11 Cases is set forth in the *First Day Declaration*, which is incorporated herein by reference.

7. On November 9, 2026, The Children's Place, Inc., in its capacity as foreign representative of the Debtors (in such capacity, the "Foreign Representative"), commenced proceedings (the "Canadian Recognition Proceedings") before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") pursuant to Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended (the "CCAA"). On November 13, 2026, the Canadian Court granted (a) an Initial Recognition Order (Foreign Main Proceeding), which, among other things, recognized these Chapter 11 Cases as a "foreign main proceeding" under the CCAA, and (b) a Supplemental Order (Foreign Main Proceeding), which, among other things, recognized certain orders of this Court and granted a stay of proceedings in Canada in respect of the Debtors. AlixPartners Restructuring, Inc. was appointed as information officer in the Canadian

Recognition Proceedings (the "Canadian Information Officer"). The Foreign Representative intends to seek recognition of the Order by the Canadian Court in the Canadian Recognition Proceedings and, if this Court enters an order confirming the Plan, to seek an order of the Canadian Court recognizing and enforcing such order in Canada.

**Preliminary Statement and Summary of the Plan**[6]

8. The Debtors commenced these Chapter 11 Cases in order to pursue two parallel processes to maximize the value of their estates and continue the business as a going concern. Specifically, the Debtors seek to complete one or more going-concern sales of their assets to the highest or otherwise best bidder or bidders (each, a "Sale Transaction"), while simultaneously pursuing orderly, value-maximizing store closures and liquidation sales of merchandise at retail locations (the "Store Closing Sales"). The Debtors' financing and sale initiatives are described in detail in the First Day Declaration, the Bidding Procedures Motion, and the Store Liquidation Motion.

9. The Debtors and their advisors have worked diligently to accomplish these goals. As of the date hereof, the sale and marketing efforts have yielded seven (7) indications of interest. While the sale process remains ongoing, to date, no actionable bid has yet emerged that improves upon the ongoing Store Closing Sales, which remain ongoing. Regardless of whether the Debtors identify a value-maximizing going-concern bid and consummate a Sale Transaction or complete the Store Closing Sales at all retail locations, the Debtors stand ready to confirm the proposed chapter 11 plan on an expedited timeline.

6 The summary of the Plan provided herein is qualified in its entirety by reference to the Plan. In the event of any inconsistency between this Motion and the plan, the Plan shall govern.

10. If confirmed, the Plan will provide: (a) for the payment of Allowed Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims in accordance with Article II of the Plan, (b) payment of Allowed Other Priority Claims, Wells Fargo Credit Agreement Claims and SLR Credit Agreement Claims in accordance with Article III.C.2–4 of the Plan, and (c) subject to Article III.C.5 of the Plan, each Holder of an Allowed Class 5 General Unsecured Claim will receive (i) its Pro Rata share of the GUC Distribution Reserve and (ii) its Pro Rata share of additional Distributable Value available after payment in full of Allowed Claims in Classes 1–4. Class 9 Equity Interests are Impaired, non-voting, and deemed to reject; they will be cancelled on the Effective Date, with each Holder entitled to its Pro Rata share of residual Distributable Value only after payment in full of all Allowed Claims and satisfaction of all other payment and reserve requirements.

11. Each day the Debtors spend in chapter 11, and the attendant administrative expenses, affects value available for stakeholders. The Debtors therefore believe that proceeding toward confirmation as expeditiously as practicable, while satisfying the Bankruptcy Code, Bankruptcy Rules, Local Rules, and applicable orders, will best position the Debtors to maximize the value of their Estates. Accordingly, the Debtors propose the Confirmation Dates set forth above, providing for conditional approval before solicitation and a combined hearing to consider final approval of the Disclosure Statement and confirmation of the Plan (the "Combined Hearing").

12. The Plan classifies Holders of Claims or Interests into the following Classes of Claims and Interests for all purposes, including with respect to voting on and distributions under the Plan. The following table summarizes the Classes of Claims and Interests under the Plan and their respective voting rights:

| Class | Claim / Interest | Status | Status and voting[7] |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Wells Fargo Credit Agreement Claims | Impaired | Entitled to Vote |
| 4 | SLR Credit Agreement Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

13. The Debtors propose to solicit votes from Holders of Claims in Class 3, Class 4, and Class 5 (the "Voting Classes"). Class 1, Class 2, Class 6, Class 7, Class 8, and Class 9 are not entitled to vote (the "Non-Voting Classes"). Holders of Claims or Interests in the Non-Voting Classes will not receive a Solicitation Package but will instead receive a Notice of Non-Voting Status, except for Class 6 and Class 7, which will receive neither a Solicitation Package nor a Notice of Non-Voting Status, as discussed below.

14. The Disclosure Statement ensures that Holders of Claims entitled to vote on the Plan will receive information of a kind and in sufficient detail to make an informed judgment

[7] If the Class 3 and Class 4 Claims are fully converted into DIP Claims pursuant to the Final DIP Order, such Classes will be removed from the Plan and will not be entitled to vote to accept or reject the Plan.

regarding acceptance or rejection of the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code, and the proposed Confirmation Dates and Solicitation and Voting Procedures will move these Chapter 11 Cases forward in a timely manner while ensuring due process and observing the procedural safeguards mandated under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, the relief requested in this Motion should be approved.

## Basis for Relief

### I. The Court Should Approve the Disclosure Statement on a Conditional Basis.

#### A. The Standard for Approval of the Disclosure Statement.

15. Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims or interests entitled to vote on the plan. 11 U.S.C. § 1125. Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

16. Courts in several circuits, including the Third Circuit, have stated that the primary purpose of a disclosure statement is to provide all material information that stakeholders affected by a proposed plan need to make an informed judgment regarding whether to vote for the plan. *See, e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) (providing that a disclosure statement must "[contain] adequate information to enable a creditor to make an informed judgment about the Plan" (internal quotations omitted)); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125

seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *accord In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phx. Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re A. H. Robins Co., Inc.*, 880 F.2d 694, 696 (4th Cir. 1989) (stating that the disclosure statement must provide "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan").

17. "Adequate information" is a flexible standard, based on the facts and circumstances of each case. 11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . ."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *In re Congoleum Corp.*, 636 B.R. 362, 383 (Bankr. D.N.J. 2022) ("What constitutes adequate information is determined on a case-by-case basis, with the ultimate determination within the discretion of the bankruptcy court." (internal quotations omitted)); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D.N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case."); *In re River Vill. Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *Phx. Petrol. Co.*, 278 B.R. at 393 (same); *First Am. Bank of N.Y. v. Century*

*Glove, Inc.*, 81 B.R. 274, 279 (Bankr. D. Del.) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95 989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case[.]")

18. In determining whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

a. the events that led to the filing of a bankruptcy petition;

b. the relationship of the debtor with its affiliates;

c. a description of the available assets and their value;

d. the debtor's anticipated future performance;

e. the source of information stated in the disclosure statement;

f. the debtor's condition while in chapter 11;

g. claims asserted against the debtor;

h. the estimated return to creditors under a chapter 7 liquidation of the debtor;

i. the future management of the debtor;

j. the chapter 11 plan or a summary thereof;

k. financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l. information relevant to the risks posed to creditors under the plan;

m. the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n. litigation likely to arise in a nonbankruptcy context; and

o. tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics listed above is not necessary in every case. *See U.S. Brass*, 194 B.R. at 425; *see also In re Phx. Petrol.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

**B. The Disclosure Statement Contains Adequate Information.**

19. The Disclosure Statement meets and even exceeds the applicable standard for "adequate information" to allow Holders of Claims in the Voting Classes to make an informed judgment whether to vote to accept or reject the Plan. Specifically, the Disclosure Statement contains several categories of information that together meet the "adequate information" standard, including:

a. ***The Debtors' Business Operations and Capital Structure***. An overview of the Debtors' corporate history, business operations, and corporate and capital structure and liquidity profile, *see* Article VII of the Disclosure Statement;

b. ***Events Leading to these Chapter 11 Cases***. An overview of the events leading to the commencement of the Debtors' Chapter 11 Cases and the Canadian Recognition Proceedings, *see* Article VIII of the Disclosure Statement;

c. ***Events of the Chapter 11 Cases***. An overview of key events and material developments in the Debtors' Chapter 11 Cases, *see* Article IX of the Disclosure Statement;

d. ***Release and Exculpation Provisions of the Plan***. A description of the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtor Release and the Third-Party Release, as well as the exculpation and injunction provisions, *see* Article IV.S of the Disclosure Statement;

e. ***Risk Factors***. A description of certain risks associated with recoveries under the Plan and the Wind-Down, as well as certain risks associated with forward-looking statements, and an overall disclaimer about information provided by and set forth in the Disclosure Statement, *see* Article X of the Disclosure Statement;

f. ***Liquidation Analysis***. A liquidation analysis will be filed in advance of the hearing to approve the Disclosure Statement on a conditional basis and will be attached to the Disclosure Statement;

g. ***Solicitation and Voting Procedures***. A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan, *see* Article V of the Disclosure Statement;

h. ***Confirmation of the Plan***. Confirmation procedures and statutory requirements for confirmation and consummation of the Plan, *see* Article VI of the Disclosure Statement;

i. ***Certain United States Federal Income Tax Consequences of the Plan***. A description of certain U.S. federal income tax law consequences of the Plan, *see* Article XI of the Disclosure Statement;

j. ***Recommendation of the Debtors***. A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan, *see* Article XII of the Disclosure Statement; and

k. ***Questions and Answers Regarding the Disclosure Statement and the Plan***. A list of frequently asked questions, see Article IV of the Disclosure Statement.

20. Based on the foregoing, the Debtors submit, and will demonstrate at the Combined Hearing, that the Disclosure Statement contains sufficient information for a reasonable investor to make an informed judgment about the Plan and complies with section 1125 of the Bankruptcy Code. The Debtors request that the Court (a) conditionally approve the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code, for solicitation purposes only, and (b) determine on a final basis at the Combined Hearing that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code. Parties in interest will have an opportunity to object to the adequacy of information provided in the Disclosure Statement up until the Combined Objection Deadline,

which the Debtors propose to be on January 20, 2027 at 3:00 p.m., prevailing Eastern Time, subject to extension. Nevertheless, the Disclosure Statement should be approved on a conditional basis so that the Debtors may commence the Plan solicitation process.

### C. The Disclosure Statement and Notices Provide Notice of the Plan's Release, Exculpation, and Injunction Provisions.

21. Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement describe specifically and conspicuously the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c). Bankruptcy Rule 2002(c)(3) similarly requires that such disclosure be provided for the notice of the time fixed for filing objections to and the hearing to consider confirmation of a chapter 11 plan. Fed. R. Bankr. P. 2002(c)(3).

22. Article VIII of the Plan and Article IV.S of the Disclosure Statement describe in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtor Release and the Third-Party Release, as well as the exculpation and injunction provisions. Furthermore, the language in Article VIII of the Plan regarding the Debtor Release and the Third-Party Release, as well as the exculpation and injunction provisions, is in bold font, making it conspicuous to any reader. In addition, the Combined Hearing Notice states in clear and bolded text that the Plan contains release, exculpation, and injunction provisions, including the Third-Party Release. Accordingly, the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan, and the Combined Hearing Notice complies with Bankruptcy Rule 2002(c)(3) by conspicuously describing the nature of and entities subject to the injunction under the Plan.

## II. The Court Should Approve the Solicitation Materials and Timeline for Soliciting Votes on the Plan.

### A. The Court Should Approve the Voting Record Date, Solicitation Package Mailing Deadline, Combined Hearing Notice and Publication Deadline, and Voting and Opt-Out Deadline.

23. Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a). Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

24. The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(c), 3017(d), and 3018(a) to establish the following dates in connection with confirmation:

- **December 15, 2026**, as the Voting Record Date with respect to Known Eligible Claims;
- **December 21, 2026** (or as soon as practicable thereafter with respect to the Publication Notice), as the Combined Hearing Notice and Publication Deadline;
- **Five (5) business days following the entry of the Order** as the Solicitation Package Mailing Deadline; and
- **January 20, 2027, at 3:00 p.m., prevailing Eastern Time**, as the Voting and Opt-Out Deadline.

25. If a Holder of an Unknown Eligible Claim that is in a Voting Class files a valid Proof of Claim on or after the Voting Record Date and on or before the Claims Bar Date, then the Claims and Noticing Agent will distribute a Solicitation Package to the Holder of such Unknown

Eligible Claim within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent.

26. Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, or the Order, the Debtors shall cause a Ballot for Class 5 to be served on all counterparties to Unexpired Leases, including previously rejected Unexpired Leases. Any such party shall be eligible to cast a provisional vote to accept or reject the Plan by the Voting and Opt-Out Deadline on account of a Claim in an amount equal to the greater of (a) $1.00 and (b) the amount asserted in any Proof of Claim; provided, that the Debtors shall retain the right to object to the validity of such Claim and the amount asserted in any applicable Proof of Claim.

27. The proposed solicitation timeline will also require a waiver of subsection (a) of Local Rule 3018-1. Local Rule 3018-1(a) requires a seven-day period between the return of ballots and a confirmation hearing. There are substantial reasons that weigh in favor of the Court modifying the requirement of Local Rule 3018-1(a). Granting a waiver of Local Rule 3018-1(a) is warranted. With the limited number of Class 3 and Class 4 Ballots to collect, there is limited risk that a shortened interval between the receipt of completed Ballots and the Combined Hearing would reduce stakeholder participation. On the other hand, a shorter period between Ballot submission and the Combined Hearing will preserve estate value and avoid unnecessary administrative expense while also giving all parties in interest adequate notice of the hearing and an opportunity to be heard. The proposed Voting and Opt-Out Deadline and Combined Objection Deadline will occur over 28 days after the Combined Hearing Notice is delivered, as required by Bankruptcy Rule 2002(b)(2). Thus, waiving Local Rule 3018-1(a) will have no effect on the mandatory 28-day solicitation period. As previously discussed, the Debtors must proceed toward confirmation of the Plan on an expedited timeline to reduce the amount of time they spend in

chapter 11, control administrative expenses, and maximize value for stakeholders. Waiving the requirements of Local Rule 3018-1(a) will make this possible.

28. The Debtors also propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if both (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed and (b) such transfer is reflected on the Claims Register by: (i) with respect to Known Eligible Claims, the Voting Record Date, or (ii) with respect to Unknown Eligible Claims with respect to which a valid Proof of Claim is filed on or after the Voting Record Date and on or before the Claims Bar Date, the Claims Bar Date. In the event a Claim is transferred after the Voting Record Date or the Claims Bar Date, as applicable, the transferee of such Claim will not be allowed to vote such claim, and the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

29. Finally, the Debtors request that, after the Debtors distribute the Solicitation Package to Holders of Claims entitled to vote on the Plan, the Court require that all Holders of Claims entitled to vote on the Plan complete and submit their Ballots so that they are **actually received** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline. Similarly, Holders of Claims or Interests who wish to opt out of the Third-Party Release must complete and submit their Opt-Out Form so that it is **actually received** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline.

30. The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan sufficient time to review and analyze such materials and subsequently make an informed judgment as to whether to vote to accept or reject the Plan before the Voting and Opt-

Out Deadline consistent with the requirements of the applicable Bankruptcy Rules.[8] Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Package to the Holders of Claims in the Voting Classes, the Combined Hearing Notice and Publication Deadline, and the deadline for Holders of Claims or Interests to vote to accept or reject the Plan and/or return their Opt-Out Form, as applicable.

**B. The Court Should Approve the Forms of the Ballots.**

31. Bankruptcy Rule 3018(c) requires that "[a]n acceptance or rejection of a plan shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c). In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and customized the Ballots. Although based on Official Form B 314, the Ballots have been modified to (a) address the circumstances of these Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in the Voting Classes. The proposed Ballots for the Voting Classes are attached to the Order as Exhibit 3A, Exhibit 3B, and Exhibit 3C. Accordingly, the Debtors submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

**C. The Court Should Approve the Form and Distribution of the Solicitation Package to Holders of Claims Entitled to Vote on the Plan.**

32. Bankruptcy Rule 3017(d) specifies, among other things, the materials to be distributed to holders of allowed claims and/or equity interests upon approval of a disclosure

---

[8] *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims). Nonetheless, the Debtors request authority to extend the Voting and Opt-Out Deadline without further order of the Court.

statement, including the court-approved plan, disclosure statement, and the notice of the time to file acceptances and rejections of the plan. Fed. R. Bankr. P. 3017(d).

33. In accordance with this requirement, the Debtors propose to distribute the Solicitation Package to provide Holders of Claims entitled to vote on the Plan with the information they need to make an informed judgment with respect to how to vote on the Plan. Specifically, on or before the Solicitation Package Mailing Deadline, the Debtors, through the Claims and Noticing Agent, will cause the Solicitation Package to be distributed to Holders of Known Eligible Claims via email (using the email address maintained by the Debtors as of the Voting Record Date) or, to the extent an email address is not on file and the Debtors are in possession of a physical mailing address for such Holders, via first-class mail. The Plan, the Disclosure Statement, the Solicitation and Voting Procedures, and the Order will be provided in electronic format (by email or by a QR code included in the Combined Hearing Notice) rather than in paper form, and only the Ballots, the Cover Letter, and the Combined Hearing Notice will be provided in paper form. The Plan and the Disclosure Statement will also be available at no charge on the Debtors' restructuring website at https://omniagentsolutions.com/TCP. Any party that receives materials in electronic format may request paper copies, or a USB flash drive containing the Plan, the Disclosure Statement, and the Order, from the Claims and Noticing Agent at no charge.

34. Each Solicitation Package will include the following materials, as applicable:

a. the Disclosure Statement (and exhibits thereto, including the Plan), attached to the Order as Exhibit 1;

b. a copy of the Solicitation and Voting Procedures, substantially in the form attached to the Order as Exhibit 2;

c. the applicable Ballot, substantially in the forms attached to the Order as Exhibit 3A, Exhibit 3B, and Exhibit 3C, together with detailed voting instructions and instructions on how to submit the Ballot;

d. the Cover Letter, substantially in the form attached to the Order as Exhibit 5, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan;

e. the Combined Hearing Notice, substantially in the form attached to the Order as Exhibit 6;

f. the Order granting the relief requested herein (without exhibits, except for the Solicitation and Voting Procedures); and

g. any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

35. The Debtors request that they be authorized to distribute the Solicitation Packages (including the Ballots) via email or first-class mail in paper or electronic format (i.e., QR code), as applicable. The Plan, the Disclosure Statement, the proposed Order, and Solicitation and Voting Procedures, collectively, are hundreds of pages. Distribution in the manner requested will enable the Debtors' estates to save on printing and postage costs, which would be unjustifiably expensive if delivery of hard copy Solicitation Packages is required. Bankruptcy courts in this district have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 cases in the interest of saving printing and mailing costs. *See, e.g.*, *In re Eddie Bauer LLC*, No. 26-11422 (SLM) (Bankr. D.N.J. Mar. 16, 2026) (authorizing the debtors to distribute solicitation packages in electronic format by email); *In re Multi-Color Corp.*, No. 26-10910 (MBK) (Bankr. D.N.J. Feb. 2, 2026) (same); *In re Pretium Packaging, Inc.*, No. 26-10896 (CMG) (Bankr. D.N.J. Jan. 30, 2026) (same); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Apr. 29, 2024) (authorizing the debtors to distribute solicitation packages in electronic format by email and by USB drive where email was not available); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 18, 2024) (authorizing the debtors to distribute solicitation packages in

electronic format by email, hyperlink, and/or flash drive); *In re Rite Aid Corp.*, No. 23-19883 (MBK) (Bankr. D.N.J. March 28, 2024) (same).[9]

36. Additionally, the Debtors will provide (via email where available) complete Solicitation Packages (excluding the Ballots) to the U.S. Trustee. The Debtors will not provide the Solicitation Package, the Notice of Non-Voting Status, or other solicitation materials to: (a) Holders of Claims that (i) have already been paid in full during the Chapter 11 Cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by the Court or (ii) are scheduled to be paid in the ordinary course prior to the Voting and Opt-Out Deadline; (b) any party to whom the notice of this Motion was sent but subsequently returned as undeliverable without a forwarding address on or prior to the Voting Record Date; or (c) the Holders of Claims or Interests in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests). For purposes of serving the Solicitation Package, the Notice of Non-Voting Status, and the Combined Hearing Notice, the Debtors and the Claims and Noticing Agent will rely on the address information (including email addresses) maintained by the Debtors and provided to the Claims and Noticing Agent. The Debtors also request a waiver of any obligation for the Debtors or the Claims and Noticing Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices.

37. Given the attendant timing considerations and administrative costs associated with tabulating hard copy Ballots, in addition to accepting hard copy Ballots via first-class mail, overnight courier, and hand delivery, the Debtors request authorization to accept electronic Ballots ("E-Ballots") via online submissions through a customized online balloting portal on the Debtors'

9 Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

case website maintained by the Claims and Noticing Agent (the "E-Ballot Portal"). Ballots submitted via the E-Ballot Portal may be electronically signed and submitted. Instructions for online submission of Ballots are set forth on the forms of Ballots. The encrypted ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the voting party's electronic signature will be deemed to be immediately legally valid and effective.

38. All votes to accept or reject the Plan must be cast by using the appropriate Ballots and/or voting instructions. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions via: (a) first-class mail, in the return envelope provided with each Ballot; (b) overnight delivery; (c) personal delivery; or (d) the E-Ballot Portal, in each case so that the Ballots are **actually received** by the Claims and Noticing Agent no later than the Voting and Opt-Out Deadline at the return address set forth in the applicable Ballot. Each Ballot contains detailed instructions that describe the appropriate means of Ballot submission.

**D. The Court Should Approve the Combined Hearing Notice**.

39. The Combined Hearing Notice includes the following: (a) instructions as to how to view or obtain copies of the conditionally approved Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims and Noticing Agent's and/or the Court's website via PACER; (b) notice of the Voting and Opt-Out Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Combined Objection Deadline; and (e) notice of the Combined Hearing Date and information related thereto. The Debtors will serve (via email where available) the Combined Hearing Notice on all known Holders of Claims or Interests and the list of notice parties maintained by the Debtors pursuant to Bankruptcy Rule 2002 (regardless of

whether such parties are entitled to vote on the Plan) no later than the Combined Hearing Notice and Publication Deadline.

40. Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). Therefore, in addition to the foregoing distribution of the Combined Hearing Notice, the Debtors will publish the Publication Notice in The New York Times (National Edition) and/or such other publication(s) reasonably acceptable to the Debtors no later than the Combined Hearing Notice and Publication Deadline. The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting and Opt-Out Deadline, the Combined Objection Deadline, and the Combined Hearing Date to parties who did not otherwise receive notice thereof by mail. Additionally, service of the Combined Hearing Notice and publication of the Publication Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

**E. The Court Should Approve the Plan Supplement Notice**.

41. The Plan defines "Plan Supplement" to mean the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case as may be altered, amended, modified, or supplemented from time to time in accordance with the terms of the Plan and in accordance with the Bankruptcy Code and Bankruptcy Rules). The Debtors propose that the Plan Supplement Filing Deadline be no later than **January 13, 2027**, which is seven days prior to the Voting and Opt-Out Deadline and the Combined Objection Deadline. The Plan Supplement will include, but is not limited to including, the following materials in connection with confirmation, as applicable: (a) the Schedule of Retained Causes of Action; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the Plan Administrator Agreement and the identity of the

Plan Administrator; (e) the Wind-Down Budget; (f) the Transactions Steps Memorandum; and (g) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement (each as defined in the Plan).

42. To ensure that all Holders of Claims or Interests receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to file and serve (via email where available) the Plan Supplement Notice on or before the Plan Supplement Filing Deadline. Accordingly, the Plan Supplement Notice should be approved.

**F. The Court Should Approve the Form of Notice to the Non-Voting Classes and Opt-Out Form.**

43. As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. Accordingly, except to the extent the Debtors determine otherwise, the Debtors will not provide the Solicitation Package to Holders of Claims or Interests in the Non-Voting Classes. Instead, on or before the Solicitation Package Mailing Deadline, the Claims and Noticing Agent shall distribute the Notice of Non-Voting Status (via email or via first-class mail) in lieu of the Solicitation Package, the form of each of which will include the mechanisms for opting out of the Third-Party Release contained in Article VIII of the Plan, to those parties outlined below, who are not entitled to vote on the Plan:

| Class | **Status** | **Status and voting** |
|---|---|---|
| Class 1, Class 2 | Unimpaired—Presumed to Accept | Holders of Claims that are conclusively presumed to accept the Plan are not entitled to vote. As such, Holders of such Claims will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |

| Class | Status | Status and voting |
|---|---|---|
| Class 8, Class 9 | Impaired—Deemed to Reject | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote. As such, Holders of such Claims or Interests will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection that prohibits Holders of such Claims from voting will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |

44. The Debtors will not provide the Holders in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) with a Solicitation Package or any other type of notice in connection with the solicitation. Intercompany Claims will either be (a) reinstated (solely for the purpose of facilitating the Wind-Down Transactions); (b) set off, settled, distributed, contributed, canceled, and released without any distribution on account of such Intercompany Claim; or (c) otherwise addressed at the option of the applicable Debtor or Wind-Down Debtor and Intercompany Interests will either be (x) reinstated (solely for the purpose of facilitating the Wind-Down Transactions), (y) set off, settled, distributed, contributed, canceled, and released without any distribution on account of such Intercompany Interest; or (z) otherwise addressed at the option of the applicable Debtor or Wind-Down Debtor, so the Holders of Intercompany Claims or Intercompany Interests will not be entitled to vote to accept or reject the Plan. Nevertheless, given that the Intercompany Claims and Intercompany Interests are all held by the Debtors, the Debtors

are requesting a waiver from any requirement to serve such Holders of Intercompany Claims or Intercompany Interests with any notices or the Solicitation Package.

45. The Notice of Non-Voting Status and Opt-Out Form will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims and Noticing Agent and/or the Court's website via PACER; (b) notice to recipients of their status as Holders or potential Holders of Claims or Interests in Non-Voting Classes; (c) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan; (d) the Opt-Out Form by which Holders could elect to opt out of the Third-Party Release set forth in Article VIII.D of the Plan; (e) the notice of the Combined Objection Deadline; and (f) the notice of the Combined Hearing Date and information related thereto. The Claims and Noticing Agent will serve Holders of Claims and Interests in Non-Voting Classes with the Notice of Non-Voting Status and Opt-Out Form by email and/or first-class mail, as applicable.

46. The Debtors believe that distributing the Notice of Non-Voting Status and Opt-Out Form in lieu of the Solicitation Package satisfies the requirements of Bankruptcy Rule 3017(d). Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes.

**G. The Court Should Approve Notice to Contract and Lease Counterparties**.

47. Article V of the Plan provides that, except as otherwise provided in the Plan, each of the Debtors' Executory Contracts and Unexpired Leases not previously rejected, assumed, or assumed and assigned, shall be deemed automatically rejected on the Effective Date by the applicable Wind-Down Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is

identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) has been previously assumed or rejected by the Debtors pursuant to a Bankruptcy Court order; (c) is the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect to the proposed assumption and assignment of such contract) that is pending on the Effective Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan; or (e) is an Insurance Policy.

48. To ensure that counterparties to executory contracts and unexpired leases receive notice of the assumption or rejection of their executory contract or unexpired lease, if any, pursuant to the Plan, the Debtors will serve via email (or, to the extent the Debtors are not aware of a counterparty's email address or email service is returned as undeliverable, via physical mail in paper format) the Assumption Notice or Rejection Notice, substantially in the forms attached to the Order as Exhibit 8 and Exhibit 9 respectively, to the applicable counterparties no later than January 19, 2027, which is seven (7) days prior to the Combined Hearing Date. The Assumption Notice and Rejection Notice adequately describe the treatment of the applicable counterparties' agreements under the Plan and provide sufficient detail as to how such counterparties can object to such assumption or rejection or obtain additional information regarding the Plan and these Chapter 11 Cases. Accordingly, the Assumption Notice and Rejection Notice should both be approved.

**III. The Court Should Approve the Solicitation and Voting Procedures.**

49. Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

50. Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c). Pursuant to Local Rule 3018-1(c), "[t]he ballot recipient must retain the ballots for two years from the closing of the case." Bankr. Local R. 3018-1(c). The Debtors propose using the Solicitation and Voting Procedures to satisfy such requirements, among others, as described in greater detail below.

**A. Completion of Ballots.**

51. To ease and clarify the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. Specifically, the Solicitation and Voting Procedures provide that the Debtors will not count a Ballot if it is, among other things, illegible, contains insufficient information, submitted by a Holder of a Claim that is not entitled to vote on the Plan, unsigned, or not submitted pursuant to the instructions provided on the Ballots and Solicitation and Voting Procedures; *provided* that Ballots submitted through the Claims and Noticing Agent's E-Ballot Portal shall be deemed electronically signed. The Debtors may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be documented in the Voting Report. Additionally, as required by Local Rule 3018-1(c), the Claims and Noticing Agent will retain all paper copies of Ballots and all solicitation-related correspondence for two years following the closing of the case, whereupon the Claims and Noticing Agent may destroy and/or otherwise dispose of such materials.

**B. General Ballot Tabulation and Voting Procedures**

52. The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to Holders of Claims, and

tabulation of such votes. The Debtors believe that the proposed Solicitation and Voting Procedures will facilitate a smooth Plan solicitation and confirmation process. The Solicitation and Voting Procedures clarify the procedures that Holders of Claims entitled to vote on the Plan must follow to have their votes counted and also create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code. Accordingly, the Solicitation and Voting Procedures are in the best interests of the Debtors' estates, Holders of Claims or Interests, and other parties in interest and should be approved.

53. The Debtors request that the Claims and Noticing Agent be authorized to assist the Debtors in: (a) distributing the Solicitation Package and Notice of Non-Voting Status; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims; (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Package, the Notice of Non-Voting Status, Opt-Out Form, and all other documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan, opting out of the Third-Party Release, and for objecting to confirmation of the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting parties in interest regarding the Plan and/or the Disclosure Statement.

## IV. The Court Should Approve the Procedures for Confirming the Plan.

### A. The Combined Hearing Date.

54. Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and provides that parties in interest can "object to confirmation." 11 U.S.C. § 1128. Bankruptcy Rule 3017(a) also requires that the court "hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto."

Fed. R. Bankr. P. 3017(a). Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan. Fed. R. Bankr. P. 3017(c). Furthermore, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed . . . for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary." Fed. R. Bankr. P. 2002(b). Section 105(d)(2)(B)(vi) of the Bankruptcy Code expressly authorizes the Court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the Court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically." *See In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) ("Section 1125(f) authorizes combined plans and disclosure statements in small business cases and § 105(d) authorizes the court to combine them in other cases.").

55. Courts in this district have previously allowed combined hearings to consider adequacy of a disclosure statement and confirmation of a Plan in the context of chapter 11 cases. *See, e.g.*, *In re Eddie Bauer LLC*, No. 26-11422 (SLM) (Bankr. D.N.J. Mar. 16, 2026); *In re Multi-Color Corp.*, No. 26-10910 (MBK) (Bankr. D.N.J. Feb. 2, 2026); *In re Pretium Packaging, Inc.*, No. 26-10896 (CMG) (Bankr. D.N.J. Jan. 30, 2026); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Apr. 29, 2024); *In re Rite Aid Corp.*, No. 23-19883 (MBK) (Bankr. D.N.J. March 28, 2024); *In re Bed Bath & Beyond.*, No. 23-13359 (VFP) (Bankr. D.N.J. Aug. 2, 2023).[10]

---

[10] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

56. The Debtors request that the Court enter the Order setting the Combined Hearing Date of January 26, 2027. Adjudicating final approval of the Disclosure Statement at the Combined Hearing will streamline and expedite the confirmation process, which will inure to the benefit of the Debtors' estates and their creditors by hastening the implementation of the Plan and limiting the amount of time the Debtors remain in chapter 11. A Combined Hearing will also spare the Debtors from additional administrative expenses associated with a two-stage confirmation process and thereby promote judicial efficiency and economy.

57. The Debtors further request that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than announcement of such adjournment in open court and/or filing a notice of adjournment with the Court and serving the same on parties entitled to notice under Bankruptcy Rule 2002 or otherwise.

**B. The Court Should Approve the Procedures for Filing Objections to Confirmation of the Plan and Final Approval of the Disclosure Statement**.

58. Bankruptcy Rule 2002 requires no less than twenty-eight days' notice to all Holders of Claims of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan. Fed. R. Bankr. P. 2002(b), (d). Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). The Debtors request that the Court establish January 20, 2027 at 3:00 p.m., prevailing Eastern Time, as the Combined Objection Deadline. The Debtors believe that the Combined Objection Deadline, which is over twenty-eight (28) days following the Combined Hearing Notice and Publication Deadline, provides all parties in interest reasonable time to object to the final approval of the Disclosure Statement and confirmation of the Plan and otherwise satisfies the requirements of Bankruptcy Rule 2002(b).

59. The Debtors also request that the Court direct the manner in which parties in interest may object to confirmation of the Plan. The Combined Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

a. be in writing;

b. conform to the Bankruptcy Rules, the Local Rules, and any other orders of this Court;

c. state, with particularity, the legal and factual basis of the objection and, if practicable, a proposed modification of the Plan (or related materials) that would resolve such objection; and

d. be filed with the Court (contemporaneously with a proof of service) and served upon parties in interest on or before the Combined Objection Deadline.

60. The Debtors believe that the Combined Objection Deadline for filing and service of objections (and proposed modifications, if any) will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Combined Hearing. The Debtors believe that the Combined Objection Deadline, which is over twenty-eight days following the Combined Hearing Notice and Publication Deadline, provides all parties in interest reasonable time to object to the final approval of the Disclosure Statement and confirmation of the Plan and otherwise satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and Local Rules.

61. The Disclosure Statement and other solicitation materials are being distributed to each Holder of a Claim entitled to vote to accept or reject the Plan and are readily available at no cost on the Debtors' chapter 11 website at https://omniagentsolutions.com/TCP-Ballots. Furthermore, the Holders of Claims and Interests not entitled to vote to accept or reject the Plan will be afforded due process because such Holders will be served with the Notice of Non-Voting

Status, which includes notice of the applicable deadlines thereto and an opportunity to opt out of the Third-Party Release.

### C. The Court Should Approve the Deadline for Filing the Certification of Balloting.

62. Local Rule 3018-1(b) requires that "the ballot recipient must file Local Form Certification of Balloting not later than 3 days before the confirmation hearing." In light of the Debtors' proposed solicitation timeline, the Debtors request that the Court set the deadline to file the Voting Report as January 22, 2027, which is 4 days in advance of the Combined Hearing Date.

### D. The Court Should Approve the Consequences of Not Confirming or Consummating the Plan.

63. The Debtors reserve the right to revoke or withdraw the Plan before the Combined Hearing and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if either Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to a certain amount of any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims or Interests, (ii) prejudice in any manner the rights of such Debtor or any other entity, or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by such Debtor or any other entity.

## Non-Substantive Modifications

64. The Debtors request authorization to make changes to the Plan, Disclosure Statement, Solicitation and Voting Procedures, Ballots, Solicitation Packages, Notices of Non-Voting Status, Opt-Out Form, Combined Hearing Notice, Publication Notice, Cover Letter, Plan Supplement Notice, Assumption Notice, Rejection Notice, any notice attached to the Order, and

any related documents without further order of the Court, including formatting changes, changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials (including the appendices thereto) in the Solicitation Packages before distribution.

**Reservation of Rights**

65. Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien (contractual, common law, statutory, or otherwise) on, security interest in, or other encumbrance on property of the Debtors' estates and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a Proof of Claim.

**Notice**

66. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) Wells Fargo Bank, National Association, as Prepetition ABL Agent; (d) Crystal Financial LLC d/b/a SLR Credit Solutions, as Prepetition Term Loan Agent; (e) Mithaq Capital SPC, as prepetition unsecured lender; (f) the office of the attorney general for each of the states in which the Debtors operate; (g) the United States Attorney's Office for the District of New Jersey; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief the Court deems appropriate under the circumstances.

Dated: November 22, 2026


**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

\- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

\- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*/s/ Michael D. Sirota*
**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# EXHIBIT A

**Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

**ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND VOTING PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twenty-one (21), is **ORDERED**.

[1] A complete list of each of the Debtors, including each Debtor's tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

Upon the motion (the "Motion")[1] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") pursuant to sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3001, 3016, 3017, 3018, 3019, 3020, 9006, 9007, and 9036, and Local Rule 3018-1 (a) approving or reaffirming, as applicable: (i) on a conditional basis, the adequacy of the *Disclosure Statement for the Joint Plan of the Children's Place, Inc. and its Debtor Affiliates* filed contemporaneously with the Motion, attached hereto as **Exhibit 1** (as the same may be amended, modified, or supplemented from time to time consistent with applicable law, the "Disclosure Statement"); (ii) the Solicitation and Voting Procedures, attached hereto as **Exhibit 2**; (iii) the forms of Ballots, attached hereto as **Exhibit 3A**, **Exhibit 3B**, and **Exhibit 3C**; (iv) the form of Notice of Non-Voting Status, attached hereto as **Exhibit 4**, and the form of Opt-Out Form, attached hereto as **Exhibit 4A**; (v) the form of Cover Letter that the Debtors will send to Holders of Claims entitled to vote to accept or reject the plan, describing the contents of the Solicitation Package, and recommending that such parties vote in favor of the Plan, attached hereto as **Exhibit 5**; (vi) the form of the Combined Hearing Notice, attached hereto as **Exhibit 6**; (vii) the form of Plan Supplement Notice, attached hereto as **Exhibit 7**; (viii) the form of the Assumption Notice, attached hereto as **Exhibit 8**; (ix) the form of the Rejection Notice, attached hereto as **Exhibit 9**; (x) the Solicitation Package that will be sent to Holders of Claims entitled to vote to accept or reject the Plan in compliance with Bankruptcy Rules

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2002(b) and 3017(d); (xi) the Confirmation Dates, including, but not limited to, the Combined Hearing Notice and Publication Deadline, the Voting Record Date, the Solicitation Package Mailing Deadline, the Plan Supplement Filing Deadline, the Voting and Opt-Out Deadline, the Combined Objection Deadline, the Voting Report Deadline, the Confirmation Brief Deadline, and the Combined Hearing Date; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference to the Bankruptcy Court Under Title 11 of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** as provided herein.

2. Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

## I. Conditional Approval of the Adequacy of Information Contained in the Disclosure Statement.

3. The Disclosure Statement is approved on a conditional basis as providing Holders of Claims entitled to vote on the Plan with adequate information to make an informed judgment as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code. This approval is without prejudice to the right of any party in interest to argue at the Combined Hearing that the Disclosure Statement does not contain adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code, and this Order shall be without preclusive effect as to any determination by this Court at the Combined Hearing solely regarding the adequacy of the information contained in the Disclosure Statement within the meaning of section 1125(a)(1) of the Bankruptcy Code.

4. The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims or Interests, and other parties in interest, with sufficient notice of, and the identities of the entities subject to, the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

## II. Approval of the Solicitation and Voting Procedures with Respect to Confirmation of the Plan.

### A. Approval of the Solicitation and Voting Procedures

5. The Debtors are authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **Exhibit 2**, which are hereby approved in their entirety. The Solicitation and Voting Procedures comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**B. Approval of Certain Dates and Deadlines with Respect to the Plan and Disclosure Statement.**

6. The following dates and deadlines are hereby established or reaffirmed, as applicable (subject to modification as necessary by the Debtors), with respect to the solicitation of votes to accept the Plan, voting on the Plan, and confirming the Plan:

| Event | Date | Description |
|---|---|---|
| Voting Record Date | December 15, 2026 | With respect to Claims that either (a) are listed in the Schedules or (b) with respect to which a valid proof of claim (a "Proof of Claim") is filed before December 15, 2026 (such claims, the "Known Eligible Claims"),[2] the date to determine which Holders of such Claims are entitled to vote to accept or reject the Plan (the "Voting Record Date"). If a valid Proof of Claim for a Claim in a Voting Class (a) that is not listed in the Schedules and (b) with respect to which a valid Proof of Claim has not been filed as of the Voting Record Date (an "Unknown Eligible Claim") is filed on or after the Voting Record Date and on or before January 6, 2027, at 11:59 p.m., prevailing Eastern Time, the general claims bar date (the "Claims Bar Date") established in connection with the Bar Date Order,[3] then the Claims and Noticing Agent will distribute a Solicitation Package to the Holder of such Unknown Eligible Claim within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent. Such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline for such Ballot to be counted. The foregoing record-date and Proof of Claim cutoffs are subject to the provisional voting rights of counterparties to Unexpired Leases under the Solicitation and Voting Procedures. |
| Combined Hearing Notice and Publication Deadline | December 21, 2026, or, with respect to the Publication Notice, as soon as practicable thereafter. | The date by which the Debtors will (a) distribute, or cause to be distributed, the Combined Hearing Notice to the Holders of Claims or Interests, and (b) publish the Combined Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Combined Hearing Notice and Publication Deadline"). |

---

2 Pursuant to the *Debtors' Motion Seeking Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs, and (II) Granting Related Relief* [Docket No. 7], the Debtors must file their schedules of assets and liabilities (the "Schedules") and statements of financial affairs by December 11, 2026.

3 The "Bar Date Order" means the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 75].

| Event | Date | Description |
|---|---|---|
| Solicitation Package Mailing Deadline | Five (5) business days following entry of the Order. | The deadline by which the Debtors must distribute, or cause to be distributed, the Solicitation Package, including the Ballots, to Holders of Known Eligible Claims entitled to vote to accept or reject the Plan (the "Solicitation Package Mailing Deadline"). |
| Plan Supplement Filing Deadline | January 13, 2027 | The date by which the Debtors shall file the Plan Supplement (the "Plan Supplement Filing Deadline"). |
| Voting and Opt-Out Deadline | January 20, 2027 at 3:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and Opt-Out Forms must be properly executed, completed, and submitted so that they are actually received by Omni Agent Solutions, Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent," and such deadline, the "Voting and Opt-Out Deadline"). |
| Combined Objection Deadline | January 20, 2027 at 3:00 p.m., prevailing Eastern Time | The deadline by which objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court (the "Combined Objection Deadline"). |
| Voting Report Deadline | January 22, 2027 at 3:00 p.m., prevailing Eastern Time | The date by which the report tabulating the voting results with respect to the Plan (the "Voting Report") shall be filed with the Court (such date, the "Voting Report Deadline"). |
| Confirmation Brief Deadline | January 22, 2027 | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan (the "Confirmation Brief Deadline"). |
| Combined Hearing Date | January 26, 2027 | The date of the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing," and such date, the "Combined Hearing Date"). |

7. The Voting and Opt-Out Deadline provides sufficient time for Holders of Claims entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan. The Debtors may adjourn the Combined Hearing and any related dates and deadlines

from time to time, without notice to the parties in interest other than announcement of such adjournment in open court and/or filing a notice of adjournment with this Court.

**C. Approval of the Form and Distribution of the Solicitation Package to Parties Entitled to Vote on the Plan**.

8. The Debtors shall cause the Solicitation Package to be distributed to Holders of Claims entitled to vote on the Plan as of the Voting Record Date on or before the Solicitation Package Mailing Deadline; provided that the Debtors shall distribute the Combined Hearing Notice on or prior to the Combined Hearing Notice and Publication Deadline. With respect to each Holder of an Unknown Eligible Claim with respect to which a valid Proof of Claim is filed on or after the Voting Record Date and on or before the Claims Bar Date, the Claims and Noticing Agent will distribute a Solicitation Package to each such Holder within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent. Such service satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Each recipient of the Solicitation Package shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline in order for such Ballot to be counted.

9. Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, or this Order, the Debtors shall cause a Ballot for Class 5 to be served on all counterparties to Unexpired Leases, including previously rejected Unexpired Leases. Any such party shall be eligible to cast a provisional vote to accept or reject the Plan by the Voting and Opt-Out Deadline on account of a Claim in an amount equal to the greater of (a) $1.00 and (b) the amount asserted

in any Proof of Claim; provided, that the Debtors shall retain the right to object to the validity of such Claim and the amount asserted in any applicable Proof of Claim.

10. The Solicitation Package shall include the following documents, the form of each of which is hereby approved and complies with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules:

a. the Disclosure Statement (and exhibits thereto, including the Plan), attached hereto as **Exhibit 1**;

b. a copy of the Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 2**;

c. the applicable Ballot, substantially in the forms attached hereto as **Exhibit 3A**, **Exhibit 3B**, and **Exhibit 3C**, together with detailed voting instructions and instructions on how to submit the Ballot;

d. the Cover Letter, substantially in the form attached hereto as **Exhibit 5**, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan;

e. the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 6**;

f. this Order (without exhibits, except for the Solicitation and Voting Procedures); and

g. any additional documents that this Court has ordered to be made available to Holders of Claims in the Voting Classes.

11. The Solicitation Package provides the Holders of Claims entitled to vote on the Plan with adequate information to make an informed judgment as to whether to vote to accept or reject the Plan in accordance with the Bankruptcy Code, Bankruptcy Rules 2002(b) and 3017(d), and the Local Rules.

12. The Debtors are authorized to cause electronic copies of the Solicitation Package to be distributed through the Claims and Noticing Agent via email (using the email address maintained by the Debtors as of the Voting Record Date) to Holders of Claims in the Voting Classes, or, to the extent an email address is not on file and the Debtors are in possession of a physical mailing address for such Holders, via first-class mail. The Plan, the Disclosure Statement, the Solicitation and Voting Procedures, and the Disclosure Statement Order will be provided in electronic format (by email or by a QR code included in the Combined Hearing Notice) rather than in paper form, and only the Ballots, the Cover Letter, and the Combined Hearing Notice will be provided in paper form. The Plan and the Disclosure Statement will also be available at no charge on the Debtors' restructuring website at https://omniagentsolutions.com/TCP. Any party that receives materials in electronic format may request paper copies, or a USB flash drive containing the Plan, the Disclosure Statement, and the Order, from the Claims and Noticing Agent at no charge.

13. The Debtors and the Claims and Noticing Agent are authorized to rely on the address information (including email addresses for voting and non-voting parties alike) maintained by the Debtors and provided to the Claims and Noticing Agent. Any obligation for the Debtors or the Claims and Noticing Agent to conduct any additional research for updated addresses based on undeliverable solicitation materials (including undeliverable Ballots) is hereby waived. Furthermore, notwithstanding anything herein to the contrary, neither the Debtors nor the Claims and Noticing Agent shall be required to distribute a Solicitation Package or any other materials

related to voting or confirmation of the Plan to any person or entity from which the notice of the Motion or other mailed notice in these cases was returned as undeliverable unless the Claims and Noticing Agent is provided with accurate mailing addresses for such persons or entities on or prior to the Voting Record Date. In no event shall any Holder of a Claim be entitled to submit a Ballot after the Voting and Opt-Out Deadline without the Debtors' express written consent or by a separate order of this Court after notice and a hearing.

14. The Debtors are authorized to cause copies of the Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 4**, and the Opt-Out Form, substantially in the form attached hereto as **Exhibit 4A**, to be delivered via email and/or first-class mail, as applicable, through the Claims and Noticing Agent to Holders of Claims or Interests in the Non-Voting Classes.

15. On or before the Solicitation Package Mailing Deadline, the Debtors (through the Claims and Noticing Agent) shall provide the Solicitation Packages (excluding the Ballots and the Cover Letter) via email (where available) to the U.S. Trustee.

16. The Claims and Noticing Agent is authorized to assist the Debtors in all of the actions set forth herein, as applicable, including: (a) distributing the Solicitation Package and Notice of Non-Voting Status; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims; (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Package, the Notice of Non-Voting Status, the Opt-Out Form, and all other documents

and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan, opting out of the Third-Party Release, and for objecting to confirmation of the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting parties in interest regarding the Plan and/or the Disclosure Statement.

17. The Claims and Noticing Agent is authorized to accept Ballots and Opt-Out Forms via online submissions through an online balloting portal on the Debtors' case website (the "E-Ballot Portal" or the "Opt-Out Portal," as applicable) as set forth in the Solicitation and Voting Procedures. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Form submitted in this manner, and the creditor's electronic signature will be deemed to be immediately legally valid and effective. Ballots submitted to the Claims and Noticing Agent by any means other than as expressly provided in this Order or in the Solicitation and Voting Procedures shall not be valid and shall not count as a vote to accept or reject the Plan. The Ballots and Opt-Out Forms submitted online via the E-Ballot Portal or Opt-Out Portal, as applicable, shall be deemed to contain an original signature.

18. All votes to accept or reject the Plan must be cast using the appropriate Ballots and/or voting instructions. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions via: (a) first-class mail, in the return envelope provided with each Ballot; (b) overnight delivery; (c) personal delivery; or (d) the E-Ballot Portal, so that the Ballots are actually received by the Claims and Noticing Agent on or before the Voting

and Opt-Out Deadline. The Debtors are authorized to extend the Voting and Opt-Out Deadline in their discretion without further order of this Court.

**D. Approval of the Form of Notices to Non-Voting Classes and Opt-Out Forms**.

19. Except to the extent that the Debtors determine otherwise, the Debtors are not required to provide the Solicitation Package to Holders of Claims or Interests in Non-Voting Classes, as such Holders are not entitled to vote on the Plan. Instead, on or before the Solicitation Package Mailing Deadline, the Claims and Noticing Agent shall distribute the Notice of Non-Voting Status (via email or via first-class mail, as applicable) in lieu of the Solicitation Package, the form of each of which will include the mechanisms for opting out of the Third-Party Release contained in Article VIII of the Plan, to those parties set forth below, who are not entitled to vote on the Plan; *provided* that the Debtors shall also distribute the Combined Hearing Notice on or before the Combined Hearing Notice and Publication Deadline to Holders of Claims or Interests in Non-Voting Classes:

| Class | **Status** | **Status and voting** |
|---|---|---|
| Class 1, Class 2 | Unimpaired—Presumed to Accept | Holders of Claims that are conclusively presumed to accept the Plan are not entitled to vote. As such, Holders of such Claims will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |

| Class | **Status** | **Status and voting** |
|---|---|---|
| Class 8, Class 9 | Impaired—Deemed to Reject | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote. As such, Holders of such Claims or Interests will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection that prohibits Holders of such Claims from voting will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |

20. Service of the Notice of Non-Voting Status and Combined Hearing Notice via email (using the email address maintained by the Debtors as of the Voting Record Date) or via first-class mail in paper or electronic format (*i.e.*, QR code), as applicable, to Holders of Claims or Interests that are not entitled to vote is reasonably calculated to provide notice to such Holders of the Combined Hearing under the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

21. The Debtors are not required to distribute the Solicitation Package, other solicitation materials, or a Notice of Non-Voting Status to: (a) Holders of Claims that (i) have already been paid in full during the Chapter 11 Cases or that are otherwise paid in full in the

ordinary course of business pursuant to an order previously entered by this Court or (ii) are scheduled to be paid in the ordinary course prior to the Voting and Opt-Out Deadline; (b) any party to whom the notice of the Motion was sent but subsequently returned as undeliverable without a forwarding address on or prior to the Voting Record Date; or (c) the Holders of Claims or Interests in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests).

22. The Notice of Non-Voting Status and the Opt-Out Form shall include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), this Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims and Noticing Agent and/or this Court's website via PACER; (b) notice to recipients of their status as Holders or potential Holders of Claims or Interests in Non-Voting Classes; (c) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan; (d) the Opt-Out Form by which Holders may elect to opt out of the Third-Party Release set forth in Article VIII.D of the Plan; (e) notice of the Combined Objection Deadline; and (f) notice of the Combined Hearing Date and information related thereto. Additionally, the Notice of Non-Voting Status is hereby approved and complies with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**E. Approval of the Combined Hearing Notice**.

23. The Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 6**, which shall be filed by the Debtors and served upon all known Holders of Claims or Interests

and the list of notice parties maintained by the Debtors pursuant to Bankruptcy Rule 2002 (regardless of whether such parties are entitled to vote on the Plan) and published in a format modified for publication one time on or before the Combined Hearing Notice and Publication Deadline (or, with respect to publication, at the first reasonably available opportunity offered by the relevant publications), in *The New York Times* (national edition) and/or such other publication(s) reasonably acceptable to the Debtors, constitutes adequate and sufficient notice of the Combined Hearing, the manner in which a copy of the Plan and Disclosure Statement can be obtained, and the time fixed for filing objections to Confirmation of the Plan and final approval of the Disclosure Statement, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**F. Approval of the Plan Supplement Notice**.

24. The Debtors are authorized to send notice of the filing of the Plan Supplement, substantially in the form attached hereto as **Exhibit 7**, to parties in interest on or before the Plan Supplement Filing Deadline. Notwithstanding the foregoing, the Debtors may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with the Plan.

**G. Approval of Notices to Contract and Lease Counterparties**

25. The Debtors are authorized to serve via email (or, to the extent the Debtors are not aware of a counterparty's email address or email service is returned as undeliverable, via physical mail in paper format) a notice of assumption or notice of rejection of any executory contracts or

unexpired leases, in the forms attached hereto as **Exhibit 8** and **Exhibit 9**, respectively, which forms are hereby approved, to the applicable counterparties to executory contracts or unexpired leases that will be assumed or rejected pursuant to the Plan on or before the date that is seven (7) days prior to the Combined Hearing.

**H. Non-Substantive Modifications**.

26. The Debtors are authorized to make changes to the Plan, Disclosure Statement, Solicitation and Voting Procedures, Ballots, Solicitation Packages, Notices of Non-Voting Status, Opt-Out Forms, Combined Hearing Notice, Publication Notice, Cover Letter, Plan Supplement Notice, Assumption Notice, Rejection Notice, any other notice attached hereto, and any related documents without further order of this Court, including formatting changes, changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials (including any appendices thereto) in the Solicitation Packages before distribution. Subject to the foregoing, the Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with this Order and the Solicitation and Voting Procedures without further order of this Court.

**III. Approval of the Procedures for Filing Objections to the Final Approval of the Adequacy of the Information Contained in the Disclosure Statement and Confirmation of the Plan**.

27. Objections to Confirmation of the Plan and final approval of the Disclosure Statement will not be considered by this Court unless such objections are timely filed and properly served in accordance with this Order. Specifically, all objections to the confirmation of the Plan

or requests for modifications to the Plan, if any, **must**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of this Court; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan or Disclosure Statement (or materials related to the foregoing) that would resolve such objection; and (d) be filed with this Court (contemporaneously with a proof of service) and served upon parties in interest on or before the Combined Objection Deadline.

## IV. Approval of Consequences of Not Confirming or Consummating the Plan.

28. The Debtors are authorized to revoke or withdraw the Plan before the Combined Hearing and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims or Interests, (ii) prejudice in any manner the rights of such Debtor or any other Entity, or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by such Debtor or any other Entity. Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, recission, reversal, or unwinding of (a) any DIP Order, including, without limitation, any releases provided for therein, or (b) the Sale Transactions and/or the Store Closing Sales, as

applicable, or the revocation of the Debtors' authority under any Final Order to consummate the Sale Transaction or the Store Closing Sales, as applicable.

**V. Miscellaneous**.

29. The requirement set forth in Local Rule 3018-1(a) that ballots be returned to the attorney for the chapter 11 plan proponent not later than seven (7) days before the Combined Hearing is hereby waived.

30. The Debtors' rights to modify the Plan in accordance with Article X thereof, including the right to withdraw the Plan as to an individual Debtor at any time before the Combined Hearing Date, are reserved.

31. Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a Proof of Claim.

32. Nothing in this Order constitutes a finding of fact or conclusion of law regarding whether the Debtors' proposed opt out procedures establish consensual releases, and the rights of all parties in interest to object to Confirmation on any grounds are fully reserved.

33. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34. Notice of the Motion as provided therein and of the Hearing, each as filed and served by the Debtors, shall be deemed adequate and sufficient notice thereof in satisfaction of the Bankruptcy Rules and the Local Rules, and the deadline for filing objections to the conditional approval of the Disclosure Statement and responses thereto is hereby approved.

35. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

36. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

37. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# Exhibit 1

## Disclosure Statement

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

# DISCLOSURE STATEMENT FOR THE JOINT PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. NO VOTES ARE BEING SOLICITED AT THIS TIME. SOLICITATION WILL OCCUR ONLY PURSUANT TO A BANKRUPTCY COURT ORDER AND APPROVED SOLICITATION MATERIALS.**

**IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT**

**THE DEBTORS ARE PROVIDING THIS DISCLOSURE STATEMENT IN CONNECTION WITH THE JOINT PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE. BEFORE VOTING, EACH HOLDER SHOULD READ THIS DISCLOSURE STATEMENT, THE PLAN, AND THE RISK FACTORS IN ARTICLE X IN THEIR ENTIRETY AND CONSULT ITS OWN ADVISORS. THE PLAN CONTROLS IN THE EVENT OF ANY INCONSISTENCY. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE APPROVAL OF THE PLAN.**

**THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, AND CERTAIN ANTICIPATED EVENTS IN THE DEBTORS' CHAPTER 11 CASES. ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH ANTICIPATED EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. ESTIMATES AND PROJECTIONS CONTAINED HEREIN OR ATTACHED HERETO ARE SUBJECT TO THE ASSUMPTIONS AND LIMITATIONS IDENTIFIED HEREIN.**

**IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTORS RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTORS' BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESSES. WHILE THE DEBTORS BELIEVE THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTORS AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF PROJECTIONS REGARDING THE DEBTORS' FUTURE RESULTS AND OPERATIONS. THE DEBTORS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF LIABILITY WITH RESPECT TO DISPUTED CLAIMS OR A WAIVER OF PRESERVED RIGHTS. THE DEBTORS OR ANY OTHER AUTHORIZED PARTY MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN SUBJECT TO THE PLAN, THE SCHEDULE OF RETAINED CAUSES OF ACTION, AND APPLICABLE COURT ORDERS.**

**THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, EXCEPT AS REQUIRED BY APPLICABLE LAW, THE PLAN, OR AN ORDER OF THE BANKRUPTCY COURT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO, AND EXPRESSLY DISCLAIM ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED. INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT. THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME, SUBJECT TO THE TERMS OF THE PLAN.**

**THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT OR OTHER SOLICITATION MATERIALS APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT. THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR OTHER SOLICITATION MATERIALS APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS OR INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, THOSE HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN, OR THOSE HOLDERS OF CLAIMS AND INTERESTS WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE WIND DOWN CONTEMPLATED THEREBY.**

**THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED HEREIN AND SET FORTH IN ARTICLE IX OF THE PLAN. THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED, OR IF CONFIRMED, THAT THE CONDITIONS REQUIRED TO BE SATISFIED FOR THE PLAN TO GO EFFECTIVE WILL BE SATISFIED (OR WAIVED).**

**YOU ARE ENCOURAGED TO READ THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY, INCLUDING ARTICLE X, ENTITLED "RISK FACTORS" BEFORE SUBMITTING YOUR BALLOT TO VOTE ON THE PLAN.**

**THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTEE BY THE BANKRUPTCY COURT OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE MERITS OF THE PLAN.**

**SUMMARIES OF THE PLAN AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS ANNEXED TO THIS DISCLOSURE STATEMENT OR OTHERWISE INCORPORATED HEREIN BY REFERENCE ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THOSE DOCUMENTS. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE OF THIS DISCLOSURE STATEMENT, AND THERE IS NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER SUCH DATE. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN ACCORDANCE WITH APPLICABLE LAW, THE DEBTORS ARE UNDER NO DUTY TO UPDATE OR SUPPLEMENT THIS DISCLOSURE STATEMENT.**

**SPECIAL NOTICE REGARDING FEDERAL AND STATE SECURITIES LAWS**

**NEITHER THIS DISCLOSURE STATEMENT NOR THE PLAN HAS BEEN FILED WITH THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR ANY STATE AUTHORITY. THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SEC OR ANY STATE SECURITIES COMMISSION, AND NEITHER THE SEC NOR ANY STATE SECURITIES COMMISSION HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR THE MERITS OF THE PLAN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

**THIS DISCLOSURE STATEMENT CONTAINS "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. READERS ARE CAUTIONED THAT ANY FORWARD-LOOKING STATEMENTS IN THIS DISCLOSURE STATEMENT ARE BASED ON ASSUMPTIONS THAT ARE BELIEVED TO BE REASONABLE BUT ARE SUBJECT TO A WIDE RANGE OF RISKS, INCLUDING RISKS ASSOCIATED WITH THE FOLLOWING:**

- **THE DEBTORS' BUSINESS AND FINANCIAL STRATEGIES, BUDGETS, AND PROJECTIONS, INCLUDING THE TIMING AND PROCEEDS OF THE INVENTORY SALE AND ANY GOING-CONCERN SALE;**
- **LEVELS OF INDEBTEDNESS, LIQUIDITY, AND COMPLIANCE WITH DEBT COVENANTS;**
- **SUCCESSFUL RESULTS FROM THE DEBTORS' OPERATIONS;**
- **THE REGULATORY LICENSES HELD BY THE DEBTORS OR THE WIND-DOWN DEBTORS;**
- **THE EVOLVING REGULATORY LANDSCAPE AND POTENTIAL ADOPTION AND IMPACT OF NEW GOVERNMENTAL REGULATIONS;**
- **TAXATION APPLICABLE TO THE DEBTORS AND ANY CHANGES THERETO;**
- **THE DEBTORS' TECHNOLOGY AND ABILITY TO ADAPT TO RAPID TECHNOLOGICAL CHANGE;**
- **THE RELIABILITY, STABILITY, AND PERFORMANCE OF THE DEBTORS' INFRASTRUCTURE AND TECHNOLOGY;**
- **THE AMOUNT, NATURE, AND TIMING OF THE DEBTORS' CAPITAL EXPENDITURES;**
- **THE ADEQUACY OF THE DEBTORS' CAPITAL RESOURCES AND LIQUIDITY TO SATISFY BOTH SHORT AND LONG-TERM LIQUIDITY NEEDS;**
- **THE EFFECTS OF ASSET AND PROPERTY ACQUISITIONS OR DISPOSITIONS ON THE DEBTORS' CASH POSITION;**
- **GENERAL ECONOMIC AND BUSINESS CONDITIONS;**
- **BANK VOLATILITY;**

- **THE INABILITY TO MAINTAIN RELATIONSHIPS WITH EMPLOYEES AND OTHER THIRD PARTIES AS A RESULT OF THESE CHAPTER 11 CASES OR OTHER FAILURE OF SUCH PARTIES TO COMPLY WITH THEIR CONTRACTUAL OBLIGATIONS;**
- **COUNTERPARTY CREDIT RISK;**
- **RISKS IN CONNECTION WITH ASSET SALES AND THE WIND DOWN;**
- **THE OUTCOME OF PENDING AND FUTURE LITIGATION; AND**
- **PLANS, OBJECTIVES, AND EXPECTATIONS.**

**STATEMENTS CONCERNING THESE AND OTHER MATTERS ARE NOT GUARANTEES OF ANY FUTURE PERFORMANCE. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE THEY MAY PROJECT, AND THE DEBTORS UNDERTAKE NO OBLIGATION TO UPDATE THE PROJECTIONS MADE HEREIN OTHER THAN AS REQUIRED BY APPLICABLE LAW. THESE RISKS, UNCERTAINTIES, AND FACTORS MAY INCLUDE THE FOLLOWING:**

- **THE RISKS AND UNCERTAINTIES ASSOCIATED WITH THE CHAPTER 11 CASES;**
- **THE DEBTORS' ABILITY TO MAINTAIN COMPLIANCE WITH LAWS AND REGULATIONS OR THE INTERPRETATION OR APPLICATION OF SUCH LAWS THAT CURRENTLY APPLY OR MAY BECOME APPLICABLE TO THE DEBTORS' BUSINESS BOTH IN THE UNITED STATES AND INTERNATIONALLY;**
- **LOSS OF CRITICAL BANKING OR INSURANCE RELATIONSHIPS OR FINANCIAL LOSSES IN EXCESS OF FDIC INSURED COVERED AMOUNTS CAUSED BY THE FAILURE OF CRITICAL BANKING RELATIONSHIPS;**
- **THE DIVERSION OF MANAGEMENT'S ATTENTION AS A RESULT OF THE CHAPTER 11 CASES;**
- **INCREASED LEVELS OF EMPLOYEE ATTRITION AS A RESULT OF THE CHAPTER 11 CASES;**
- **CUSTOMER RESPONSES TO THE CHAPTER 11 CASES;**
- **THE DEBTORS' ABILITY TO CONFIRM OR CONSUMMATE THE PLAN;**
- **THE POTENTIAL THAT THE DEBTORS MAY NEED TO PURSUE AN ALTERNATIVE TRANSACTION IF THE PLAN IS NOT CONFIRMED OR IF AN ALTERNATIVE PLAN WOULD PROVIDE MORE VALUE TO STAKEHOLDERS THAN THE PLAN;**
- **THE DEBTORS' INABILITY TO DISCHARGE OR SETTLE CLAIMS DURING THESE CHAPTER 11 CASES;**
- **THE DEBTORS' INABILITY TO PREDICT THEIR LONG-TERM LIQUIDITY REQUIREMENTS AND THE ADEQUACY OF THEIR CAPITAL RESOURCES;**
- **THE AVAILABILITY OF CASH TO MAINTAIN THE DEBTORS' OPERATIONS AND FUND EXPENSES RELATED TO THE WIND-DOWN;**

- **LIMITED ACCESS TO CAPITAL RESOURCES;**
- **RISKS ASSOCIATED WITH WEAK OR UNCERTAIN GLOBAL ECONOMIC CONDITIONS;**
- **OTHER GENERAL ECONOMIC AND POLITICAL CONDITIONS IN THE UNITED STATES AND INTERNATIONALLY, INCLUDING THOSE RESULTING FROM RECESSIONS, POLITICAL EVENTS, ACTS OR THREATS OF TERRORISM, AND MILITARY CONFLICTS;**
- **INDUSTRY CONDITIONS, INCLUDING COMPETITION AND TECHNOLOGICAL INNOVATION;**
- **RISK OF INFORMATION TECHNOLOGY OR DATA SECURITY BREACHES OR OTHER CYBERATTACKS;**
- **CHANGES IN LABOR RELATIONS;**
- **FLUCTUATIONS IN OPERATING COSTS;**
- **LEGISLATIVE OR REGULATORY REQUIREMENTS;**
- **ADVERSE TAX CHANGES;**
- **POSSIBLE RESTRICTIONS ON THE ABILITY TO OPERATE; AND**
- **FLUCTUATIONS IN INTEREST RATES, EXCHANGE RATES AND CURRENCY VALUES.**

**YOU ARE CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE, AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THE LIQUIDATION ANALYSIS, AND OTHER PROJECTIONS AND FORWARD-LOOKING INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ONLY ESTIMATES, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS, AMONG OTHER THINGS, MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED. ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.**

## TABLE OF CONTENTS

**I. INTRODUCTION** ..... **11**

**II. PRELIMINARY STATEMENT** ..... **11**

A. Background. ..... 11
B. Proposed Plan Framework. ..... 12
C. The Inventory Sale Process ..... 13
D. The Going-Concern Sale Process. ..... 13

**III. OVERVIEW OF THE PLAN** ..... **15**

A. The Plan. ..... 15
**1.** Overview - Satisfaction of Claims and Interests. ..... 15
**2.** Voting by Holders of Claims in Classes 3, 4, and 5. ..... 16
**3.** Settlement, Compromise, and Release of Claims. ..... 16
**4.** Assumption and Rejection of Executory Contracts. ..... 17
**5.** Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..... 17
**6.** Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..... 17
**7.** Insurance Policies. ..... 18
**8.** Indemnification Obligations. ..... 18
**9.** Preservation of Causes of Action. ..... 19
**10.** Cancellation of Existing Agreements and Interests. ..... 19

B. Holders of Claims May Be Released by the Debtors. ..... 20

**IV. QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT AND PLAN** ..... **20**

A. What is chapter 11? ..... 20
B. Why are the Debtors sending me this Disclosure Statement? ..... 20
C. Am I entitled to vote on the Plan? ..... 20
D. What is the Inventory Sale and the parallel going-concern sale process? ..... 20
E. What are the Sources of Consideration for Plan Distributions? ..... 21
F. Who are the Wind-Down Debtors and what do they do? ..... 21
G. Who is the Plan Administrator and what does he or she do? ..... 21
H. What is the Wind Down? ..... 22
I. What is the Plan Supplement and when will it be Filed? ..... 22
J. What are the conditions to Consummation of the Plan - or the "Effective Date" conditions? ..... 22
K. Are there Minimum or Unclaimed Distribution Provisions? ..... 22
L. What will I receive from the Debtors if the Plan is consummated? ..... 23
M. What will I receive from the Debtors if I hold an Allowed Administrative Claim or Allowed Priority Tax Claim? ..... 27
Administrative Claims. ..... 27
Priority Tax Claims. ..... 27

N. What happens to my recovery if the Plan is not confirmed or does not go effective? ..... 28
O. If the Plan provides that I get a Distribution, do I get it upon Confirmation or when the Plan goes effective, and what is meant by "Confirmation," "Effective Date," and "Consummation"? ..... 28
P. What are the sources of consideration and other consideration used to make distributions under the Plan? ..... 28
Q. Are there anticipated Cash proceeds available for distribution to unsecured creditors? ..... 28
R. Is there potential litigation related to the Plan? ..... 28
S. Will there be releases, exculpation, and injunction granted to parties in interest as part of the Plan? ..... 29
**1.** Releases by the Debtors. ..... 29

**2.** Releases by Holders of Claims and Interests. ....30
**3.** Exculpation. ....30
**4.** Injunction. ....30

T. What are the consequences of opting out of the releases provided by the Plan? ....30
U. What are the consequences of not opting out of the releases provided by the Plan? ....31
V. Does the Plan preserve Causes of Action? ....31
W. Are any regulatory approvals required to consummate the Plan? ....31
X. What is the deadline to vote on the Plan? ....31
Y. What are the overall projected recoveries under the Plan? ....31
Z. How do I vote for or against the Plan? ....31
AA. Why is the Bankruptcy Court holding a Confirmation Hearing? ....32
BB. When is the Combined Hearing set to occur? ....32
CC. What is the purpose of the Combined Hearing? ....32
DD. What is the effect of the Plan on the Debtors' ongoing business? ....32
EE. Will any party have significant influence over the corporate governance and operations of the Wind-Down Debtors? ....32
FF. What steps did the Debtors take to evaluate alternatives to a chapter 11 filing? ....32
GG. Who do I contact if I have additional questions with respect to this Disclosure Statement or the Plan? ....33
HH. Do the Debtors recommend voting in favor of the Plan? ....33

**V. SOLICITATION AND VOTING PROCEDURES ....33**

A. Classes Permitted to Vote on the Plan. ....33
B. Votes Required for Acceptance by a Class. ....33
C. Certain Factors to Be Considered Prior to Voting. ....34
D. Classes Not Entitled to Vote on the Plan. ....34
E. Solicitation and Voting Procedures. ....34
**1.** Claims and Noticing Agent ....34
**2.** Solicitation Package ....35

F. Voting Procedures. ....36
G. Voting and Tabulation Procedures. ....37

**VI. CONFIRMATION OF THE PLAN ....40**

A. Requirements of Section 1129(a) of the Bankruptcy Code. ....40
B. Best Interests of Creditors—Liquidation Analysis. ....41
C. Feasibility. ....41
D. Acceptance by Impaired Classes. ....41
E. Confirmation without Acceptance by All Impaired Classes. ....42
**1.** No Unfair Discrimination. ....42
**2.** Fair and Equitable Test. ....42

**VII. THE DEBTORS' BUSINESS OPERATIONS AND CAPITAL STRUCTURE ....43**

A. Company History. ....43
B. The Debtors' Operations. ....43
**1.** Business Segments and Channels. ....43

C. The Debtors' Corporate and Capital Structure. ....44
**1.** The Debtors' Organizational Structure. ....44
**2.** The Debtors' Prepetition Capital Structure. ....44

**VIII. EVENTS LEADING TO THESE CHAPTER 11 CASES ....46**

A. Competitive and Financial Pressures. ....46
B. Macroeconomic Headwinds. ....46

C. Operational and Liquidity Initiatives. ....46
D. Additional Initiatives....46
E. Strategic Alternatives and Prepetition Sale Process. ....47

**IX. EVENTS OF THE CHAPTER 11 CASES ....47**

A. First and Second Day Relief and Other Case Matters. ....47
B. DIP Financing and Cash Collateral. ....48
C. Appointment of Unsecured Creditors' Committee. ....48
D. Schedules and Statements. ....48
E. Bar Date Motion. ....48
F. Store Closures and Lease Rejection Procedures. ....49
G. Canadian Recognition Proceedings....49
H. Litigation. ....50
I. The Post-Petition Sale Process. ....50
J. The Independent Investigation. ....50

**X. RISK FACTORS ....50**

A. Risks Related to the Wind-Down....50
**1.** The Debtors Will Consider All Available Restructuring Alternatives if the Plan Is Not Implemented, and Such Alternatives May Result in Lower Recoveries for Holders of Claims Against the Debtors. ....50
**2.** Certain Bankruptcy Law Considerations. ....51

B. Risks Related to Recoveries under the Plan....54
**1.** The Debtors Cannot Guarantee Recoveries or the Timing of Such Recoveries. ....54
**2.** The Tax Implications of the Debtors' Bankruptcy Are Highly Complex. ....54
**3.** The Orderly Wind Down May Take Longer and Cost More Than Estimated, Which May Decrease Recoveries. ....54
**4.** The Debtors' Substantial Ongoing Liquidity Needs May Impact Recoveries. ....54

C. Risks Related to the Debtors' Businesses. ....55
**1.** The Loss of Key Personnel Could Adversely Affect the Debtors' Ability to Consummate the Plan and Effectuate Distributions....55
**2.** The Wind Down May Be Adversely Affected by Potential Litigation. ....55
**3.** Certain Claims May Not Be Discharged and Could Have a Material Adverse Effect on the Debtors' Financial Condition. ....55

D. Miscellaneous Risk Factors and Disclaimers. ....55
**1.** The Financial Information Is Based on the Debtors' Books and Records and, Unless Otherwise Stated, No Audit Was Performed. ....55
**2.** No Legal or Tax Advice Is Provided By This Disclosure Statement....56
**3.** No Admissions Made. ....56
**4.** Failure to Identify Litigation Claims or Projected Objections. ....56
**5.** Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors. ....56
**6.** Potential Exists for Inaccuracies, and Limitations on the Duty to Update....56
**7.** No Representations Outside This Disclosure Statement Are Authorized. ....56

**XI. CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ....57**

A. Introduction. ....57
B. Certain U.S. Federal Income Tax Consequences of the Plan to the Debtors. ....58
C. Certain U.S. Federal Income Tax Consequences of the Plan to U.S. Holders of Allowed Claims Entitled to Vote. ....58
**1.** U.S. Holders of Allowed Claims in Classes 3, 4, and 5....58

**2.** Accrued Interest. .....59
**3.** Market Discount. .....59
**4.** Net Investment Income Tax. .....59
**5.** Limitations on Losses. .....60

D. Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of Allowed Claims. .....60
**1.** Gain Recognition. .....60
**2.** Accrued Interest. .....60
**3.** FATCA. .....61

E. Information Reporting and Back-Up Withholding. .....62

**XII. RECOMMENDATION OF THE DEBTORS .....63**

**EXHIBITS**

| | |
|---|---|
| EXHIBIT A | Chapter 11 Plan |
| EXHIBIT B | Organizational Chart |
| EXHIBIT C | Liquidation Analysis |

# I. INTRODUCTION

The Children's Place, Inc. ("TCP") and its affiliated debtors and debtors in possession (collectively, the "Debtors," and together with certain non-Debtor affiliates, the "Company") submit this disclosure statement (this "Disclosure Statement") in connection with the Joint Plan of *The Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or modified, the "Plan"). The Plan is attached as **Exhibit A** and is incorporated herein by reference.[1] The Debtors propose the Plan at the direction of the Restructuring Committee. Although jointly proposed for administrative convenience, the Plan constitutes a separate plan for each Debtor and does not substantively consolidate the Debtors.

**THE DEBTORS BELIEVE THAT THE PLAN PROVIDES AN APPROPRIATE FRAMEWORK TO DISTRIBUTE AVAILABLE VALUE AND COMPLETE AN ORDERLY WIND DOWN. THIS DISCLOSURE STATEMENT DOES NOT REPRESENT THAT ANY CREDITOR HAS AGREED TO SUPPORT THE PLAN.**

# II. PRELIMINARY STATEMENT

## A. Background.

Founded in 1969 and headquartered in Secaucus, New Jersey, the Company is a specialty retailer of children's apparel, accessories, and footwear under The Children's Place and Gymboree brands. As of August 1, 2026, its network included two digital storefronts, 514 North American stores, wholesale marketplaces, and 323 international points of distribution in thirteen countries through franchise and wholesale partners.

The Company has faced declining demand, persistent cost inflation, elevated tariffs, and intensified promotional competition. Net sales declined from approximately $1.386 billion in fiscal 2024 to approximately $1.209 billion in fiscal 2025. The Company recorded an approximately $84.1 million net loss for the first half of fiscal 2026, compared with approximately $39.4 million in the corresponding prior-year period.

The Company has relied on a $350.0 million asset-based revolving credit facility with Wells Fargo Bank, National Association, a $100.0 million term loan with Crystal Financial LLC d/b/a SLR Credit Solutions, and unsecured, subordinated financing from Mithaq Capital SPC.

Prior to filing, the Company pursued certain expense reductions, inventory rationalization, changes to its wholesale strategy, and utilized additional Mithaq financing in July and September 2026 to pursue these operational goals. Nevertheless, liquidity continued to deteriorate. On or around October 6, 2026, in addition to other reserves that the Company's secured lenders had previously imposed on the Company, each of the Company's secured lenders imposed another $15.0 million restructuring reserve against availability under each of the ABL and term loan facilities, limiting the Company's ability to pursue these out of court options.

Beginning in September 2026, the Company retained Berkeley Research Group, LLC ("BRG") as financial advisor, Cascadia Capital, LLC ("Cascadia") as investment banker, and White & Case LLP as restructuring counsel. On October 2, 2026, Elizabeth A. LaPuma joined TCP's board and Audit Committee. On October 30, 2026, Rudolph Morando and Chris McAvinn were appointed Co-Chief Restructuring Officers. On November 3, 2026, Ms. LaPuma was appointed as the Restructuring Committee to the board of directors of Debtor THE CHILDREN'S PLACE, INC.

With its advisors, the Company evaluated a going-concern sale of all or substantially all of its assets, a separate sale of Gymboree intellectual property, and an intellectual-property holding and licensing structure coupled

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan. Additionally, this Disclosure Statement incorporates the rules of interpretation located in Article I.B of the Plan. **The summaries provided in this Disclosure Statement of any documents attached to this Disclosure Statement, including the Plan, are qualified in their entirety by reference to the Plan and the documents being summarized. In the event of any inconsistencies between the terms of this Disclosure Statement and the Plan, the Plan shall govern.**

with dispositions of other assets. The Company also negotiated with lenders and other stakeholders and assessed out-of-court and chapter 11 alternatives.

In September 2026, Cascadia launched a marketing process involving over thirty strategic prospects and approximately seventeen financial prospects, including outreach for a going-concern or liquidation transaction and standalone sales of discrete assets or revenue streams such as Gymboree and the Amazon operations. The Debtors received one letter of intent and two preliminary going-concern proposals, three "equity" liquidation proposals, and three fee-based liquidation bids. In connection with the Prepetition Sale Process, Cascadia contacted a broad range of strategic and financial parties, including more than thirty (30) strategic prospects and fifteen (15) financial prospects. As of the Petition Date, thirty (30) parties had executed nondisclosure agreements and had been provided with access to the Debtors' virtual data room. The Debtors' virtual data room contains a confidential information presentation and additional financial, operational, and legal diligence materials to assist potential bidders for the Debtors' Assets.

To date, the Debtors have received nine (9) proposals relating to their Assets, including six (6) proposals for going-concern and intellectual property-related transactions and three (3) "equity" liquidation proposals involving substantially all of the Debtors' assets. These proposals reflect ongoing interest in the Debtors' Assets. Following receipt of these proposals, the Debtors, together with Cascadia, conducted a comprehensive review of each proposal and have engaged, and continue to engage, in extensive negotiations with interested parties to refine and enhance their initial bids. In addition, the Debtors received three (3) fee-based liquidation bids for the liquidation of their inventory and certain other assets.

With the going-concern sale process continuing in earnest, the Debtors, in their business judgment, decided in late October that initiating store closing sales in early November – to limit expenses and to capture the full extent of the holiday season – was in the best interest of the estates. With Restructuring Committee approval, the Debtors selected Tiger Capital Group, LLC, SB360 Capital Partners, LLC, and GA Retail Solutions, LLC (collectively, the "Liquidator") for a consulting, fee-based liquidation of inventory and certain other assets. On November 3, 2026, the Debtors entered into the Consulting Agreement with the Liquidator, and liquidation sales commenced on November 6, 2026. The Debtors anticipate that inventory sales at all retail locations will continue through February 28, 2027, while preserving the estates' ability to halt store closures pursuant to the terms of the Consulting Agreement and pivot to a going-concern bid if generated pursuant to the Bidding Procedures. On November 6, 2026, the Company separately engaged A&G Realty Partners, LLC to analyze and potentially sell or assign its lease portfolio and owned real estate and support landlord negotiations related thereto.

The Debtors commenced these Chapter 11 Cases on November 8, 2026 (the "Petition Date") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). On November 19, 2026, the Debtors filed the Plan incorporated herein that contemplates distributions from the Inventory Sale, Cash on hand, including Residual Cash, and retained Causes of Action, followed by administration and dissolution of the remaining Estates. Separately, as described above, the Debtors continue to pursue potential going-concern sales, and any such proceeds would also be used to fund distributions pursuant to the budget provided for in the DIP Order and Plan.

### B. Proposed Plan Framework.

The Plan establishes a framework for distributing the value of the Debtors' Estates and completing an orderly Wind Down. Distributions will be funded from the proceeds of the Inventory Sale, Cash on hand, including Residual Cash, proceeds of retained Causes of Action and any proceeds from a going-concern or other sale of the Debtors' assets. Following the Effective Date, the remaining assets will be administered and monetized, Claims will be reconciled, and available proceeds will be distributed in accordance with the Plan. Although jointly proposed for administrative purposes, the Plan constitutes a separate plan for each Debtor.

The Wind Down will be overseen by a Plan Administrator selected by the Debtors, whose identity and governing agreement will be included in the Plan Supplement. On the Effective Date, the Plan Administrator will succeed to the authority of the Wind-Down Debtors' officers, directors, and managers and will be responsible for administering their assets, resolving Disputed Claims, making distributions, pursuing retained Causes of Action, and completing the Wind Down. The Wind-Down Debtors will be dissolved in accordance with the Plan.

The Plan provides treatment for Other Secured Claims and Other Priority Claims that leaves those Claims Unimpaired. Holders of Allowed Wells Fargo Credit Agreement Claims and Allowed SLR Credit Agreement Claims will receive payment in full in Cash from the proceeds of their respective collateral, subject to applicable lien priorities and intercreditor arrangements, or such other treatment as may be permissible under section 1129 of the Bankruptcy Code, unless they agree to less favorable treatment. Holders of Allowed General Unsecured Claims, including Claims under the Mithaq Credit Facility, will receive their Pro Rata share of the GUC Distribution Reserve and any additional Distributable Value available after payment in full of Allowed Claims in Classes 1 through 4, subject to the Plan's terms. The GUC Distribution Reserve will be reduced by the post-Effective Date Committee fees, costs, and expenses specified in the Plan. The DIP Claims have been afforded superpriority administrative expense status pursuant to the terms of the DIP Orders and include the roll-up of the Wells Fargo Credit Agreement and the SLR Credit Agreement to the extent set forth in the DIP Orders.

To support implementation, the Plan provides for reserves for priority obligations, Disputed Claims, General Unsecured Claims, and the costs of administering the Wind Down. The Wind-Down Budget will be included in the Plan Supplement, and the costs of the Plan Administrator and post-Effective Date administration will be paid from the Wind-Down Reserve. Equity Interests will be cancelled on the Effective Date, with Holders entitled only to their Pro Rata share of any Distributable Value remaining after payment in full of all Allowed Claims in Classes 1-5 and satisfaction of all other payment and reserve requirements under the Plan. Accordingly, the amount available for distributions will depend on asset realizations, the ultimate amount of Allowed Claims, and the costs of completing the Wind Down. The Debtors and the Plan Administrator, as applicable, shall consult with the Prepetition Agents and the DIP Agents regarding the Wind-Down Budget and any material amendments thereto. Such budget and implementing documents shall be Filed with the Plan Supplement.

### C. The Inventory Sale Process

The Debtors plan to continue orderly going out of business sales at their stores for the duration of the cases and as contemplated through February 28, 2027, pursuant to the terms of the Consulting Agreement. The Inventory Sale is the sale of Inventory Sale Assets under the Inventory Sale Agreement and Inventory Sale Orders. The sale includes the sale of inventory and FF&E and includes all U.S. and Canadian stores. The consultants under the Consulting Agreement are Tiger Capital Group, LLC, SB360 Capital Partners, LLC, and GA Retail Solutions, LLC, together with Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC. The consultants will earn percentage fee-based compensation for conducting the Inventory Sale. As noted above, the Debtors have the flexibility to halt store closures if a going-concern bid becomes actionable and the buyer will be taking certain stores as part of its bid.

On November 12, 2026, the Bankruptcy Court entered an interim order authorizing the Debtors to assume the Consulting Agreement and conduct store-closing sales [Docket No. 98].

### D. The Going-Concern Sale Process.

Cascadia and Company management began marketing the business in September 2026, contacting over thirty strategic and approximately seventeen financial prospects prepetition and more than fifty additional prospects postpetition. Numerous parties executed confidentiality agreements and received electronic data-room access. The process produced one letter of intent and two preliminary going-concern proposals, three "equity" liquidation proposals, and three fee-based liquidation bids. The Debtors determined that these proposals were not actionable in their current form and continued discussions with going-concern and other bidders for discrete portions of the Debtors' assets.

On November 9, 2026, the Debtors filed the Bidding Procedures Motion [Docket No. 21]. On November 12, 2026, the Court entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 97], approving the Bidding Procedures and establishing the following deadlines and dates: (a) December 9, 2026, at 5:00 p.m. (prevailing Eastern Time) as the deadline to submit bids; (b) December 11, 2026, at 10:00 a.m. (prevailing Eastern Time) for the Auction, if necessary; (c) December 14, 2026, at 3:00 p.m. (prevailing Eastern Time) as the deadline to object to the proposed Sale Transaction(s), subject to the exceptions for

assumption and assignment objections in the Bidding Procedures Order; and (d) December 15, 2026, at 1:00 p.m. (prevailing Eastern Time) for the Sale Hearing.

Cascadia continues to and will continue to market the Debtors' assets and engage with prospective purchasers. The Bidding Procedures permit bids for the business as a whole, discrete asset packages, or combinations of assets, and an auction, if necessary, to identify the highest or otherwise best offer or offers. The Debtors intend to evaluate proposals based on both consideration and certainty of closing, with any resulting transaction subject to applicable court approvals. This process is intended to preserve the opportunity for a value-maximizing going-concern transaction while continuing the orderly monetization of assets not included in such a transaction. Pursuant to the Bidding Procedures Order and Bidding Procedures approved therein, the Debtors' sale process has the following important deadlines:

| Action | Description | Deadline |
|---|---|---|
| **Stalking Horse Deadline** | The deadline by which the Debtors may choose a Stalking Horse Bidder and enter into a Stalking Horse APA. | November 21, 2026, at 5:00 p.m. prevailing Eastern Time. |
| **Bid Deadline** | The deadline by which any Acceptable Bidders must submit all binding Bids to be evaluated as Qualified Bids to participate in the Auction, if any. | December 9, 2026, at 5:00 p.m. prevailing Eastern Time. |
| **Auction (if necessary)** | The date and time of the Auction, if one is needed, which will be held at the offices of White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020. | December 11, 2026, at 10:00 a.m. prevailing Eastern Time. |
| **Notice of Successful Bidder** | Within twenty-four (24) hours after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline), the Debtors will file on the docket, but not serve, a notice identifying the Successful Bidder (as defined in the Bidding Procedures), Assets, and key terms of the agreement. | Within twenty-four (24) hours after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline). |
| **Sale Objection Deadline** | The deadline by which objections to the proposed Sale Transaction(s) and Sale Order must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline"), except for objections to assumption and assignment, Cure Payments, or adequate assurance of future performance reserved under paragraphs 19 and 20.d of the Bidding Procedures Order. | December 14, 2026, at 3:00 p.m. prevailing Eastern Time. |
| **Sale Objection Reply Deadline** | Deadline for the Debtors and any other parties supporting the Sale Transaction(s) to respond to any objections to such Sale Transaction(s). | The Debtors and any other parties supporting the Sale Transaction(s) will respond to any objections to such Sale Transactions at the Sale Hearing. |

| | | |
|---|---|---|
| **Sale Hearing** | Date for a hearing at which the Court will consider approving any Sale Transaction(s) to one or more prospective purchasers.<br><br>A hearing to consider approval of each Canadian Sale Order shall be scheduled following entry of the applicable Sale Order to the extent a Successful Bid includes Assets of the Canadian Debtors. | December 15, 2026, at 1:00 p.m. prevailing Eastern Time or such other date as may be scheduled by the Court. |

---

## III. OVERVIEW OF THE PLAN

### A. The Plan.

A bankruptcy court's confirmation of a chapter 11 plan binds the debtor, any entity or person acquiring property under the plan, any creditor of or equity security holder in a debtor, and any other entities and persons to the extent ordered by the bankruptcy court pursuant to the terms of the confirmed plan, whether or not such entity or person is impaired pursuant to the plan, has voted to accept the plan, or receives or retains property under the plan.

The Plan is the best path forward for the Debtors and their estates.

Among other things (subject to certain limited exceptions and except as otherwise provided in the Plan or the Confirmation Order), the Confirmation Order will substitute the obligations set forth in the Plan for pre-bankruptcy Claims and Interests. Under the Plan, Claims and Interests are divided into Classes according to their relative priority and other criteria.

A summary of the treatment is as follows, with a more detailed description provided in Article IV.E of this Disclosure Statement.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Wells Fargo Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4 | SLR Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

#### 1. ***Overview - Satisfaction of Claims and Interests.***

Article III of the Plan classifies Claims and Interests as summarized below.

- Holders of Allowed Class 1 Other Secured Claims and Allowed Class 2 Other Priority Claims will receive the treatment described in Section III.C of the Plan, rendering those Classes Unimpaired.

- Holders of Allowed Class 3 Wells Fargo Credit Agreement Claims will receive payment in full in Cash from proceeds of the collateral securing their Claims, in accordance with applicable relative lien priorities and subject to the applicable intercreditor agreement or such other treatment as may be permissible under section 1129 of the Bankruptcy Code, on or before the Effective Date, unless a Holder agrees to less favorable treatment. Applicable outstanding documented agent fees and expenses are paid as provided in the Plan.

- Holders of Allowed Class 4 SLR Credit Agreement Claims will receive payment in full in Cash from proceeds of the collateral securing their Claims, in accordance with applicable relative lien priorities and subject to the applicable intercreditor agreement or such other treatment as may be permissible under section 1129 of the Bankruptcy Code, on or before the Effective Date, unless a Holder agrees to less favorable treatment. Applicable outstanding documented agent fees and expenses are paid as provided in the Plan.

- Holders of Allowed Class 5 General Unsecured Claims, including Mithaq Credit Facility Claims, receive their Pro Rata share of the GUC Distribution Reserve and, separately, additional Distributable Value following full payment of Allowed Classes 1, 2, 3, and 4, subject to Section III.C.5 of the Plan and its limitation on duplicative distributions for the same obligation.

- Allowed Class 6 Intercompany Claims may be Reinstated or set off, settled, distributed, contributed, cancelled, released, or otherwise addressed without distribution, or receive other treatment reasonably determined under the Plan.

- Allowed Class 7 Intercompany Interests may be Reinstated or set off, settled, distributed, contributed, cancelled, released, or otherwise addressed without distribution, or receive other treatment reasonably determined under the Plan.

- Any Class 8 Claims arising under section 510(b) of the Bankruptcy Code shall be discharged without any distribution.

- Class 9 Equity Interests will be cancelled, released, extinguished, and discharged on the Effective Date. Each Holder is entitled to its Pro Rata share of Distributable Value remaining after payment in full of all Allowed Claims and satisfaction of all other payment and reserve requirements under the Plan.

**2. *Voting by Holders of Claims in Classes 3, 4, and 5.***

Classes 3, 4, and 5 are Impaired, and Holders of Allowed Claims in those Classes are entitled to vote to accept or reject the Plan.[3]

The Debtors will provide Ballots to eligible Holders in Classes 3, 4, and 5, and the Claims and Noticing Agent will tabulate those Ballots in accordance with the Disclosure Statement Order.

**3. *Settlement, Compromise, and Release of Claims.***

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distribution, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Intercompany Claims resolved or compromised after the Effective Date by the Debtors, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose

---

[3] If the Class 3 and Class 4 Claims are fully converted into DIP Claims pursuant to the Final DIP Order, such Classes will be removed from the Plan and will not be entitled to vote to accept or reject the Plan.

before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests related to service performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such Claim or Interest has accepted the Plan.

**4. *Assumption and Rejection of Executory Contracts.***

On the Effective Date, Executory Contracts and Unexpired Leases not previously assumed, assumed and assigned, or rejected will be deemed rejected unless within Section V.A of the Plan's exceptions: contracts identified on the assumption schedule; contracts previously assumed or rejected by Bankruptcy Court order; contracts subject to pending Filed assumption, assignment, or rejection motions or specified objections; Plan implementation contracts, releases, and other documents; and Insurance Policies.

**5. *Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection, if any, of any Executory Contracts or Unexpired Leases as provided for in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, or (iii) the Effective Date. The notice of the Plan Supplement shall be deemed appropriate notice of rejection when served on applicable parties.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed and forever barred from assertion and shall not be enforceable against the Debtors, the Wind-Down Debtors, the Estates, the Plan Administrator, or their property without the need for any objection by the Debtors, the Wind-Down Debtors, or the Plan Administrator, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged and shall be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

Claims arising from rejection under section 365 will be treated as General Unsecured Claims in Class 5 under Section III.C.5 of the Plan, subject to applicable objections and Article VII thereof.

**6. *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.***

The Debtors or Wind-Down Debtors, as applicable, will pay Cures on the Effective Date or as soon as reasonably practicable thereafter as specified in Article V.D of the Plan. Proposed amounts and timing will be set forth in the Plan Supplement unless otherwise agreed in writing, including by email, with the counterparty.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection (an "Executory Contract Objection") filed by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment, including pursuant to the Plan, or related Cure amount must be Filed, served, and actually received by counsel to the Debtors and the U.S. Trustee by the applicable Assumption or Rejection Objection Deadline or any other deadline that may be set by the Bankruptcy Court. Any Executory Contract Objection (x) timely Filed prior to the Confirmation Hearing will be heard by the Bankruptcy Court at the Confirmation Hearing unless otherwise agreed to by the Debtors and the objecting party or (y) timely Filed after the Confirmation Hearing shall be heard as soon as reasonably practicable on a date requested by the Debtors or the Wind-Down Debtors, as the case may be. Any Executory Contract Objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion and shall not be enforceable against

any Wind-Down Debtor, as applicable, without the need for any objection by the Wind-Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

A Cure is deemed satisfied, released, and discharged upon payment by the Debtors or Wind-Down Debtors, as applicable, under Section V.D. of the Plan. The Plan preserves the Debtors' or Wind-Down Debtors' right to pay a Cure despite a counterparty's failure to object and permits settlement as specified therein. Failure timely to object to proposed assumption or assignment results in deemed consent under that provision.

If there is any dispute regarding any Cure, the ability of the Wind-Down Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure will occur as soon as reasonably practicable after entry of a Final Order (which could be the Confirmation Order) resolving such dispute, approving such assumption (and, if applicable, assumption and assignment), or as may be agreed upon by the Debtors or the Wind-Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

If an Executory Contract Objection relates solely to a Cure, the Debtors or the Wind-Down Debtors may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease before resolving the Cure objection—but the Debtors or the Wind-Down Debtors must reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Wind-Down Debtor).

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure shall result in the full release and satisfaction of any Cures, Claims, or defaults arising under any assumed Executory Contract or Unexpired Lease at any time before such assumption's effective date. **Any Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed (or assumed and assigned) in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to Section V.D of the Plan, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

**7. *Insurance Policies.***

The Plan treats all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, as Executory Contracts. Unless otherwise provided in the Plan, on the Effective Date, (i) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies and (ii) such insurance policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest in the Wind-Down Debtors.

Nothing in the Plan, the Plan Supplement, this Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (ii) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Wind-Down Debtors) or the Plan Administrator, as applicable, or draw on any collateral or security therefor.

**8. *Indemnification Obligations.***

All indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for current and former members and any directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, will (i) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys,

accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place before the Effective Date—irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Wind-Down Debtors and/or the Plan Administrator. Any Claim or other right to indemnification, reimbursement, or contribution by the Debtors' directors, officers, or managers pursuant to charter, by-laws, contract, or otherwise against the Debtors or the Estates, shall be satisfied solely from the proceeds of any applicable D&O Liability Insurance Policies, or similar policy providing coverage to the Debtors' directors, officers, and managers, which policies shall survive the Effective Date, and which Claims or rights shall not be satisfied from any other assets of the Wind-Down Debtors or any proceeds thereof.

**9. *Preservation of Causes of Action.***

Except as otherwise provided in the Plan and subject to the Restructuring Committee's investigation and Article VIII thereof, the Wind-Down Debtors and Plan Administrator retain Causes of Action arising before or after the Petition Date, including those specifically enumerated in the Schedule of Retained Causes of Action, other than Causes of Action released or exculpated under the Plan. Section IV.G of the Plan and the Schedule of Retained Causes of Action govern.

The Wind-Down Debtors or the Plan Administrator can pursue such Retained Causes of Action in accordance with the best interests of the Wind-Down Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtors, and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII.** Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Wind-Down Debtors, or the Plan Administrator expressly reserve all Causes of Action for later adjudication. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

Causes of Action survive rejection or repudiation of contracts or leases as provided in Section IV.G of the Plan. Before the Effective Date the Debtors, and thereafter the Wind-Down Debtors or Plan Administrator, shall retain exclusive enforcement and resolution authority, as further set forth in the Plan Administrator Agreement, without third-party consent or approval or further Bankruptcy Court action. Causes of Action released or exculpated under the Plan are not preserved.

**10. *Cancellation of Existing Agreements and Interests*.**

On the Effective Date, documents evidencing Claims and Interests will be cancelled and related obligations treated as specified in Section IV.H of the Plan, except to evidence distribution rights or as otherwise provided. Holders retain only the rights preserved by the Plan and applicable surviving documents. This summary is subject to the express loan-document savings provisions below.

Notwithstanding cancellation, the Wells Fargo Credit Agreement Documents and SLR Loan Agreement Documents shall continue to the extent necessary for Holders to receive distributions; agents to receive, make, or direct distributions and exercise related rights; preservation of agent indemnification, reimbursement, contribution, subrogation, fees, expenses, and applicable payment-priority or lien rights; enforcement of Plan obligations; and appearances in proceedings. Provisions surviving termination under their terms remain in force.

Following performance of their Plan obligations, the Prepetition Agents will be relieved of further duties except as necessary to effectuate the Plan or preserve expressly surviving rights under the Plan or applicable loan documents, as provided in Plan Section IV.H.

### B. Holders of Claims May Be Released by the Debtors.

In order to effectuate an expedient process and limit future legal costs, the Plan also contemplates that Holders of Claims and Interests may be released by the Debtors. The categories addressed by the Plan's release provisions include (i) Holders of Claims who vote to accept the Plan and do not affirmatively opt out of the third party releases provided by the Plan, (ii) Holders of Claims who are presumed to accept the Plan and do not affirmatively opt out of the third party releases provided by the Plan, (iii) Holders of Claims who abstain from voting on the Plan and do not affirmatively opt out of the third party releases provided by the Plan, (iv) Holders of Claims who vote to reject the Plan and do not affirmatively opt out of the third party releases provided by the Plan; and (v) Holders of Claims and Interests who are deemed to reject the Plan and do not affirmatively opt out of the third party releases provided by the Plan. Such Holders may constitute Releasing Parties, subject to the definition's exclusions. Whether a Holder receives a release from the Debtors depends on its inclusion within the definition of Released Party and the scope and exceptions of Section VIII.C of the Plan. The compromises and settlements to be implemented pursuant to the Plan preserve value by enabling the Debtors to emerge swiftly from chapter 11 while giving finality to stakeholders.

## IV. QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT AND PLAN

### A. What is chapter 11?

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the date the chapter 11 case is commenced. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a chapter 11 plan is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of the debtor (whether or not such creditor or equity interest holder voted to accept the plan), and any other entity as may be ordered by the bankruptcy court. Subject to certain limited exceptions, the order issued by a bankruptcy court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

### B. Why are the Debtors sending me this Disclosure Statement?

The Debtors are seeking to obtain Bankruptcy Court approval of the Plan. Before soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the Debtors to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan and to share such disclosure statement with all holders of claims and interests whose votes on the Plan are being solicited. This Disclosure Statement is being submitted in accordance with these requirements.

### C. Am I entitled to vote on the Plan?

Your ability to vote on, and your distribution under, the Plan, if any, depends on what type of Claim or Interest you hold. Each category of Holders of Claims or Interests, as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code, is referred to as a "Class." Each Class's respective voting status is set forth above in section III.A.

### D. What is the Inventory Sale and the parallel going-concern sale process?

The Debtors are pursuing a dual-track sale strategy designed to maximize asset value while addressing their immediate liquidity needs. In September 2026, Cascadia, together with Company management, commenced an extensive marketing process involving more than thirty strategic prospects and approximately seventeen financial prospects prepetition and more than fifty additional prospects postpetition. That process solicited interest in the Debtors' business as a going concern and in discrete assets and revenue streams, including the Gymboree brand and

Amazon operations. Given limited liquidity and the absence of an actionable going-concern proposal, the Debtors determined to proceed with orderly inventory sales and store closures while continuing to pursue a higher-value going-concern transaction. In addition, the Debtors will continue to conduct inventory sales at all of their stores pursuant to the terms of the Inventory Sale Agreement and Inventory Sale Orders. This will allow the Debtors to monetize estate assets to pay Claims pursuant to the terms of the Plan, even if there is no sale of the business as a going-concern. This dual-track process is ongoing and described more fully above in sections II.C and II.D.

### E. What are the Sources of Consideration for Plan Distributions?

Distributions under the Plan will be funded with proceeds of the Inventory Sale, the Debtors' Cash on hand including Residual Cash, any proceeds from the disposition of assets of the Debtors pursuant to the Bidding Procedures or otherwise, and proceeds of Causes of Action retained by the Wind-Down Debtors, subject to the Plan, applicable reserves, and the Wind-Down Budget. The Distributable Value definition also includes other assets held on the Effective Date or an applicable later date after taking the Distribution Reserve Accounts and Wind-Down Budget into account.

### F. Who are the Wind-Down Debtors and what do they do?

On and after the Effective Date, at least one Debtor will continue in existence as the "Wind-Down Debtors" to wind down the Debtors' business and affairs as expeditiously as reasonably possible; resolve Disputed Claims; make distributions on Allowed Claims; establish and fund the Distribution Reserve Accounts; pursue scheduled Causes of Action where benefits are reasonably believed to outweigh costs; file tax returns; and administer the Plan. The Wind-Down Debtors will be substituted for the Debtors in pending Bankruptcy Court and other proceedings without separate substitution motions.

On the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan on or before that date will vest in the Wind-Down Debtors, subject to administration by the Plan Administrator as further set forth in the Plan Administrator Agreement. Net proceeds constitute Distributable Value.

### G. Who is the Plan Administrator and what does he or she do?

On the Effective Date, the persons acting as managers, directors, and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and their authority, power, and incumbency in such roles shall be deemed to have terminated, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' managers, directors, and officers. The Plan Administrator will act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions of the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan in accordance with the Wind Down and as otherwise provided in the Confirmation Order.

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors. The foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer. The Debtors, after the Confirmation Date, and the Wind-Down Debtors or Plan Administrator, after the Effective Date, shall be permitted to make payments to employees pursuant to employment programs then in effect, and, in the reasonable business judgment of the Plan Administrator, to implement additional employee programs and make payments thereunder solely as necessary to effectuate the Wind Down, without any further notice to or action, order, or approval of the Bankruptcy Court.

The Plan Administrator's powers include making distributions, liquidating assets not sold in the Inventory Sale, administering reserves, retaining professionals, paying liabilities, pursuing retained Causes of Action and administering taxes – all subject to the Plan and Plan Administrator Agreement. The Plan Administrator has access to vested books and records, including privileged materials, and must adhere to reporting requirements under the agreement to keep stakeholders reasonably informed of the Wind Down, Claims liquidation, distributions, and disposition of Retained Causes of Action.

### H. What is the Wind Down?

As soon as practicable after the Effective Date, the Plan Administrator shall: (i) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (ii) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of one or more of the Debtors or the Wind-Down Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. The Wind Down shall be implemented in accordance with the Wind-Down Budget. The Debtors and the Plan Administrator, as applicable, shall consult with the Prepetition Agents and the DIP Agents regarding the Wind-Down Budget and any material amendments thereto. Such budget and implementing documents shall be Filed with the Plan Supplement. From and after the Effective Date, except with respect to Wind-Down Debtors as set forth in the Plan, the Debtors, for all purposes shall be deemed, among other things, to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal and shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

### I. What is the Plan Supplement and when will it be Filed?

The Plan Supplement is to include the retained-Causes-of-Action schedule; assumption and rejection schedules; Plan Administrator identity and agreement; Wind-Down Budget; Transactions Steps Memorandum; and additional implementation documents. To the extent reasonably practicable, it is to be Filed at least seven days before the Voting Deadline or by a later date approved by the Bankruptcy Court on notice.

### J. What are the conditions to Consummation of the Plan - or the "Effective Date" conditions?

Article IX of the Plan requires that several events occur in order for the Plan to become effective. Among others, the conditions precedent relate to entry of the operative DIP Orders; execution and delivery or deemed execution of Definitive Documents and satisfaction or waiver of related conditions; the Inventory Sale Orders and Confirmation Order not being reversed, stayed, modified, or vacated on appeal; necessary implementation actions, documents, and agreements; implementation of Wind-Down Transactions in material accordance with the Transactions Steps Memorandum; payment of specified invoiced fees and amounts, including Restructuring Expenses; and requisite approvals, consents, and expiration or termination of waiting periods, on the terms specified therein.

The Debtors may, in consultation with the Prepetition Agents, waive Effective Date conditions in whole or in part at any time without Bankruptcy Court notice, leave, or order or other formal action beyond confirmation or consummation proceedings. Failure of Consummation renders the Plan null and void but does not itself unwind the Inventory Sale or revoke authority under the Inventory Sale Orders.

### K. Are there Minimum or Unclaimed Distribution Provisions?

Section VI.D of the Plan provides that the Disbursing Agent need not make Cash distributions below $100, with affected Claims released and barred as specified therein. Undeliverable distributions become unclaimed property one year after the Effective Date and revert to the Plan Administrator, with related rights barred under the Plan. Holders should promptly provide current payment and address information in accordance with the approved procedures.

### L. What will I receive from the Debtors if the Plan is consummated?

The following table summarizes treatment and anticipated recovery under the Plan. Amounts of Allowed Claims, collateral realizations, reserve funding, and projected recoveries are estimates, and Allowed amounts may vary from final amounts allowed by the Bankruptcy Court. Classes 3 and 4 are projected to receive payment in full in Cash from their collateral proceeds subject to relative lien priorities, the Intercreditor Agreement (as defined below), and such other treatment as may be permissible under section 1129 of the Bankruptcy Code. Class 9 is entitled to any residual Distributable Value only after all Allowed Claims and other payment and reserve requirements are satisfied. The Plan controls over this summary.

| Class | Claim or Interest | Treatment | Projected Amount of Allowed Claims (in $mm) | Projected Plan Recovery | Liquidation Recovery[4] |
|---|---|---|---|---|---|
| 1 | Other Secured Claims | Except to the extent a Holder agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim will receive on the Effective Date, at the Debtors' option, payment in full in Cash, the collateral securing its Claim, or other treatment rendering the Claim Unimpaired, as provided in Article III.C.1 of the Plan. | $[●] | Unimpaired treatment | [●]% |
| 2 | Other Priority Claims | Except to the extent a Holder agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim will be paid in full in Cash on the Effective Date or otherwise receive treatment consistent with section 1129(a) of the Bankruptcy Code, as provided in Article III.C.2 of the Plan. | $[●] | 100% | [●]% |

[4] Liquidation recoveries are to be determined and will be set forth herein upon the completion of the Liquidation Analysis.

| Class | Claim or Interest | Treatment | Projected Amount of Allowed Claims (in $mm) | Projected Plan Recovery | Liquidation Recovery[4] |
|---|---|---|---|---|---|
| 3 | Wells Fargo Credit Agreement Claims | Allowed solely in the amount remaining outstanding after giving effect to the repayment, refinancing, or conversion of prepetition obligations into DIP ABL Claims under the DIP Orders and all payments or other satisfaction of such claims pursuant to the DIP Orders or any other applicable Order of the Bankruptcy Court. Such amount shall consist of unpaid principal, plus any and all unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing under the Wells Fargo Credit Agreement Documents or related documents (including post-petition interest at the rate approved in the Final DIP Order) through and including the date of payment of the Wells Fargo Credit Agreement Claims, in each case solely to the extent not repaid, refinanced, or otherwise paid or satisfied. Except to the extent a Holder agrees to less favorable treatment, payment in full in Cash from proceeds of the collateral securing its Claim, in accordance with relative lien priorities and subject to the applicable intercreditor agreement or such other treatment as may be permissible under section 1129 of the Bankruptcy Code, on or before the Effective Date. Outstanding documented agent fees and expenses are paid as provided in the Plan. | $[●] | 100% under the Plan's proposed treatment | [●]% |

| Class | Claim or Interest | Treatment | Projected Amount of Allowed Claims (in $mm) | Projected Plan Recovery | Liquidation Recovery[4] |
|---|---|---|---|---|---|
| 4 | SLR Credit Agreement Claims | Allowed solely in the amount remaining outstanding after giving effect to the repayment, refinancing, or conversion of prepetition obligations into DIP Term Loan Claims under the DIP Orders and all payments or other satisfaction of such claims pursuant to the DIP Orders, or any other applicable Order of the Bankruptcy Court. Such amount shall consist of unpaid principal plus any and all unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing under the SLR Loan Agreement Documents or related documents (including post-petition interest at the rate approved in the Final DIP Order) through and including the date of payment of the SLR Credit Agreement Claims, in each case solely to the extent not repaid, refinanced, or otherwise paid or satisfied. Except to the extent a Holder agrees to less favorable treatment, payment in full in Cash from proceeds of the collateral securing its Claim, in accordance with relative lien priorities and subject to the applicable intercreditor agreement or such other treatment as may be permissible under section 1129 of the Bankruptcy Code, on or before the Effective Date. Outstanding documented agent fees and expenses are paid as provided in the Plan. | $[●] | 100% under Plan treatment | [●]% |

| Class | Claim or Interest | Treatment | Projected Amount of Allowed Claims (in $mm) | Projected Plan Recovery | Liquidation Recovery[4] |
|---|---|---|---|---|---|
| 5 | General Unsecured Claims, including Mithaq Credit Facility Claims | Except to the extent a Holder agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim receives its Pro Rata share of (i) additional Distributable Value allocable to the applicable Debtor subsidiary after payment in full of all Allowed Class 1, 2, 3, and 4 Claims (and subject to any applicable intercreditor or subordination agreement) and (ii) the GUC Distribution Reserve, or other treatment consistent with section 1129(b), subject to Article III.C.5. Holders of joint-and-several, guaranty, or similar Claims arising from the same obligation receive a distribution on only one Allowed General Unsecured Claim in satisfaction of those Claims. The GUC Distribution Reserve shall be funded with an amount to be determined by the Debtors (in consultation with the DIP Agents and the Prepetition Agents), subject to specified Committee expenses. | $[●] | [●]% | [●]% |
| 6 | Intercompany Claims | On the Effective Date, Allowed Intercompany Claims may be Reinstated or set off, settled, distributed, contributed, cancelled, released, or otherwise addressed at the Debtors' option without a distribution, or receive other treatment reasonably determined by the Debtors. | n/a | n/a | n/a |
| 7 | Intercompany Interests | On the Effective Date, Allowed Intercompany Interests may be Reinstated or set off, settled, distributed, contributed, cancelled, released, or otherwise addressed at the Debtors' option without a distribution, or receive other treatment reasonably determined by the Debtors. | n/a | n/a | n/a |
| 8 | Section 510(b) Claims | On the Effective Date, any Claims arising under section 510(b) of the Bankruptcy Code shall be discharged without any distribution. | n/a | 0% | n/a |

| Class | Claim or Interest | Treatment | Projected Amount of Allowed Claims (in $mm) | Projected Plan Recovery | Liquidation Recovery[4] |
|---|---|---|---|---|---|
| 9 | Equity Interests | On the Effective Date, all Equity Interests shall be cancelled, released, extinguished, and discharged and cease to have force or effect. Each Holder is entitled to its Pro Rata share of any Distributable Value remaining after payment in full of all Allowed Claims and satisfaction of all other payment and reserve requirements under the Plan. | n/a | Residual, if any | n/a |

### M. What will I receive from the Debtors if I hold an Allowed Administrative Claim or Allowed Priority Tax Claim?

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan. It is contemplated under the Plan that such Claims will be treated as follows:

***Administrative Claims.***

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Wind-Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in Section II.A of the Plan, requests for payment of Administrative Claims must be Filed and served by thirty (30) days after the Effective Date. **Holders required to File who do not timely do so will be barred as provided in the Plan. No request is required for a previously Allowed Administrative Claim. Professional Fee Claims have a separate forty-five (45) day deadline.** The Plan and applicable orders govern all exceptions and procedures.

***Priority Tax Claims.***

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

***DIP Claims.***

The DIP Claims have been afforded superpriority administrative expense status pursuant to the terms of the DIP Orders, and include the roll-up of the Wells Fargo Credit Agreement and the SLR Credit Agreement to the extent set forth in the DIP Orders.

Except to the extent that a Holder of a DIP Claim agrees to less favorable treatment, notwithstanding anything to the contrary in the Plan, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the DIP Claims, on or before the Effective Date, each such Holder shall receive payment in full in Cash of its DIP Claim, to the extent not previously paid, in accordance with the terms of the DIP Orders. For the avoidance of doubt, DIP Claims include prepetition obligations only to the extent actually repaid, refinanced, or converted into obligations under the DIP Facilities pursuant to the DIP Orders. No amount shall receive both the treatment provided in Article II.E of the Plan and treatment as a Class 3 or Class 4 Claim. Payments, including the treatment of outstanding letters of credit and contingent obligations, and termination of commitments shall be effected in accordance with the DIP Orders and DIP Documents.

**N. What happens to my recovery if the Plan is not confirmed or does not go effective?**

In the event that the Plan is not confirmed or does not go effective, there is no assurance that the Holders of Claims will receive the potential recoveries reflected herein. It is possible that any alternative plan may provide Holders of Claims and Interests with less than they would have received pursuant to the Plan. For a more detailed description of the consequences of an extended chapter 11 case, or of a liquidation scenario, *see* section VI.B of this Disclosure Statement, titled "Best Interests of Creditors—Liquidation Analysis" and the Liquidation Analysis attached hereto as **Exhibit C**.

**O. If the Plan provides that I get a Distribution, do I get it upon Confirmation or when the Plan goes effective, and what is meant by "Confirmation," "Effective Date," and "Consummation"?**

Confirmation is entry of the order approving the Plan; Consummation is occurrence of the Effective Date after applicable conditions are satisfied or waived and no stay is in effect. Unless otherwise provided in the Plan, distributions are made on the Effective Date or as soon as reasonably practicable thereafter, and later-Allowed Claims receive distributions as provided in Articles VI and VII of the Plan. Timing depends on realizations, reserves, and Claims resolution; Confirmation alone does not guarantee payment.

**P. What are the sources of consideration and other consideration used to make distributions under the Plan?**

Distributions will be funded from proceeds of the Inventory Sale, Cash on hand including Residual Cash, proceeds of Causes of Action retained by the Wind-Down Debtors and any proceeds related to the sale of the Debtors' assets through the Bidding Procedures or otherwise, subject to the Plan, reserves, and Wind-Down Budget.

**Q. Are there anticipated Cash proceeds available for distribution to unsecured creditors?**

Allowed Class 5 General Unsecured Claims receive a Pro Rata share of the GUC Distribution Reserve. Additional Distributable Value shall be payable to that Class after full payment of Allowed Classes 1 through 4, if there is enough Distributable Value to do so. At this time, neither reserve funding nor recovery percentages have been completed. Full payment and minimum percentage recovery should not be assumed. Specified post-Effective Date Committee expenses shall reduce the GUC Distribution Reserve.

**R. Is there potential litigation related to the Plan?**

Parties in interest may object to the approval of this Disclosure Statement and Confirmation of the Plan, which objections potentially could give rise to litigation.

**S. Will there be releases, exculpation, and injunction granted to parties in interest as part of the Plan?**

Article VIII of the Plan proposes Debtor Releases, Third-Party Releases, exculpation, and injunctions, subject to the definitions, exceptions, and limitations in the Plan and approval by the Bankruptcy Court. Their inclusion does not establish that applicable approval standards have been satisfied. Though more fully described below, the proposed Debtor Release is a release of the Debtors' claims against third parties. By contrast, the Third-Party Release is a release of direct claims a Holder of a Claim or Interest has against third parties unless a Holder of such Claim or Interest affirmatively elects to opt out of the Third-Party Release. Certain relevant defined terms are summarized below (in each case, the precise definition in Article I of the Plan controls):

"*Released Party*" includes (a) the Plan Administrator, each Prepetition Agent, each Prepetition Lender, each DIP Agent, and each DIP Lender; (b) each Debtor; (c) each current Affiliate of each Entity in clauses (a) and (b); (d) each Related Party of each Entity in clauses (a) through (c); and (e) each Debtor Related Party;, solely within that definition. Opting out or maintaining an unresolved timely release objection excludes an Entity, and final inclusion remains subject to Restructuring Committee review and approval.

"*Releasing Party*" includes (a) the Plan Administrator, each Prepetition Agent, each Wells Fargo Credit Agreement Lender, each SLR Credit Agreement Lender, each DIP Agent, and each DIP Lender; (b) each Debtor; (c) all Holders of Claims that vote to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (d) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all holders of Interests; (h) each current Affiliate of each Entity in clauses (a) through (g); (i) each Related Party of each Entity in clauses (a) through (h); and (j) each Debtor Related Party. Entities opting out or maintaining unresolved timely objections are excluded. Holders of Claims or Interests who did not receive an Opt Out Form are not Releasing Parties; the definition also excludes specified post-record-date Interest acquirers who did not receive a form.

"*Exculpated Parties*" is limited to specified persons, solely in their relevant capacities and to the extent they are estate fiduciaries: the Debtors, Wind-Down Debtors, Committee and its members as such, and specified current persons associated with the Debtors and Wind-Down Debtors, expressly including the Restructuring Committee.

**THE PLAN PROPOSES A RELEASE OF DIRECT CLAIMS BY RELEASING PARTIES AGAINST RELEASED PARTIES. SUBJECT TO THE PLAN'S EXCLUSIONS, FAILURE TO OPT OUT MAY RESULT IN RELEASE OF CLAIMS EVEN IF A HOLDER ABSTAINS OR VOTES TO REJECT THE PLAN. A HOLDER OF CLAIMS OR INTERESTS WHO DID NOT RECEIVE AN OPT OUT FORM IS NOT A RELEASING PARTY UNDER THE PLAN. READ SECTION VIII.D OF THE PLAN AND THE DEFINITIONS IN SECTION I.A OF THE PLAN CAREFULLY. VOTING AND OPT-OUT/RELEASE ELECTIONS ARE DISTINCT. THESE PROVISIONS REMAIN SUBJECT TO BANKRUPTCY COURT APPROVAL.**

**1. *Releases by the Debtors.***

**As of the Effective Date, the Plan proposes that the Debtors, Wind-Down Debtors, and Estates release Released Parties from Claims and Causes of Action as fully described in Section VIII.C of the Plan. Such releases include specified matters relating to the Debtors, restructuring efforts, intercompany transactions with Debtors and non-Debtor Affiliates, Chapter 11 Cases, Inventory Sale, Inventory Sale Agreement, Definitive Documents, and Plan implementation through the Effective Date. The proposed release does not release post-Effective Date obligations or specifically retained Causes of Action. The full text of Section VIII.C of the Plan and related definitions govern.**

**The Plan asks the Bankruptcy Court to approve the Debtor Release as a good-faith settlement supported by consideration and the findings listed in Section VIII.C of the Plan.**

2. *Releases by Holders of Claims and Interests.*

**As of the Effective Date, the Plan proposes that each Releasing Party release Debtors, Wind-Down Debtors, and Released Parties from certain Claims and Causes of Action as fully described in Section VIII.D of the Plan. Such release relates to the Debtors, restructuring efforts, intercompany transactions with Debtors and non-Debtor Affiliates, Chapter 11 Cases, Inventory Sale and related agreement, Definitive Documents, and implementation through the Effective Date. Post-Effective Date obligations and specifically retained Causes of Action are excepted. The release applies only to persons within the Releasing Party definition and includes receipt, opt-out, and objection exclusions. The full text of Section VIII.D of the Plan and related definitions govern.**

**The Plan requests findings that the Third-Party Release is consensual, essential, supported by consideration, fair and reasonable, and otherwise meets the criteria set forth in Section VIII.D of the Plan. Approval and the required findings remain subject to Bankruptcy Court determination.**

**Section VIII.D of the Plan proposes that an Entity given an opt-out opportunity that does not exercise it is a Releasing Party, subject to the definition's exclusions. It also requires specified Entities that opt out or are deemed to reject to obtain a Final Order before asserting a Claim against a Released Party as outside the Debtor Release. The Bankruptcy Court would determine direct-versus-derivative status and colorability and adjudicate only to the extent legally permissible. The provision preserves Insurers' ability to administer, defend, settle, and pay covered claims in accordance with policies and applicable law. These proposed restrictions remain subject to approval.**

3. *Exculpation.*

**The Plan proposes exculpation provisions, to the fullest extent permissible under applicable law, for Exculpated Parties for specified acts or omissions from the Petition Date through the Effective Date in connection with the Chapter 11 Cases, sales, Plan, and related implementation. It excludes conduct determined by Final Order to constitute actual fraud, bad faith, willful misconduct, or gross negligence, and permits reasonable reliance on counsel. Only parties within the Plan's estate-fiduciary-limited definition receive this protection. The full text of Section VIII.E of the Plan and related definitions govern.**

4. *Injunction.*

**Section VIII.F of the Plan describes continuation of the automatic stay as specified therein and proposes, from the Effective Date, an injunction against enforcing Claims or Interests fully satisfied under the Plan or subject to its releases and exculpations, except to receive Plan payments or distributions. The proposed injunction includes specified restrictions on proceedings, enforcement, encumbrances, setoff, subrogation, and recoupment. The Plan expressly states that the injunction provided for in Section VIII.F of the Plan does not constitute a discharge under section 1141(d) of the Bankruptcy Code. The Plan, applicable orders, and their exceptions control.**

**T. What are the consequences of opting out of the releases provided by the Plan?**

A timely election to opt-out excludes an otherwise covered Holder from the Releasing Party definition and also from the Released Party definition. It preserves direct Claims to the extent not otherwise barred, settled, released, or subject to another applicable limitation. Opting out does not preserve Estate-owned derivative Claims released by the Debtors.

The Plan Administrator may pursue retained Estate Causes of Action in accordance with the Plan. Whether a Claim against an opting-out Holder survives depends on the Plan's actual releases, retained-claim schedule, transferred assets, and applicable orders, not solely on the Holder's release election.

### U. What are the consequences of not opting out of the releases provided by the Plan?

A Holder who does not opt out may become a Releasing Party under the Plan's definition and release covered direct Claims, subject to receipt and other exclusions. That choice does not itself make the Holder a Released Party or guarantee a release of Claims held by the Debtors against the Holder.

Protection from Estate litigation depends on inclusion within the Released Party definition and the scope and exceptions in Section VIII.C of the Plan. Specifically retained Causes of Action and the other carveouts remain controlling.

### V. Does the Plan preserve Causes of Action?

Yes, the Plan preserves certain Estate Causes of Action. The Wind-Down Debtors and the Plan Administrator will retain and may enforce all rights to commence and pursue any and all such Causes of Action regardless of whether they arose before or arise after the Petition Date.

Rights to pursue retained Causes of Action survive the Effective Date except for Causes of Action released or exculpated under the Plan. The preservation provisions remain subject to the Plan and applicable orders.

**No Entity may rely on the absence of a specific reference to a Cause of Action in the Plan, Plan Supplement, or Disclosure Statement as an indication it will not be pursued. Causes of Action are reserved except to the extent expressly waived**, released, exculpated, compromised, or settled under the Plan or a Final Order, subject to Article VIII of the Plan.

The Debtors before the Effective Date and Wind-Down Debtors or Plan Administrator thereafter retain the exclusive authority specified in Article IV.G of the Plan to pursue or resolve retained Causes of Action, as further set forth in the Plan Administrator Agreement, without third-party consent or approval or further Bankruptcy Court action. No retained Cause of Action includes a Claim against a Released Party or Exculpated Party within the Plan's releases and exculpations.

### W. Are any regulatory approvals required to consummate the Plan?

The Plan conditions effectiveness on obtaining requisite governmental, regulatory, and third-party approvals and consents, with applicable waiting periods expired or terminated, as specified in Article IX of the Plan.

### X. What is the deadline to vote on the Plan?

The proposed deadline to vote on the Plan is January 20, 2027, at 3:00 p.m. (prevailing Eastern Time) (the "Voting Deadline").

### Y. What are the overall projected recoveries under the Plan?

The projected recoveries are provided in section IV.L of this Disclosure Statement.

### Z. How do I vote for or against the Plan?

Complete and submit the applicable Ballot using only the methods and addresses specified in the approved Ballot and Disclosure Statement Order. Ballots must be **actually received** by the Claims and Noticing Agent by the Voting Deadline.

| |
|---|
| **IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE VOTING INSTRUCTIONS WILL NOT BE COUNTED EXCEPT AS DETERMINED BY THE DEBTORS.** |

### AA. Why is the Bankruptcy Court holding a Confirmation Hearing?

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan and recognizes that any party in interest may object to Confirmation of the Plan.

### BB. When is the Combined Hearing set to occur?

The **combined hearing is proposed for January 26, 2027, at [●] a.m./p.m., (prevailing Eastern Time), at which time the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing")** before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Newark, NJ 07102.

The deadline for filing objections to confirmation of the Plan and final approval of the Disclosure Statement is proposed for **January 20, 2027, at 3:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline").

The Debtors will provide notice of the Combined Hearing, Combined Objection Deadline, and any publication notice in the manner approved by the Bankruptcy Court.

### CC. What is the purpose of the Combined Hearing?

The purpose of the Combined Hearing is to seek Confirmation of the Plan and final approval of this Disclosure Statement. The confirmation of a chapter 11 plan by a bankruptcy court binds the debtor, any issuer of securities under a chapter 11 plan, any person acquiring property under a chapter 11 plan, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code.

### DD. What is the effect of the Plan on the Debtors' ongoing business?

The Debtors are distributing assets and winding down under Chapter 11 of the Bankruptcy Code. Following Confirmation, the Plan will be consummated on or as soon as reasonably practicable after the Effective Date. Additionally, upon the Effective Date, all actions contemplated by the Plan will be deemed authorized and approved.

On or after the Effective Date, the Plan Administrator will commence the Wind Down of the Wind-Down Debtors in accordance with the terms of the Plan and subject at all times to such amendments and deviations as may be required. See above Sections IV.F, IV.H, and IV.G regarding questions on the Wind-Down Debtors, Wind-Down and Plan Administrator.

### EE. Will any party have significant influence over the corporate governance and operations of the Wind-Down Debtors?

The Plan Administrator – who will be selected by the Debtors – shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions of the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan in accordance with the Wind Down and as otherwise provided in the Confirmation Order.

The Plan Administrator will serve as sole officer, director, and manager of the Wind-Down Debtors. Reporting obligations to keep stakeholders reasonably informed are to be set forth in the Plan Administrator Agreement.

### FF. What steps did the Debtors take to evaluate alternatives to a chapter 11 filing?

As described in the *Declaration of Rudolph Morando, Co-Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 56], the Debtors evaluated various in- and out-of-court options prior to filing these cases.

**GG. Who do I contact if I have additional questions with respect to this Disclosure Statement or the Plan?**

If you have any questions regarding this Disclosure Statement or the Plan, please contact the Claims and Noticing Agent:

**Claims and Noticing Agent: Omni Agent Solutions, Inc.; Email: TCPInquiries@OmniAgnt.com; Telephone: (866) 205-3149 (US & Canada), (818) 510-4678 (International); Case website: https://omniagentsolutions.com/TCP**.

Copies of the Plan, Disclosure Statement, and publicly Filed documents may be obtained from Omni Agent Solutions, Inc., the appointed Claims and Noticing Agent, at https://omniagentsolutions.com/TCP or the Bankruptcy Court's docket, subject to applicable access fees.

**HH. Do the Debtors recommend voting in favor of the Plan?**

Yes. The Debtors recommend acceptance of the Plan's framework for an orderly distribution of Estate assets and Wind Down.

## V. SOLICITATION AND VOTING PROCEDURES

This Disclosure Statement, which is accompanied by a Ballot or Ballots to be used for voting on the Plan, is being distributed to the Holders of Claims in those Classes that are entitled to vote to accept or reject the Plan. The procedures and instructions for voting and related deadlines are set forth in the Solicitation Package.

**THE DISCUSSION OF THE SOLICITATION AND VOTING PROCESS SET FORTH IN THIS DISCLOSURE STATEMENT IS ONLY A SUMMARY**.

PLEASE REFER TO THE DISCLOSURE STATEMENT ORDER FOR A MORE COMPREHENSIVE DESCRIPTION OF THE SOLICITATION AND VOTING PROCESS.

**A. Classes Permitted to Vote on the Plan.**

The Voting Classes are Classes 3, 4, and 5, which are Impaired under the Plan. Eligible Holders of Allowed Claims in those Classes may vote to accept or reject the Plan, subject to the Disclosure Statement Order.

| Class | Claim or Interest | Status |
|---|---|---|
| Class 3 | Wells Fargo Credit Agreement Claims | Impaired |
| Class 4 | SLR Credit Agreement Claims | Impaired |
| Class 5 | General Unsecured Claims | Impaired |

If your Claim or Interest is not included in the Voting Classes, you are not entitled to vote and you will not receive a Solicitation Package. If you are a Holder of a Claim in one or more of the Voting Classes, you should read your Ballot(s) and carefully follow the instructions included in the Ballot(s). Please use only the Ballot(s) that accompany this Disclosure Statement or the Ballot(s) that the Debtors, or the Claims and Noticing Agent on behalf of the Debtors, otherwise provided to you. If you are a Holder of a Claim in more than one of the Voting Classes, you will receive a Ballot for each such Claim.

**B. Votes Required for Acceptance by a Class.**

Under the Bankruptcy Code, acceptance of a chapter 11 plan by a class of claims is determined by calculating the amount and number of allowed claims voting to accept, as a percentage of the allowed claims that have voted. Acceptance of a chapter 11 plan by a class of interests is determined by calculating the amount of allowed interests voting to accept, as a percentage of the allowed interests that have voted. Acceptance by a class of claims requires an affirmative vote of more than one-half in number and two-thirds in dollar amount of the total allowed claims that have

voted. Acceptance by a class of interests requires an affirmative vote of at least two-thirds in amount of the total allowed interests that have voted.

**C. Certain Factors to Be Considered Prior to Voting.**

There are a variety of factors that all Holders of Claims entitled to vote on the Plan should consider prior to voting to accept or reject the Plan. These factors may impact recoveries under the Plan and include, among other things:

- unless otherwise specifically indicated, the financial information contained in the Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and the Disclosure Statement;

- although the Debtors believe that the Plan complies with all applicable provisions of the Bankruptcy Code, the Debtors can neither assure such compliance nor guarantee that the Bankruptcy Court will confirm the Plan;

- the Debtors may request Confirmation without the acceptance of all Impaired Classes in accordance with section 1129(b) of the Bankruptcy Code; and

- any delays of either Confirmation or Consummation could result in, among other things, increased Administrative Claims and Professional Fee Claims.

While these factors could affect distributions available to Holders of Allowed Claims under the Plan, the occurrence or impact of such factors will not necessarily affect the validity of the vote of the Voting Classes or necessarily require a resolicitation of the votes of Holders of Claims in the Voting Classes.

For a further discussion of risk factors, please refer to "Risk Factors" described in Article X of this Disclosure Statement.

**D. Classes Not Entitled to Vote on the Plan.**

Under the Bankruptcy Code, holders of claims or interests are not entitled to vote if their contractual rights are unimpaired by the proposed plan or if they will receive no property under the plan. Accordingly, the following Classes of Claims against and Interests in the Debtors are neither entitled nor permitted to vote to accept or reject the Plan:

| Class | Claim or Interest | Status |
|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired |
| Class 2 | Other Priority Claims | Unimpaired |
| Class 6 | Intercompany Claims | Unimpaired / Impaired |
| Class 7 | Intercompany Interests | Unimpaired / Impaired |
| Class 8 | Section 510(b) Claims | Impaired |
| Class 9 | Equity Interests | Impaired |

**E. Solicitation and Voting Procedures.**

**1. *Claims and Noticing Agent.***

Omni Agent Solutions, Inc. is the Debtors' Claims and Noticing Agent. The agent will distribute solicitation materials and tabulate votes pursuant to the Disclosure Statement Order.

**2. *Solicitation Package.***

The following materials constitute the solicitation package (the "Solicitation Package") distributed to Holders of Claims in the Voting Classes:

a. copy of these Solicitation and Voting Procedures;

b. the applicable Ballot, together with detailed voting instructions and instructions on how to submit the Ballot;

c. the Cover Letter, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan;

d. the Combined Hearing Notice;

e. the Disclosure Statement (and exhibits thereto, including the Plan);

f. the Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures); and

g. any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

Distribution of the Solicitation Package and Plan Supplement.

The Debtors will serve solicitation materials and make them available through the Claims and Noticing Agent in accordance with the Disclosure Statement Order.

The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order in electronic format (on a QR code included in the Confirmation Hearing Notice) instead of printed hard copies. Only the Ballots and the Confirmation Hearing Notice will be provided in paper format. Moreover, the Plan and Disclosure Statement will be available at no charge via the internet at https://omniagentsolutions.com/TCP. If service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (e.g., the party does not own or have access to a smartphone or a tablet), such party may request a paper copy or a USB flash drive that includes copies of the Plan, Disclosure Statement, and Disclosure Statement Order (without attachments, except the Solicitation and Voting Procedures as annexed as Exhibit 2 thereto) by contacting Omni (i) through e-mail at TCPInquiries@OmniAgnt.com, (ii) by writing to The Children's Place, Inc., Ballot Processing, C/O Omni Agent Solutions, Inc., 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, or (iii) via telephone, toll-free, at 866-205-3149 (US & Canada) or +818-510-4678 (International). Upon receipt of such request, the Debtors will provide such party with a paper copy of, or USB flash drive containing, the Plan, Disclosure Statement, and Disclosure Statement Order at no cost to the creditor within five (5) days of such request or as soon as reasonably practicable thereafter.

The Debtors shall mail to Holders of Claims in Voting Classes entitled to vote on the Plan as of the Voting Record Date the Solicitation Packages by December [●], 2026, or as soon as reasonably practicable thereafter. The Debtors will also provide complete Solicitation Packages (excluding Ballots) to the U.S. Trustee and all parties in interest required to be notified under Bankruptcy Rule 2002.

The Debtors are not required to mail Solicitation Packages to Holders (i) that have Claims that have already been paid in full during the Chapter 11 Cases, (ii) whose prior mailings in these Chapter 11 Cases were returned as

undeliverable and that have not provided a forwarding address by the Voting Record Date[5], (iii) that hold Claims or Interests in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 6 (Intercompany Claims), Class 7 (Intercompany Interests), Class 8 (Section 510(b) Claims), or Class 9 (Equity Interests), and/or (iv) that are not otherwise entitled to vote to accept or reject the Plan in accordance with the terms and provisions of these Solicitation and Voting Procedures.

In the event that the United States Postal Service returns any mailings as undeliverable, the Debtors are excused from mailing Solicitation Packages or Notices of Non-Voting Status to addresses from which the Debtors received mailings returned as undeliverable. For purposes of serving the Solicitation Packages and Notices of Non-Voting Status, the Debtors may rely on the address information for the Holders of Claims and Interests as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date. The Debtors and the Voting Agent are not required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots) and will not be required to resend Solicitation Packages or other materials, including Notices of Non-Voting Status, that are returned as undeliverable unless the Debtors are provided with accurate addresses for such parties prior to the Voting Record Date.

To avoid duplication and reduce expenses, the Debtors will make every reasonable effort to ensure that any Holder of a Claim who has filed duplicative Claims against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim and with respect to that Class as against that Debtor.

**F. Voting Procedures.**

The Debtors propose December 15, 2026, as the Voting Record Date for purposes of determining which Holders of Claims in Class 3 Wells Fargo Credit Agreement Claims, Class 4 SLR Credit Agreement Claims, and Class 5 General Unsecured Claims that either (i) have been listed on the Debtors' Schedules or (ii) with respect to which a valid proof of claim has been filed before December 15, 2026, are entitled to vote on the Plan.

The **Voting Deadline is proposed for January 20, 2027, at 3:00 p.m. (prevailing Eastern Time)**, subject to the Disclosure Statement Order. Ballots must be completed, executed, and **actually received** using the methods and addresses in the approved Ballot instructions

The Debtors may extend the Voting Deadline, in their discretion, without further order of the Bankruptcy Court. To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and timely delivered to the Voting Agent: (i) by first-class mail in the return envelope provided with each Ballot; (ii) by overnight mail; (iii) by hand delivery, or (iv) via E-Ballot through the Online Portal so that (in each instance) it is actually received by the Voting Agent no later than the Voting Deadline.

Holders of Claims submitting their Ballots in hard copy to the Voting Agent shall mail or deliver them to the following address:

| OMNI'S ADDRESS FOR RECEIPT OF PAPER BALLOTS (WHETHER BY HAND DELIVERY, OVERNIGHT MAIL, OR FIRST CLASS MAIL) |
|---|
| THE CHILDREN'S PLACE<br>BALLOT PROCESSING<br>C/O OMNI AGENT SOLUTIONS, INC.<br>5955 DE SOTO AVENUE, SUITE 100<br>WOODLAND HILLS, CALIFORNIA 91367 |

5 For purposes of serving the Solicitation Packages, the Debtors request that they be authorized to rely on the address information for the Voting and Non-Voting Classes as compiled, updated, and maintained by the Voting Agent as of the Voting Record Date and that the Debtors and the Voting Agent not be required to conduct any additional research for updated addresses based on undeliverable Solicitation Packages (including Ballots).

In all instances, Holders shall consult their Ballot for specific instructions regarding submission of their votes and any elections. The manner of Ballot submission is at the election and risk of the Holders of Claims in the Voting Classes who vote on the Plan. Regardless of the manner of submission, to be counted, Ballots must be actually, timely, and properly received by the Voting Agent by the Voting Deadline. The Debtors strongly recommend submitting electronic Ballots through the Online Portal.

To the extent reasonably practicable, the Plan Supplement will be Filed no later than seven (7) days before the Voting Deadline, or a later date approved by the Bankruptcy Court on notice to parties in interest, as provided in Article I.A of the Plan.

IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE DEBTORS DETERMINE OTHERWISE OR AS PERMITTED BY APPLICABLE LAW OR COURT ORDER.

ANY BALLOT THAT IS PROPERLY COMPLETED, EXECUTED, AND TIMELY RETURNED TO THE DEBTORS THAT FAILS TO INDICATE ACCEPTANCE OR REJECTION OF THE PLAN OR THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED.

EACH HOLDER OF A CLAIM MUST VOTE ALL OF ITS CLAIMS WITHIN A PARTICULAR CLASS EITHER TO ACCEPT OR REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTES. BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM WILL CERTIFY TO THE BANKRUPTCY COURT AND THE DEBTORS THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLASS OF CLAIMS, SUCH OTHER BALLOTS INDICATED THE SAME VOTE TO ACCEPT OR REJECT THE PLAN.

IT IS IMPORTANT THAT THE HOLDER OF A CLAIM IN THE VOTING CLASSES FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON SUCH HOLDER'S BALLOT AND THE ACCOMPANYING INSTRUCTIONS. NO BALLOT MAY BE WITHDRAWN OR MODIFIED AFTER THE VOTING DEADLINE WITHOUT THE DEBTORS' PRIOR CONSENT OR AS PERMITTED BY APPLICABLE LAW OR COURT ORDER.

**G. Voting and Tabulation Procedures.**

a. any Claim filed in an amount denominated by a currency other than U.S. dollars will vote in the amount of $1.00;

b. except as otherwise provided in these Solicitation and Voting Procedures, unless a Ballot is timely submitted and actually received by the Claims and Noticing Agent on or prior to the Voting and Opt-Out Deadline (as the same may be extended by the Debtors), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan;

c. the Claims and Noticing Agent will date-stamp all Ballots when received;

d. the Claims and Noticing Agent shall retain copies of Ballots and all solicitation-related correspondence for two (2) years following the closing of the Chapter 11 Cases, following which period the Claims and Noticing Agent is authorized to destroy and/or otherwise dispose of: (i) all copies of Ballots; (ii) printed solicitation materials, including unused copies of the Solicitation Package; and (iii) all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such two (2) year period;

e. the Debtors will file the Voting Report by no later than January 22, 2027 at 3:00 p.m., prevailing Eastern Time, subject to any extension as a result of a change in the Combined Hearing Date;

f. the Voting Report shall, among other things, delineate every Ballot that was excluded from the voting results (each an "Irregular Ballot"), which Ballots shall not be counted in determining acceptance or rejection of the Plan, and the Voting Report shall indicate the reason why such Irregular Ballots were rejected. Irregular Ballots shall include any Ballot:

   i. that is illegible or contains insufficient information to permit the identification of the Holder of such Claim;

   ii. cast by any Entity that does not hold a Claim in a Voting Class as of the Voting Record Date (for Known Eligible Claims) or the Claims Bar Date (for Unknown Eligible Claims);

   iii. that is unsigned or that lacks an original signature (for the avoidance of doubt, a Ballot submitted via the Claims and Noticing Agent's online balloting portal shall be deemed to contain an original signature);

   iv. that is not marked to accept or reject the Plan or is marked both to accept and reject the Plan;

   v. transmitted by any other means not specifically approved pursuant to the Disclosure Statement Order or contemplated by these Solicitation and Voting Procedures or by separate order of the Court;

   vi. sent to any of the Debtors, the Debtors' agents or representatives, or the Debtors' advisors (other than the Claims and Noticing Agent) unless such Ballot is otherwise submitted by proper means; and

   vii. submitted by any Entity not entitled to vote pursuant to the procedures described herein;

g. the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report or a supplemental voting report, as applicable;

h. neither the Debtors nor any other Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report nor will any of them incur any liability for failure to provide such notification;

i. unless waived or as ordered by the Court, any defects or irregularities in connection with submissions of Ballots must be cured prior to the Voting and Opt-Out Deadline or such Ballots will not be counted; provided that a valid opt-out election on an otherwise defective or Irregular Ballot submitted prior to the Voting and Opt-Out Deadline shall be honored as a valid opt-out election;

j. the method of delivery of Ballots to be sent to the Claims and Noticing Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Claims and Noticing Agent actually receives the executed Ballot;

k. an executed Ballot is required to be submitted by the Entity or its authorized representative submitting such Ballot;

l. delivery of a Ballot to the Claims and Noticing Agent by email, facsimile, or any electronic means, other than expressly provided in the applicable Ballot or these Solicitation and Voting Procedures, will not be valid;

m. no Ballot should be sent to the Debtors, the Debtors' agents (other than the Claims and Noticing Agent), or the Debtors' financial or legal advisors, and, if so sent, such Ballot will not be counted unless the same is otherwise validly submitted by other means;

n. if multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting and Opt-Out Deadline, the last dated, properly submitted, valid Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

o. Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes; accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted, and to the extent there are multiple Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of tabulating votes;

p. a person signing a Ballot in their capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing and if required or requested by the Claims and Noticing Agent, the Debtors, or the Court, must submit proper evidence of such fiduciary or representative capacity to the requesting party to so act on behalf of such Holder;

q. in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted or rejected;

r. subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided that any such rejections will be documented in the Voting Report;

s. if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only and not for purposes of allowance or distribution;

t. if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

u. after the Voting and Opt-Out Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors or further order of the Court;

v. the Debtors are authorized to enter into stipulations with the Holder of any Claim, email agreement between such Holder or its representatives and Debtors' counsel being sufficient, agreeing to the amount of a Claim for voting purposes;

w. where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other solicitation and voting procedures set forth herein) and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan;

x. in the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted; and

y. for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, however, that if separate affiliated entities, including any funds or accounts that are advised or managed by the same entity or by affiliated entities, hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holders held one Claim in such Class, and the votes of each affiliated entity or managed fund or account will be counted separately for numerosity purposes as votes to accept or reject the Plan.

**IF YOU HAVE ANY QUESTIONS ABOUT THESE PROCEDURES OR PROCESS, PLEASE CONTACT OMNI AGENT SOLUTIONS, INC., THE APPOINTED CLAIMS AND NOTICING AGENT, USING THE CONTACT DETAILS IN YOUR APPROVED SOLICITATION MATERIALS.**

**ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE SOLICITATION ORDER WILL NOT BE COUNTED.**

## VI. CONFIRMATION OF THE PLAN

### A. Requirements of Section 1129(a) of the Bankruptcy Code.

Confirmation requires satisfaction of applicable Bankruptcy Code requirements, including acceptance by the requisite Classes or compliance with the requirements for nonconsensual confirmation, feasibility, and the best-interests test. Classes 3, 4, and 5 are the Impaired Voting Classes under the Plan; Classes 8 and 9 are Impaired *and deemed to reject.*

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. The Debtors believe that the Plan satisfies or will satisfy all of the necessary requirements of Chapter 11 of the Bankruptcy Code. Specifically, in addition to other applicable requirements, the Debtors believe that the Plan satisfies or will satisfy the applicable Confirmation requirements of Section 1129 of the Bankruptcy Code as set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as the Plan proponents, have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, will be disclosed to the Bankruptcy Court, and any such payment: (i) made before Confirmation will be reasonable or (ii) will be subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation.

- Either each Holder of an Impaired Claim against or Interest in the Debtors will accept the Plan, or each non-accepting Holder will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated on that date under Chapter 7 of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim agrees to a different treatment of its Claim, the Plan provides that, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, Allowed Administrative Claims will be paid in full on the Effective Date or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- The Plan expressly contemplates liquidation and the Wind Down; the Debtors must demonstrate feasibility of the distributions, reserves, and administration contemplated by the Plan.
- All fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

Section 1126(c) of the Bankruptcy Code provides that a class of claims has accepted a plan if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class. Section 1126(d) of the Bankruptcy Code provides that a class of interests has accepted a plan if such plan has been accepted by holders of such interests that hold at least two-thirds in amount of the allowed interests of such class.

**B. Best Interests of Creditors—Liquidation Analysis.**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each class, that each holder of a claim or an interest in such class either (i) has accepted the plan or (ii) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtors liquidated under Chapter 7 of the Bankruptcy Code.

**C. Feasibility.**

Section 1129(a)(11) of the Bankruptcy Code requires that to confirm a chapter 11 plan, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor(s) unless the plan contemplates such liquidation or restructuring. The Debtors shall fund distributions under the Plan with: (i) the proceeds of the Inventory Sale, (ii) the Debtors' Cash on hand including, without limitation, any Residual Cash, (iii) any proceeds from the disposition of assets of the Debtors pursuant to the Bidding Procedures or otherwise, and (iv) the proceeds of any Causes of Action retained by the Wind-Down Debtors.

**D. Acceptance by Impaired Classes.**

The Bankruptcy Code requires that, except as described in the following section, each impaired class of claims or interests must accept a plan in order for it to be confirmed. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to the class is not required. A class is "impaired" unless the plan: (i) leaves unaltered the legal, equitable, and contractual rights to which the claim or the interest entitles the holder of the claim or interest; (ii) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or (iii) provides that, on the Consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim or, with respect to any equity interest, any fixed liquidation preference to which the holder of such equity interest is entitled or any fixed price at which the debtor may redeem the security.

Section 1126 of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number of creditors actually voting cast their Ballots in favor of acceptance. For a class of impaired interests to accept a plan, section 1126(d) of the Bankruptcy Code requires acceptance by interest holders that hold at least two-thirds in amount of the allowed interests of such class, counting only those interests that actually voted to accept or reject the plan. Thus, a class of interests will have voted to accept the plan only if two-thirds in amount actually voting cast their Ballots in favor of acceptance.

Classes 3, 4, and 5 are Impaired and entitled to vote under the Plan. Acceptance and any request for nonconsensual confirmation remain subject to the voting results and applicable confirmation requirements.

### E. Confirmation without Acceptance by All Impaired Classes.

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted the plan, *provided* that the plan has been accepted by at least one (1) impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown" so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

If any Impaired Class rejects the Plan, including Classes of Claims or Interests deemed to reject the Plan, the Debtors will request Confirmation of the Plan, as it may be modified from time to time, utilizing the "cramdown" provision under section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the requirements for cramdown and the Debtors will be prepared to meet their burden to establish that the Plan can be Confirmed pursuant to section 1129(b) of the Bankruptcy Code as part of Confirmation of the Plan.

#### 1. *No Unfair Discrimination.*

The "unfair discrimination" test applies with respect to classes of claims or interests that are of equal priority but are receiving different treatment under a proposed plan. The test does not require that the treatment be the same or equivalent, but that the treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. Under certain circumstances, a proposed plan may treat two classes of unsecured creditors differently without unfairly discriminating against either class.

#### 2. *Fair and Equitable Test.*

The *Debtors must demonstrate the applicable fair-and-equitable requirements for any rejecting Impaired Class.* The Plan's proposed Class 5 recovery includes the GUC Distribution Reserve as well as any available residual Distributable Value after payment of Classes 1 through 4. The Debtors believe that this distribution waterfall satisfies the fair-and-equitable test, in the event that Class 5 votes to reject the Plan and with respect to the Classes of Claims and Interests that are deemed to reject the Plan.

##### (a) Unsecured Claims.

The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the requirement that either: (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date, equal to the allowed amount of such claim; or (ii) the holder of any claim or any interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or junior interest, subject to certain exceptions.

##### (b) Interests.

The condition that a plan be "fair and equitable" to a non-accepting class of interests, includes the requirements that either: (i) the plan provides that each holder of an interest in that class receives or retains under the plan on account of that interest property of a value, as of the effective date, equal to the greater of: (a) the allowed amount of any fixed liquidation preference to which such holder is entitled, (b) any fixed redemption price to which such holder is entitled, or (c) the value of such interest; or (ii) the holder of any interest that is junior to the interests of such class will not receive or retain any property under the plan on account of such junior interest.

## VII. THE DEBTORS' BUSINESS OPERATIONS AND CAPITAL STRUCTURE

### A. Company History.

The Children's Place was founded in 1969, is incorporated in Delaware, and maintains principal executive offices at 500 Plaza Drive, Secaucus, New Jersey 07094. Its common stock has traded on the Nasdaq Global Select Market since 1997 under the symbol PLCE. The Children's Place is its core value-oriented brand, and Gymboree offers a differentiated, more premium product line.

Mithaq acquired a controlling interest of the Company in 2024. In separate financings provided to the Company on February 29 and April 16, 2024, respectively, Mithaq loaned the Company approximately $168.6 million on a subordinated basis, a portion of which repaid Wells Fargo debt. In February 2025, Mithaq subscribed in a rights offering available to all stockholders in exchange for a reduction of certain unsecured debt that it has provided to the Company. The July and September 2026 financings provided by Mithaq advanced $15.0 million and $25.0 million, respectively, to the Company under the $40 million Mithaq Credit Facility. Approximately $151.1 million was outstanding under the Mithaq Term Loans as of the Petition Date. Mithaq beneficially owned approximately 61.1% of outstanding common stock as of August 14, 2026.

### B. The Debtors' Operations.

#### 1. *Business Segments and Channels.*

The Company reports two geographic segments: The Children's Place U.S. and The Children's Place International. The U.S. segment includes U.S. and Puerto Rico stores, U.S. wholesale, and the childrensplace.com and gymboree.com e-commerce businesses, and centrally manages sourcing and corporate functions. The international segment includes Canadian stores and international franchise revenue. The Company earns retail, wholesale, product-sale, and royalty revenue.

##### (a) Global Sourcing.

The Company designs, sources, and contracts to manufacture substantially all branded products. It maintains sourcing offices in Hong Kong, Pakistan, Kenya, China, India, Ethiopia, and Indonesia. Bangladesh and Vietnam each accounted for more than 15% of sourced merchandise in fiscal 2025. This model exposes the business to tariffs, freight costs, trade policy, geopolitical developments, and manufacturing and transportation disruptions.

##### (b) Retail and E-commerce.

As of the Petition Date, the Company operated 512 stores in North America. Physical locations support brand awareness and digital customer acquisition, while changing shopping preferences and reduced mall and shopping-center traffic have pressured the specialty retail sector.

The Company's principal digital storefronts are www.childrensplace.com and www.gymboree.com. These offer merchandise available in stores and digital-exclusive products, supported by buy-online-pickup-in-store and ship-from-store capabilities.

##### (c) Wholesale and International Partners.

The Company's wholesale relationship with Amazon provides an additional customer acquisition and sales channel. Ten international franchise and wholesale partners generate revenue through product purchases and sales-based royalties, providing international brand presence without the capital investment of Company-operated stores.

##### (d) Distribution and Employees.

The Company operates an approximately 700,000-square-foot distribution center in Fort Payne, Alabama and uses third-party facilities to support e-commerce fulfillment and other operations. The Company's workforce is comprised of 7,346 individuals, including approximately 740 personnel supporting corporate, sourcing, and field-management functions, 587 distribution-center employees, and 6,019 store employees. The store workforce consisted

of approximately 1,071 full-time and 4,948 part-time employees, including 298 seasonal employees across those categories.

### C. The Debtors' Corporate and Capital Structure.

#### 1. *The Debtors' Organizational Structure.*

TCP is the Delaware-incorporated ultimate parent of the Debtors and various non-Debtor subsidiaries. The Debtors largely comprise U.S. (including Puerto Rico) and Canadian subsidiaries and operations. The Children's Place (Canada), LP ("TCP Canada"), TCP Investment Canada II Corp., and TCP Investment Canada I Corp. comprise the Canadian Debtors described in the First Day Declaration. Non-Debtor foreign subsidiaries provide sourcing, import/export, customer-service, and IT support and limited wholesale and online sales. Absent a change in circumstance, including a going concern sale where the buyer wishes to acquire some or all of the Company's capabilities provided by and through its non-debtor foreign subsidiaries, the foreign subsidiaries will be wound-down and liquidated pursuant to applicable law in their local jurisdictions.

The fourteen Debtors identified in Article I.A of the Plan are: THE CHILDREN'S PLACE, INC.; The Children's Place Services Company, LLC; THE CHILDREN'S PLACE INTERNATIONAL, LLC; The Children's Place Canada Holdings, Inc.; thechildrensplace.com, inc.; TCP IH II, LLC; TCP Real Estate Holdings, LLC; TCP International Product Holdings, LLC; THE CHILDREN'S PLACE (CANADA), LP; TCP INVESTMENT CANADA II CORP.; TCP INVESTMENT CANADA I CORP.; TCP Brands, LLC; AMASKIT, LLC; and The Children's Place (Barbados) Inc.

#### 2. *The Debtors' Prepetition Capital Structure.*

The principal funded debt of the Company is comprised of the Wells Fargo ABL Credit Facility, SLR Term Loan, and Mithaq Term Loans (as defined below) under which $151.6 million (including $21.5 million in letters of credit), $100.0 million, and $151.1 million was outstanding, respectively, on the Petition Date

The principal debt facilities and their respective collateral and subordination arrangements are summarized below. These summaries do not amend or replace the governing loan documents.

##### (a) Wells Fargo ABL Credit Facility.

The Amended and Restated Credit Agreement originally dated May 9, 2019, as amended through the Ninth Amendment dated September 24, 2026 (the "ABL Credit Facility," termed the "Wells Fargo Credit Agreement" in the Plan), provides an up to $350.0 million asset-based revolving facility (subject to borrowing base availability) with Wells Fargo as administrative and collateral agent. The ABL Credit Facility matures on the earliest of December 16, 2030, the SLR Credit Agreement maturity, or ninety-one days before maturity of other Material Indebtedness, including the Mithaq Term Loans, as further specified in the ABL Credit Agreement. On the Petition Date, the Company had approximately $151.6 million in borrowings and $21.5 million in standby letters of credit outstanding under the ABL Credit Facility, and $47.5 million of remaining availability thereunder. Pursuant to the Intercreditor Agreement (as defined below), the ABL Credit Facility is secured by a first-priority lien on ABL Priority Collateral and a second-priority lien on Term Priority Collateral as described below.

**(b) SLR Term Loan.**

On December 16, 2025, the Debtors entered into a $100.0 million term loan with Crystal Financial LLC d/b/a SLR Credit Solutions as agent and affiliated lenders, as amended September 24, 2026. Proceeds from this loan partially repaid ABL borrowings outstanding at the time. The loan matures on the earliest of December 16, 2030, the ABL Credit Facility maturity, or ninety-one days before maturity of other Material Indebtedness, including the Mithaq Term Loans, as further specified in the SLR Credit Agreement. The obligations under the SLR Credit Agreement are secured by first-priority liens on Term Priority Collateral and second priority liens on ABL Priority Collateral as described below. There was $100.0 million outstanding as of the Petition Date under the SLR Credit Agreement.

**(c) Mithaq Term Loans.**

Mithaq provided unsecured, subordinated loans under notes dated February 29, 2024; April 16, 2024; July 1, 2026; and September 24, 2026 (collectively, the "Mithaq Term Loans"). The first subordinated financing provided by Mithaq provided up to $78.6 million and was reduced by approximately $60.2 million through the Company's February 2025 rights offering; the second subordinated financing provided by Mithaq provided $90.0 million. The July and September 2026 financings provided by Mithaq advanced $15.0 million and $25.0 million, respectively, to the Company. Approximately $151.1 million was outstanding under the Mithaq Term Loans as of the Petition Date.

Wells Fargo and SLR are parties to an Intercreditor Agreement dated December 16, 2025, as amended September 24, 2026 (the "Intercreditor Agreement"). The Intercreditor Agreement governs lien priorities and related rights among the lenders, including a split collateral arrangement among ABL Priority Collateral (generally current assets including inventory and accounts) and Term Priority Collateral (generally specified intellectual property, real estate, furniture, fixtures, equipment, and equity interests). The Mithaq Term Loans are contractually subordinated to the ABL and SLR obligations under the Amended and Restated Subordination Agreement dated December 16, 2025.

**(d) Trade, Lease, and Other Obligations.**

The Company had approximately $141.2 million of accounts payable as of the Petition Date. The Company incurs obligations to vendors, landlords, freight and logistics providers, payment processors, technology providers, taxing authorities, and other counterparties.

**(e) Equity Interests.**

TCP reported approximately 22,237,067 common shares outstanding as of September 8, 2026. Mithaq owned approximately 61.1% of the outstanding shares as of August 14, 2026. Following the September 14, 2026 announcement of second-quarter fiscal 2026 results, TCP's common stock declined sharply, including a single-day decline of approximately 23.8% to $1.90 per share on September 15, 2026, and thereafter continued to trade at depressed levels. As of the Petition Date, TCP common stock traded under PLCE on the Nasdaq.[6]

Under the Plan, Equity Interests are cancelled on the Effective Date, but Holders are entitled to their Pro Rata share of any residual Distributable Value after payment in full of all Allowed Claims and satisfaction of all other payment and reserve requirements. No residual amount or recovery percentage is established.

---

[6] On November 9, 2026, the Company received a written notice from the staff of the Nasdaq notifying the Company that, pursuant to Nasdaq Listing Rules 5101 and 5110(b) and IM-5101-1, Nasdaq had determined to delist the Company's securities. The Company's common stock was suspended from trading on the Nasdaq at the opening of business on November 16, 2026. As of November 13, 2026, FINRA assigned the PLCEQ over-the-counter quoting and trading symbol so that TCP's common stock may be quoted and traded in the market for unlisted securities.

# VIII. EVENTS LEADING TO THESE CHAPTER 11 CASES

## A. Competitive and Financial Pressures.

The Company competes with mass merchants, off-price retailers, e-commerce platforms, and specialty children's apparel retailers in a highly fragmented and promotional market. Reduced direct-to-consumer traffic, planned wholesale shipment reductions, and aged inventory liquidation pressured sales and gross profit. Net sales declined from approximately $1.386 billion in fiscal 2024 to $1.209 billion in fiscal 2025; comparable retail sales declined approximately 8.4% in fiscal 2025. For the first half of fiscal 2026, sales declined approximately 15.4% to $457.0 million and the net loss was approximately $84.1 million.

## B. Macroeconomic Headwinds.

Prior to the Petition Date, inflation, tariffs, promotional pressure, and seasonal working-capital requirements strained the Company's liquidity. For instance, there were approximately $40 million of tariffs imposed on the Company under the International Emergency Economic Powers Act during fiscal 2025 and fiscal 2026. Although approximately $39 million of refunds, excluding interest, was received in the second quarter of fiscal 2026, most such refund claims had been monetized with the proceeds used primarily to reduce short-term debt.

Further straining liquidity, store occupancy, distribution, technology, and corporate infrastructure costs were not reduced proportionately with the Company's decline in revenue. Seasonal inventory investments and continued operating losses placed additional pressure on liquidity entering the second half of fiscal 2026.

As operating losses and seasonal inventory investments strained liquidity, accounts payable grew increasingly past due while the Debtors sought to preserve Cash.

## C. Operational and Liquidity Initiatives.

As the Company faced increasing headwinds and pressure on liquidity, Mithaq provided a series of financings – described above – to help ease such pressures and give the Company time to try and implement operational and balance sheet fixes. These transactions provided liquidity but did not eliminate ongoing operating losses and fixed financing costs.

The Company was able to identify more than $100 million of run-rate actionable cost-saving opportunities, including organizational redesign, store rationalization, distribution and supply-chain efficiencies, and corporate overhead reductions. However, these opportunities were not able to be fully implemented or create realized savings given liquidity pressures and continued top line decline.

Inventory declined by more than $100 million between August 2, 2025, and August 1, 2026. The Company believed these measures preserved value, but they did not offset the magnitude of revenue declines and losses. On or around October 6, 2026, secured lenders imposed a $15.0 million restructuring reserve under each senior facility, for an aggregate reserve of $30.0 million.

As a result of the potential changes to the store footprint, prior to the Petition Date, the Company issued notices under the Worker Adjustment and Retraining Notification Act and similar state-specific statutes (the "WARN Notices") to employees who are entitled to receive such notices, including employees working at the Company's distribution center in Alabama and all workers located in, or reporting to, the Company's New Jersey locations. The WARN Notices provide advance notice of a potential workforce reduction, with pay and current benefits continuing through that period, and the Company intends to adhere to all legal obligations in this regard.

## D. Additional Initiatives.

### (a) Governance.

Elizabeth A. LaPuma joined TCP's board and Audit Committee on October 2, 2026. Rudolph Morando and Chris McAvinn were appointed Co-Chief Restructuring Officers on October 30, 2026. As of the Petition Date, the Company had a six-member board, including three independent directors, following Kim Roy's resignation on

October 30, 2026. Then-President and Interim CEO Muhammad Asif Seemab and Chief Strategy Officer Muhammad Umair resigned from their executive positions on November 1, 2026.

On November 3, 2026, the board of directors established and delegated authority pursuant to unanimous written consent to the Restructuring Committee, with Ms. LaPuma as sole member, vested with sole decision-making authority over specified financing, sale, and chapter 11 matters and authority to investigate potential estate claims and causes of action.

**(b) Retention of Advisors and Contingency Planning.**

Beginning in September 2026, the Company retained BRG, Cascadia, and White & Case as restructuring advisors to assist the Company in assessing liquidity, cash-flow forecasts, operational changes, financing, sale alternatives, and chapter 11 contingency planning. On November 6, 2026, the Company also engaged A&G Realty Partners, LLC for lease analysis and landlord negotiations.

### E. Strategic Alternatives and Prepetition Sale Process.

Beginning in September 2026, Cascadia marketed going-concern and liquidation transactions and standalone dispositions of Gymboree and the Amazon operations to a number of strategic and financial targets. The Company also considered retaining intellectual property in an IPCo structure and licensing it to wholesalers and store operators. Cascadia contacted approximately thirty-three strategic prospects and seventeen prepetition financial prospects. The Debtors received nine proposals relating to their assets, including six proposals for going-concern and intellectual property-related transactions and three "equity" liquidation proposals involving substantially all of the Debtors' assets. The Debtors also received three fee-based liquidation bids for the liquidation of their inventory and certain other assets.

Following review of liquidity and strategic options, the Company determined to pursue chapter 11 relief to continue orderly store-closing sales while marketing operational assets and intellectual property for a viable going-concern transaction. The Liquidator was selected following evaluation and negotiation of three liquidation-firm proposals. The Inventory Sale commenced prior to the Petition Date on November 6, 2026, and is contemplated to continue at all retail locations through February 28, 2027, with flexibility to halt closures if a going-concern bid becomes actionable.

## IX. EVENTS OF THE CHAPTER 11 CASES

### A. First and Second Day Relief and Other Case Matters.

At the outset of the Chapter 11 Cases, the Bankruptcy Court granted relief designed to facilitate an orderly transition into chapter 11 and minimize disruption to the Debtors' business. Among other things, the Bankruptcy Court authorized the Debtors, subject to the applicable orders, to pay prepetition employee compensation and continue benefits programs; maintain customer programs, cash-management practices, bank accounts, and intercompany transactions; pay certain critical vendor, foreign vendor, lien claimant, and section 503(b)(9) obligations; maintain insurance and surety coverage; and pay certain taxes and fees. The Bankruptcy Court also approved adequate-assurance procedures for utility services, joint administration, complex-case designation, creditor-notice and privacy procedures, protections for tax attributes, and relief enforcing the worldwide automatic stay and related protections. These measures enabled the Debtors to preserve business continuity while advancing their sale and Wind-Down efforts.

On November 10, 2026, the Bankruptcy Court authorized the appointment of Omni Agent Solutions, Inc. as Claims and Noticing Agent effective as of the Petition Date [Docket No. 71] to administer notices, process Proofs of Claim, maintain the Claims Registers, and provide related administrative services. On November 12, 2026, the Bankruptcy Court also authorized the Debtors to assume the Consulting Agreement governing the store-closing sales [Docket No. 98].

On November 16, 2026, the Debtors filed retention applications for White & Case LLP, as counsel to the Debtors [Docket No. 134], and Cole Schotz P.C., as bankruptcy co-counsel to the Debtors [Docket No. 135], and a motion authorizing the employment and payment of professionals utilized in the ordinary course of business [Docket

No. 136]. On November 17, 2026, the Debtors filed an application to retain A&G Realty Partners, LLC as real estate consultant and advisor [Docket No. 140] and a motion to retain Berkeley Research Group, LLC, as the Debtors' financial advisor [Docket No. 143]. On November 18, 2026, the Debtors filed an application to retain Cascadia Capital, LLC as investment banker [Docket No. 165].

**B. DIP Financing and Cash Collateral.**

Pursuant to the Interim DIP Order entered on November 10, 2026 [Docket No. 72] and the Final DIP Order entered on [December 15, 2026] [Docket No. [●]] (together, the "DIP Orders"), the Bankruptcy Court authorized the Debtors to obtain senior secured superpriority debtor-in-possession financing and use their prepetition secured lenders' Cash Collateral. The DIP Facilities consist of a DIP ABL Facility of up to $166,000,000, with Wells Fargo serving as administrative and collateral agent, and a DIP Term Facility of $116,000,000, with SLR serving as agent. Borrowings and use of Cash Collateral are subject to an approved budget, applicable borrowing-base and availability requirements, and the related financing documents. The DIP Orders grant liens on substantially all of the Debtors' assets and superpriority administrative expense claims for the benefit of the DIP lenders, subject to applicable lien priorities and a professional fee carve out, and provide adequate protection to the prepetition secured lenders. The scheduled outside maturities are January 29, 2027 for the DIP ABL Facility and March 1, 2027 for the DIP Term Facility, subject to earlier maturity upon specified events, including plan effectiveness, a sale of substantially all assets, and case dismissal or conversion.

The DIP Orders also authorize the refinancing of prepetition secured obligations. Following entry of the Interim DIP Order, collections from ABL collateral were authorized to be applied to prepetition ABL debt while DIP advances funded permitted expenditures; existing letters of credit and bank-product obligations became DIP obligations; and $16,000,000 of prepetition term-loan principal was authorized to be rolled into the DIP Term Facility. [The Final DIP Order authorized refinancing of the remaining prepetition ABL and term-loan principal into the DIP Facilities.] The DIP Orders include stipulations by the Debtors as to the validity and enforceability of the DIP lenders' prepetition claims and liens, subject to challenge rights of the Committee and other third parties. The financing and Cash Collateral arrangements provided liquidity for budgeted operations, authorized prepetition payments, financing costs, and case administration while the Debtors pursue their sale process. The DIP Orders also include case milestones that the Debtors must comply with (or extend with the consent of the DIP lenders) to avoid a default under the DIP Facilities, including: (i) entry of the Bidding Procedures Order by November 10, 2026, (ii) completion of an auction by December 14, 2026, (iii) entry of an order approving a sale by December 17, 2026, and (iv) consummation of a sale by December 31, 2026.

**C. Appointment of Unsecured Creditors' Committee.**

On [●], the U.S. Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases [Docket No. ●] (the "Committee"). The Committee consists of [●]. The Bankruptcy Court subsequently authorized the Committee to retain [●] as counsel and [●] as financial advisor pursuant to orders entered on [●] [Docket Nos. ●].

**D. Schedules and Statements.**

On November 10, 2026, the Bankruptcy Court entered an order extending the deadline for the Debtors to file their schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs through December 11, 2026, without prejudice to further extensions for cause [Docket No. 82]. The extension afforded the Debtors and their advisors additional time to compile and reconcile extensive information concerning their assets, liabilities, creditors, and contractual obligations across multiple entities and accounting systems while addressing critical operational and administrative matters during the initial stages of the Chapter 11 Cases.

**E. Bar Date Motion.**

On November 10, 2026, the Bankruptcy Court entered the Bar Date Order [Docket No. 75], establishing January 6, 2027, at 11:59 p.m., prevailing Eastern Time, as the General Claims Bar Date for filing Proofs of Claim arising before the Petition Date, including requests for payment under section 503(b)(9) of the Bankruptcy Code, subject to specified exceptions. The Bar Date Order established May 7, 2027, at 11:59 p.m., prevailing Eastern Time, as the Governmental Bar Date. It also established supplemental deadlines for Claims affected by amendments to the

Schedules and Claims arising from rejection of executory contracts and unexpired leases. Unless otherwise agreed by the Debtors, Claims affected by an amendment to the Schedules must be submitted by the later of (i) the applicable General Claims Bar Date or Governmental Bar Date and (ii) 11:59 p.m., prevailing Eastern Time, on the date that is thirty (30) calendar days after the affected claimant is served with notice of the amendment. Claims arising from rejection must be submitted by the later of (i) the applicable General Claims Bar Date or Governmental Bar Date and (ii) 11:59 p.m., prevailing Eastern Time, on the date that is thirty (30) calendar days after the later of (a) entry of the order approving rejection and (b) the effective date of rejection pursuant to Bankruptcy Court order.

The Bar Date Order approved the Proof of Claim Form, including procedures for asserting section 503(b)(9) Claims, electronic and hard-copy submission procedures, and the form and manner of notice. The order directed service of the Bar Date Notice and Proof of Claim Form by email and/or first-class mail, as applicable, within three business days after its entry, supplemented by publication notice in the United States and Canada. It also provided for French-language notices and forms for known creditors in Québec and English- and French-language versions on the case website.

### F. Store Closures and Lease Rejection Procedures.

Pursuant to the interim order entered on November 12, 2026 [Docket No. 98], the Bankruptcy Court authorized the Debtors to assume the Consulting Agreement with Tiger Capital Group, LLC, SB360 Capital Partners, LLC, and GA Retail Solutions, LLC and continue orderly store-closing sales at their U.S. and Canadian retail locations pursuant to the sale procedures attached to the order. The order authorizes sales of inventory and related assets through the stores, warehouses, e-commerce platform, and certain wholesale channels, free and clear of liens, claims, and encumbrances, with applicable interests attaching to proceeds. The Bankruptcy Court also approved sale guidelines and modifications to customer programs at closing stores and through e-commerce channels. The sales are expected to continue through February 28, 2027, subject to earlier termination or extension under the Consulting Agreement, which preserves flexibility to pause or discontinue sales at locations included in a viable going-concern transaction in accordance with its terms. Additional detail on the Store Closure relief and process is described above in section II.C of this Disclosure Statement. The Store Closure relief will be considered on a final basis at the second-day hearing currently scheduled for December 15, 2026.

On November 12, 2026, the Bankruptcy Court approved streamlined procedures for rejecting executory contracts and unexpired leases [Docket No. 96]. Those procedures permit the Debtors to identify contracts and leases for rejection through a notice protocol, while providing counterparties an opportunity to object and obtain a hearing on unresolved objections. The order also authorizes removal or abandonment of personal property remaining at rejected leased premises, subject to the approved procedures. This relief facilitates the disposition of burdensome obligations and preservation of valuable contractual rights while reducing administrative expense.

### G. Canadian Recognition Proceedings.

On November 9, 2026, TCP, as proposed foreign representative, obtained an interim stay order from the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") in ancillary proceedings commenced under Part IV of the *Companies' Creditors Arrangement Act*, staying proceedings against the Debtors and their property in Canada pending recognition of the Chapter 11 Cases. The Canadian proceedings are intended to protect the Debtors' Canadian assets and operations, including through a stay of creditor enforcement and self-help remedies, and to facilitate the coordinated administration of the Debtors' Estates across jurisdictions.

On November 10, 2026, the Bankruptcy Court entered an order authorizing TCP to act as foreign representative on behalf of the Debtors' Estates [Docket No. 80].

On November 13, 2026, the Canadian Court granted (a) an initial recognition order that, among other things, (i) recognized TCP as foreign representative, (ii) recognized the Chapter 11 Cases as a foreign main proceeding, and (iii) stayed proceedings against the Chapter 11 Debtors in Canada; and (b) a supplemental order that, among other things, (i) recognized certain of the Bankruptcy Court's first day orders, including the interim store closing order, to facilitate the Canadian store closing sales and preserve the opportunity for a going-concern transaction, (ii) granted a further stay of proceedings in Canada, (iii) appointed AlixPartners Restructuring, Inc. as information officer in the Canadian proceedings, and (iv) granted certain court-ordered charges over the Debtors' property in Canada.

### H. Litigation.

In the ordinary course of business, the Debtors are parties to certain lawsuits, legal proceedings, collection proceedings, and claims arising out of their business operations. The Debtors cannot predict with certainty the outcome of these lawsuits, legal proceedings, and claims. With certain exceptions, the filing of the Chapter 11 Cases operates as a stay with respect to the commencement or continuation of litigation against the Debtors that was or could have been commenced before the commencement of the Chapter 11 Cases. The filing of the Chapter 11 Cases likewise generally stays any legal proceedings commenced to obtain possession of, or to exercise control over, the property of the Debtors' bankruptcy estate.

### I. The Post-Petition Sale Process.

Entry of the Bidding Procedures Order and the details of the Debtors' post-petition sale process are described in detail above in section II.D of this Disclosure Statement.

### J. The Independent Investigation.

The Plan's proposed releases remain subject to the Restructuring Committee's ongoing investigation of potential estate Claims and Causes of Action, including its review and final approval of Released Parties. The Restructuring Committee is authorized and has sole authority to investigate potential claims against former or current officers and directors, shareholders, and other insiders.

## X. RISK FACTORS

**BEFORE TAKING ANY ACTION WITH RESPECT TO THE PLAN, HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH BELOW AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, THE PLAN, AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH, REFERRED TO, OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT, INCLUDING OTHER DOCUMENTS FILED WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES. THE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTORS' BUSINESSES OR THE RESTRUCTURING AND CONSUMMATION OF THE PLAN. EACH OF THE RISK FACTORS DISCUSSED IN THIS DISCLOSURE STATEMENT MAY APPLY EQUALLY TO THE DEBTORS AND THE WIND-DOWN DEBTORS, AS APPLICABLE AND AS CONTEXT REQUIRES.**

### A. Risks Related to the Wind-Down.

After the sale proceeds are allocated pursuant to the Plan, the Debtors are conducting an orderly wind-down, subject to the Wind-Down Budget. Holders of Claims should read and consider carefully the risk factors set forth below before voting to accept or reject the Plan. Although there are many risk factors discussed below, these factors should not be regarded as constituting the only risks present in connection with the Debtors' businesses or the Plan and its implementation.

#### 1. *The Debtors Will Consider All Available Restructuring Alternatives if the Plan Is Not Implemented, and Such Alternatives May Result in Lower Recoveries for Holders of Claims Against the Debtors.*

The Debtors will consider all restructuring alternatives available, which may include the filing of an alternative chapter 11 plan or any other transaction that would maximize the value of the Debtors' Estates. Any alternative restructuring proposal may be on terms less favorable to Holders of Claims against the Debtors than the terms of the Plan as described in this Disclosure Statement.

Any material delay in Confirmation of the Plan, or the Chapter 11 Cases, or the threat of rejection of the Plan by the Bankruptcy Court, would add substantial expense and uncertainty to the process.

The uncertainty surrounding a prolonged restructuring would also have other adverse effects on the Debtors. For example, it would also adversely affect:

- the Debtors' ability to retain key employees;
- the Debtors' liquidity;
- how the Debtors' business is viewed by regulators, investors, and lenders; and
- the Debtors' assets.

Further, distributions would not be advisable or possible without the retention of key employees pursuant to the Plan. If such employees are not retained, the Plan and the Distribution process contemplated thereunder would not be feasible.

**2. *Certain Bankruptcy Law Considerations.***

The occurrence or non-occurrence of any or all of the following contingencies, and any others, could affect distributions available to Holders of Allowed Claims under the Plan but will not necessarily affect the validity of the vote of the Impaired Classes to accept or reject the Plan or necessarily require a re-solicitation of the votes of Holders of Claims in such Impaired Classes.

**(a) Parties in Interest May Object to the Plan's Classification of Claims and Interests.**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests, each encompassing Claims and Interests that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

**(b) The Conditions Precedent to the Effective Date of the Plan May Not Occur.**

Article IX of the Plan conditions the Effective Date on satisfaction or permitted waiver of its specified conditions, including operative DIP, Inventory Sale, and Confirmation Orders, executed Definitive Documents, implementation actions, required payments, and necessary approvals. If conditions are not satisfied or waived, the Effective Date will not occur.

**(c) Failure to Satisfy Vote Requirements.**

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation of the Plan. In the event that sufficient votes are not received, the Debtors may seek to confirm an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

**(d) The Debtors May Not Be Able to Secure Confirmation of the Plan.**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, a finding by the Bankruptcy Court that: (i) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (ii) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (iii) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtors were liquidated under Chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that this Disclosure Statement, the balloting procedures, and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met. If a chapter 11 plan is not confirmed by the Bankruptcy Court, it is unclear whether the Debtors will be able to restructure and what, if anything, Holders of Allowed Claims against them would ultimately receive with respect to their Claims.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for Confirmation. Any such modifications could result in less favorable treatment of any non-accepting class of Claims, as well as any class junior to such non-accepting class, than the treatment currently provided in the Plan. Such a less favorable treatment could include a Distribution of property with a lesser value than currently provided in the Plan or no Distribution whatsoever under the Plan.

**(e) Nonconsensual Confirmation.**

In the event that any impaired class does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one (1) impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Debtors believe that the Plan satisfies these requirements, and the Debtors will request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the conclusion that the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. In addition, the pursuit of nonconsensual Confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to Professional Fee Claims.

**(f) Continued Risk After Consummation.**

Even if the Plan is consummated, the Debtors will continue to face a number of risks, including certain risks that are beyond their control, such as increasing expenses or other changes in economic conditions. Some of these concerns and effects typically become more acute when a case under the Bankruptcy Code continues for a protracted period without indication of how or when the case may be completed. As a result of these risks and others, there is no guarantee that a chapter 11 plan reflecting the Plan will achieve the Debtors' stated goals.

**(g) Filing of a Competing Plan.**

The Debtors' ability to propose and solicit a Plan is subject to the applicable exclusivity periods and any Bankruptcy Court extensions or termination. Expiration or termination may permit competing plans and could delay or change the proposed transactions and recoveries.

**(h) The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code.**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under Chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that liquidation under chapter 7 would generally result in smaller distributions being made to creditors than those provided for in a chapter 11 plan because of (a) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, rather than selling the assets at a later time in a controlled manner, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation, in connection with cessation of operations.

**(i) One or More of the Chapter 11 Cases May be Dismissed.**

If the Bankruptcy Court finds that a debtor has incurred substantial or continuing loss or diminution to its estate and lacks a reasonable likelihood of rehabilitation or the ability to effectuate substantial consummation of a confirmed plan or otherwise determines that cause exists, the Bankruptcy Court may dismiss one or more of these Chapter 11 Cases. In such event, the Debtors would be unable to confirm the Plan with respect to the applicable Debtor, which may ultimately result in significantly lower recoveries for creditors than those provided for in the Plan.

**(j) The Debtors May Object to the Amount or Classification of a Claim.**

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied upon by any Holder of a Claim where such Claim is subject to an objection. Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

**(k) Risk of Non-Occurrence of the Effective Date.**

Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will in fact occur.

**(l) Contingencies Could Affect Votes of Impaired Classes to Accept or Reject the Plan.**

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims and/or recharacterized as equity contributions. The occurrence of any and all such contingencies could affect distributions available to Holders of Allowed Claims under the Plan but may not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

The estimated Claims and creditor recoveries set forth in this Disclosure Statement are based on various assumptions, and the actual Allowed amounts of Claims may significantly differ from the estimates. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary from the estimated Claims contained in this Disclosure Statement. Moreover, the Debtors cannot determine with any certainty at this time, the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

**(m) Releases, Injunctions, and Exculpation Provisions May Not Be Approved.**

Article VIII of the Plan provides for certain releases, injunctions, and exculpations, including releases by third parties of claims that may otherwise be asserted against the Debtors, Wind-Down Debtors, or Released Parties, as applicable. The releases, injunctions, and exculpations (including, for the avoidance of doubt, the definitions of Released Parties, Releasing Parties, and Exculpated Parties) provided in the Plan are subject to the Restructuring Committee's continuing investigation, and objection by parties in interest and may not be approved. If the releases are not approved, certain parties may not be considered Released Parties, Releasing Parties, or Exculpated Parties, and certain Released Parties may withdraw their support for the Plan.

**(n) GUC Reserve Funding and Expenses May Reduce Unsecured Recoveries.**

The GUC Distribution Reserve shall be funded with an amount to be determined by the Debtors. Specified fees, costs, and expenses of the Committee and its representatives after the Effective Date are paid from and reduce that reserve. The amount ultimately distributable to Allowed General Unsecured Claims therefore depends on final funding, Allowed Claims, and applicable deductions.

**(o) The Debtors May Object to the Amount or Classification of a Claim or Interest.**

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim or Interest under the Plan. Any Holder of a Claim or Interest where such Claim or Interest is subject to an objection cannot rely on the estimates in this Disclosure Statement. As a result, any Holder of a Claim or Interest that is subject to an objection may not receive its expected share of the estimated distributions described in this Disclosure Statement.

**(p) The Debtors May Not Consummate a Value-Maximizing Going-Concern Sale or Inventory Sale.**

The Debtors are pursuing going-concern marketing in parallel with their Inventory Sale and store closures. There is no assurance that an actionable going-concern bid will emerge, a purchaser will be selected, binding terms agreed, approval obtained, or closing conditions satisfied. Inventory recoveries and timing also remain uncertain. Failure or delay could increase costs and reduce recoveries.

**(q) Disputes over Claims, Liens, and Priority May Affect Recoveries.**

Challenges to allowance, liens, collateral value, intercreditor rights, contractual subordination, or distributions across separate Estates may change recoveries or require Plan amendments. Classes 3 and 4 are to be paid in full in Cash from their collateral proceeds subject to relative lien priorities and the applicable intercreditor agreement or such other treatment as may be permissible under section 1129 of the Bankruptcy Code.

## B. Risks Related to Recoveries under the Plan

### 1. *The Debtors Cannot Guarantee Recoveries or the Timing of Such Recoveries.*

Although the Debtors have made commercially reasonable efforts to estimate Allowed Claims and Allowed Interests, it is possible that the actual amount of such Allowed Claims and Allowed Interests is materially different than the Debtors' estimates. Inventory Sale proceeds and other asset realizations may be materially lower than projections. Creditor recoveries could be materially reduced or eliminated in this instance. In addition, the timing of actual distributions to Holders of Allowed Claims and Allowed Interests may be affected by many factors that cannot be predicted. Therefore, the Debtors cannot guarantee the timing or amount of any recovery on an Allowed Claim or an Allowed Interest.

### 2. *The Tax Implications of the Debtors' Bankruptcy Are Highly Complex.*

Holders of Allowed Claims and Allowed Interests should carefully review Article XI of this Disclosure Statement, entitled "Certain U.S. Federal Income Tax Consequences of the Plan," to determine how the tax implications of the Plan and the Chapter 11 Cases may adversely affect the Debtors.

### 3. *The Orderly Wind Down May Take Longer and Cost More Than Estimated, Which May Decrease Recoveries.*

The duration and cost of the Wind Down remain subject to the final Wind-Down Budget, asset realizations, Claims reconciliation, litigation, tax matters, and closing of the Chapter 11 Cases. Delay or higher-than-anticipated costs may reduce amounts available for creditor distributions.

### 4. *The Debtors' Substantial Ongoing Liquidity Needs May Impact Recoveries.*

The Debtors have had to maintain significant business operations to implement the Inventory Sale and comply with the demands of these Chapter 11 Cases. Accordingly, depending on how long the Chapter 11 Cases go, the recoveries that Holders of Claims are estimated to receive will be impacted by the Debtors' ongoing liquidity requirements.

The Debtors face uncertainty regarding the adequacy of their liquidity and capital resources. In addition to the Cash necessary to fund the ongoing operations necessary to comply with the demands of these Chapter 11 Cases,

the Debtors have incurred significant Professional fees and other costs in connection with the Chapter 11 Cases and expect to continue to incur significant Professional fees and costs throughout the remainder of these Chapter 11 Cases. The Debtors cannot guarantee that Cash on hand will be sufficient to continue to fund their operations and allow the Debtors to satisfy obligations related to the Chapter 11 Cases until the Debtors are able to emerge from bankruptcy protection.

The Debtors' liquidity, including the ability to meet ongoing operational obligations, will be dependent upon, among other things: (a) their ability to maintain adequate Cash on hand; (b) their ability to confirm and consummate the Plan; (c) their DIP budget; and (d) the ultimate cost, duration, and outcome of these Chapter 11 Cases. The Debtors' ability to maintain adequate liquidity depends, in part, upon industry conditions and general economic, financial, competitive, regulatory, and other factors beyond the Debtors' control. In the event that Cash on hand is not sufficient to meet the Debtors' liquidity needs, the Debtors may be required to seek additional financing. The Debtors can provide no assurance that additional financing would be available or, if available, offered to the Debtors on acceptable terms. The Debtors' access to additional financing is, and for the foreseeable future likely will continue to be, extremely limited if it is available at all. The Debtors' liquidity requirements and the adequacy of their capital resources are difficult to predict at this time.

## C. Risks Related to the Debtors' Businesses.[7]

### 1. *The Loss of Key Personnel Could Adversely Affect the Debtors' Ability to Consummate the Plan and Effectuate Distributions.*

Retention of key management, finance, merchandising, logistics, technology, and administrative personnel may be necessary to preserve sale value, administer Claims and records, and implement the Wind Down. Employee departures and replacement costs could disrupt the process, increase expenses, and reduce distributions.

### 2. *The Wind Down May Be Adversely Affected by Potential Litigation.*

In the ordinary course of business, the Wind-Down Debtors may become parties to litigation. In general, litigation can be expensive and time consuming to bring or defend against. Such litigation could result in settlements or damages that would adversely affect the Wind-Down Debtors' financial condition.

### 3. *Certain Claims May Not Be Discharged and Could Have a Material Adverse Effect on the Debtors' Financial Condition.*

The Plan expressly states that the injunction in Article VIII.F does not constitute a discharge under section 1141(d). Holders should review the specific treatment, settlement, release, injunction, and retained-rights provisions rather than assume that all Claims are discharged. Any surviving obligations may affect administration and available value.

## D. Miscellaneous Risk Factors and Disclaimers.

### 1. *The Financial Information Is Based on the Debtors' Books and Records and, Unless Otherwise Stated, No Audit Was Performed.*

In preparing this Disclosure Statement, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have used their reasonable business judgment to assure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtors believe that such financial information fairly reflects their financial condition, estimates and projections contained in this Disclosure Statement and its exhibits remain subject to the assumptions and limitations stated herein.

---

[7] For the avoidance of doubt, as used in this section, the term Debtors shall refer to both the Debtors prior to the Effective Date and the Wind-Down Debtors after the Effective Date.

2. *No Legal or Tax Advice Is Provided By This Disclosure Statement.*

This Disclosure Statement is not legal advice to any person or Entity. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each reader should consult their own legal counsel and accountant with regard to any legal, tax, and other matters concerning its Claim or Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote to accept or reject the Plan or whether to object to Confirmation.

3. *No Admissions Made.*

The description of disputed Claims and legal positions in this Disclosure Statement is not intended to (a) constitute an admission of liability by any Entity (including the Debtors) or (b) determine the tax or other legal effects of the Plan on the Debtors, the Wind-Down Debtors, Holders of Allowed Claims or Interests, or any other parties in interest.

4. *Failure to Identify Litigation Claims or Projected Objections.*

Subject to the Plan, the Schedule of Retained Causes of Action, and applicable court orders, no reliance should be placed on the fact that a particular litigation claim, or projected objection to a particular Claim, is or is not identified in this Disclosure Statement. The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, may seek to investigate, file, and prosecute Claims and may object to Claims after Confirmation and Consummation of the Plan, to the extent preserved under the Plan.

5. *Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors.*

Counsel to and other advisors retained by the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement and the exhibits to the Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement or the information in the exhibits to the Disclosure Statement.

6. *Potential Exists for Inaccuracies, and Limitations on the Duty to Update.*

The statements contained in this Disclosure Statement are made by the Debtors as of the date of this Disclosure Statement unless otherwise specified in this Disclosure Statement, and the delivery of this Disclosure Statement after the date of this Disclosure Statement does not imply that there has not been a change in the information set forth in this Disclosure Statement since that date. While the Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Furthermore, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so except as required by applicable law, the Plan, or an order of the Bankruptcy Court.

7. *No Representations Outside This Disclosure Statement Are Authorized.*

**NO REPRESENTATIONS CONCERNING OR RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, OR THE PLAN ARE AUTHORIZED BY THE DEBTORS, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT OR OTHER SOLICITATION MATERIALS APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE VOTING HOLDERS' ACCEPTANCE OR REJECTION OF THE PLAN THAT ARE OTHER THAN AS CONTAINED IN, OR INCLUDED WITH, THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY VOTING HOLDERS IN ARRIVING AT THEIR DECISION. VOTING HOLDERS SHOULD PROMPTLY REPORT UNAUTHORIZED REPRESENTATIONS OR INDUCEMENTS TO COUNSEL TO THE DEBTORS AND THE OFFICE OF THE UNITED STATES TRUSTEE FOR THE DISTRICT OF NEW JERSEY.**

# XI. CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

## A. Introduction.

This Article provides a preliminary overview of certain U.S. federal income tax considerations for the Debtors, Wind-Down Debtors, and Holders of Allowed Claims in Classes 3, 4, and 5, based on the assumptions and limitations below.

This summary is based on the Internal Revenue Code of 1986, as amended (the "IRC"), the Treasury Regulations promulgated thereunder, judicial authorities, published administrative positions of the U.S. Internal Revenue Service (the "IRS") and other applicable authorities, all as in effect on the date hereof and all of which are subject to change or differing interpretations, sometimes with retroactive effect. Substantial uncertainty may exist with respect to some of the tax consequences described below. No opinion of counsel has been or will be obtained and the Debtors have not requested, and do not expect to seek, a ruling or determination from the IRS as to any of the tax consequences of the Plan. No portion of this discussion is or will be binding upon the IRS or the courts, and no assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position that the Debtors, Wind-Down Debtors, or Holders of Claims take.

**ALL HOLDERS OF CLAIMS ARE URGED, IN THE STRONGEST TERMS POSSIBLE, TO CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN. THIS DISCUSSION DOES NOT CONSTITUTE TAX OR LEGAL ADVICE TO HOLDERS OF CLAIMS.**

This summary does not address non-U.S., state, local or non-income tax consequences of the Plan (including such consequences with respect to the Debtors), nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or to certain Holders of Claims in light of their individual circumstances. This discussion also does not address tax issues with respect to such Holders of Claims that are subject to special treatment under the U.S. federal income tax laws (including, for example, accrual-method U.S. Holders (as defined below) that prepare an "applicable financial statement" (as defined in section 451 of the IRC), banks, mutual funds, governmental authorities or agencies, pass-through entities, beneficial owners of pass-through entities, subchapter S corporations, dealers and traders in securities, insurance companies, banks, financial institutions, tax-exempt organizations, controlled foreign corporations, passive foreign investment companies, U.S. Holders (as defined below) whose functional currency is not the U.S. dollar, U.S. expatriates, broker-dealers, small business investment companies, Persons who are related to the Debtors within the meaning of the IRC, Persons liable for alternative minimum tax, Persons (other than, if applicable, the Debtors) using a mark-to-market method of accounting, Holders of Claims who are themselves in bankruptcy, real estate investment trusts and regulated investment companies and those holding, or who will hold, consideration received pursuant to the Plan as part of a hedge, straddle, conversion, or other integrated transaction). Furthermore, this overview assumes that a Holder holds only Claims in a single Class and, except as set forth below, holds such Claims only as "capital assets" (within the meaning of section 1221 of the IRC). This overview also assumes that the various debt and other arrangements to which the Debtors and Wind-Down Debtors are or will be a party will be respected for U.S. federal income tax purposes in accordance with their form, and, to the extent relevant, that the Claims constitute interests in the Debtors "solely as a creditor" for purposes of section 897 of the IRC. This overview does not discuss special considerations that may apply to persons who are both Holders of Claims and Holders of Interests, nor any differences in tax consequences to Holders of Claims that act or receive consideration in a capacity other than any other Holder of a Claim of the same Class, and the tax consequences for such Holders may differ materially from that described below. The U.S. federal income tax consequences of the implementation of the Plan to the Debtors, Wind-Down Debtors, and Holders of Claims entitled to vote to accept or reject the Plan described below also may vary depending on the nature of any Wind-Down Transactions that the Debtors and/or Wind-Down Debtors engage in. This overview does not address the U.S. federal income tax consequences to Holders of Claims or Interests that are (a) Unimpaired or otherwise entitled to payment in full under the Plan, (b) deemed to reject the Plan, (c) not entitled to vote to accept or reject the Plan, or (d) are permitted to vote but are either presumed to accept or deemed to reject the Plan.

For purposes of this discussion, a "U.S. Holder" is a Holder of a Claim that for U.S. federal income tax purposes is: (1) an individual who is a citizen or resident of the United States; (2) a corporation created or organized under the laws of the United States, any state thereof or the District of Columbia; (3) an estate the income of which is

subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (a) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons (within the meaning of section 7701(a)(30) of the IRC, a "U.S. Person") has authority to control all substantial decisions of the trust or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a U.S. Person. For purposes of this discussion, a "Non-U.S. Holder" is any Holder that is neither a U.S. Holder nor a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a Holder of a Claim, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the pass-through entity. Partnerships (or other pass-through entities) and partners (or other beneficial owners) of partnerships (or other pass-through entities) that are Holders of Claims are urged to consult their own respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

**ACCORDINGLY, THE FOLLOWING OVERVIEW OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER. THIS DISCUSSION DOES NOT CONSTITUTE TAX OR LEGAL ADVICE TO HOLDERS OF CLAIMS.**

### B. Certain U.S. Federal Income Tax Consequences of the Plan to the Debtors.

The Plan is being structured as a Wind Down of the Debtors' operations and a series of distributions by the Debtors (and Wind-Down Debtors, as applicable) to Holders in respect of their Claims.

Asset dispositions may generate taxable gain or loss based on the value of consideration received, including liabilities assumed, and adjusted tax basis, subject to available tax attributes and applicable limitations. As a result of any sale of assets, the Debtors will realize gain or loss in an amount equal to the difference between the value of the consideration received by the Debtors as determined for U.S. federal income tax purposes (including, for this purpose, assumption of liabilities) and the Debtors' tax basis in such assets. Income will be reduced by the amount of tax attributes available for use by the Debtors, and any remaining income will be recognized by the Debtors and result in a cash tax obligation. The Debtors and the Wind-Down Debtors do not currently anticipate that a material cash tax liability is likely to arise in connection with a Sale Transaction and/or the Inventory Sale.

Thus, the U.S. federal income tax consequences of the Plan to the Debtors will in large part be a function of (a) the Debtors' tax basis in their assets that the Debtors transfer, (b) the value of the consideration received for such assets (including the quantum of liabilities assumed by the purchaser(s) of such assets) and (c) the Debtors' ability to demonstrate the existence of tax losses, including losses that may be generated as a result of the implementation of the Wind-Down Transactions and historically incurred losses.

It is possible that the IRS or a court could disagree with the Debtors' determination of their basis in their assets. Any such disagreement could lead to a redetermination of the Debtors' basis in their assets and a resultant increase in the Debtors' tax liability from the Plan, potentially in a way that has a materially adverse impact on the Debtors.

The Debtors continue to analyze whether there will be any material administrative income tax liabilities that must be satisfied under the Plan.

### C. Certain U.S. Federal Income Tax Consequences of the Plan to U.S. Holders of Allowed Claims Entitled to Vote.

#### 1. *U.S. Holders of Allowed Claims in Classes 3, 4, and 5.*

Pursuant to the Plan, on or before the Effective Date, Holders of Allowed Class 3 Wells Fargo Credit Agreement Claims and Class 4 SLR Credit Agreement Claims will receive payment in full in Cash from their collateral proceeds, subject to relative lien priorities and the Intercreditor Agreement or such other treatment as may be

permissible under section 1129 of the Bankruptcy Code, as specified in Article III.C.3 and III.C.4 of the Plan. Allowed Class 5 General Unsecured Claims will receive their Pro Rata share of the GUC Distribution Reserve and any additional Distributable Value after full payment of Allowed Classes 1 through 4, subject to the Plan. Tax treatment depends on each Claim's nature and the final transaction structure.

Each U.S. Holder will be treated as exchanging such Allowed Claims in a taxable exchange under section 1001 of the IRC for such treatment. Accordingly, subject to the rules regarding accrued but untaxed interest, each U.S. Holder of such an Allowed Claim should recognize gain or loss equal to the difference between (i) the amount of any value received in exchange for such Claim, and (ii) such Holder's adjusted basis, if any, in such Claim.

**2. *Accrued Interest.***

To the extent that any amount received by a U.S. Holder of a surrendered Allowed Claim under the Plan is attributable to accrued but untaxed interest (or original issue discount) on the debt instruments constituting the surrendered Claim, such amount should be taxable to the U.S. Holder as ordinary interest income (to the extent such amount was not already included in income by the U.S. Holder). Conversely, a U.S. Holder of a surrendered Allowed Claim may be able to recognize a deductible loss (or, possibly, a write off against a reserve for worthless debts) to the extent that any accrued interest on the debt instruments constituting such Claim was previously included in the U.S. Holder's gross income but was not paid in full by the Debtors. Such loss may be ordinary; however, the tax law is unclear on this point.

If the Distributable Value received by a U.S. Holder of an Allowed Claim is not sufficient to fully satisfy all principal and interest on an Allowed Claim, the extent to which such consideration will be attributable to accrued interest is unclear. Under the Plan, the aggregate consideration to be distributed to U.S. Holders of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, with any excess allocated to unpaid interest that accrued on such Allowed Claim, if any. No assurance can be given that the IRS will respect that allocation for U.S. federal income tax purposes, and the IRS could take the position that the consideration received by the U.S. Holder should be allocated in some way other than as provided in the Plan. U.S. Holders of Allowed Claims should consult their own tax advisors regarding the proper allocation of the consideration received by them under the Plan.

**3. *Market Discount.***

Under the "market discount" provisions of sections 1276 through 1278 of the IRC, some or all of any gain realized by a U.S. Holder exchanging the debt instruments constituting its Allowed Claim may be treated as ordinary income (instead of capital gain) to the extent of the amount of "market discount" on the debt constituting the surrendered Allowed Claim.

In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than at original issuance and if its U.S. Holder's adjusted tax basis in the debt instrument is less than: (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or, (b) in the case of a debt instrument issued with "original issue discount," its adjusted issue price, by at least a de minimis amount (equal to 0.25 percent of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

Any gain recognized by a U.S. Holder on the exchange of debt constituting its Allowed Claim that was acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while such debts were considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued). U.S. Holders should consult their own tax advisors concerning the application of the market discount rules to their Claims.

**4. *Net Investment Income Tax.***

Certain U.S. Holders that are individuals, estates, or trusts are required to pay an additional 3.8 percent tax on, among other things, gains from the sale or other disposition of capital assets. U.S. Holders that are individuals, estates, or trusts should consult their tax advisors regarding the effect, if any, of this tax provision on their ownership and disposition of any consideration to be received under the Plan.

5. *Limitations on Losses.*

Where gain or loss is recognized by a U.S. Holder upon the exchange of its Allowed Claim, the character of such gain or loss as long-term or short-term capital gain (or loss) or as ordinary income (or loss) will be determined by a number of factors, including, among others, the tax status of the U.S. Holder, whether the Allowed Claim constitutes a capital asset in the hands of the U.S. Holder and how long it has been held, whether the Allowed Claim was acquired at a market discount, whether and to what extent the U.S. Holder previously had claimed a bad debt deduction, and the nature and tax treatment of any fees, costs or expense reimbursements to which consideration is allocated. If recognized gain or loss is capital in nature, it generally would be long-term capital gain if the U.S. Holder held its Allowed Claim for more than one year at the time of the exchange. Each U.S. Holder of an Allowed Claim is urged to consult its tax advisor to determine the character of any gain or loss recognized with respect to the satisfaction of its Allowed Claim.

U.S. Holders of an Allowed Claim who recognize capital losses as a result of the distributions under the Plan will be subject to limits on their use of capital losses. For non-corporate U.S. Holders, capital losses may be used to offset any capital gains (without regard to holding periods) plus ordinary income to the extent of the lesser of (a) $3,000 ($1,500 for married individuals filing separate returns) or (b) the excess of the capital losses over the capital gains. Non-corporate U.S. Holders may carry over unused capital losses and apply them to capital gains and a portion of their ordinary income for an unlimited number of years. For corporate U.S. Holders, losses from the sale or exchange of capital assets may only be used to offset capital gains. Corporate U.S. Holders who have more capital losses than can be used in a tax year may be allowed to carry over the excess capital losses for use in the five years following the capital loss year, and are allowed to carry back unused capital losses to the three years preceding the capital loss year.

**D. Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of Allowed Claims.**

The following discussion includes only certain U.S. federal income tax consequences of the Plan to Non-U.S. Holders. This discussion does not include any non-U.S. tax considerations. The rules governing the U.S. federal income tax consequences to Non-U.S. Holders are complex. Each Non-U.S. Holder is urged to consult its own tax advisor regarding the U.S. federal, state, local, non-U.S., and non-income tax consequences of the Consummation of the Plan and the Wind-Down Transactions to such Non-U.S. Holder.

1. *Gain Recognition.*

Gain, if any, recognized by a Non-U.S. Holder on the exchange of its Allowed Claim generally will not be subject to U.S. federal income taxation unless (a) the Non-U.S. Holder is an individual who was present in the United States for 183 days or more during the taxable year in which the Wind-Down Transactions occur and certain other conditions are met or (b) such gain is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the United States (and, if an income tax treaty applies, such gain is attributable to a permanent establishment maintained by such Non-U.S. Holder in the United States). If the first exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30 percent (or at a reduced rate or exemption from tax under an applicable income tax treaty) on the amount by which such Non-U.S. Holder's capital gains allocable to U.S. sources exceed capital losses allocable to U.S. sources during the taxable year of the exchange. If the second exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax with respect to any gain realized on the exchange in the same manner as a U.S. Holder (except that the Net Investment Income Tax would generally not apply). In order to claim an exemption from or reduction of withholding tax, such Non-U.S. Holder will be required to provide a properly executed IRS Form W-8ECI (or such successor form as the IRS designates). In addition, if such a Non-U.S. Holder is a corporation, it may be subject to a "branch profits tax" equal to 30 percent (or such lower rate provided by an applicable income tax treaty) of its effectively connected earnings and profits for the taxable year, subject to certain adjustments.

2. *Accrued Interest.*

Payments of U.S.-source interest to Non-U.S. Holders may be subject to withholding unless an exemption, treaty reduction, or effectively-connected-income treatment applies and appropriate documentation (generally an IRS Form W-8BEN or W-8BEN-E) is supplied. Any portfolio-interest exemption must be confirmed for the particular

debt instrument and Holder; it does not apply automatically to all Claims. The following circumstances, among others, may limit an exemption:

(a) the Non-U.S. Holder actually or constructively owns 10 percent or more of the total combined voting power of all classes of TCP's stock entitled to vote;

(b) the Non-U.S. Holder is a "controlled foreign corporation" that is a "related person" with respect to TCP (each, within the meaning of the IRC);

(c) the Non-U.S. Holder is a bank receiving interest described in section 881(c)(3)(A) of the IRC; or

(d) such interest is effectively connected with the conduct by the Non-U.S. Holder of a trade or business within the United States (in which case, provided the Non-U.S. Holder provides a properly executed IRS Form W-8ECI (or successor form) to the withholding agent, the Non-U.S. Holder (x) generally will not be subject to withholding tax, but (y) will be subject to U.S. federal income tax in the same manner as a U.S. Holder (unless an applicable income tax treaty provides otherwise), and a Non-U.S. Holder that is a corporation for U.S. federal income tax purposes may also be subject to a "branch profits tax" with respect to such Non-U.S. Holder's effectively connected earnings and profits that are attributable to the accrued interest at a rate of 30 percent (or at a reduced rate or exemption from tax under an applicable income tax treaty)).

A Non-U.S. Holder that does not qualify for the exemption from withholding tax with respect to accrued but untaxed interest that is not effectively connected income generally will be subject to withholding of U.S. federal income tax at a 30 percent rate (or at a reduced rate or exemption from tax under an applicable income tax treaty) on any payments that are attributable to accrued but untaxed interest. For purposes of providing a properly executed IRS Form W-8BEN or W-8BEN-E, special procedures are provided under applicable Treasury Regulations for payments through qualified foreign intermediaries or certain financial institutions that hold customers' securities in the ordinary course of their trade or business. In addition, a corporate Non-U.S. Holder may, under certain circumstances, be subject to an additional "branch profits tax" at a 30 percent rate (or such lower rate provided by an applicable income tax treaty) on its effectively connected earnings and profits attributable to such interest (subject to adjustments). As described above in more detail under the heading "*Accrued Interest*," the aggregate consideration to be distributed to holders of Allowed Claims in each Class will be allocated first to the principal amount of such Allowed Claims, with any excess allocated to unpaid interest that accrued on these Claims, if any.

The certifications described above must be provided to the applicable withholding agent prior to the payment of interest. Non-U.S. Holders that do not timely provide the applicable withholding agent with the required certification, but that qualify for a reduced rate under an applicable income tax treaty, may obtain a refund of any excess amounts withheld by timely filing an appropriate claim for refund with the IRS. Non-U.S. Holders should consult their tax advisors regarding their entitlement to benefits under any applicable income tax treaty.

### 3. *FATCA.*

Under legislation commonly referred to as the Foreign Account Tax Compliance Act ("FATCA"), foreign financial institutions and certain other foreign entities must report certain information with respect to their U.S. account holders and investors or be subject to withholding at a rate of 30 percent on the receipt of "withholdable payments." For this purpose, "withholdable payments" are generally U.S. source payments of fixed or determinable, annual or periodical income, and, subject to the paragraph immediately below, also include gross proceeds from the sale of any property of a type which can produce U.S. source interest or dividends.

FATCA withholding will apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding. FATCA withholding rules were previously scheduled to take effect on January 1, 2019, that would have applied to payments of gross proceeds from the sale or other disposition of property of a type that can produce U.S. source interest or dividends. However, such withholding has effectively been suspended under proposed Treasury Regulations that may be relied on until final regulations become effective. Nonetheless, there can be no

assurance that a similar rule will not go into effect in the future. Each Non-U.S. Holder should consult its own tax advisor regarding the possible impact of FATCA withholding rules on such Non-U.S. Holder.

**E. Information Reporting and Back-Up Withholding.**

The Debtors, the Wind-Down Debtors, and applicable withholding agents will withhold all amounts required by law to be withheld from payments of interest and dividends, whether in connection with distributions under the Plan or in connection with payments made on account of consideration received pursuant to the Plan, and will comply with all applicable information reporting requirements. The IRS may make the information returns reporting such interest and dividends and withholding available to the tax authorities in the country in which a Non-U.S. Holder is resident. In general, information reporting requirements may apply to distributions or payments under the Plan. Additionally, under the backup withholding rules, a Holder of a Claim may be subject to backup withholding (currently at a rate of 24 percent) with respect to distributions or payments made pursuant to the Plan unless that Holder: (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact; or (b) timely provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding (generally in the form of a properly executed IRS Form W-9 for a U.S. Holder, and, for a Non-U.S. Holder, in the form of a properly executed applicable IRS Form W-8 (or otherwise establishes such Non-U.S. Holder's eligibility for an exemption)).

Backup withholding is not an additional tax but is, instead, an advance payment that may be refunded to the extent it results in an overpayment of tax; provided that the required information is timely provided to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders of Claims are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holders' tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND UNCERTAIN. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED, IN THE STRONGEST TERMS POSSIBLE, TO CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR NON-U.S. TAX LAWS AND OF ANY CHANGE IN APPLICABLE TAX LAWS. THE FOREGOING SUMMARY DOES NOT CONSTITUTE TAX OR LEGAL ADVICE TO HOLDERS OF CLAIMS OR INTERESTS.**

* * * * *

## XII. RECOMMENDATION OF THE DEBTORS

The Debtors believe that an orderly sale and Wind Down under the Plan offers a framework to preserve and distribute available Estate value and is preferable to the alternatives described in this Disclosure Statement because it provides for a larger Distribution to Holders of Allowed Claims than would otherwise result in a liquidation under Chapter 7 of the Bankruptcy Code. In addition, any alternative other than Confirmation could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than proposed under the Plan. Accordingly, the Debtors recommend that Holders of Claims vote to accept the Plan.

The Children's Place, Inc., on behalf of itself and each of the other Debtors

By: *[/s/ Rudolph Morando]*

Name: Rudolph Morando
Title: Co-Chief Restructuring Officer

**Exhibit A**

**Chapter 11 Plan**

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

# JOINT PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

[1] A complete list of each of the Debtors, including each Debtor's tax identification number, in these chapter 11 cases may be obtained on the website of the debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ..... 1
A. Defined Terms. ..... 1
B. Rules of Interpretation. ..... 13
C. Computation of Time. ..... 14
D. Governing Law. ..... 14
E. Reference to Monetary Figures. ..... 14
F. Reference to the Debtors and the Wind-Down Debtors. ..... 15
G. Controlling Document. ..... 15
H. Nonconsolidated Plan. ..... 15

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, RESTRUCTURING EXPENSES, AND DIP CLAIMS ..... 15
A. Administrative Claims. ..... 15
B. Professional Fee Claims. ..... 16
C. Priority Tax Claims. ..... 17
D. Payment of Restructuring Expenses. ..... 17
E. DIP Claims. ..... 17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 18
A. Classification of Claims and Interests. ..... 18
B. Voting and Tabulation of Votes Cast by Holders of Claims in Classes 3, 4, and 5. ..... 18
C. Treatment of Claims and Interests. ..... 18
D. Special Provision Governing Unimpaired Claims. ..... 22
E. Elimination of Vacant Classes. ..... 22
F. Voting Classes, Presumed Acceptance by Non-Voting Classes. ..... 22
G. Intercompany Interests. ..... 23
H. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ..... 23
I. Controversy Concerning Impairment. ..... 23
J. Subordinated Claims. ..... 23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ..... 23
A. General Settlement of Claims and Interests. ..... 23
B. Wind-Down Transactions. ..... 23
C. Sources of Consideration for Plan Distributions. ..... 24
D. Wind-Down Debtors. ..... 24
E. Plan Administrator. ..... 24
F. Wind Down. ..... 26
G. Preservation of Causes of Action. ..... 27
H. Cancellation of Existing Agreements and Interests. ..... 28
I. Section 1146 Exemption. ..... 28
J. Corporate Action. ..... 29
K. Dissolution of the Board of the Debtors. ..... 29
L. Effectuating Documents; Further Transactions. ..... 29
M. Vesting of Assets in the Wind-Down Debtors. ..... 29
N. Director and Officer Liability Insurance. ..... 30

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 30
A. Assumption and Rejection of Executory Contracts and Unexpired Leases. ..... 30
B. Indemnification Obligations. ..... 31
C. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..... 31
D. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..... 32
E. Insurance Policies. ..... 33

F. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. 33
G. Reservation of Rights. 33
H. Nonoccurrence of Effective Date. 34

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS 34
A. Timing and Calculation of Amounts to Be Distributed. 34
B. Disbursing Agent. 34
C. Rights and Powers of Disbursing Agent. 34
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions. 35
E. Manner of Payment. 36
F. Compliance with Tax Requirements. 36
G. Allocations. 36
H. No Postpetition Interest on Claims. 36
I. Foreign Currency Exchange Rate. 36
J. Setoffs and Recoupment. 37
K. Claims Paid or Payable by Third Parties. 37

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS 38
A. Disputed Claims Process. 38
B. Allowance of Claims. 38
C. Estimation of Claims. 38
D. Claims Administration Responsibilities. 39
E. Time to File Objections to Claims. 39
F. Adjustment to Claims or Interests without Objection. 39
G. Disputed and Contingent Claims Reserve and GUC Distribution Reserve. 39
H. Disallowance of Claims or Interests. 39
I. Amendments to Proofs of Claim or Interest. 40
J. Distributions Pending Allowance. 40
K. Distributions After Allowance. 40

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS 40
A. Settlement, Compromise, and Release of Claims. 40
B. Release of Liens. 41
C. Releases by the Debtors. 41
D. Releases by Holders of Claims and Interests. 42
E. Exculpation. 43
F. Injunction. 43
G. Protections Against Discriminatory Treatment. 44
H. Document Retention. 44
I. Reimbursement or Contribution. 44

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN 45
A. Conditions Precedent to the Effective Date. 45
B. Waiver of Conditions. 45
C. Effect of Failure of Conditions. 45
D. Substantial Consummation. 46

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN 46
A. Modification and Amendments. 46
B. Effect of Confirmation on Modifications. 46
C. Revocation or Withdrawal of Plan. 46

ARTICLE XI. RETENTION OF JURISDICTION 46

ARTICLE XII. MISCELLANEOUS PROVISIONS 48

A. Immediate Binding Effect. 48
B. Additional Documents. 48
C. Payment of Statutory Fees. 48
D. Statutory Committee and Cessation of Fee and Expense Payment. 49
E. Reservation of Rights. 49
F. Successors and Assigns. 49
G. Notices. 49
H. Term of Injunctions or Stays. 50
I. Entire Agreement. 50
J. Exhibits. 50
K. Nonseverability of Plan Provisions. 50
L. Votes Solicited in Good Faith. 51
M. Closing of Chapter 11 Cases. 51
N. Waiver or Estoppel 51
O. Creditor Default. 51
P. Removal or Abandonment of Third Parties' Property. 51
Q. Termination of Agent Consultation Rights. 52

## INTRODUCTION

The above-captioned debtors and debtors in possession, acting at the direction of the Restructuring Committee, propose the Plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations as well as a summary and description of the Plan, the Wind-Down Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED OR PERMITTED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*A. Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth below.

1. "*Administrative Claim*" means a Claim (other than a Professional Fee Claim) for costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; and (c) the Restructuring Expenses.

2. "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

3. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity were a debtor in a case under the Bankruptcy Code.

4. "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the applicable bar date (or for which Claim a Proof of Claim is not required under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; *provided* that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, if such an objection is so interposed, such Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions under the Plan on account of such Claims or Interests. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. For the avoidance of doubt, a Proof

of Claim Filed after the applicable bar date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

5. "*Assumption or Rejection Objection Deadline*" means the date that is fourteen (14) days after filing of the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases; *provided* that if any Executory Contract or Unexpired Lease is added to or removed from such schedule, or its treatment, including payment of a Cure or assignment, is altered pursuant to an amended Schedule of Assumed Executory Contracts and Unexpired Leases or amended Schedule of Rejected Executory Contracts and Unexpired Leases, then the Assumption or Rejection Objection Deadline solely with respect to such Executory Contract or Unexpired Lease shall be seven (7) days after filing of the amended Schedule of Assumed Executory Contracts and Unexpired Leases or amended Schedule of Rejected Executory Contracts and Unexpired Leases that sets forth such modification.

6. "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, and applicable non-bankruptcy law.

7. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

8. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey.

9. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

10. "*Bidding Procedures*" means the bidding procedures attached as Exhibit 1 to the Bidding Procedures Order.

11. "*Bidding Procedures Documents*" means the Bidding Procedures, the Bidding Procedures Motion, and the Bidding Procedures Order.

12. "*Bidding Procedures Motion*" means the Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief [Docket No. 21].

13. "*Bidding Procedures Order*" means the Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief [Docket No. 97].

14. "*Ballot*" means the ballot, approved pursuant to the Disclosure Statement Order, distributed to Holders of Claims entitled or permitted to vote on the Plan, on which such Holders desiring to vote shall indicate acceptance or rejection of the Plan and, as applicable, make any additional elections contained in such ballot.

15. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16. "*Canadian Court*" means the Ontario Superior Court of Justice (Commercial List).

17. "*Canadian Information Officer*" means AlixPartners, Restructuring, Inc. in its capacity as the court-appointed information officer in the Canadian Recognition Proceedings.

18. "*Canadian Recognition Proceedings*" means the proceedings commenced by TCP, in its capacity as foreign representative of the Debtors, before the Canadian Court pursuant to Part IV of the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended.

19. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

20. "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

21. "*Cause of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including under any state or federal securities laws). Causes of Action also include: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer claim.

22. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

23. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

24. "*Claims and Noticing Agent*" means Omni Agent Solutions, Inc., the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

25. "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Wind-Down Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

26. "*Claims Register*" means the official register of Claims and Interests in the Debtors maintained by the Claims and Noticing Agent.

27. "*Class*" means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

28. "*CM/ECF*" means the Bankruptcy Court's case management and electronic case filing system.

29. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

30. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

31. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

32. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

33. "*Confirmation Order*" means the order of the Bankruptcy Court approving the Disclosure Statement on a final basis and confirming the Plan under section 1129 of the Bankruptcy Code, which shall be prepared in consultation with the Prepetition Agents, subject to Article XII.Q of the Plan.

34. "*Consummation*" means the occurrence of the Effective Date.

35. "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code. The amount of a Cure payment, if any, is $0.00 unless otherwise indicated in the Schedule of Assumed Executory Contracts and Unexpired Leases. The proposed Cure payment for any Executory Contract or Unexpired Lease for which no amount is set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed to equal $0.00.

36. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors or any of their predecessors for current or former directors', managers', officers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

37. "*Debtor Related Party*" means, collectively, the Debtors' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents (including the Disbursing Agent), advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, representatives advisors, predecessors, successors, and assigns, including the Canadian Information Officer, each solely in their capacity as such (including any attorneys or professionals retained by any current director or manager in his or her capacity as director or manager of an Entity), and the respective heirs, executors, estates, servants and nominees of the foregoing.

38. "*Debtor Release*" means the release set forth in Article VIII.C hereof.

39. "*Debtors*" means, collectively, each of the following: THE CHILDREN'S PLACE, INC.; The Children's Place Services Company, LLC; THE CHILDREN'S PLACE INTERNATIONAL, LLC; The Children's Place Canada Holdings, Inc.; thechildrensplace.com, inc.; TCP IH II, LLC; TCP Real Estate Holdings, LLC; TCP International Product Holdings, LLC; THE CHILDREN'S PLACE (CANADA), LP; TCP INVESTMENT CANADA II CORP.; TCP INVESTMENT CANADA I CORP.; TCP Brands, LLC; AMASKIT, LLC; and The Children's Place (Barbados) Inc.

40. "*Definitive Documents*" means, collectively and as applicable, (a) the Disclosure Statement; (b) the Solicitation Materials; (c) the DIP Orders (and motion(s) seeking approval thereof); (d) the Plan (and all exhibits thereto); (e) the Confirmation Order; (f) the Disclosure Statement Order (and motion(s) seeking approval thereof); (g) all material pleadings Filed by the Debtors in connection with the Chapter 11 Cases and the Canadian Recognition Proceedings (and related orders), including the first day pleadings and all orders sought pursuant thereto; (h) the Plan Supplement; (i) any and all filings with or requests for regulatory or other approvals from any governmental entity or unit, other than ordinary course filings and requests, necessary or desirable to implement the Wind-Down Transactions; (j) the Bidding Procedures Documents; and (k) such other agreements, instruments, and documentation as may be necessary to consummate and document the transactions contemplated by the Plan.

41. "*DIP ABL Agent*" means Wells Fargo Bank, National Association, in its capacity as administrative agent and collateral agent under the DIP ABL Facility.

42. "*DIP ABL Claims*" means all Claims arising under or in connection with the DIP ABL Facility authorized pursuant to the DIP Orders, including the DIP ABL Obligations (as defined in the DIP Orders), financing documents approved pursuant thereto, and any prepetition obligations repaid, refinanced, or converted into obligations under such facility pursuant to the DIP Orders.

43. "*DIP ABL Facility*" means the debtor-in-possession ABL financing facility authorized pursuant to the DIP Orders.

44. "*DIP Agents*" means the DIP ABL Agent and the DIP Term Loan Agent, each solely in its capacity as such, including any successors in such capacities.

45. "*DIP Claims*" means the DIP ABL Claims and the DIP Term Loan Claims. DIP Claims include all principal, interest, fees, expenses, indemnities, and other obligations under the DIP Documents, in each case to the extent provided in the DIP Orders and the DIP Documents, without duplication of any Wells Fargo Credit Agreement Claims or SLR Credit Agreement Claims.

46. "*DIP Documents*" means the credit agreements and all related agreements, instruments, guarantees, security documents, and other financing documents governing the DIP Facilities and approved pursuant to the DIP Orders, in each case as amended, restated, supplemented, or otherwise modified in accordance with their terms and the DIP Orders.

47. "*DIP Facilities*" means, collectively, the DIP ABL Facility and the DIP Term Loan Facility.

48. "*DIP Lenders*" means the lenders under the DIP ABL Facility and the DIP Term Loan Facility, each solely in its capacity as such.

49. *"DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

50. "*DIP Term Loan Agent*" means Crystal Financial LLC d/b/a SLR Credit Solutions, in its capacity as administrative agent and collateral agent under the DIP Term Loan Facility.

51. "*DIP Term Loan Claims*" means all Claims arising under or in connection with the DIP Term Loan Facility authorized pursuant to the DIP Orders, including the DIP Term Obligations (as defined in the DIP Orders), financing documents approved pursuant thereto, and any prepetition obligations repaid, refinanced, or converted into obligations under such facility pursuant to the DIP Orders.

52. "*DIP Term Loan Facility*" means the debtor-in-possession term-loan financing facility authorized pursuant to the DIP Orders.

53. "*Disbursing Agent*" means the Debtors or the Wind-Down Debtor, as applicable, or the Entity or Entities selected by the Debtors or the Wind-Down Debtor, as applicable, to make or facilitate distributions contemplated under the Plan, including the Plan Administrator, if applicable; *provided* that distributions on account of DIP ABL Claims, DIP Term Loan Claims, Wells Fargo Credit Agreement Claims, or SLR Credit Agreement Claims shall be made to, or at the direction of, the DIP ABL Agent, DIP Term Loan Agent, Wells Fargo Credit Agreement Agent, or SLR Credit Agreement Agent, respectively, in accordance with the Plan, the DIP Orders, and the applicable DIP Documents, Wells Fargo Credit Agreement Documents, or SLR Loan Agreement Documents.

54. *"Disbursing Entity*" means any entity making disbursements on behalf of any Debtor or any Wind-Down Debtor or making disbursements on account of an obligation of any Debtor or any Wind-Down Debtor.

55. "*Disclosure Statement*" means the disclosure statement in respect of the Plan, including all exhibits and schedules thereto, as approved or ratified by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

56. "*Disclosure Statement Order*" means the Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with

Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief.

57. "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Interest or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

58. "*Disputed Claims Reserve Amount*" means Cash in an amount to be determined by the Debtors, which amount shall be used to fund the Disputed Claims Reserve.

59. "*Disputed Claims Reserve*" means the account to be established on the Effective Date and funded with the Disputed Claims Reserve Amount for distribution as set forth in Article VII.G, if any.

60. "*Distributable Value*" means all proceeds from the Inventory Sale, the proceeds of any Causes of Action retained by the Wind-Down Debtors, and all other Cash on hand and other assets of the Debtors on the Effective Date (or such applicable later date) including, without limitation, Residual Cash after taking into account the Distribution Reserve Accounts and the terms of the Wind-Down Budget.

61. "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date, or such other date after the Confirmation Date agreed to by the Debtors.

62. "*Distribution Reserve Accounts*" means the Priority Claims Reserve, the Wind-Down Reserve, and the GUC Distribution Reserve established pursuant to the Plan.

63. "*DTC*" means the Depository Trust Company.

64. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

65. "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

66. "*Equity Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of TCP (in each case whether or not arising under or in connection with any employment agreement) immediately prior to the consummation of the transactions contemplated in the Plan.

67. "*Equity Security*" means any equity security, as defined in section 101(16) of the Bankruptcy Code, in a Debtor.

68. "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

69. "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such and to the extent they are estate fiduciaries: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Committee and each of its respective members in their capacities as such, and (d) with respect to each of the foregoing Entities in clauses (a) and (b), each such Entity's current control persons, directors, members of any committees of any Entity's board of directors or managers, the Restructuring Committee, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, advisory board members, financial advisors, attorneys (including any attorneys or other professionals retained by any current director or manager in his or her capacity as director or

manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

70. "*Executory Contract*" means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

71. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

72. "*File*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases. "Filed" and "Filing" shall have correlative meanings.

73. "*Final DIP Order*" means the Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief [Docket No. [●]].

74. "*Final Inventory Sale Order*" means the Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement; (II) Authorizing and Approving the Conduct of Store Closing Sales and the Related Sale Guidelines, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances; (III) Modifying Customer Programs at the Closing Stores; and (IV) Granting Related Relief [Docket No. [●]].

75. "*Final Order*" means, as applicable, an order or judgment in any forum of the Bankruptcy Court or any other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing thereof has been timely sought, or, if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied, or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided*, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

76. "*General Unsecured Claim*" means any Claim that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) a Priority Tax Claim, (d) an Other Secured Claim, (e) an Other Priority Claim, (f) an Intercompany Claim, (g) an Intercompany Interest, (h) a Section 510 Claim, (i) an Equity Interest, (j) a Restructuring Expense, (k) a Wells Fargo Credit Agreement Claim, (l) an SLR Credit Agreement Claim, (m) a DIP Claim, or (n) otherwise secured by collateral, subordinated, or entitled to priority under the Bankruptcy Code against any Debtor. General Unsecured Claims include all Claims under the Mithaq Credit Facility and exclude Wells Fargo Credit Agreement Claims and SLR Credit Agreement Claims.

77. "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Wind-Down Debtors, as applicable.

78. "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

79. "*GUC Distribution Reserve*" means an account to be established on the Effective Date and funded with an amount to be determined by the Debtors (in consultation with the Prepetition Agents) for distribution as set forth in Article VII.G provided, that, such amount is subject to reduction by any and all fees, costs, and expenses incurred after the Effective Date by the Committee, its members, advisors, or representatives, including all fees, costs, and expenses incurred pursuant to Article XII.D of this Plan.

80. “*Holder*” means an Entity that is the record owner of a Claim or Interest. For the avoidance of doubt, affiliated record owners of Claims or Interests managed or advised by the same institution shall constitute separate Holders.

81. “*Impaired*” means “impaired” within the meaning of section 1124 of the Bankruptcy Code.

82. “*Insurance Policies*” means all insurance policies issued or providing coverage at any time to any of the Debtors or any of their predecessors and all agreements, documents, or instruments relating thereto, including, without limitation, the D&O Liability Insurance Policies.

83. “*Insurer*” means any insurance company or third party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

84. “*Intercompany Claim*” means any Claim against a Debtor held by another Debtor.

85. “*Intercompany Interest*” means an Interest in a Debtor held by another Debtor.

86. “*Interest*” means, collectively, (a) any Equity Security in any Debtor and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, or repurchase rights; convertible, exercisable, or exchangeable securities; or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

87. “*Interim DIP Order*” means the Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief [Docket No. 72].

88. “*Interim Inventory Sale Order*” means the Interim Order (I) Authorizing the Debtors to Assume the Consulting Agreement; (II) Authorizing and Approving the Conduct of Store Closing Sales and the Related Sale Guidelines, with Such Sales to Be Free and Clear of All Liens, Claims, and Encumbrances; (III) Modifying Customer Programs at the Closing Stores; and (IV) Granting Related Relief [Docket No. 98].

89. “*Inventory Sale Assets*” means the assets of the Debtors sold or to be sold in the Inventory Sale.

90. “*Inventory Sale Agreement*” means that certain GA/TCP Consulting Agreement dated November 3, 2026, including the U.S. and Canadian sales procedures attached thereto.

91. “*Inventory Sale Orders*” means, collectively, the Interim Inventory Sale Order and the Final Inventory Sale Order.

92. “*Inventory Sale*” means the sale of the Inventory Sale Assets pursuant to the Inventory Sale Agreement and Inventory Sale Orders.

93. “*Judicial Code*” means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

94. “*Lien*” means a lien as defined in section 101(37) of the Bankruptcy Code.

95. “*Mithaq Credit Facility*” means all Claims arising under or in connection with loans or other extensions of credit provided by Mithaq Capital SPC to any of the Debtors, including (a) the First Mithaq Term Loan, evidenced by the unsecured and subordinated promissory note dated February 29, 2024, (b) the Second Mithaq Term Loan, evidenced by the unsecured and subordinated promissory note dated April 16, 2024, (c) the Third Mithaq Term Loan, evidenced by the unsecured and subordinated promissory note dated July 1, 2026, and (d) the Fourth Mithaq Term Loan, evidenced by the unsecured and subordinated promissory note dated September 24, 2026, including the loans advanced pursuant to the commitment letter dated May 2, 2024, in each case among The Children’s Place, Inc., the

applicable subsidiaries party thereto, and Mithaq Capital SPC, together with all related guarantees and other loan documents, and in each case as amended, restated, supplemented or otherwise modified from time to time.

96. "*Opt Out Form*" means the form provided to all Holders of Claims in Classes 1 through 9 pursuant to the Disclosure Statement Order and through which the applicable Holder may elect to opt out of the Third-Party Releases.

97. "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

98. "*Other Secured Claim*" means any Secured Claim other than a DIP Claim, Wells Fargo Credit Agreement Claim, or an SLR Credit Agreement Claim.

99. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

100. "*Petition Date*" means November 8, 2026, the date on which the Debtors commenced the Chapter 11 Cases.

101. "*Plan*" means this joint plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

102. "*Plan Administrator*" means the Person or Entity selected by the Debtors to administer all assets of the Estates vested in the Wind-Down Debtors, and thereafter, all assets held from time to time by the Wind-Down Debtors. The Plan Administrator shall owe fiduciary duties of care and loyalty to all Holders of Claims.

103. "*Plan Administrator Agreement*" means that certain agreement, entered into no later than the Effective Date, setting forth, among other things, the Plan Administrator's rights, powers, obligations, and compensation.

104. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under and in accordance with the Plan.

105. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, and in accordance with the Bankruptcy Code and Bankruptcy Rules), to be Filed by the Debtors, to the extent reasonably practicable, no later than seven (7) days before the deadline to vote to accept or reject the Plan or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable: (a) the Schedule of Retained Causes of Action; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the Plan Administrator Agreement and the identity of the Plan Administrator; (e) the Wind-Down Budget; (f) the Transactions Steps Memorandum; and (g) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

106. "*Prepetition Agents*" means, collectively, the Wells Fargo Credit Agreement Agent and the SLR Credit Agreement Agent, each solely in its capacity as such, including any successors in such capacities.

107. "*Prepetition Lenders*" means collectively, the Wells Fargo Credit Agreement Lenders and the SLR Credit Agreement Lenders.

108. "*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Other Priority Claims.

109. "*Priority Claims Reserve*" means the account to be established and maintained by the Plan Administrator on the Effective Date and funded with the Priority Claims Reserve Amount for distribution to Holders of Priority Claims (except for Professional Fee Claims) as set forth in Article II.

110. "*Priority Claims Reserve Amount*" means Cash in an amount to be determined in the Debtors' reasonable business judgment, in consultation with the Prepetition Agents, which amount shall be used by the Plan Administrator to fund the Priority Claims Reserve.

111. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

112. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

113. "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

114. "*Professional Fee Amount*" means the aggregate amount of unpaid Professional Fee Claims and other unpaid fees and expenses Professionals reasonably estimate in good faith that they have incurred or will incur in rendering services as set forth in Article II.B of the Plan.

115. "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

116. "*Professional Fee Escrow*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount, less any amounts already maintained in the Professional Fee Escrow (as defined in and pursuant to the DIP Orders), which amounts shall be transferred to the Professional Fee Escrow on the Effective Date.

117. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable bar date.

118. "*Proof of Interest*" means a proof of Interest Filed in any of the Debtors in the Chapter 11 Cases.

119. "*Quarterly Fees*" means, together, all fees due and payable pursuant to 28 U.S.C. § 1930(a)(6) plus any interest due and payable under 31 U.S.C. § 3717.

120. "*Reinstate*" means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

121. "*Related Party*" means, collectively, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents (including the Disbursing Agent), Restructuring Committee members, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, representatives advisors, predecessors, successors, and assigns, each solely in their capacity as such (including any attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), and the respective heirs, executors, estates, servants and nominees of the foregoing.

122. "*Released Party*" means, collectively, and in each case in its capacity as such: (a) the Plan Administrator, each Prepetition Agent, each Prepetition Lender, each DIP Agent, and each DIP Lender; (b) each Debtor; (c) each current Affiliate of each Entity in clauses (a) and (b); (d) each Related Party of each Entity in clauses (a) through (c); and (e) each Debtor Related Party; provided, however, that each Entity that (x) elects to opt out of the releases described in Article VIII.D of the Plan or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation shall not be a Released Party; provided, further, however, that the final inclusion of each Released Party in the Confirmation Order is subject to the ongoing review and final approval of the Restructuring Committee.

123. "*Releasing Party*" means, collectively, and in each case in its capacity as such: (a) the Plan Administrator, each Prepetition Agent, each Prepetition Lender, each DIP Agent, and each DIP Lender; (b) each Debtor; (c) all Holders of Claims that vote to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (d) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (e) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (f) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (g) all holders of Interests; (h) each current Affiliate of each Entity in clauses (a) through (g); (i) each Related Party of each Entity in clauses (a) through (h); and (j) each Debtor Related Party; provided, however, that each Entity that (x) elects to opt out of the releases contained in Article VIII.D of the Plan or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation shall not be a Releasing Party; provided, further, however, that any Holder of Interests who acquired such Interests after the Voting Record Date (as such term is defined in the Disclosure Statement Order) and did not receive an Opt Out Form shall not be a Releasing Party; provided, further, however¸ that any Holder of Claims or Interests who did not receive an Opt Out Form shall not be a Releasing Party.

124. "*Residual Cash*" means the sum of (a) any amounts remaining in the Professional Fee Escrow after payment in full of all Allowed Professional Fee Claims, (b) any amounts remaining in the Priority Claims Reserve after payment in full of all Allowed Priority Claims and Allowed Administrative Claims (other than Professional Fee Claims), (c) any amounts remaining in the Disputed Claims Reserve after the final resolution of Disputed Claims, and (d) any amounts remaining in the Wind-Down Reserve after entry of a final decree closing the last of the Chapter 11 Cases, which in each case shall constitute Distributable Value.

125. "*Retained Causes of Action*" means any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and excluding Causes of Action released or exculpated herein (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in Article VIII of the Plan.

126. "*Restructuring Committee*" means the special committee of the board of directors of TCP established and delegated authority pursuant to the unanimous written consent of the board of directors of TCP dated November 3, 2026.

127. "*Restructuring Expenses*" means all invoiced reasonable and documented fees, expenses, and other amounts required to be paid in any Definitive Document, or in any order of the Bankruptcy Court related thereto (which may include those amounts arising after the Effective Date related to implementation, Consummation, and defense of the Plan). Restructuring Expenses also include reasonable and documented fees and out-of-pocket expenses of the Prepetition Agents and DIP Agents, including their counsel fees and expenses, to be paid in Cash on the Effective Date to the extent not otherwise paid.

128. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

129. "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

130. "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

131. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

132. "*Section 510(b) Claim*" means any Claim or Interest against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract.

133. "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

134. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

135. "*Security*" means any security, as defined in Section 2(a)(1) of the Securities Act.

136. "*Solicitation Materials*" means, collectively, the solicitation materials with respect to the Plan.

137. "*SLR Credit Agreement*" means that certain Credit Agreement, dated as of December 16, 2025 (as amended, restated, supplemented or otherwise modified from time to time), among The Children's Place, Inc., the other borrowers party thereto, the guarantors party thereto, the SLR Credit Agreement Lenders, and the SLR Credit Agreement Agent.

138. "*SLR Credit Agreement Agent*" means Crystal Financial LLC d/b/a SLR Credit Solutions, as administrative agent and collateral agent under the SLR Credit Agreement and the Prepetition Term Agent (as defined in the DIP Orders).

139. "*SLR Credit Agreement Claims*" means any Claims arising under the SLR Credit Agreement, including the Prepetition Term Secured Obligations (as defined in the DIP Orders). Such Claims exclude any amounts repaid, refinanced, or converted into DIP Claims pursuant to the DIP Orders or otherwise paid or satisfied, and shall not include amounts treated as DIP Claims under Article II.E.

140. "*SLR Loan Agreement Documents*" means the SLR Credit Agreement and the Prepetition Term Documents (as defined in the DIP Orders) and all related notes, guarantees, security agreements, collateral documents, and other agreements and documents executed or delivered in connection therewith, in each case as amended, restated, supplemented or otherwise modified from time to time.

141. "*SLR Credit Agreement Lenders*" means the lenders party to the SLR Credit Agreement, including the Prepetition Term Lenders (as defined in the DIP Orders).

142. "*TCP*" means THE CHILDREN'S PLACE, INC., a Debtor in the Chapter 11 Cases.

143. "*Third-Party Release*" means the release set forth in Article VIII.D of the Plan.

144. "*Transactions Steps Memorandum*" means that certain memorandum as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Wind-Down Transactions and distributions in accordance with the Plan and as set forth in the Plan Supplement.

145. "*U.S. Trustee*" means the Office of the United States Trustee for the District of New Jersey.

146. "*Unexpired Lease*" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

147. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

148. "*Wells Fargo Credit Agreement Agent*" means Wells Fargo Bank, National Association, as administrative agent and collateral agent under the Wells Fargo Credit Agreement and the Prepetition ABL Agent (as defined in the DIP Orders).

149. "*Wells Fargo Credit Agreement*" means that certain Amended and Restated Credit Agreement, dated as of May 9, 2019 (as amended, restated, supplemented or otherwise modified from time to time, including pursuant to that certain Ninth Amendment to Amended and Restated Credit Agreement, dated as of September 24, 2026), among The Children's Place, Inc., for itself and as agent for the other borrowers party thereto, the other borrowers party thereto, the guarantors party thereto, the Wells Fargo Credit Agreement Lenders party thereto, and Wells Fargo Bank, National Association, as administrative agent, collateral agent, L/C issuer, and swing line lender.

150. "*Wells Fargo Credit Agreement Documents*" means the Wells Fargo Credit Agreement and the Prepetition ABL Documents (as defined in the DIP Orders) and all related notes, guarantees, security agreements, collateral documents, and other agreements and documents executed or delivered in connection therewith, in each case as amended, restated, supplemented or otherwise modified from time to time.

151. "*Wells Fargo Credit Agreement Claims*" means any Claims arising under the Wells Fargo Credit Agreement, including the Prepetition ABL Secured Obligations (as defined in the DIP Orders). Such Claims exclude any amounts repaid, refinanced, or converted into DIP Claims pursuant to the DIP Orders or otherwise paid or satisfied, and shall not include amounts treated as DIP Claims under Article II.E.

152. "*Wells Fargo Credit Agreement Lenders*" means the lenders under the Wells Fargo Credit Agreement, including the Prepetition Revolving Lenders (as defined in the DIP Orders).

153. "*Wind Down*" means the orderly wind down and dissolution of the Debtors' Estates as set forth in Article IV.F.

154. "*Wind-Down Budget*" means the amount of Cash to be determined by the Debtors, in consultation with the Prepetition Agents, to remain in the Debtors' Estates to fund the Wind Down following the consummation of the Wind-Down Transactions, including any statutory fees payable pursuant to the Bankruptcy Code, in accordance with Article IV.F of the Plan. The Wind-Down Budget, and any material amendments thereto, shall be prepared in consultation with the Prepetition Agents and shall be Filed as part of the Plan Supplement. No consultation provision in the Plan limits any approval or consent right under the DIP Orders or DIP Documents.

155. "*Wind-Down Debtors*" means any Debtors or any successor or successors thereto after the Effective Date responsible for winding down the Debtors' Estates and implementing the terms of the Plan.

156. "*Wind-Down Reserve*" means the account to be established and maintained by the Plan Administrator and funded with the amounts under the Wind-Down Budget to fund the Wind Down in accordance with Article IV.F of the Plan and for Plan Administrator purposes in accordance with Article IV.E.

157. "*Wind-Down Transactions*" means the transactions described in Article IV.B of the Plan.

*B. Rules of Interpretation.*

For purposes of the Plan: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on

particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that nothing in this clause (ii) shall affect any party's consultation rights over any of the Definitive Documents or any amendments thereto; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (iv) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (v) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (vi) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (vii) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (viii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (ix) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (x) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (xi) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (xii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be, (xiii) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xiv) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xv) any immaterial effectuating provisions herein may be interpreted by the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (xvi) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter; and (xvii) the event of any dispute regarding the meaning or interpretation of any provision of the Plan, the interpretation of the Debtors or the Wind-Down Debtors, as applicable, shall control.

*C. Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

*D. Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan; any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Wind-Down Debtors, as applicable.

*E. Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

*F. Reference to the Debtors and the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors and the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

*G. Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

*H. Nonconsolidated Plan.*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, RESTRUCTURING EXPENSES, AND DIP CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

*A. Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Wind-Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of the Plan, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors by the applicable Administrative Claims Bar Date. **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Wind-Down Debtors as applicable, or the Plan Administrator or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.** Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party by the Claims Objection Deadline. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect

to an Administrative Claim previously Allowed. Notwithstanding anything to the contrary in the Plan, the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties shall not be required to File any proof of claim or request for payment of an Administrative Claim, and the Administrative Claims Bar Date and any other bar date shall not apply to any claim of the DIP Agents, the DIP Credit Parties, and the Prepetition Secured Parties arising under, or in connection with, the DIP Documents or the Prepetition Documents.

*B. Professional Fee Claims.*

1. Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred through and including the Effective Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Wind-Down Debtors or the Plan Administrator, as applicable, shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including first from funds held in the Professional Fee Escrow. The Wind-Down Debtors shall establish the Professional Fee Escrow in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.

2. Professional Fee Escrow.

On the Effective Date, the Wind-Down Debtors shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Amount. The Professional Fee Escrow shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Wind-Down Debtors or Plan Administrator, as applicable, from the Professional Fee Escrow as soon as reasonably practicable after such Professional Fee Claims are Allowed. When all such Allowed amounts owing to Professionals have been paid in full, any remaining funds held in the Professional Fee Escrow shall promptly be paid to the Wind-Down Debtors and constitute Cash consideration to be distributed in accordance with the Wind-Down Budget or otherwise under the Plan without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Professional Fee Amount.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other reasonable unpaid fees and expenses incurred in rendering services before and as of the Effective Date and shall deliver such estimates to the Debtors no later than three (3) Business Days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or the Wind-Down Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional.

4. Post-Effective Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash, from funds allocated for such purposes under the Wind-Down Budget, the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327–331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Wind-Down Debtors, and/or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

*C. Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

*D. Payment of Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms set forth herein, without any requirement to File a fee application with the Bankruptcy Court, without the need for itemized time detail, and without any requirement for Bankruptcy Court or any other review or approval. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. On the Effective Date, invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors. In addition, the Debtors and the Wind-Down Debtors, as applicable, shall continue to pay, when due and payable in the ordinary course, Restructuring Expenses arising directly out of the implementation, Consummation and defense of the Plan without any requirement for review or approval by the Bankruptcy Court or for any party to File a fee application with the Bankruptcy Court. To the extent any person entitled to reimbursement of Restructuring Expenses is holding a retainer, such person shall be entitled to continue to hold such retainer until payment in full in Cash by the Wind-Down Debtors of such person's Restructuring Expenses; *provided* that such retainer shall be applied to pay for such Restructuring Expenses unless such person elects, in its sole discretion, to keep a portion of such retainer solely to the extent needed to cover Restructuring Expenses in excess of any estimates provided in accordance with this paragraph and any reasonably expected Restructuring Expenses incurred after the Effective Date, and following the payment of Restructuring Expenses, on reasonable request of the Debtors or the Wind-Down Debtors, the professionals shall return the remainder of the retainer to the Debtors or the Wind-Down Debtors.

*E. DIP Claims.*

The DIP Claims have been afforded superpriority administrative expense status pursuant to the terms of the Interim DIP Order, and include the roll-up of the Wells Fargo Credit Agreement Claims and the SLR Credit Agreement Claims to the extent set forth in the Interim DIP Order.

Except to the extent that a Holder of a DIP Claim agrees to less favorable treatment, notwithstanding anything to the contrary in the Plan, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, the DIP Claims, on or before the Effective Date, each such Holder shall receive indefeasible payment in full in Cash of its DIP Claim, to the extent not previously paid, such that the DIP Obligations are Paid in Full, in accordance with the terms of the DIP Orders. For the avoidance of doubt, DIP Claims include prepetition obligations only to the extent actually repaid, refinanced, or converted into obligations under the DIP Facilities pursuant to the DIP Orders. No amount shall receive both the treatment provided in this Article II.E and treatment as a Class 3 or Class 4 Claim. Payments, including the treatment of outstanding letters of credit and contingent obligations under the DIP Documents, and termination of commitments shall be effected in accordance with the DIP Orders and DIP Documents. In addition, to the extent not otherwise paid as Restructuring Expenses, the Debtors will pay to the DIP Agents, an amount equal to each of their outstanding documented fees and expenses in such capacities, including counsel fees and expenses, on or before the Effective Date in Cash.

# ARTICLE III.
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A. Classification of Claims and Interests.*

The Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Wells Fargo Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 4 | SLR Credit Agreement Claims | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interest | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

*B. Voting and Tabulation of Votes Cast by Holders of Claims in Classes 3, 4, and 5.*

Classes 3, 4, and 5 are Impaired under the Plan. Holders of Allowed Claims in Classes 3, 4, and 5 are entitled to vote to accept or reject the Plan.[2]

The Debtors shall provide Ballots to Holders of Claims in Classes 3, 4, and 5 entitled to vote on the Plan. The Claims and Noticing Agent shall tabulate the Ballots cast by such Holders in Classes 3, 4, and 5.

*C. Treatment of Claims and Interests.*

2 If the Class 3 and Class 4 Claims are fully converted into DIP Claims pursuant to the Final DIP Order, such Classes will be removed from the Plan and will not be entitled to vote to accept or reject the Plan.

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Wind-Down Debtors, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1. Class 1 – Other Secured Claims

(a) *Classification*: Class 1 consists of any Other Secured Claims against any Debtor.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, on the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the Debtors' option:

(i) payment in full in Cash of its Allowed Other Secured Claim;

(ii) the collateral securing its Allowed Other Secured Claim; or

(iii) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

2. Class 2 – Other Priority Claims

(a) *Classification*: Class 2 consists of any Other Priority Claims against any Debtor.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, each Holder of an Allowed Other Priority Claim shall be paid in full in Cash on the Effective Date, or otherwise receive treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code.

(c) *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

3. Class 3 – Wells Fargo Credit Agreement Claims

(a) *Classification:* Class 3 consists of any Wells Fargo Credit Agreement Claims against any Debtor.

(b) *Allowance:* The Wells Fargo Credit Agreement Claims shall be Allowed solely in the amount remaining outstanding after giving effect to the repayment, refinancing, or conversion of prepetition obligations into DIP ABL Claims under the DIP Orders and all payments or other satisfaction of such claims pursuant to the DIP Orders or any other applicable Order of the Bankruptcy Court. Such remaining Claim amount shall consist of unpaid principal, plus any and all unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing under the Wells Fargo Credit Agreement Documents or related documents (including post-petition interest at the rate approved in the Final DIP Order) through and including the date of payment of the Wells Fargo Credit Agreement Claims, in each case solely to the extent not repaid, refinanced under the DIP Orders, or otherwise paid or satisfied, and shall not be subject to any offset, recoupment, challenge, objection, defense, claim, or counterclaim of any kind, or to avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise).

(c) *Treatment:* Except to the extent that a Holder of an Allowed Wells Fargo Credit Agreement Claim agrees to a less favorable treatment, each Holder of an Allowed Wells Fargo Credit Agreement Claim shall receive on or before the Effective Date, indefeasible payment in full in Cash of its Allowed Wells Fargo Credit Agreement Claim from the proceeds of the collateral securing such Claim, in accordance with the relative lien priorities applicable to such collateral and subject to the terms of the applicable intercreditor agreement, or such other treatment as may be permissible under section 1129 of the Bankruptcy Code. In addition, to the extent not otherwise paid as Restructuring Expenses, the Debtors will pay to the Wells Fargo Credit Agreement Agent, an amount equal to its outstanding documented fees and expenses in such capacities, including counsel fees and expenses, on or before the Effective Date in Cash.

(d) *Voting:* Class 3 is Impaired under the Plan, and Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4. Class 4 – SLR Credit Agreement Claims

(a) *Classification:* Class 4 consists of SLR Credit Agreement Claims.

(b) *Allowance:* The SLR Credit Agreement Claims shall be Allowed solely in the amount remaining outstanding after giving effect to the repayment, refinancing, or conversion of prepetition obligations into DIP Term Loan Claims under the DIP Orders and all payments or other satisfaction of such claims pursuant to the DIP Orders, or any other applicable Order of the Bankruptcy Court. Such remaining Claim amount shall consist of unpaid principal plus any and all unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing under the SLR Loan Agreement Documents or related documents (including post-petition interest at the rate approved in the Final DIP Order) through and including the date of payment of the SLR Credit Agreement Claims, in each case solely to the extent not repaid, refinanced under the DIP Orders, or otherwise paid or satisfied, and shall not be subject to any offset, recoupment, challenge, objection, defense, claim, or counterclaim of any kind, or to avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise).

(c) *Treatment:* Except to the extent that a Holder of an Allowed SLR Credit Agreement Claim agrees to a less favorable treatment, each Holder of an Allowed SLR Credit Agreement Claim shall receive on or before the Effective Date indefeasible payment in full in Cash of its Allowed SLR Credit Agreement Claim from the proceeds of the collateral securing such

Claim, in accordance with the relative lien priorities applicable to such collateral and subject to the terms of the applicable intercreditor agreement, or such other treatment as may be permissible under section 1129 of the Bankruptcy Code. In addition, to the extent not otherwise paid as Restructuring Expenses, the Debtors will pay to the SLR Credit Agreement Agent, an amount equal to its outstanding documented fees and expenses in such capacities, including counsel fees and expenses, on the Effective Date in Cash.

(d) *Voting:* Class 4 is Impaired under the Plan. Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

5. Class 5 – General Unsecured Claims

(a) *Classification:* Class 5 consists of General Unsecured Claims, including all Claims under the Mithaq Credit Facility.

(b) *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of each of (i) any additional Distributable Value allocable to the applicable Debtor subsidiary following payment in full of all Allowed Class 1, 2, 3, and 4 Claims (and subject to any applicable intercreditor or subordination agreement) and (ii) the GUC Distribution Reserve, or otherwise receive treatment consistent with the provisions of section 1129(b) of the Bankruptcy Code; provided, that to the extent that a Holder of a General Unsecured Claim against a Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Debtor arising from or relating to the same obligations or liability as such General Unsecured Claim, such Holder shall only be entitled to a distribution on one Allowed General Unsecured Claim against the Debtors in full and final satisfaction of all such Claims.

(c) *Voting:* Class 5 is Impaired under the Plan. Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

6. Class 6 – Intercompany Claims

(a) *Classification*: Class 6 consists of all Intercompany Claims.

(b) *Treatment*: On the Effective Date, Allowed Intercompany Claims shall be (i) reinstated or (ii) set off, settled, distributed, contributed, cancelled, or released, or otherwise addressed at the option of the Debtors, without any distribution on account of such Claims, or such other treatment as reasonably determined by the Debtors.

(c) *Voting*: Class 6 is Unimpaired if the Class 6 Claims are Reinstated or Impaired if the Class 6 Claims are cancelled. Holders of Class 6 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Class 6 Claims are not entitled to vote to accept or reject the Plan.

7. Class 7 – Intercompany Interests

(a) *Classification*: Class 7 consists of all Intercompany Interests.

(b) *Treatment*: On the Effective Date, Allowed Intercompany Interests shall be (i) reinstated or (ii) set off, settled, distributed, contributed, cancelled, or released, or otherwise addressed at the option of the Debtors, without any distribution on account of such Intercompany Interests, or such other treatment as reasonably determined by the Debtors.

(c) *Voting*: Class 7 is Unimpaired if the Class 7 Interests are Reinstated or Impaired if the Class 7 Interests are cancelled. Holders of Class 7 Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 7 Interests are not entitled to vote to accept or reject the Plan.

8. Class 8 – Section 510(b) Claims

(a) *Classification*: Class 8 consists of all Section 510(b) Claims.

(b) *Treatment*: On the Effective Date, any Claims arising under section 510(b) of the Bankruptcy Code shall be discharged without any distribution.

(c) *Voting*: Class 8 is Impaired under the Plan. Holders of Allowed Claims in Class 8 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Class 8 Claims are not entitled to vote to accept or reject the Plan.

9. Class 9 – Equity Interests

(a) *Classification*: Class 9 consists of all Equity Interests.

(b) *Treatment*: On the Effective Date, all Equity Interests shall be cancelled, released, extinguished, and discharged and will be of no further force or effect. Each Holder of an Equity Interest shall be entitled to receive its Pro Rata share of any Distributable Value remaining after payment in full of all Allowed Claims and satisfaction of all other payment and reserve requirements under the Plan.

(c) *Voting*: Class 9 is Impaired under the Plan. Holders of Allowed Equity Interests in Class 9 are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Class 9 Interests are not entitled to vote to accept or reject the Plan.

*D. Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Wind-Down Debtors, as applicable, regarding any Unimpaired Claims, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

*E. Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

*F. Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

*G. Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Estates, and in exchange for the Debtors' agreement under the Plan to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors to the Holders of certain Allowed Claims.

*H. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*I. Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

*J. Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Wind-Down Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A. General Settlement of Claims and Interests.*

Pursuant to the Bankruptcy Code and Bankruptcy Rules, and in consideration of the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. Pursuant to the Bankruptcy Code and Bankruptcy Rules, the Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

*B. Wind-Down Transactions.*

On or before the Effective Date, the Debtors or the Wind-Down Debtors and Plan Administrator, as applicable, shall take all applicable actions as may be necessary or appropriate to effectuate the Wind-Down, and any transaction described in, approved by, contemplated by, or necessary to effectuate the Wind-Down that are consistent with and pursuant to the terms and conditions of the Plan, which transactions may include, as applicable: (a) the

execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; and (c) all other actions that the applicable Wind-Down Debtor or the Plan Administrator determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan.

All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Wind-Down, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

*C. Sources of Consideration for Plan Distributions.*

The Debtors shall fund distributions under the Plan with: (i) the proceeds of the Inventory Sale, (ii) the Debtors' Cash on hand including, without limitation, any Residual Cash, (iii) any proceeds from the disposition of assets of the Debtors pursuant to the Bidding Procedures or otherwise, and (iv) the proceeds of any Causes of Action retained by the Wind-Down Debtors. Each distribution referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution, which terms and conditions shall bind each Entity receiving such distribution.

*D. Wind-Down Debtors.*

On and after the Effective Date, at least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtors for purposes of, among other things, (i) winding down the Debtors' business and affairs as expeditiously as reasonably possible as authorized by the Bankruptcy Court; (ii) resolving Disputed Claims; (iii) making distributions on account of Allowed Claims as provided hereunder; (iv) establishing and funding the Distribution Reserve Accounts; (v) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (vi) filing appropriate tax returns; and (vii) administering the Plan in an efficacious manner. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Effective Date shall vest in the Wind-Down Debtors and shall be subject to administration by the Plan Administrator, as further set forth in the Plan Administrator Agreement, and the net proceeds thereof shall constitute Distributable Value.

*E. Plan Administrator.*

On the Effective Date, the persons acting as managers, directors, and officers of the Wind-Down Debtors shall be deemed to have resigned, solely in their capacities as such, and their authority, power, and incumbency in such roles shall be deemed to have terminated, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' managers, directors, and officers. The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all

certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and shall retain and have all the rights, powers, privileges, and duties necessary to carry out his or her responsibilities under the Plan in accordance with the Wind Down and as otherwise provided in the Confirmation Order. As further set forth in the Plan Administrator Agreement, the Plan Administrator shall have access to the Debtors' books and records that have vested with the Wind-Down Debtors (including any privileged materials).

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors. The foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer. The Debtors, after the Confirmation Date, and the Wind-Down Debtors or Plan Administrator, after the Effective Date, shall be permitted to make payments to employees pursuant to employment programs then in effect, and, in the reasonable business judgment of the Plan Administrator, to implement additional employee programs and make payments thereunder solely as necessary to effectuate the Wind Down, without any further notice to or action, order, or approval of the Bankruptcy Court.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors and Wind-Down Debtors, including: (i) making distributions under the Plan; (ii) liquidating any assets of the Debtors and Wind-Down Debtors not sold pursuant to the Inventory Sale; (iii) receiving, holding, investing, supervising, and protecting the assets of the Wind-Down Debtors in accordance with the Wind-Down Reserve; (iv) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (v) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (vi) establishing and maintaining bank accounts in the name of the Wind-Down Debtors; (vii) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (viii) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors; (ix) except as otherwise provided for herein, enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in accordance with Article IV.G; (x) administering and paying taxes of the Wind-Down Debtors, including filing tax returns; (xi) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (xii) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, the Confirmation Order, or any applicable orders of the Bankruptcy Court or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with the Wind-Down Reserve.

As further set forth in the Plan Administrator Agreement and subject to the terms thereof, the Plan Administrator shall adhere to certain reporting requirements to keep stakeholders reasonably informed of progress made in the Wind Down, including winding down the Estates, liquidating Claims, making distributions, and the disposition of Retained Causes of Action.

1. Retention of Professionals.

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, at the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties for the Wind-Down Debtors. The reasonable fees and expenses of such professionals, if applicable, shall be paid from the Wind-Down Reserve upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Wind-Down Debtors' retained professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

2. Compensation of the Plan Administrator.

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Wind-Down Reserve. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan

Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

3. Plan Administrator Expenses.

All costs, expenses, and obligations incurred by the Plan Administrator or the Wind-Down Debtors in administering the Plan or in effecting distributions thereunder (including the reimbursement of reasonable expenses), including any costs, expenses, or obligations in any manner connected, incidental, or related thereto, shall be paid from the Wind-Down Reserve.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

4. Exculpation, Indemnification, Insurance, and Liability Limitation.

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors. The Plan Administrator may obtain, at the expense of the Wind-Down Debtors and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

5. Tax Returns.

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and, pursuant to section 505 of the Bankruptcy Code and subject to applicable law, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

6. Dissolution of the Wind-Down Debtors.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made, completion of all of its duties under the Plan, and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which each Wind-Down Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable state(s).

*F. Wind Down.*

The Wind Down shall be implemented in accordance with the Wind-Down Budget. Subject to Article XII.Q of the Plan, the Debtors and the Plan Administrator, as applicable, shall consult with the Prepetition Agents regarding the Wind-Down Budget and any material amendments thereto. The Plan Administrator Agreement and Transactions Steps Memorandum shall be prepared in consultation with the Prepetition Agents. Such budget and implementing documents shall be Filed with the Plan Supplement, subject to Article XII.Q of the Plan. As soon as practicable after the Effective Date, the Plan Administrator shall: (i) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan and any other documents contemplated thereby; (ii) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of one or more of the Debtors or the Wind-Down Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of

dissolution or equivalent document may be executed by the Plan Administrator without the need for any action or approval by the shareholders or board of directors or managers of any Debtor. From and after the Effective Date, except with respect to Wind-Down Debtors as set forth herein, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (y) shall be deemed to have canceled pursuant to the Plan all Equity Interests, and (z) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable.

*G. Preservation of Causes of Action.*

Except as otherwise provided herein, in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII hereof, the Wind-Down Debtors and the Plan Administrator (following transfer of such Causes of Action to the Plan Administrator), shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Wind-Down Debtors or the Plan Administrator to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released or exculpated herein (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Wind-Down Debtors, as applicable, as of the Effective Date.

The Wind-Down Debtors or the Plan Administrator, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, or as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Wind-Down Debtors, or the Plan Administrator, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the corresponding Wind-Down Debtor except as otherwise expressly provided in the Plan, including Article VIII of the Plan. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtors, or the Plan Administrator, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtor, or the Plan Administrator, as further set forth in the Plan Administrator Agreement, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, except for Causes of Action expressly retained under Article VIII, no Cause of Action preserved pursuant to this Article IV.G include any Claim or Cause of Action released or exculpated under Article VIII.

*H. Cancellation of Existing Agreements and Interests.*

On the Effective Date, except for the purpose of evidencing a right to a distribution under the Plan or to the extent otherwise provided in the Plan, including in Article V.A hereof, all notes, agreements, instruments, certificates, and other documents evidencing Claims or Interests, including all credit agreements and indentures, without any need for further action or approval of the Bankruptcy Court or for a Holder to take further action, shall automatically be deemed discharged, cancelled, and of no further force and effect, and the obligations of the Debtors, any non-Debtor Affiliate, thereunder or in any way related thereto, including any Liens and/or Claims in connection therewith, shall be deemed satisfied in full, cancelled, discharged, released, and of no force or effect, subject to the provisions below. Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

Notwithstanding such cancellation, discharge, and release, the DIP Orders and DIP Documents shall continue in effect. No DIP Claim or related Lien or obligation shall be cancelled, discharged, or released except upon satisfaction of the payment, letter-of-credit, commitment-termination, and other applicable requirements of the DIP Orders and DIP Documents; all provisions that survive by their terms shall remain in effect.

Notwithstanding such cancellation, discharge, and release, the Wells Fargo Credit Agreement Documents and the SLR Loan Agreement Documents shall continue in effect to the extent necessary to (i) permit Holders of Wells Fargo Credit Agreement Claims and SLR Credit Agreement Claims to receive and accept distributions under the Plan; (ii) permit the applicable Prepetition Agent to receive, make, or direct distributions and exercise rights and discharge obligations relating to such Claims; (iii) preserve the applicable Prepetition Agent's rights to indemnification, reimbursement, contribution, and subrogation under the applicable loan documents; (iv) preserve its rights to payment of fees, expenses, and indemnification obligations from distributions to the applicable Holders, including any applicable priority-of-payment or lien rights under the applicable loan documents; (v) permit each Prepetition Agent to enforce obligations owed to it under the Plan; and (vi) permit each Prepetition Agent to appear in the Chapter 11 Cases or other proceedings. Provisions of the applicable loan documents that survive termination pursuant to their terms, including applicable indemnification provisions, shall continue in effect.

Following performance of its obligations under the Plan, except as necessary to effectuate the Plan or preserve rights expressly surviving under the Plan or the applicable loan documents, each Prepetition Agent shall be relieved and discharged from further duties and responsibilities under the Plan and the applicable loan documents, without further action or approval of the Bankruptcy Court.

*I. Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor or to or from any other Person) of property under the Plan or pursuant to: (i) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Wind-Down Debtors, as applicable; (ii) the Wind-Down Transactions; (iii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iv) the making, assignment, or recording of any lease or sublease; or (v) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

*J. Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including, (i) implementation of the Wind-Down; (ii) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (iii) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (iv) formation of the Wind-Down Debtors and selection of the Plan Administrator; and (v) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Wind-Down contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Plan Administrator. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Plan Administrator, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.

*K. Dissolution of the Board of the Debtors.*

As of the Effective Date, the existing boards of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtors with respect to their affairs. Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve any of the Debtors, and shall: (i) file a certificate of dissolution for any of the Debtors, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of the applicable state(s) of formation; and (ii) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of any of the Debtors' certificates of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors or any of their Affiliates.

*L. Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Wind-Down, and the Securities issued pursuant to the Plan in the name of and on behalf of the Wind-Down Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

*M. Vesting of Assets in the Wind-Down Debtors.*

Subject to the DIP order and as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, or entered into in connection with or pursuant to, the Plan, the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Wind-Down Debtor, free and clear of all Liens, Claims,

charges, Causes of Action, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Confirmation Order, or any agreement, instrument, or other document incorporated herein, each Wind-Down Debtor may operate its business and use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

*N. Director and Officer Liability Insurance.*

After the Effective Date, none of the Wind-Down Debtors shall terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Liability Insurance Policy for the full term of such D&O Liability Insurance Policy, to the extent set forth therein and in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered, regardless of whether such directors and officers remain in such positions after the Effective Date.

On the Effective Date, any and all D&O Liability Insurance Policies shall be assumed by the Wind-Down Debtors pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policy available to any individuals and/or entities under such D&O Liability Insurance Policy in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Wind-Down Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) has been previously assumed or rejected by the Debtors pursuant to a Bankruptcy Court order; (c) is the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect to the proposed assumption and assignment of such contract) that is pending on the Effective Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan; or (e) is an Insurance Policy.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all assumptions, assumptions and assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided for in the Plan, the Plan Supplement, and the Confirmation Order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any Filed motions to assume, assume and assign, or reject any Executory Contracts or Unexpired Leases (or Filed objection with respect to the proposed assumption and assignment of such contract) that is pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors or the Plan Administrator, with any such disposition to be deemed to effect an assumption, assumption and assignment, or rejection, as applicable, as of the Effective Date.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed (or assumed and assigned) Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party on or prior to the Effective Date, shall revest in and be fully enforceable by the Plan Administrator in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases identified in this Article V of the Plan and in the Plan Supplement at any time through and including thirty (30) days after the Effective Date. The Debtors or the Wind-Down Debtors, as applicable, shall provide notice of any amendments to the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases to the parties to the Executory Contracts or Unexpired Leases affected thereby.

*B. Indemnification Obligations.*

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (i) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Plan Administrator. Any Claim or other right to indemnification, reimbursement, or contribution by the Debtors' directors, officers, or managers pursuant to charter, by-laws, contract, or otherwise against the Debtors or the Estates, shall be satisfied solely from the proceeds of any applicable D&O Liability Insurance Policies, or similar policy providing coverage to the Debtors' directors, officers, and managers, which policies shall survive the Effective Date, and which Claims or rights shall not be satisfied from any other assets of the Wind-Down Debtors or any proceeds thereof.

*C. Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection, if any, of any Executory Contracts or Unexpired Leases as provided for in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (i) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, or (iii) the Effective Date. The notice of the Plan Supplement shall be deemed appropriate notice of rejection when served on applicable parties.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed and forever barred from assertion and**

**shall not be enforceable against the Debtors, the Wind-Down Debtors, the Estates, the Plan Administrator, or their property without the need for any objection by the Debtors, the Wind-Down Debtors, or the Plan Administrator, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged and shall be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim as set forth in Article III.C.5 of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

*D. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Debtors or the Wind-Down Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. The proposed amount and timing of payment of each such Cure shall be set forth in the Plan Supplement unless otherwise agreed in writing (email being sufficient) between the Debtors or the Wind-Down Debtors and the counterparty to the applicable Executory Contract or Unexpired Lease. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection (an "Executory Contract Objection") Filed by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment, including pursuant to the Plan, or related Cure amount must be Filed, served, and actually received by counsel to the Debtors and the U.S. Trustee by the applicable Assumption or Rejection Objection Deadline or any other deadline that may be set by the Bankruptcy Court. Any Executory Contract Objection (x) timely Filed prior to the Confirmation Hearing will be heard by the Bankruptcy Court at the Confirmation Hearing unless otherwise agreed to by the Debtors and the objecting party or (y) timely Filed after the Confirmation Hearing shall be heard as soon as reasonably practicable on a date requested by the Debtors or the Wind-Down Debtors, as the case may be. Any Executory Contract Objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion and shall not be enforceable against any Wind-Down Debtor without the need for any objection by the Wind-Down Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Wind-Down Debtors, as applicable, of the Cure amount; *provided* that nothing herein shall prevent the Wind-Down Debtors from paying any Cure amount despite the failure of the relevant counterparty to File an Executory Contract Objection. The Debtors or the Wind-Down Debtors, as applicable, may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption and/or assignment.

If there is any dispute regarding any Cure, the ability of the Wind-Down Debtors, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption (or assumption and assignment), then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order (which may be the Confirmation Order) resolving such dispute, approving such assumption (and, if applicable, assumption and assignment), or as may be agreed upon by the Debtors or the Wind-Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

To the extent an Executory Contract Objection relates solely to a Cure, the Debtors or the Wind-Down Debtors, as applicable, may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Cure objection; *provided* that the Debtors or the Wind-Down Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Wind-Down Debtor).

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article V.D shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under

any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed (or assumed and assigned) in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

*E. Insurance Policies.*

Notwithstanding anything to the contrary in the Plan, the Confirmation Order, any other Definitive Document, any notice of any Cure amounts or Cure Claim, any bar date order or bar date notice, any claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) on the Effective Date, the Wind-Down Debtors shall be deemed to have assumed all Insurance Policies, unaltered and in their entireties, pursuant to sections 105 and 365 of the Bankruptcy Code and, after the foregoing assumption of the Insurance Policies, all of the Insurance Policies shall vest, unaltered and in their entireties, in the Plan Administrator; (b) on and after the Effective Date, the Plan Administrator, on behalf of the Wind-Down Debtors, shall become and remain liable in full for all of its, the Debtors, and the Wind-Down Debtors' obligations under the Insurance Policies regardless of whether such obligations arise before, on, or after the Effective Date, without the need or requirement for any Insurers to file or serve any notice of recoupment or a request, application, claim, Proof of Claim or motion for payment or allowance of any Administrative Claim or any objection to a proposed Cure amount and without any Insurers being subject to any bar date, Administrative Claims Bar Date, or similar deadline governing Cure amounts or other Claims; (c) nothing (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any Insurance Policies or (ii) alters or modifies the obligation, if any, of the Insurers to pay claims covered by Insurance Policies and their right to seek payment or reimbursement from the Debtors (or, after the Effective Date, the Plan Administrator) or draw on any collateral or security therefor; (d) nothing shall permit or otherwise effectuate a sale, assignment or other transfer of any Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any Insurance Policy without the prior express written consent of the applicable Insurer; and (e) the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff and/or asserting any recoupment or subrogation rights or claims).
.

*F. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

*G. Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or the Wind-Down Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Plan Administrator, as applicable, shall have forty-

five (45) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

*H. Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A. Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

*B. Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date or at such other time as provided for in the Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Debtors or the Plan Administrator, as applicable.

*C. Rights and Powers of Disbursing Agent.*

1. Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. Subject to the express written consent and direction of, and with the cooperation of, the applicable Prepetition Agent or DIP Agent, the Disbursing Agent may make distributions on account of Wells Fargo Credit Agreement Claims, SLR Credit Agreement Claims, or DIP Claims, subject to the applicable Prepetition Agent's or DIP Agent's rights to payment of fees, expenses, and indemnification obligations from such distributions, including any applicable priority-of-payment or lien rights under the applicable loan documents.

2. Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation

and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Plan Administrator.

*D. Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1. Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2. Delivery of Distributions in General.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims or Allowed Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent: (a) to the signatory set forth on any Proof of Claim or Proof of Interest Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Proof of Interest is Filed or if the Debtors have not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Wind-Down Debtors, the Plan Administrator, or the Disbursing Agent, as applicable, after the date of any related Proof of Claim or Proof of Interest; or (c) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims or Allowed Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Allowed Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Wind-Down Debtors, the Plan Administrator, and the Disbursing Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

3. Delivery of Distributions on Account of DIP Claims, Wells Fargo Credit Agreement Claims, and SLR Credit Agreement Claims.

Distributions on account of DIP ABL Claims shall be made to or at the direction of the DIP ABL Agent, and distributions on account of DIP Term Loan Claims shall be made to or at the direction of the DIP Term Loan Agent, in accordance with the Plan, the DIP Orders, and the DIP Documents. Distributions on account of Allowed Wells Fargo Credit Agreement Claims shall be made to or at the direction of the Wells Fargo Credit Agreement Agent, and distributions on account of Allowed SLR Credit Agreement Claims shall be made to or at the direction of the SLR Credit Agreement Agent, for further distribution in accordance with the Plan and the applicable Wells Fargo Credit Agreement Documents or SLR Loan Agreement Documents. Such distributions shall be subject to the applicable Prepetition Agent's rights under the applicable loan documents to payment of fees, expenses, and indemnification obligations from such distributions, including any applicable priority-of-payment or lien rights, to the extent such amounts have not otherwise been paid in full.

If the applicable Prepetition Agent or DIP Agent is unable to make distributions or consents to the Disbursing Agent making such distributions, the Disbursing Agent, with the cooperation of the applicable Prepetition Agent or DIP Agent, shall make such distributions to the extent practicable. Neither the Prepetition Agents nor the DIP Agents shall incur liability on account of distributions under the Plan, except for fraud, gross negligence, or willful misconduct. The Debtors or the Wind-Down Debtors, as applicable, shall reimburse each Prepetition Agent and DIP Agent for reasonable and documented fees and expenses, including counsel and agent fees and expenses, incurred on or after the Effective Date solely in connection with implementation of the Plan, including distributions in accordance with the Plan, to the extent not otherwise paid under the Plan, the DIP Orders, or the DIP Documents, without further approval or order of the Bankruptcy Court.

4. Minimum Distributions.

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $100 in value (whether cash or otherwise), and each such Claim to which this limitation

applies shall be released pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting such Claim against the Debtors, the Wind-Down Debtors, the Plan Administrator, or their property.

5. Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Plan Administrator automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheatment, abandoned property, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder related to such property or interest in property shall be discharged and forever barred. The Plan Administrator and the Disbursing Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

*E. Manner of Payment.*

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in other applicable agreements.

*F. Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, any applicable withholding or reporting agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and Plan Administrator, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

*G. Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

*H. No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the DIP Orders, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

*I. Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the

exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

*J. Setoffs and Recoupment.*

Except as expressly provided in the Plan, each Wind-Down Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Wind-Down Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the relevant Wind-Down Debtor(s) and Holder of Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Wind-Down Debtor or its successor of any and all claims, rights, and Causes of Action that such Wind-Down Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or Plan Administrator, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

*K. Claims Paid or Payable by Third Parties.*

1. Claims Paid by Third Parties.

The Debtors or the Plan Administrator, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Plan Administrator. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or the Plan Administrator to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. If the Debtors or the Plan Administrator, as applicable, become aware of any payment of a Claim by a third party, the Debtors or Plan Administrator, as applicable, will send a notice of wrongful payment to the Holder of such Claim requesting the return of any excess payments and advising the recipient of the provisions of the Plan requesting turnover of excess Estate funds. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or Plan Administrator annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is fully repaid.

2. Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more Insurers agrees to pay in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' payment, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies.

Except as otherwise provided in the Plan, payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Notwithstanding anything to the contrary contained herein (including Article III of the Plan), nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, under any Insurance Policies, nor shall anything contained herein

constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

*A. Disputed Claims Process.*

The Plan Administrator shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (ii) File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan. **Except as otherwise provided herein, all Proofs of Claim Filed after the earlier of: (a) the Effective Date or (b) the applicable claims bar date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or the Plan Administrator, without the need for any objection by the Debtor or the Plan Administrator or any further notice to or action, order, or approval of the Bankruptcy Court.**

*B. Allowance of Claims.*

After the Effective Date, and subject to the terms of the Plan, the Plan Administrator shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date. The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

*C. Estimation of Claims.*

Before or after the Effective Date, the Debtors and the Plan Administrator, as applicable, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any party previously has objected to such Disputed Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim or Interest, including during the litigation of any objection to any Disputed Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Disputed Claim or Interest that has been expunged from the Claims Register but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and the Debtors or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Disputed Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Disputed Claim or Interest is estimated.

*D. Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Plan Administrator, shall have the sole authority: (i) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (ii) to settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Wind-Down Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Plan.

*E. Time to File Objections to Claims.*

Any objections to Claims shall be Filed by the Plan Administrator, on or before the Claims Objection Deadline, as such deadline may be extended from time to time.

*F. Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Wind-Down Debtors without having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court. Additionally, any Claim or Interest that is duplicative or redundant with another Claim against or Interest in the same Debtor or another Debtor may be adjusted or expunged on the Claims Register by the Plan Administrator without the Plan Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

*G. Disputed and Contingent Claims Reserve and GUC Distribution Reserve.*

On or after the Effective Date, the Debtors or the Plan Administrator, as applicable, shall establish the Disputed Claims Reserve for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the applicable Debtors or the Plan Administrator, as applicable, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim and the treatment of such asserted Claim under the Plan. Following the final resolution of all Disputed Claims, any residual amounts in the Disputed Claims Reserve shall constitute Residual Cash distributable pursuant to Article IV.

On the Effective Date, the Debtors shall establish the GUC Distribution Reserve. Subject to the terms of the Plan (including Article XII.D), the GUC Distribution Reserve shall be distributed Pro Rata to Holders of Allowed Class 5 General Unsecured Claims.

*H. Disallowance of Claims or Interests.*

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Wind-Down Debtors, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Debtor. All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan after notice to the Holder of such Claim, but without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed to by the Wind-Down Debtors, in their sole discretion, any and all Proofs of Claim Filed after the applicable bar date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

*I. Amendments to Proofs of Claim or Interest.*

On or after the Effective Date, a Proof of Claim or Proof of Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, and any such new or amended Proof of Claim or Proof of Interest Filed that is not so authorized before it is Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court absent prior Bankruptcy Court approval or agreement by the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable; *provided* that the foregoing shall not apply to Administrative Claims or Claims Filed by Governmental Units to the extent the applicable bar date has not yet occurred.

*J. Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest; provided that, for the avoidance of doubt, if any portion of a General Unsecured Claim is Disputed, only the portion of the General Unsecured Claim that is undisputed shall be deemed Allowed for purposes of distribution on account of the undisputed amount.

*K. Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance its Pro Rata share of the Disputed Claims Reserve Amount in full and final satisfaction of such Allowed Claim or Allowed Interest. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A. Settlement, Compromise, and Release of Claims.*

Pursuant to the Bankruptcy Code and Bankruptcy Rules and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distribution, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Intercompany Claims resolved or compromised after the Effective Date by the Debtors, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities, of Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests related to service performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representation or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right,

or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such Claim or Interest has accepted the Plan.

*B.* ***Release of Liens.***

**Except as otherwise provided in the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim or any related claim that may be asserted against a non-Debtor Affiliate, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates or any non-Debtor Affiliate shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors shall automatically revert to the Applicable Debtor or Wind-Down Debtor, as applicable, and their successors and assigns, in each case without any further approval or order of the Bankruptcy Court and without any action of Filing being required to be made by the Debtors or the Wind-Down Debtors. Any Holder of such Secured Claim or claim against a non-Debtor Affiliate (and the applicable agents or trustees for such Holder) shall be authorized and directed, to release any collateral or other property of any Debtor or non-Debtor Affiliate (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents or trustees for such Holder) and to take such actions as may be reasonably requested by the Wind-Down Debtors or the Plan Administrator, at the expense of the Wind-Down Debtors or the Plan Administrator, as applicable, to evidence the release of such Lien, including the execution, delivery, and filing or recording of documents evidencing such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

*C.* ***Releases by the Debtors.***

**Except as otherwise specifically provided in the Plan or the Confirmation Order, and subject to the completion and results of the Restructuring Committee's investigation, pursuant to the Bankruptcy Code and Bankruptcy Rules, for good and valuable consideration, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the**

**foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders and the results of the Restructuring Committee Investigation, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Wind-Down Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors or Wind-Down Debtors or their respective Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

*D.* ***Releases by Holders of Claims and Interests.***

**Except as otherwise specifically provided in the Plan or the Confirmation Order, as of the Effective Date, each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Wind-Down Debtor, and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Article VIII.D, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith**

**settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) a sound exercise of the Debtors' business judgment; (viii) given and made after due notice and opportunity for hearing; and (ix) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

**Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.D and does not exercise such opt out is a Releasing Party and may not assert any Claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (i) that opted out of the releases contained in this Article VIII.D or (ii) was deemed to reject the Plan may not assert any Claim or other Cause of Action against any Released Party for which it is asserted or implied that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying Claim or Cause of Action; *provided*, *however*, that nothing in this paragraph requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law; *provided, further*, that no Claim or Cause of Action of any kind may be asserted, commenced, or pursued against the Canadian Information Officer without leave of the Canadian Court.**

*E.* ***Exculpation.***

**Except as otherwise expressly provided in the Plan or the Confirmation Order, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any claim related to any act or omission arising on or after the Petition Date and through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, or any transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, bad faith, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

*F.* ***Injunction.***

**Pursuant to 11 U.S.C. § 362(c)(1), the automatic stay of an act against property of the Debtors' estates will continue until such property is no longer property of the Debtors' estates, and pursuant to 11 U.S.C. §362(c)(2), the stay of any other act described in 11 U.S.C. § 362(a) continues until the earlier of the closure or dismissal of these Chapter 11 Cases. In addition, as of the Effective Date and subject to the occurrence of the Effective Date, except as otherwise specifically provided in this Plan or the Confirmation Order, all Persons and Entities who have held, hold, or may hold Claims or Interests that are fully satisfied pursuant to the Plan**

**or any Claim or Interest that is subject to the releases and exculpations set forth in the Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claims or Interests, except for the receipt of the payments or Distributions that are contemplated by the Plan.**

**For the avoidance of doubt, the foregoing relief may include (but is not limited to):**

**(a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests;**

**(b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests;**

**(c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests;**

**(d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and**

**(e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.**

**For the avoidance of doubt, this Article VIII.F shall not constitute a discharge under section 1141(d) of the Bankruptcy Code.**

*G. Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*H. Document Retention.*

On and after the Effective Date, the Wind-Down Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Plan Administrator.

*I. Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent or (ii) the relevant

Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

*A. Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1. the Bankruptcy Court shall have entered the DIP Orders, which shall be in full force and effect;

2. the Definitive Documents shall have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties;

3. the Bankruptcy Court shall have entered the Inventory Sale Orders and the Inventory Sale Orders shall not have been reversed, stayed, modified or vacated on appeal;

4. the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified or vacated on appeal;

5. all actions, documents, and agreements necessary to implement and consummate the Plan have been effected and executed;

6. the Wind-Down Transactions shall have been implemented in accordance with the Transactions Steps Memorandum in all material respects;

7. payment of all invoiced professional fees and other amounts required to be paid pursuant to any Definitive Document, or in any order of the Bankruptcy Court related thereto, including the Restructuring Expenses; and

8. any and all requisite governmental, regulatory, and third party approvals and consents shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired or terminated without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on the Wind-Down Transactions.

*B. Waiver of Conditions.*

The conditions to the Effective Date set forth in this Article IX, in consultation with the Prepetition Agents, may be waived in whole or in part at any time by the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

*C. Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by the Debtors or other Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect. Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Inventory Sale under the Inventory Sale Agreement or the revocation of the Debtors' authority under the Inventory Sale Orders to consummate the Inventory Sale.

*D. Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A. Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, in consultation with the Prepetition Agents, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan, and the requirements of section 1127 of the Bankruptcy Code, rule 3019 of the Bankruptcy Rules, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify, the Plan with respect to such Debtor, one or more times, after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B. Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C. Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of such Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI. RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Plan Administrator amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed, assumed and assigned, or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. grant any consensual request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

5. ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

6. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7. adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8. enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

9. enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10. resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11. issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, discharges, and exculpations contained in the Plan, including under Article VIII hereof, whether arising prior to or after the Effective Date, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

13. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.K hereof;

14. determine (a) whether a Claim or Cause of Action constitutes a direct or derivative claim, (b) whether such Claim or Cause of Action is colorable, and (c) solely to the extent legally permissible, adjudicate the underlying Claim or Cause of Action;

15. enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

17. enter an order concluding or closing the Chapter 11 Cases;

18. adjudicate any and all disputes arising from or relating to distributions under the Plan;

19. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof;

24. enforce all orders previously entered by the Bankruptcy Court; and

25. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A. Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, the Plan Administrator, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims against and Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

*B. Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Plan Administrator, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C. Payment of Statutory Fees.*

All Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors, the Wind-Down Debtors, and any Disbursing Entity shall be jointly and severally liable to pay Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Debtors, the Wind-Down Debtors and any entity making disbursements on behalf of any Debtor

or any Wind-Down Debtor, or making disbursements on account of an obligation of any Debtor or any Wind-Down Debtor, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, the Wind-Down Debtors and Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

*D. Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee and any other statutory committee appointed in these Chapter 11 Cases shall dissolve, and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases *provided*, *however*, that the Committee shall remain in existence for the limited purposes of (a) pursuing, supporting, or otherwise participating in, any outstanding appeals in the Chapter 11 Cases; and (b) filing, objecting, or otherwise participating in the process with respect to any final fee applications with respect to the Professional Fee Claims. After the Effective Date, the Wind-Down Debtors and the estates shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees and any fees and expenses incurred after the Effective Date by the Committee, its members, advisors, or representatives, shall be paid out of the GUC Distribution Reserve.

*E. Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

*F. Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of such Entity.

*G. Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1. if to the Debtors, to:

TCP
Attention: Kenneth Li, GVP, General Counsel and Corporate Secretary
500 Plaza Drive
Secaucus, New Jersey 07094
kli@childrensplace.com

with copies to:

White & Case
Gregory F. Pesce
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200

Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste
Varoon Sachdev
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

After the Effective Date, the Debtors have authority to notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

*H.* *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

*I.* *Entire Agreement.*

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*J.* *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://omniagentsolutions.com/TCP or the Bankruptcy Court's website at https://www.njb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

*K.* *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to

make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan, and any deletion or modification thereof shall be subject to the consultation rights set forth herein, subject to Article XII.Q of the Plan; and (iii) nonseverable and mutually dependent.

*L. Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, none of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

*M. Closing of Chapter 11 Cases.*

The Plan Administrator shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

*N. Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

*O. Creditor Default.*

An act or omission by a Holder of a Claim or Interest in contravention of the provisions of the Plan shall be deemed an event of default under the Plan. Upon an event of default, the Plan Administrator may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Plan Administrator in remedying such default. Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may: (a) designate a party to appear, sign, and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award a judgment against such defaulting Holder of a Claim or Interest in favor of the Plan Administrator in an amount, including interest, if applicable, to compensate the Wind-Down Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

*P. Removal or Abandonment of Third Parties' Property.*

Nothing in the Plan shall impose upon the Wind-Down Debtors any obligation to store or protect any third party's property, all of which property will be deemed abandoned and surrendered to the Wind-Down Debtors if such property has not been removed (by its owner in a commercially reasonable manner, and with insurance to cover any damage from such removal) from any real property owned or leased by the Wind-Down Debtors within forty-five (45) days after Confirmation of the Plan. Following the abandonment and surrender of any such property, the Plan Administrator may sell, transfer, assign, scrap, abandon, or otherwise dispose of such property and retain any proceeds resulting therefrom.

*Q. Termination of Agent Consultation Rights.*

Upon full repayment, refinancing, or conversion of the Wells Fargo Credit Agreement Claims or SLR Credit Agreement Claims into DIP Claims under the applicable DIP Orders, all consultation rights of the applicable Prepetition Agent under the Plan, including the Plan Supplement and any documents implementing the Plan, shall automatically terminate.

[*Remainder of page intentionally left blank.*]

Dated: November 22, 2026

THE CHILDREN'S PLACE, INC.
on behalf of itself and all other Debtors

*/s/ Rudolph Morando*

Name: Rudolph Morando
Title: Co-Chief Restructuring Officer

**Exhibit B**

**Organizational Chart**


THE CHILDREN'S PLACE, INC. (DE)
The Children's Place Canada Holdings, Inc. (DE)
The Children's Place International, LLC (Virginia)
4.515%
TCP Brands, LLC (DE)
TCP International Product Holdings, LLC (DE)
TCP Real Estate Holdings, LLC (DE)
AMASKIT, LLC (DE)
The Children's Place Services Company, LLC (DE)
95.385%
50%
TCP IH II, LLC (DE)
thechildrensplace.com , inc. (DE)
GYM-IPCO, LLC (DE)
TCP Worldwide Holdings Limited (Hong Kong)
TCP Investment Canada I Corp. (Nova Scotia)
TCP Investment Canada II Corp. (Nova Scotia)
The Children's Place (Hong Kong) Limited (Hong Kong)
TCP Canada Inc. (Nova Scotia)
The Children's Place (Barbados) Inc. (Barbados)
The Children's Place Asia Holdings Limited (Hong Kong)
The Children's Place Mauritius Holdings Limited (Mauritius)
The Children's Place Apparel Trading (Shanghai) Limited Company (Shanghai)
LP = ~99%
GP = ~1%
The Children's Place (Canada), LP (Ontario)
Certain Foreign Subsidiaries
Legend
Chapter 11 Debtor (unshaded interior = non-Debtor)
Borrower under Wells Fargo ABL
Guarantor under Wells Fargo ABL
Borrower under SLR Term Loan
Guarantor under SLR Term Loan
Maker under Mithaq Term Loans
Guarantor under Mithaq Term Loans

**Exhibit C**

**Liquidation Analysis**

**[To come]**

# **Exhibit 2**

## Solicitation and Voting Procedures

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHILDREN'S PLACE, INC., *et al.*, | Case No. 26-22682 (SLM) |
| Debtors.[1] | (Jointly Administered) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

# SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT**, on [●] [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (i) authorizing The Children's Place, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of the Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (ii) conditionally approving the *Disclosure Statement for the Joint Plan of the Children's Place, Inc. and its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (iii) approving the solicitation materials and documents to be included in the solicitation package (the "Solicitation Package"); (iv) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan; (v) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (vi) granting related relief.

## A. The Voting Record Date.

The Court has approved December 15, 2026, as the record date (the "Voting Record Date") for purposes of determining which Holders of Claims in Class 3 Wells Fargo Credit Agreement Claims, Class 4 SLR Credit Agreement Claims, and Class 5 General Unsecured Claims (each a "Voting Class," and collectively, the "Voting Classes") that either (i) have been listed on the Debtors' Schedules or (ii) with respect to which a valid proof of claim (a "Proof of Claim") has been filed before December 15, 2026 (such Claims, "Known Eligible Claims"), are entitled to vote on the Plan.

For Holders of Claims that (a) (i) are not listed in the Schedules and (ii) with respect to which a valid Proof of Claim has not been filed as of December 15, 2026 (*i.e.*, the Voting Record Date) (such Claims, "Unknown Eligible Claims"), and (b) with respect to which a valid Proof of Claim is filed on or after the Voting Record Date but on or before January 6, 2027, at 11:59 p.m., prevailing Eastern Time, the general claims bar date (the "Claims Bar Date") established in connection with the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 75], Omni Agent Solutions, Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent"), shall serve the Solicitation Package to such Holder within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent.

Notwithstanding the foregoing, counterparties to Unexpired Leases, including previously rejected Unexpired Leases, shall be eligible to cast provisional votes as provided in Section C.2 below.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

Regardless of whether a Holder has a Known Eligible Claim or an Unknown Eligible Claim, in each case, such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline (as defined below) for such Ballot to be counted.

**B. The Voting and Opt-Out Deadline**.

The Court has approved January 20, 2027, at 3:00 p.m. (prevailing Eastern Time) as the deadline for Holders of Claims in the Voting Classes to vote to accept or reject the Plan (the "Voting and Opt-Out Deadline"). The Debtors may extend the Voting and Opt-Out Deadline without further order of the Court by filing a notice on the Court's docket. To be counted as votes to accept or reject the Plan, all ballots (the "Ballots") must be executed, completed, and delivered pursuant to the instructions set forth on the applicable Ballot so that they are actually received by the Claims and Noticing Agent no later than the Voting and Opt-Out Deadline. Holders of Claims in the Voting Classes should submit their Ballots in accordance with the instructions provided on the applicable Ballot.

**C. Form, Content, and Manner of Notices**.

1. The Solicitation Package.

The following materials shall constitute the Solicitation Package:

a. a copy of these Solicitation and Voting Procedures;

b. the applicable Ballot, together with detailed voting instructions and instructions on how to submit the Ballot;

c. the Cover Letter, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan;

d. the Combined Hearing Notice;

e. the Disclosure Statement (and exhibits thereto, including the Plan);

f. the Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures); and

g. any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

2. Distribution of the Solicitation Package.

Within five (5) business days following entry of the Disclosure Statement Order, the Claims and Noticing Agent shall serve via email or cause to be served via email copies of the Solicitation Package to Holders of Known Eligible Claims entitled to vote on the Plan and other parties in interest. To the extent an email address is not on file for any Holders of such Claims or initial email service is returned undeliverable, and the Claims and Noticing Agent is in possession

of a physical mailing address for such Holders, the Claims and Noticing Agent shall serve the Solicitation Package on such Holders in electronic format (i.e., QR code) via first-class mail. **If service by QR code imposes a hardship for any party entitled to receive a copy of the Plan and the Disclosure Statement (e.g., the party does not own or have access to a smartphone or a tablet), such party may request a paper copy or a USB flash drive that includes copies of the Plan, Disclosure Statement, and Disclosure Statement Order (without attachments, except the Solicitation and Voting Procedures as annexed as Exhibit 2 thereto) by contacting the Claims and Noticing Agent by: (i) calling the Claims and Noticing Agent at (866) 205-3149 (Toll-Free, U.S. and Canada) or (818) 510-4678 (International); (ii) e-mailing Omni at TCPInquiries@OmniAgnt.com, with a reference to " The Children's Place" in the subject line, or (iii) writing to the Claims and Noticing Agent at THE CHILDREN'S PLACE, INC. Claims Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367. In addition, these Solicitation and Voting Procedures, the Disclosure Statement, the Plan, the Disclosure Statement Order, and all pleadings filed with the Court are available on the Debtors' case website at https://omniagentsolutions.com/TCP, or QR code.**

The Claims and Noticing Agent shall also serve via email or cause to be served via email electronic versions of the Solicitation Package (excluding Ballots and the Cover Letter) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002.

The Claims and Noticing Agent will not distribute the Solicitation Package to: (a) Holders of Claims that (i) have already been paid in full during the Chapter 11 Cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by the Court or (ii) are scheduled to be paid in the ordinary course prior to the Voting and Opt-Out Deadline; or (b) any party to whom notice of the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* was sent but was subsequently returned as undeliverable and for whom no physical forwarding address was available as of the time of such distribution; (iii) the Holders of Claims or Interests in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests); or (iv) parties that received a Notice of Non-Voting Status.

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, or the Disclosure Statement Order, the Debtors shall cause a Ballot for Class 5 to be served on all counterparties to Unexpired Leases, including previously rejected Unexpired Leases. Any such party shall be eligible to cast a provisional vote to accept or reject the Plan by the Voting and Opt-Out Deadline on account of a Claim in an amount equal to the greater of (a) $1.00 and (b) the amount asserted in any Proof of Claim; provided, that the Debtors shall retain the right to object to the validity of such Claim and the amount asserted in any applicable Proof of Claim.

3. Resolution of Disputed Claims for Voting Purposes; Resolution Event.

The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim for any other purpose, including distributions under the Plan. Any amounts pre-populated on a Ballot by the Debtors through the Claims and Noticing Agent are solely for voting purposes and are not binding for purposes of allowance and distribution. In resolving disputed Claims for voting purposes, the following principles shall apply:

a. If a Claim in a Voting Class is subject to an objection, other than a "reduce and allow" objection, that is filed with the Court on or prior to seven (7) days before the Voting and Opt-Out Deadline: (i) the Debtors shall cause the Holder to be served with the *Notice of Non-Voting Status*, substantially in the form annexed as Exhibit 4 to the Disclosure Statement Order (the "Notice of Non-Voting Status"), and Opt-Out Form, substantially in the form annexed as Exhibit 4A to the Disclosure Statement Order (the "Opt-Out Form"), as applicable; and (ii) the applicable Holder shall not be entitled to vote to accept or reject the Plan on account of such Claim, other than on a provisional basis as provided for counterparties to Unexpired Leases in Section C.2, unless a Resolution Event (as defined herein) occurs; provided that if such objection seeks to reduce and allow a Claim, such Claim shall be entitled to vote only in the proposed reduced amount unless otherwise ordered by the Court;

b. If a Claim in a Voting Class is subject to an objection, other than a "reduce and allow" objection, that is filed with the Court less than seven (7) days prior to the Voting and Opt-Out Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of the Court, unless the Court orders otherwise; *provided* that if such objection seeks to reduce and allow a Claim, such Claim shall be entitled to vote only in the proposed reduced amount unless otherwise ordered by the Court;

c. A "Resolution Event" means the occurrence of one or more of the following events no later than two (2) business days prior to the Voting and Opt-Out Deadline:

   i. an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code;

ii. a Holder of a Claim files a motion in the Court seeking entry of an order to temporarily allow a timely filed Proof of Claim for purposes of voting on the Plan (a "3018 Motion") and the Court enters an order approving such 3018 Motion;

iii. a stipulation or other agreement is executed between the Holder of such Claim and the Debtors temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

iv. the pending objection to the applicable Claim is voluntarily withdrawn by the objecting party;

d. No later than two (2) business days following the occurrence of a Resolution Event, the Debtors shall cause the Claims and Noticing Agent to distribute a Solicitation Package to the relevant Holder via hand delivery, first-class mail, or email; and

e. Claims that have been paid in full, scheduled to be paid in full in the ordinary course prior to the Voting and Opt-Out Deadline, or otherwise satisfied in full prior to the Voting and Opt-Out Deadline, are disallowed for voting purposes.

4. Notice of Non-Voting Status for Unimpaired, Impaired, and Disputed Claims and Opt-Out Forms.

The following Holders of Claims or Interests will receive (x) the Notice of Non-Voting Status, which will instruct such Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots), as well as how they may opt out of the Third-Party Release; and (y) the Opt-Out Form, with which such Holders of Claims or Interests may opt out of the Third-Party Release and, if applicable, make certain elections:

a. Holders of Claims or Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code;

b. Holders of Claims or Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code; and

c. Holders of Claims that are subject to a pending objection.

5. Notices in Respect of Executory Contracts and Unexpired Leases.

Counterparties to Executory Contracts and Unexpired Leases that receive a *Notice of Assumption of Executory Contracts and Unexpired Leases*, substantially in the form attached as Exhibit 8 to the Disclosure Statement Order, or a *Notice of Rejection of Executory Contracts and Unexpired Leases*, substantially in the form attached as Exhibit 9 to the Disclosure Statement

Order, may file an objection to the Debtors' proposed assumption, rejection, or cure amount, as applicable. Such objections must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[3] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** (x) in the case of a notice of assumption, no later than **fourteen (14) days after the service of such notice of assumption** on the affected counterparties, or (y) in the case of a notice of rejection, no later than **seven (7) days after the service of such notice of rejection**:

| ***Debtors*** |
| --- |
| **The Children's Place, Inc.**<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367 |
| ***Proposed Co-Counsel for the Debtors*** |
| **White & Case LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Attention: Gregory F. Pesce (gregory.pesce@whitecase.com);<br>Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste<br>(aparacriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com) |
| ***Proposed Co-Counsel for the Debtors*** |
| **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine<br>(wusatine@coleschotz.com); Seth Van Aalten (svanaalten@coleschotz.com);<br>Justin R. Alberto (jalberto@coleschotz.com); and Daniel J. Harris (dharris@coleschotz.com) |
| ***Counsel for the Committee*** |
| **[●] [Address] Attention: [●]** |
| ***United States Trustee*** |
| **Office of the United States Trustee**<br>**United States Trustee, Region 3** |

[3] The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

<table>
<tr><td colspan="2">One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102<br>Attention: Fran Steele (Fran.B.Steele@usdoj.gov) and Aiden Murphy<br>(Aiden.Murphy@usdoj.gov)</td></tr>
<tr><th colspan="2">Counsel to Wells Fargo Bank, National Association</th></tr>
<tr><td>Choate, Hall and Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attention: Kevin J. Simard<br>(ksimard@choate.com) and Michael E.<br>Comerford (mcomerford@choate.com)</td><td>McCarter & English, LLP<br>Four Gateway Center, 100 Mulberry Street,<br>Newark, New Jersey 07102<br>Attention: Joseph Lubertazzi<br>(jlubertazzi@McCarter.com) and Jeffrey<br>Testa (jtesta@mccarter.com)</td></tr>
<tr><th colspan="2">Counsel to Crystal Financial LLC d/b/a SLR Credit Solutions</th></tr>
<tr><td>Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts, 02110<br>Attention: Sandra J. Vrejan<br>(sandra.vrejan@morganlewis.com)<br>and Christopher Carter<br>(christopher.carter@morganlewis.com)</td><td>McGrail & Bensinger LLP<br>888-C Eighth Avenue, #107<br>New York, New York, 10019<br>Attention: Ilana Volkov<br>(ivolkov@mcgrailbensinger.com)</td></tr>
</table>

**D. Voting and Tabulation Procedures**

1. Holders of Filed and Scheduled Claims Entitled to Vote.

Subject to the provisional voting rights of counterparties to Unexpired Leases under Section C.2, only the following Holders of Claims in the Voting Classes shall be entitled to vote with respect to such Claims.

a. Holders of Known Eligible Claims, *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely Filed Proof of Claim) shall be allowed to vote only in the amounts set forth in Section D.2 below

b. Unless otherwise provided, Holders of Unknown Eligible Claims who file a valid Proof of Claim on or before the Claims Bar Date, that: (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded on or before the Claims Bar Date; and (ii) is not the subject of a pending objection filed with the Court at least seven (7) days prior to the Voting and Opt-Out Deadline, pending a Resolution Event as provided herein; *provided* that a Holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote

such Claim in the reduced amount contained in such objection absent a further order of the Court;

c. Holders whose Claims arise: (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) from an order entered by the Court; or (iii) from a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed or the Claim was scheduled as contingent, unliquidated, or disputed;

d. Holders of any Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

e. any Entity to which an Entity described in subparagraphs (a) through (d) above has transferred its Claim; provided that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register (i) on the Voting Record Date with respect to Known Eligible Claims or (ii) on the Claims Bar Date with respect to Unknown Eligible Claims.

2. Establishing Claim Amounts for Voting Purposes.

**Wells Fargo Credit Agreement Claims**. The Claim amounts of Wells Fargo Credit Agreement Claims, for voting purposes only, will be established based on the amount of the applicable positions held by such Holders, as of the Voting Record Date, as evidenced by the applicable records provided by the Wells Fargo Credit Agreement Agent in electronic Microsoft Excel format to the Debtors or the Claims and Noticing Agent no later than two (2) Business Days following the Voting Record Date.

**SLR Credit Agreement Claims**. The Claim amounts of SLR Credit Agreement Claims, for voting purposes only, will be established based on the amount of the applicable positions held by such Holders, as of the Voting Record Date, as evidenced by the applicable records provided by the SLR Credit Agreement Agent in electronic Microsoft Excel format to the Debtors or the Claims and Noticing Agent no later than two (2) Business Days following the Voting Record Date.

**Other Filed and Scheduled Claims (if applicable)**. The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim. Moreover, any amounts filled in on Ballots by the Debtors through the Claims and Noticing Agent, as applicable, are solely relevant for voting purposes and are not binding for purposes of allowance and distribution.

a. Except as provided for counterparties to Unexpired Leases in Section C.2, in tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

i. the Claim amount (A) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court, (B) set forth in an order of the Court, (C) set forth in a document executed by the Debtors

pursuant to authority granted by the Court, or (D) set forth in emailed instructions from the Debtors' counsel to the Claims and Noticing Agent with the applicable voter copied;

ii. the Claim amount contained in a Proof of Claim that is not subject to an objection and that has been timely filed by the applicable bar date (or deemed timely filed by the Court under applicable law), except for any amounts asserted on account of any interest accrued after the Petition Date; provided that any Ballot cast by a holder of a Claim who timely files a Proof of Claim in respect of (A) a contingent Claim or a Claim in a wholly-unliquidated or undetermined or unknown amount (as indicated on the face of the Claim or based on a reasonable review by the Debtors and/or the Claims and Noticing Agent) that is not the subject of an objection will count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, or (B) a partially liquidated and partially unliquidated Claim will be Allowed for voting purposes only in the liquidated amount; provided, further, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (i) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

iii. the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely filed Proof of Claim); provided that such Claim is not scheduled as contingent, disputed, or unliquidated and/or has not been paid; provided, further, that a Claim listed in the Schedules as contingent, disputed, or unliquidated shall vote at $1.00; provided, further, that all counterparties to Unexpired Leases, including previously rejected Unexpired Leases, shall be entitled to cast provisional votes in the amounts specified in Section C.2;

b. Except as provided for counterparties to Unexpired Leases in Section C.2, Proofs of Claim filed for $0.00 or Claims scheduled for $0.00 are not eligible to vote;

c. notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

d. if a Proof of Claim has been amended by a later Proof of Claim that is filed on or before the Claims Bar Date, the later-filed amending Claim shall be entitled to vote in a manner consistent with these Solicitation and Voting Procedures, and the earlier-filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended Claim. Except as provided for counterparties to Unexpired Leases in Section C.2 or as otherwise ordered by the Court, any amendments to Proofs of Claim after the Claims Bar Date shall not be considered for purposes of these Solicitation and Voting Procedures; and

e. in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes.

3. Voting and Ballot Tabulation Procedures.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots so long as (x) such waiver is noted in the voting report and (y) such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules:

a. any Claim filed in an amount denominated by a currency other than U.S. dollars shall, solely for voting purposes, (a) be converted into U.S. dollars at the Bank of Canada daily exchange rate (in the case of Claims denominated in Canadian dollars), or (b) if not denominated in Canadian dollars, will vote in the amount of $1.00;

b. except as otherwise provided in these Solicitation and Voting Procedures, unless a Ballot is timely submitted and actually received by the Claims and Noticing Agent on or prior to the Voting and Opt-Out Deadline (as the same may be extended by the Debtors), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan;

c. the Claims and Noticing Agent will date-stamp all Ballots when received;

d. the Claims and Noticing Agent shall retain copies of Ballots and all solicitation-related correspondence for two (2) years following the closing of the Chapter 11 Cases, following which period the Claims and Noticing Agent is authorized to destroy and/or otherwise dispose of: (i) all copies of Ballots; (ii) printed solicitation materials, including unused copies of the Solicitation Package; and (iii) all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such two (2) year period;

e. the Debtors will file the Voting Report by no later than January 22, 2027 at 3:00 p.m., prevailing Eastern Time, subject to any extension as a result of a change in the Combined Hearing Date;

f. the Voting Report shall, among other things, delineate every Ballot that was excluded from the voting results (each an "Irregular Ballot"), which Ballots shall not be counted in determining acceptance or rejection of the Plan, and the Voting Report shall indicate the reason why such Irregular Ballots were rejected. Irregular Ballots shall include any Ballot:

   i. that is illegible or contains insufficient information to permit the identification of the Holder of such Claim;

   ii. except for a provisional vote cast by a counterparty to an Unexpired Lease under Section C.2, cast by any Entity that does not hold a Claim in a Voting Class as of the Voting Record Date (for Known Eligible Claims) or the Claims Bar Date (for Unknown Eligible Claims);

   iii. that is unsigned or that lacks an original signature (for the avoidance of doubt, a Ballot submitted via the Claims and Noticing Agent's online balloting portal shall be deemed to contain an original signature);

   iv. that is not marked to accept or reject the Plan or is marked both to accept and reject the Plan;

   v. transmitted by any other means not specifically approved pursuant to the Disclosure Statement Order or contemplated by these Solicitation and Voting Procedures or by separate order of the Court;

   vi. sent to any of the Debtors, the Debtors' agents or representatives, or the Debtors' advisors (other than the Claims and Noticing Agent) unless such Ballot is otherwise submitted by proper means; and

   vii. submitted by any Entity not entitled to vote pursuant to the procedures described herein;

g. the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report or a supplemental voting report, as applicable;

h. neither the Debtors nor any other Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report nor will any of them incur any liability for failure to provide such notification;

i. unless waived or as ordered by the Court, any defects or irregularities in connection with submissions of Ballots must be cured prior to the Voting and Opt-Out Deadline or such Ballots will not be counted; provided that a valid opt-out election on an otherwise defective or Irregular Ballot submitted prior to the Voting and Opt-Out Deadline shall be honored as a valid opt-out election;

j. the method of delivery of Ballots to be sent to the Claims and Noticing Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Claims and Noticing Agent actually receives the executed Ballot;

k. an executed Ballot is required to be submitted by the Entity or its authorized representative submitting such Ballot;

l. delivery of a Ballot to the Claims and Noticing Agent by email, facsimile, or any electronic means, other than expressly provided in the applicable Ballot or these Solicitation and Voting Procedures, will not be valid;

m. no Ballot should be sent to the Debtors, the Debtors' agents (other than the Claims and Noticing Agent), or the Debtors' financial or legal advisors, and, if so sent, such Ballot will not be counted unless the same is otherwise validly submitted by other means;

n. if multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting and Opt-Out Deadline, the last dated, properly submitted, valid Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

o. Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes; accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted, and to the extent there are multiple Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of tabulating votes;

p. a person signing a Ballot in their capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing and if required or requested by the Claims and Noticing Agent, the Debtors, or the Court, must submit proper evidence of such fiduciary or representative capacity to the requesting party to so act on behalf of such Holder;

q. in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect

to that Claim will be counted for purposes of determining whether the Plan has been accepted or rejected;

r. subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; provided that any such rejections will be documented in the Voting Report;

s. if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only and not for purposes of allowance or distribution;

t. if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

u. after the Voting and Opt-Out Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors or further order of the Court;

v. the Debtors are authorized to enter into stipulations with the Holder of any Claim, email agreement between such Holder or its representatives and Debtors' counsel being sufficient, agreeing to the amount of a Claim for voting purposes;

w. where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other solicitation and voting procedures set forth herein) and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan;

x. in the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted; and

y. for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, however, that if separate affiliated entities, including any funds or accounts that are advised or managed by the same entity or by affiliated entities, hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holders held one Claim in such Class, and the votes of each

affiliated entity or managed fund or account will be counted separately for numerosity purposes as votes to accept or reject the Plan.

**E. Amendments to the Plan and Solicitation and Voting Procedures.**

The Debtors reserve the right to make changes to the Disclosure Statement, Plan, Combined Hearing Notice, Solicitation Package, Notice of Non-Voting Status, Ballots, Opt-Out Forms, Publication Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice, Rejection Notice, and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any materials in the Solicitation Packages before distribution.

* * * *

# EXHIBIT 3A

## Form of Ballot

## (Class 3 – Wells Fargo Credit Agreement Claims)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

**BALLOT FOR VOTING ON THE JOINT PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY JANUARY 20, 2027**

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE *JOINT CHAPTER 11 PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE* (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR THE CHILDREN'S PLACE, INC. ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY OMNI AGENT SOLUTIONS, INC. (THE "BALLOTING AGENT") PRIOR TO **3:00 P.M. PREVAILING EASTERN TIME ON JANUARY 20, 2027** (THE "VOTING DEADLINE").

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPINQUIRIES@OMNIAGNT.COM, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (866) 205-3149 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).

IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND EQUITY INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

---

1 A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

2 Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the *Joint Chapter 11 Plan of The Children's Place, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement") from Holders of Claims in Class 3, Class 4, and Class 5 (the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in that Voting Class votes to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims in the Voting Class, among others. Subject to the terms and conditions of the Plan, you will receive the treatment identified in Exhibit A attached hereto. For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.

You have received this Ballot because the Company's books and records indicate that you are a Holder of a Claim in Class 3 (Wells Fargo Credit Agreement Claims) as of December 15, 2026 (the "Voting Record Date") and as set forth in Item 1 of the Ballot. Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Claims.

This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Balloting Agent immediately.

You should review the Plan before you vote. You may wish to seek legal advice concerning the proposals related to the Plan.

The Disclosure Statement describes the rights and treatment for each Class. The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Ballot. This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto. Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims and Equity Interests. To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Balloting Agent **actually receives** it on or before the Voting Deadline.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH A CLAIM.**

**THE VOTING DEADLINE IS 3:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 20, 2027.**

**VOTING – COMPLETE THIS SECTION**

**Item 1. Principal Amount of Claims, Vote on Plan, Release Opt Out**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Claim in the Voting Class as set forth below (your "Claim"). You may vote to accept or reject the Plan. You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote counted. Please note that you are voting all of your Claims either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted. If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted. The Holder of a Claim in the Voting Class set forth below votes and elects to:

| Voting Class | Description | Amount | Vote to Accept Plan | Vote to Reject Plan | Opt Out of Third-Party Release |
|---|---|---|---|---|---|
| Class 3 | Wells Fargo Credit Agreement Claim | $____________________ | ☐ | ☐ | ☐ |

**SUBJECT TO THE PLAN'S TERMS AND EXCLUSIONS, IF YOU DO NOT OPT OUT, YOU ARE CONSENTING TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN AND COPIED IN ITEM 2 BELOW**

**YOUR VOTE ON THE PLAN WILL BE APPLIED TO EACH APPLICABLE DEBTOR IN THE SAME MANNER AND IN THE SAME AMOUNT AS INDICATED IN THIS ITEM 1.**

**Important Information Regarding the Plan Releases**

**If the Plan is confirmed and consummated through the Chapter 11 Cases, the Third-Party Release and Debtor Release shall apply. Whether or not you vote to accept the Plan, you may opt out of providing the Third-Party Release. Whether you provide or receive a release is determined by the Plan's definitions of Releasing Party and Released Party and its operative release provisions.**

**By opting out of providing the Third-Party Release, you will forego the benefit of becoming a "Released Party" and receiving the Debtor Release and Third-Party Release. You will receive the same treatment on account of your Claim(s) under the Plan regardless of whether or not you opt out of providing the Third-Party Release.**

**You may opt out of providing the Third-Party Release whether you vote to accept or reject the Plan or do not vote on the Plan. A properly completed and timely submitted opt-out election will be honored regardless of your vote on the Plan. If you do not check the opt-out box in Item 1 of this Ballot and properly complete and timely submit this Ballot in accordance with the instructions set forth herein, you will be deemed to have consented to granting the Third-Party Release. If you check the opt-out box in Item 1 of this Ballot and properly complete and timely submit this Ballot in accordance with the instructions set forth herein, you will not grant the Third-Party Release.**

## Item 2. Release Information

Article VIII.C of the Plan provides a release by the Debtors (the "**Debtor Release**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, and subject to the completion and results of the Restructuring Committee's investigation, pursuant to the Bankruptcy Code and Bankruptcy Rules, for good and valuable consideration, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders and the results of the Restructuring Committee Investigation, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Wind-Down Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors or Wind-Down Debtors or their respective Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VIII.D of the Plan provides for the following release (the "**Third-Party Release**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, as of the Effective Date, each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Wind-Down Debtor, and Released Party from any and all Claims and Causes of Action, whether known**

**or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Article VIII.D, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) a sound exercise of the Debtors' business judgment; (viii) given and made after due notice and opportunity for hearing; and (ix) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

**Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.D and does not exercise such opt out is a Releasing Party and may not assert any Claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (i) that opted out of the releases contained in this Article VIII.D or (ii) was deemed to reject the Plan may not assert any Claim or other Cause of Action against any Released Party for which it is asserted or implied that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying Claim or Cause of Action; *provided*, *however*, that nothing in this paragraph requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law; *provided*, *further*, that no Claim or Cause of Action of any kind may be asserted, commenced, or pursued against the Canadian Information Officer without leave of the Canadian Court.**

<u>Definitions Related to the Debtor Release and Third-Party Release</u>:

*UNDER THE PLAN, "**RELEASED PARTY**" OR "**RELEASED PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) AND (B); (D) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (C); AND (E) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES DESCRIBED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASED PARTY; PROVIDED, FURTHER, HOWEVER, THAT THE FINAL INCLUSION OF EACH RELEASED PARTY IN THE CONFIRMATION ORDER IS SUBJECT TO THE ONGOING REVIEW AND FINAL APPROVAL OF THE RESTRUCTURING COMMITTEE.*

*UNDER THE PLAN, "**RELEASING PARTY**" OR "**RELEASING PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (D) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (E) ALL HOLDERS OF CLAIMS WHO ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (F) ALL HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (G) ALL HOLDERS OF INTERESTS; (H) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) THROUGH (G); (I) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (H); AND (J) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER, THAT ANY HOLDER OF INTERESTS WHO ACQUIRED SUCH INTERESTS AFTER THE VOTING RECORD DATE (AS SUCH TERM IS DEFINED IN THE DISCLOSURE STATEMENT ORDER) AND DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER, THAT ANY HOLDER OF CLAIMS OR INTERESTS WHO DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY.*

*UNDER THE PLAN, "**RELATED PARTY**" MEANS, COLLECTIVELY, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS (WHETHER BY OPERATION OF LAW OR OTHERWISE), SUBSIDIARIES, CURRENT, FORMER, AND FUTURE ASSOCIATED ENTITIES, MANAGED OR ADVISED ENTITIES, ACCOUNTS OR FUNDS, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS, MANAGERS, FIDUCIARIES, TRUSTEES, EMPLOYEES, AGENTS (INCLUDING THE DISBURSING AGENT), RESTRUCTURING COMMITTEE MEMBERS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, REPRESENTATIVES ADVISORS, PREDECESSORS, SUCCESSORS, AND ASSIGNS, EACH SOLELY IN THEIR CAPACITY AS SUCH (INCLUDING ANY ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), AND THE RESPECTIVE HEIRS, EXECUTORS, ESTATES, SERVANTS AND NOMINEES OF THE FOREGOING.*

* * * * *

**Item 3. Certification, Ballot Completion, and Delivery Instructions**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and to the Debtor:

a. That as of the Voting Record Date, either: (i) the undersigned is the Holder of the Claims in the Voting Class as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Class as set forth in Item 1;

b. that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the undersigned has cast the same vote with respect to all Claims in each particular Voting Class; and

d. that no other Ballots with respect to the Claims in the Voting Class identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION |
|---|

**Name of Holder:** ______________________________
(Print or Type)

**Signature:** ______________________________

**Name of Signatory:** ______________________________
(If other than Holder)

**Title:** ______________________________

**Address:** ______________________________

**Email Address:** ______________________________

**Date Completed:** ______________________________

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT PRIOR TO THE VOTING DEADLINE, WHICH IS 3:00 P.M. (PREVAILING EASTERN TIME) ON JANUARY 20, 2027.**

**To submit a paper Ballot by First Class Mail, Overnight Courier, or Hand Delivery (with a signature):**

The Children’s Place, Inc. Ballot Processing Center
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave, Suite 100
Woodland Hills, CA 91367

To arrange hand delivery of your Ballot, please contact the Balloting Agent via email at TPCInquiries@OmniAgnt.com (with “The Children’s Place Ballot Delivery” in the subject line) at least 24 hours prior to your arrival at the Omni address above and provide the anticipated date and time of delivery.

**To submit your Ballot via electronic, online submission:**

To submit your ballot via the Claims and Noticing Agent's online portal, visit https://omniagentsolutions.com/TCP, click on the "Balloting" section of the website (the "E-Ballot Portal"), select "Submit E-Ballot" and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized unique Ballot:**

Unique E-Ballot ID#: ______________________

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPINQUIRIES@OMNIAGNT.COM, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (818) 510-4678 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).**

**INSTRUCTIONS FOR COMPLETING THIS CLASS 3 BALLOT**

1. This Ballot contains voting options with respect to the Plan.

2. To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered by (a) submitting it electronically through the E-Ballot Portal at https://omniagentsolutions.com/TCP-Ballots or (b) first-class mail, overnight courier, or hand delivery to The Children's Place Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, so that this Ballot is actually received by the Claims and Noticing Agent on or before the Voting Deadline, **3:00 p.m. prevailing Eastern Time on January 20, 2027.**

3. To vote, you MUST deliver your completed Ballot (whether via first-class mail or hand delivery to the Balloting Agent) so that it is ACTUALLY RECEIVED by the Balloting Agent on or before the Voting Deadline by one of the methods described above. **The Voting Deadline is 3:00 p.m. prevailing Eastern Time on January 20, 2027**.

4. Any Ballot received by the Balloting Agent after the Voting and Opt-Out Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company determines otherwise. No Ballot may be withdrawn or modified after the Voting and Opt-Out Deadline without the Company's prior written consent.

5. Additionally, the following Ballots will not be counted: (a) any Ballot that partially rejects and partially accepts the Plan; (b) Ballots sent to the Debtors, the Debtors' agents (other than Balloting Agent), the Debtors' financial or legal advisors or any other person (other than the Balloting Agent); (c) Ballots sent by facsimile or electronic mail; (d) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (e) any Ballot cast by an Entity that does not hold a Class 3—Wells Fargo Credit Agreement Claim (as of the Voting Record Date); (f) any Ballot submitted by a Holder not entitled to vote pursuant to the Plan; (g) any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed signed); and/or (h) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

6. Delivery of a Ballot reflecting your vote to the Balloting Agent will be deemed to have occurred only when the Balloting Agent actually receives your paper Ballot or E-Ballot. In all cases, you should allow sufficient time to assure timely delivery.

7. If you deliver multiple Ballots to the Balloting Agent, ONLY the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8. You must vote all of your Claims in the Voting Class either to accept or reject the Plan and may not split your vote. Further, if a Holder has multiple Claims in the Voting Class, the Company may direct the Balloting Agent to aggregate those Claims for the purpose of counting votes.

9. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Equity Interest, or an assertion or admission of a Claim, in the Company's Chapter 11 Cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. SIGN AND DATE your Ballot.[1] In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot. Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

12. PLEASE RETURN YOUR BALLOT PROMPTLY.

13. THE BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPInquiries@OmniAgnt.com, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (866) 205-3149 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).**

***ACCESS TO THE PLAN AND DISCLOSURE STATEMENT*: THE DISCLOSURE STATEMENT, PLAN, AND ORDER MAY BE ACCESSED, FREE OF CHARGE, AT: https://omniagentsolutions.com/TCP-Ballots, or by using the following QR Code:**

**PLEASE SUBMIT YOUR BALLOT PROMPTLY**

[1] If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Company, the Company's counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

# Exhibit A

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:

| | | |
|---|---|---|
| Class 3 | Wells Fargo Credit Agreement Claims | Except to the extent that a Holder of an Allowed Wells Fargo Credit Agreement Claim agrees to a less favorable treatment, each Holder of an Allowed Wells Fargo Credit Agreement Claim shall receive on or before the Effective Date, indefeasible payment in full in Cash of its Allowed Wells Fargo Credit Agreement Claim from the proceeds of the collateral securing such Claim, in accordance with the relative lien priorities applicable to such collateral and subject to the terms of the applicable intercreditor agreement, or such other treatment as may be permissible under section 1129 of the Bankruptcy Code. In addition, to the extent not otherwise paid as Restructuring Expenses, the Debtors will pay to the Wells Fargo Credit Agreement Agent, an amount equal to its outstanding documented fees and expenses in such capacities, including counsel fees and expenses, on or before the Effective Date in Cash. |

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

# <u>EXHIBIT 3B</u>

**Form of Ballot**

**(Class 4 – SLR Credit Agreement Claims)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

**BALLOT FOR VOTING ON THE JOINT PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY JANUARY 20, 2027**

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE *JOINT CHAPTER 11 PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE* (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR THE CHILDREN'S PLACE, INC. ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY OMNI AGENT SOLUTIONS, INC. (THE "BALLOTING AGENT") PRIOR TO **3:00 P.M. PREVAILING EASTERN TIME ON JANUARY 20, 2027** (THE "VOTING DEADLINE").

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPINQUIRIES@OMNIAGNT.COM, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (866) 205-3149 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).

IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND EQUITY INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

---

1 A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

2 Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the *Joint Chapter 11 Plan of The Children's Place, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement") from Holders of Claims in Class 3, Class 4, and Class 5 (the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in that Voting Class votes to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims in the Voting Class, among others. Subject to the terms and conditions of the Plan, you will receive the treatment identified in Exhibit A attached hereto. For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.

You have received this Ballot because the Company's books and records indicate that you are a Holder of a Claim in Class 4 (SLR Credit Agreement Claims) as of December 15, 2026 (the "Voting Record Date") and as set forth in Item 1 of the Ballot. Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Claims.

This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Balloting Agent immediately.

You should review the Plan before you vote. You may wish to seek legal advice concerning the proposals related to the Plan.

The Disclosure Statement describes the rights and treatment for each Class. The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Ballot. This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto. Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims and Equity Interests. To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Balloting Agent **actually receives** it on or before the Voting Deadline.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH A CLAIM.**

**THE VOTING DEADLINE IS 3:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 20, 2027.**

**VOTING – COMPLETE THIS SECTION**

**Item 1. Principal Amount of Claims, Vote on Plan, Release Opt Out**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Claim in the Voting Class as set forth below (your "Claim"). You may vote to accept or reject the Plan. You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote counted. Please note that you are voting all of your Claims either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted. If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted. The Holder of a Claim in the Voting Class set forth below votes and elects to:

| Voting Class | Description | Amount | Vote to Accept Plan | Vote to Reject Plan | Opt Out of Third-Party Release |
|---|---|---|---|---|---|
| Class 4 | SLR Credit Agreement Claim | $______________________ | ☐ | ☐ | ☐ |

**SUBJECT TO THE PLAN'S TERMS AND EXCLUSIONS, IF YOU DO NOT OPT OUT, YOU ARE CONSENTING TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN AND COPIED IN ITEM 2 BELOW**

**YOUR VOTE ON THE PLAN WILL BE APPLIED TO EACH APPLICABLE DEBTOR IN THE SAME MANNER AND IN THE SAME AMOUNT AS INDICATED IN THIS ITEM 1.**

**Important Information Regarding the Plan Releases**

**If the Plan is confirmed and consummated through the Chapter 11 Cases, the Third-Party Release and Debtor Release shall apply. Whether or not you vote to accept the Plan, you may opt out of providing the Third-Party Release. Whether you provide or receive a release is determined by the Plan's definitions of Releasing Party and Released Party and its operative release provisions.**

**By opting out of providing the Third-Party Release, you will forego the benefit of becoming a "Released Party" and receiving the Debtor Release and Third-Party Release. You will receive the same treatment on account of your Claim(s) under the Plan regardless of whether or not you opt out of providing the Third-Party Release.**

**You may opt out of providing the Third-Party Release whether you vote to accept or reject the Plan or do not vote on the Plan. A properly completed and timely submitted opt-out election will be honored regardless of your vote on the Plan. If you do not check the opt-out box in Item 1 of this Ballot and properly complete and timely submit this Ballot in accordance with the instructions set forth herein, you will be deemed to have consented to granting the Third-Party Release. If you check the opt-out box in Item 1 of this Ballot and properly complete and timely submit this Ballot in accordance with the instructions set forth herein, you will not grant the Third-Party Release.**

## Item 2. Release Information

Article VIII.C of the Plan provides a release by the Debtors (the "**Debtor Release**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, and subject to the completion and results of the Restructuring Committee's investigation, pursuant to the Bankruptcy Code and Bankruptcy Rules, for good and valuable consideration, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders and the results of the Restructuring Committee Investigation, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Wind-Down Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors or Wind-Down Debtors or their respective Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VIII.D of the Plan provides for the following release (the "**Third-Party Release**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, as of the Effective Date, each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Wind-Down Debtor, and Released Party from any and all Claims and Causes of Action, whether known**

**or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Article VIII.D, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) a sound exercise of the Debtors' business judgment; (viii) given and made after due notice and opportunity for hearing; and (ix) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

**Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.D and does not exercise such opt out is a Releasing Party and may not assert any Claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (i) that opted out of the releases contained in this Article VIII.D or (ii) was deemed to reject the Plan may not assert any Claim or other Cause of Action against any Released Party for which it is asserted or implied that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying Claim or Cause of Action; *provided*, *however*, that nothing in this paragraph requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law; *provided*, *further*, that no Claim or Cause of Action of any kind may be asserted, commenced, or pursued against the Canadian Information Officer without leave of the Canadian Court.**

Definitions Related to the Debtor Release and Third-Party Release:

*UNDER THE PLAN, "**RELEASED PARTY**" OR "**RELEASED PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) AND (B); (D) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (C); AND (E) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES DESCRIBED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASED PARTY; PROVIDED, FURTHER, HOWEVER, THAT THE FINAL INCLUSION OF EACH RELEASED PARTY IN THE CONFIRMATION ORDER IS SUBJECT TO THE ONGOING REVIEW AND FINAL APPROVAL OF THE RESTRUCTURING COMMITTEE.*

*UNDER THE PLAN, "**RELEASING PARTY"** OR "**RELEASING PARTIES"** MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (D) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (E) ALL HOLDERS OF CLAIMS WHO ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (F) ALL HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (G) ALL HOLDERS OF INTERESTS; (H) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) THROUGH (G); (I) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (H); AND (J) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER, THAT ANY HOLDER OF INTERESTS WHO ACQUIRED SUCH INTERESTS AFTER THE VOTING RECORD DATE (AS SUCH TERM IS DEFINED IN THE DISCLOSURE STATEMENT ORDER) AND DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER¸ THAT ANY HOLDER OF CLAIMS OR INTERESTS WHO DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY.*

*UNDER THE PLAN, "**RELATED PARTY**" MEANS, COLLECTIVELY, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS (WHETHER BY OPERATION OF LAW OR OTHERWISE), SUBSIDIARIES, CURRENT, FORMER, AND FUTURE ASSOCIATED ENTITIES, MANAGED OR ADVISED ENTITIES, ACCOUNTS OR FUNDS, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS, MANAGERS, FIDUCIARIES, TRUSTEES, EMPLOYEES, AGENTS (INCLUDING THE DISBURSING AGENT), RESTRUCTURING COMMITTEE MEMBERS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, REPRESENTATIVES ADVISORS, PREDECESSORS, SUCCESSORS, AND ASSIGNS, EACH SOLELY IN THEIR CAPACITY AS SUCH (INCLUDING ANY ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), AND THE RESPECTIVE HEIRS, EXECUTORS, ESTATES, SERVANTS AND NOMINEES OF THE FOREGOING.*

*** * * * ***

**Item 3. Certification, Ballot Completion, and Delivery Instructions**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and to the Debtor:

a. That as of the Voting Record Date, either: (i) the undersigned is the Holder of the Claims in the Voting Class as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Class as set forth in Item 1;

b. that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the undersigned has cast the same vote with respect to all Claims in each particular Voting Class; and

d. that no other Ballots with respect to the Claims in the Voting Class identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION |
|---|

**Name of Holder:** ______________________________
(Print or Type)

**Signature:** ______________________________

**Name of Signatory:** ______________________________
(If other than Holder)

**Title:** ______________________________

**Address:** ______________________________

**Email Address:** ______________________________

**Date Completed:** ______________________________

**<u>RETURN INSTRUCTIONS</u>**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT PRIOR TO THE VOTING DEADLINE, WHICH IS 3:00 P.M. (PREVAILING EASTERN TIME) ON JANUARY 20, 2027.**

**To submit a paper Ballot by First Class Mail, Overnight Courier, or Hand Delivery (with a signature):**

The Children’s Place, Inc. Ballot Processing Center
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave, Suite 100
Woodland Hills, CA 91367

To arrange hand delivery of your Ballot, please contact the Balloting Agent via email at TCPInquiries@OmniAgnt.com (with “The Children’s Place Ballot Delivery” in the subject line) at least 24 hours prior to your arrival at the Omni address above and provide the anticipated date and time of delivery.

**To submit your Ballot via electronic, online submission:**

To submit your ballot via the Claims and Noticing Agent's online portal, visit https://omniagentsolutions.com/TCP, click on the "Balloting" section of the website (the "E-Ballot Portal"), select "Submit E-Ballot", and follow the instructions to submit your Ballot.

**IMPORTANT NOTE**: **You will need the following information to retrieve and submit your customized unique Ballot:**

Unique E-Ballot ID#: ______________________

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPINQUIRIES@OMNIAGNT.COM, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (818) 510-4678 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).**

**INSTRUCTIONS FOR COMPLETING THIS CLASS 4 BALLOT**

1. This Ballot contains voting options with respect to the Plan.

2. To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered by (a) submitting it electronically through the E-Ballot Portal at https://omniagentsolutions.com/TCP-Ballots or (b) first-class mail, overnight courier, or hand delivery to The Children's Place Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, so that this Ballot is actually received by the Claims and Noticing Agent on or before the Voting Deadline, **3:00 p.m. prevailing Eastern Time on January 20, 2027.**

3. To vote, you MUST deliver your completed Ballot (whether via first-class mail or hand delivery to the Balloting Agent) so that it is ACTUALLY RECEIVED by the Balloting Agent on or before the Voting Deadline by one of the methods described above. **The Voting Deadline is 3:00 p.m. prevailing Eastern Time on January 20, 2027**.

4. Any Ballot received by the Balloting Agent after the Voting and Opt-Out Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company determines otherwise. No Ballot may be withdrawn or modified after the Voting and Opt-Out Deadline without the Company's prior written consent.

5. Additionally, the following Ballots will not be counted: (a) any Ballot that partially rejects and partially accepts the Plan; (b) Ballots sent to the Debtors, the Debtors' agents (other than Balloting Agent), the Debtors' financial or legal advisors or any other person (other than the Balloting Agent); (c) Ballots sent by facsimile or electronic mail; (d) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (e) any Ballot cast by an Entity that does not hold a Class 4—SLR Credit Agreement Claim (as of the Voting Record Date); (f) any Ballot submitted by a Holder not entitled to vote pursuant to the Plan; (g) any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed signed); and/or (h) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

6. Delivery of a Ballot reflecting your vote to the Balloting Agent will be deemed to have occurred only when the Balloting Agent actually receives your paper Ballot or E-Ballot. In all cases, you should allow sufficient time to assure timely delivery.

7. If you deliver multiple Ballots to the Balloting Agent, ONLY the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8. You must vote all of your Claims in the Voting Class either to accept or reject the Plan and may not split your vote. Further, if a Holder has multiple Claims in the Voting Class, the Company may direct the Balloting Agent to aggregate those Claims for the purpose of counting votes.

9. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Equity Interest, or an assertion or admission of a Claim, in the Company's Chapter 11 Cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. SIGN AND DATE your Ballot.[1] In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot. Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

12. PLEASE RETURN YOUR BALLOT PROMPTLY.

13. THE BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPInquiries@OmniAgnt.com, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (866) 205-3149 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).**

***ACCESS TO THE PLAN AND DISCLOSURE STATEMENT*: THE DISCLOSURE STATEMENT, PLAN, AND ORDER MAY BE ACCESSED, FREE OF CHARGE, AT: https://omniagentsolutions.com/TCP-Ballots, or by using the following QR Code:**

**PLEASE SUBMIT YOUR BALLOT PROMPTLY**

[1] If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Company, the Company's counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

# Exhibit A

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:

| | | |
|---|---|---|
| Class 4 | SLR Credit Agreement Claims | Except to the extent that a Holder of an Allowed SLR Credit Agreement Claim agrees to a less favorable treatment, each Holder of an Allowed SLR Credit Agreement Claim shall receive on or before the Effective Date indefeasible payment in full in Cash of its Allowed SLR Credit Agreement Claim from the proceeds of the collateral securing such Claim, in accordance with the relative lien priorities applicable to such collateral and subject to the terms of the applicable intercreditor agreement, or such other treatment as may be permissible under section 1129 of the Bankruptcy Code. In addition, to the extent not otherwise paid as Restructuring Expenses, the Debtors will pay to the SLR Credit Agreement Agent, an amount equal to its outstanding documented fees and expenses in such capacities, including counsel fees and expenses, on the Effective Date in Cash. |

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

# EXHIBIT 3C

## Form of Ballot

## (Class 5 – General Unsecured Claims)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

**BALLOT FOR VOTING ON THE JOINT PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY JANUARY 20, 2027**

PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE *JOINT CHAPTER 11 PLAN OF THE CHILDREN'S PLACE, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE* (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR THE CHILDREN'S PLACE, INC. ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN).

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY OMNI AGENT SOLUTIONS, INC. (THE "BALLOTING AGENT") PRIOR TO **3:00 P.M. PREVAILING EASTERN TIME ON JANUARY 20, 2027** (THE "VOTING DEADLINE").

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPINQUIRIES@OMNIAGNT.COM, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (866) 205-3149 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).

IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND EQUITY INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

---

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

[2] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the *Joint Chapter 11 Plan of The Children's Place, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Plan"), attached as Exhibit A to the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement") from Holders of Claims in Class 3, Class 4, and Class 5 (the "Voting Classes").

Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in that Voting Class votes to accept the Plan. The Bankruptcy Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims in the Voting Class, among others. Subject to the terms and conditions of the Plan, you will receive the treatment identified in Exhibit A attached hereto. For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.

You have received this Ballot because the Company's books and records indicate that you are a Holder of a Claim in Class 5 (General Unsecured Claims) as of December 15, 2026 (the "Voting Record Date") or are otherwise eligible to vote, including on a provisional basis as a counterparty to an Unexpired Lease, under the Solicitation and Voting Procedures and as set forth in Item 1 of the Ballot. Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Claims. Provisional votes cast by counterparties to Unexpired Leases remain subject to the Debtors' right to object as provided in the Solicitation and Voting Procedures.

This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Balloting Agent immediately.

You should review the Plan before you vote. You may wish to seek legal advice concerning the proposals related to the Plan.

The Disclosure Statement describes the rights and treatment for each Class. The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Ballot. This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto. Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims and Equity Interests. To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that the Balloting Agent **actually receives** it on or before the Voting Deadline.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE SUCH A CLAIM.**

**THE VOTING DEADLINE IS 3:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 20, 2027.**

**VOTING – COMPLETE THIS SECTION**

**Item 1. Principal Amount of Claims, Vote on Plan, Release Opt Out**

The undersigned hereby certifies that, as of the applicable date under the Solicitation and Voting Procedures, the undersigned was the Holder of a Claim in the Voting Class as set forth below (your "Claim"). You may vote to accept or reject the Plan. You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan in order to have your vote counted. Please note that you are voting all of your Claims either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted. If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted. The Holder of a Claim in the Voting Class set forth below votes and elects to:

| Voting Class | Description | Amount | Vote to Accept Plan | Vote to Reject Plan | Opt Out of Third-Party Release |
|---|---|---|---|---|---|
| Class 5 | General Unsecured Claim | $____________________ | ☐ | ☐ | ☐ |

**SUBJECT TO THE PLAN'S TERMS AND EXCLUSIONS, IF YOU DO NOT OPT OUT, YOU ARE CONSENTING TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN AND COPIED IN ITEM 2 BELOW**

**YOUR VOTE ON THE PLAN WILL BE APPLIED TO EACH APPLICABLE DEBTOR IN THE SAME MANNER AND IN THE SAME AMOUNT AS INDICATED IN THIS ITEM 1.**

**Important Information Regarding the Plan Releases**

**If the Plan is confirmed and consummated through the Chapter 11 Cases, the Third-Party Release and Debtor Release shall apply. Whether or not you vote to accept the Plan, you may opt out of providing the Third-Party Release. Whether you provide or receive a release is determined by the Plan's definitions of Releasing Party and Released Party and its operative release provisions.**

**By opting out of providing the Third-Party Release, you will forego the benefit of becoming a "Released Party" and receiving the Debtor Release and Third-Party Release. You will receive the same treatment on account of your Claim(s) under the Plan regardless of whether or not you opt out of providing the Third-Party Release.**

**You may opt out of providing the Third-Party Release whether you vote to accept or reject the Plan or do not vote on the Plan. A properly completed and timely submitted opt-out election will be honored regardless of your vote on the Plan. If you do not check the opt-out box in Item 1 of this Ballot and properly complete and timely submit this Ballot in accordance with the instructions set forth herein, you will be deemed to have consented to granting the Third-Party Release. If you check the opt-out box in Item 1 of this Ballot and properly complete and timely submit this Ballot in accordance with the instructions set forth herein, you will not grant the Third-Party Release.**

## Item 2. Release Information

Article VIII.C of the Plan provides a release by the Debtors (the "**Debtor Release**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, and subject to the completion and results of the Restructuring Committee's investigation, pursuant to the Bankruptcy Code and Bankruptcy Rules, for good and valuable consideration, as of the Effective Date, each Released Party is deemed, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of, the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Wind-Down Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders and the results of Restructuring Committee Investigation, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Wind-Down Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors or Wind-Down Debtors or their respective Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.**

Article VIII.D of the Plan provides for the following release (the "**Third-Party Release**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, as of the Effective Date, each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Wind-Down Debtor, and Released Party from any and all Claims and Causes of Action, whether known**

**or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Article VIII.D, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) a sound exercise of the Debtors' business judgment; (viii) given and made after due notice and opportunity for hearing; and (ix) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

**Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.D and does not exercise such opt out is a Releasing Party and may not assert any Claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (i) that opted out of the releases contained in this Article VIII.D or (ii) was deemed to reject the Plan may not assert any Claim or other Cause of Action against any Released Party for which it is asserted or implied that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying Claim or Cause of Action; *provided*, *however*, that nothing in this paragraph requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law; *provided*, *further*, that no Claim or Cause of Action of any kind may be asserted, commenced, or pursued against the Canadian Information Officer without leave of the Canadian Court.**

<u>Definitions Related to the Debtor Release and Third-Party Release</u>:

*UNDER THE PLAN, "**RELEASED PARTY**" OR "**RELEASED PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) AND (B); (D) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (C); AND (E) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES DESCRIBED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASED PARTY; PROVIDED, FURTHER, HOWEVER, THAT THE FINAL INCLUSION OF EACH RELEASED PARTY IN THE CONFIRMATION ORDER IS SUBJECT TO THE ONGOING REVIEW AND FINAL APPROVAL OF THE RESTRUCTURING COMMITTEE.*

*UNDER THE PLAN, "**RELEASING PARTY**" OR "**RELEASING PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (D) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (E) ALL HOLDERS OF CLAIMS WHO ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (F) ALL HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (G) ALL HOLDERS OF INTERESTS; (H) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) THROUGH (G); (I) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (H); AND (J) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER, THAT ANY HOLDER OF INTERESTS WHO ACQUIRED SUCH INTERESTS AFTER THE VOTING RECORD DATE (AS SUCH TERM IS DEFINED IN THE DISCLOSURE STATEMENT ORDER) AND DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER, THAT ANY HOLDER OF CLAIMS OR INTERESTS WHO DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY.*

*UNDER THE PLAN, "**RELATED PARTY**" MEANS, COLLECTIVELY, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS (WHETHER BY OPERATION OF LAW OR OTHERWISE), SUBSIDIARIES, CURRENT, FORMER, AND FUTURE ASSOCIATED ENTITIES, MANAGED OR ADVISED ENTITIES, ACCOUNTS OR FUNDS, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS, MANAGERS, FIDUCIARIES, TRUSTEES, EMPLOYEES, AGENTS (INCLUDING THE DISBURSING AGENT), RESTRUCTURING COMMITTEE MEMBERS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, REPRESENTATIVES ADVISORS, PREDECESSORS, SUCCESSORS, AND ASSIGNS, EACH SOLELY IN THEIR CAPACITY AS SUCH (INCLUDING ANY ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), AND THE RESPECTIVE HEIRS, EXECUTORS, ESTATES, SERVANTS AND NOMINEES OF THE FOREGOING.*

* * * * *

**Item 3. Certification, Ballot Completion, and Delivery Instructions**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and to the Debtor:

a. That as of the applicable date under the Solicitation and Voting Procedures, either: (i) the undersigned is the Holder of the Claims in the Voting Class as set forth in Item 1; or (ii) the

undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Class as set forth in Item 1;

b. that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c. that the undersigned has cast the same vote with respect to all Claims in each particular Voting Class; and

d. that no other Ballots with respect to the Claims in the Voting Class identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION |
|---|

**Name of Holder:** ______________________________
(Print or Type)

**Signature:** ______________________________

**Name of Signatory:** ______________________________
(If other than Holder)

**Title:** ______________________________

**Address:** ______________________________

**Email Address:** ______________________________

**Date Completed:** ______________________________

**RETURN INSTRUCTIONS**

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY. THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE BALLOTING AGENT PRIOR TO THE VOTING DEADLINE, WHICH IS 3:00 P.M. (PREVAILING EASTERN TIME) ON JANUARY 20, 2027.**

**To submit a paper Ballot by First Class Mail, Overnight Courier, or Hand Delivery (with a signature):**

The Children’s Place, Inc. Ballot Processing Center
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave, Suite 100
Woodland Hills, CA 91367

To arrange hand delivery of your Ballot, please contact the Balloting Agent via email at TCPInquiries@OmniAgnt.com (with “The Children’s Place Ballot Delivery” in the subject line) at least 24 hours prior to your arrival at the Omni address above and provide the anticipated date and time of delivery.

**To submit your Ballot via electronic, online submission:**

To submit your ballot via the Claims and Noticing Agent's online portal, visit https://omniagentsolutions.com/TCP, click on the "Balloting" section of the website (the "E-Ballot Portal"), select "Submit E-Ballot", and follow the instructions to submit your Ballot.

**IMPORTANT NOTE**: **You will need the following information to retrieve and submit your customized unique Ballot:**

Unique E-Ballot ID#: ______________________

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPINQUIRIES@OMNIAGNT.COM, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (818) 510-4678 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).**

**INSTRUCTIONS FOR COMPLETING THIS CLASS 5 BALLOT**

1. This Ballot contains voting options with respect to the Plan.

2. To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered by (a) submitting it electronically through the E-Ballot Portal at https://omniagentsolutions.com/TCP-Ballots or (b) first-class mail, overnight courier, or hand delivery to The Children's Place Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, so that this Ballot is actually received by the Claims and Noticing Agent on or before the Voting Deadline, **3:00 p.m. prevailing Eastern Time on January 20, 2027.**

3. To vote, you MUST deliver your completed Ballot (whether via first-class mail or hand delivery to the Balloting Agent) so that it is ACTUALLY RECEIVED by the Balloting Agent on or before the Voting Deadline by one of the methods described above. **The Voting Deadline is 3:00 p.m. prevailing Eastern Time on January 20, 2027**.

4. Any Ballot received by the Balloting Agent after the Voting and Opt-Out Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company determines otherwise. No Ballot may be withdrawn or modified after the Voting and Opt-Out Deadline without the Company's prior written consent.

5. Additionally, the following Ballots will not be counted: (a) any Ballot that partially rejects and partially accepts the Plan; (b) Ballots sent to the Debtors, the Debtors' agents (other than Balloting Agent), the Debtors' financial or legal advisors or any other person (other than the Balloting Agent); (c) Ballots sent by facsimile or electronic mail; (d) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; (e) any Ballot cast by an Entity that does not hold a Class 5—General Unsecured Claim (eligible to vote under the Solicitation and Voting Procedures); (f) any Ballot submitted by a Holder not entitled to vote pursuant to the Plan; (g) any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed signed); and/or (h) any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

6. Delivery of a Ballot reflecting your vote to the Balloting Agent will be deemed to have occurred only when the Balloting Agent actually receives your paper Ballot or E-Ballot. In all cases, you should allow sufficient time to assure timely delivery.

7. If you deliver multiple Ballots to the Balloting Agent, ONLY the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8. You must vote all of your Claims in the Voting Class either to accept or reject the Plan and may not split your vote. Further, if a Holder has multiple Claims in the Voting Class, the Company may direct the Balloting Agent to aggregate those Claims for the purpose of counting votes.

9. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Equity Interest, or an assertion or admission of a Claim, in the Company's Chapter 11 Cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. SIGN AND DATE your Ballot.[1] In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot. Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

12. PLEASE RETURN YOUR BALLOT PROMPTLY.

13. THE BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CONTACT THE BALLOTING AGENT BY EMAIL AT TCPInquiries@OmniAgnt.com, REFERENCING "THE CHILDREN'S PLACE SOLICITATION INQUIRY" IN THE SUBJECT LINE, OR BY PHONE AT (866) 205-3149 (TOLL FREE, U.S. AND CANADA) OR +1 (818) 510-4678 (INTERNATIONAL).**

***ACCESS TO THE PLAN AND DISCLOSURE STATEMENT*: THE DISCLOSURE STATEMENT, PLAN, AND ORDER MAY BE ACCESSED, FREE OF CHARGE, AT: https://omniagentsolutions.com/TCP-Ballots, or by using the following QR Code:**

**PLEASE SUBMIT YOUR BALLOT PROMPTLY**

[1] If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Company, the Company's counsel, or the Bankruptcy Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

# Exhibit A

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:

| | | |
|---|---|---|
| Class 5 | General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of each of (i) any additional Distributable Value allocable to the applicable Debtor subsidiary following payment in full of all Allowed Class 1, 2, 3, and 4 Claims (and subject to any applicable intercreditor or subordination agreement) and (ii) the GUC Distribution Reserve, or otherwise receive treatment consistent with the provisions of section 1129(b) of the Bankruptcy Code; provided, that to the extent that a Holder of a General Unsecured Claim against a Debtor holds any joint and several liability claims, guaranty claims, or other similar claims against any other Debtor arising from or relating to the same obligations or liability as such General Unsecured Claim, such Holder shall only be entitled to a distribution on one Allowed General Unsecured Claim against the Debtors in full and final satisfaction of all such Claims. |

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

# EXHIBIT 4

## Notice of Non-Voting Status

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

**NOTICE OF NON-VOTING STATUS**
**TO HOLDERS OR POTENTIAL HOLDERS OF (I) UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN, (II) IMPAIRED CLAIMS OR INTERESTS DEEMED TO REJECT THE PLAN, AND (III) DISPUTED CLAIMS**

**PLEASE TAKE NOTICE THAT** on [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) authorizing The Children's Place, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of the Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Omni Agent Solutions, Inc., the Debtors' balloting agent in the Chapter 11 Cases (the "Balloting Agent"), by: (a) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/TCP, or by using the QR code below; (b) writing to The Children's Place, Inc. Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; (c) emailing the Balloting Agent at TCPInquiries@OmniAgnt.com, referencing "The Children's Place – Solicitation Inquiry" in the subject line; or (d) calling the Balloting Agent at (866) 205-3149 (Toll Free, U.S. and Canada) or +1 (818) 510-4678 (International). You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via the Bankruptcy Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

1 A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

2 Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** you are a Holder or potential Holder of a Claim against or Equity Interest in the Debtors that, due to the nature and treatment of such Claim or Equity Interest under the Plan, is not entitled to vote on the Plan. Specifically, under the terms of the Plan, (i) a Holder of a Claim in a Class that is not Impaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, (ii) a Holder of a Claim or Equity Interest in a Class that is Impaired under the Plan and conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, or (iii) a Holder of a Claim that is subject to a pending objection by the Debtors, is not entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider confirmation of the Plan and final approval of the Disclosure Statement will commence on **January 26, 2027, at [●]:00 a.m., (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "Combined Hearing") before the Honorable Judge Stacy L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Newark, NJ 07102.

**PLEASE BE ADVISED:** THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE DEBTORS WITHOUT FURTHER NOTICE OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and final approval of the Disclosure Statement is **January 20, 2027, at 3:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline"). Any objection to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) state with particularity the basis of the objection; (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of New Jersey; and (d) be filed with the Clerk of the Bankruptcy Court, and shall be served upon the following parties so as to be **actually received** on or before the Combined Objection Deadline:

| ***Debtors*** |
|---|
| **The Children's Place, Inc.**<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367 |
| ***Proposed Co-Counsel for the Debtors*** |

<table>
<tr><td colspan="2">White & Case LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Attention: Gregory F. Pesce (gregory.pesce@whitecase.com);<br>Andrew F. O’Neill (aoneill@whitecase.com); Amanda Parra Criste (aparacriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com)</td></tr>
<tr><td colspan="2">Proposed Co-Counsel for the Debtors</td></tr>
<tr><td colspan="2">Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine (wusatine@coleschotz.com); Seth Van Aalten (svanaalten@coleschotz.com);<br>Justin R. Alberto (jalberto@coleschotz.com); and Daniel J. Harris (dharris@coleschotz.com)</td></tr>
<tr><td colspan="2">Counsel for the Committee</td></tr>
<tr><td colspan="2">[●] [Address] Attention: [●]</td></tr>
<tr><td colspan="2">United States Trustee</td></tr>
<tr><td colspan="2">Office of the United States Trustee<br>United States Trustee, Region 3<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 Attention: Fran Steele (Fran.B.Steele@usdoj.gov) and Aiden Murphy (Aiden.Murphy@usdoj.gov)</td></tr>
<tr><td colspan="2">Counsel to Wells Fargo Bank, National Association</td></tr>
<tr><td>Choate, Hall and Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attention: Kevin J. Simard (ksimard@choate.com) and Michael E. Comerford (mcomerford@choate.com)</td><td>McCarter & English, LLP<br>Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102<br>Attention: Joseph Lubertazzi (jlubertazzi@McCarter.com) and Jeffrey Testa (jtesta@mccarter.com)</td></tr>
<tr><td colspan="2">Counsel to Crystal Financial LLC d/b/a SLR Credit Solutions</td></tr>
<tr><td>Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts, 02110<br>Attention: Sandra J. Vrejan (sandra.vrejan@morganlewis.com) and Christopher Carter (christopher.carter@morganlewis.com)</td><td>McGrail & Bensinger LLP<br>888-C Eighth Avenue, #107<br>New York, New York, 10019<br>Attention: Ilana Volkov (ivolkov@mcgrailbensinger.com)</td></tr>
</table>

**PLEASE TAKE FURTHER NOTICE THAT** if you are a Holder of a Claim that is subject to a pending objection by the Debtors, except for provisional voting by counterparties to Unexpired Leases under the Solicitation and Voting Procedures, **you are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before a date that is two (2) business days before the Voting Deadline** (each, a “Resolution Event”):

i. an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code;

ii. a Holder of a Claim files a motion in the Court seeking entry of an order to temporarily allow a timely filed Proof of Claim for purposes of voting on the Plan (a "3018 Motion") and the Court enters an order approving such 3018 Motion;

iii. a stipulation or other agreement is executed between the Holder of such Claim and the Debtors temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

iv. the pending objection to the applicable Claim is voluntarily withdrawn by the objecting party.

**PLEASE TAKE FURTHER NOTICE THAT** the following provisions are included in the Plan:

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D OF THE PLAN PROVIDES FOR THE FOLLOWING THIRD-PARTY RELEASE (THE "THIRD-PARTY RELEASE"):**

**Except as otherwise specifically provided in the Plan or the Confirmation Order, as of the Effective Date, each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Wind-Down Debtor, and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Article VIII.D, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) a sound exercise of the Debtors' business judgment; (viii) given and made after due notice and opportunity for hearing; and (ix) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

**Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.D and does not exercise such opt out is a Releasing Party and may not assert any Claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (i) that opted out of the releases contained in this Article VIII.D or (ii) was deemed to reject the Plan may not assert any Claim or other Cause of Action against any Released Party for which it is asserted or implied that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying Claim or Cause of Action; *provided*, *however*, that nothing in this paragraph requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law; *provided*, *further*, that no Claim or Cause of Action of any kind may be asserted, commenced, or pursued against the Canadian Information Officer without leave of the Canadian Court.**

Definitions Related to the Debtor Release and Third-Party Release:

*UNDER THE PLAN, "**RELEASED PARTY**" OR "**RELEASED PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) AND (B); (D) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (C); AND (E) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES DESCRIBED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASED PARTY; PROVIDED, FURTHER, HOWEVER, THAT THE FINAL INCLUSION OF EACH RELEASED PARTY IN THE CONFIRMATION ORDER IS SUBJECT TO THE ONGOING REVIEW AND FINAL APPROVAL OF THE RESTRUCTURING COMMITTEE.*

*UNDER THE PLAN, "**RELEASING PARTY**" OR "**RELEASING PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (D) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (E) ALL HOLDERS OF CLAIMS WHO ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (F) ALL HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (G) ALL HOLDERS OF INTERESTS; (H) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) THROUGH (G); (I) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (H); AND (J) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER, THAT ANY HOLDER OF INTERESTS WHO ACQUIRED SUCH INTERESTS AFTER THE VOTING RECORD DATE (AS SUCH TERM IS DEFINED IN THE DISCLOSURE STATEMENT ORDER) AND DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER, THAT ANY HOLDER OF CLAIMS OR INTERESTS WHO DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY.*

*UNDER THE PLAN, "**RELATED PARTY**" MEANS, COLLECTIVELY, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS (WHETHER BY OPERATION OF LAW OR OTHERWISE), SUBSIDIARIES, CURRENT, FORMER, AND FUTURE ASSOCIATED ENTITIES, MANAGED OR ADVISED ENTITIES, ACCOUNTS OR FUNDS, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS, MANAGERS, FIDUCIARIES, TRUSTEES, EMPLOYEES, AGENTS (INCLUDING THE DISBURSING AGENT), RESTRUCTURING COMMITTEE MEMBERS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, REPRESENTATIVES ADVISORS, PREDECESSORS, SUCCESSORS, AND ASSIGNS, EACH SOLELY IN THEIR CAPACITY AS SUCH (INCLUDING ANY ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), AND THE RESPECTIVE HEIRS, EXECUTORS, ESTATES, SERVANTS AND NOMINEES OF THE FOREGOING.*

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD-PARTY RELEASE PROVIDED IN THE PLAN. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

*[Reminder of the Page Left Intentionally Blank]*

Dated: December [●], 2026

/s/

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# EXHIBIT 4A

## Opt-Out Forms

# OPTIONAL: THIRD-PARTY RELEASE OPT-OUT FORM

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Joint Plan of The Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Plan"). Except as otherwise set forth in the definition of Releasing Party in the Plan, Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in Article VIII.D (the "Third-Party Release"), set forth in the Notice unless a Holder affirmatively opts out of the Third-Party Release or timely objects to the Third-Party Release on or before **January 20, 2027, at 3:00 p.m., prevailing Eastern Time**, and such objection is not resolved before confirmation.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS OPT-OUT FORM.

**UNLESS YOU CHECK THE BOX ON THIS OPT-OUT FORM BELOW AND FOLLOW ALL INSTRUCTIONS, YOU WILL BE HELD TO FOREVER RELEASE THE RELEASED PARTIES (AS DEFINED HEREIN) IN ACCORDANCE WITH THE PLAN.**

**THIS OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY OMNI AGENT SOLUTIONS, INC. (THE "BALLOTING AGENT") ON OR BEFORE 3:00 P.M. PREVAILING EASTERN TIME ON JANUARY 20, 2027 (THE "OPT-OUT DEADLINE").**

All questions as to the validity, form, eligibility (including time of receipt), and acceptance and revocation of an opt-out election will be resolved by the Debtors or Reorganized Debtors (as applicable), in their sole discretion, which resolution will be final and binding.

This Opt-Out Form may not be used for any purpose other than opting out of the Third-Party Release contained in the Plan. If you believe you have received this Opt-Out Form in error, or if you believe that you have received the wrong opt-out form, please contact the Balloting Agent immediately by email at TCPInquiries@OmniAgnt.com, referencing "The Children's Place – Solicitation Inquiry" in the subject line, or by phone at (866) 205-3149 (Toll Free, U.S. and Canada) or +1 (818) 510-4678 (International).

**Item 1. Optional Third-Party Release.**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH BELOW. YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN. YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION. THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐ **By checking this box, you elect to opt out of the Third-Party Release set forth below.**

Article VIII.D of the Plan provides for the following release (the "**Third-Party Release**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, as of the Effective Date, each Releasing Party, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Wind-Down Debtor, and Released Party from any and all Claims and Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Wind-Down Debtors, or their Estates (as applicable), that such Entity would have been legally entitled to assert in its own right (whether individually or collectively or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof or otherwise), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents or any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Inventory Sale, the Inventory Sale Agreement, the Definitive Documents, the SLR Loan Agreement Documents, the Wells Fargo Credit Agreement Documents, or the Plan, the filing of the Chapter 11 Cases, the filing of the Canadian Recognition Proceedings, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, (A) the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement and (B) subject to the DIP Orders, the DIP Lenders, DIP Agents, Prepetition Agents, and Prepetition Lenders shall be deemed Released Parties on the Effective Date.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to the Bankruptcy Code and Bankruptcy Rules, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Article VIII.D, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) a sound exercise of the Debtors' business**

**judgment; (viii) given and made after due notice and opportunity for hearing; and (ix) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

**Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.D and does not exercise such opt out is a Releasing Party and may not assert any Claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity (i) that opted out of the releases contained in this Article VIII.D or (ii) was deemed to reject the Plan may not assert any Claim or other Cause of Action against any Released Party for which it is asserted or implied that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such Claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Released Party. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying Claim or Cause of Action; *provided*, *however*, that nothing in this paragraph requires, precludes, and/or prohibits an Insurer to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law; *provided*, *further*, that no Claim or Cause of Action of any kind may be asserted, commenced, or pursued against the Canadian Information Officer without leave of the Canadian Court.**

Definitions Related to the Debtor Release and Third-Party Release:

*UNDER THE PLAN, "**RELEASED PARTY**" OR "**RELEASED PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) AND (B); (D) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (C); AND (E) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES DESCRIBED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASED PARTY; PROVIDED, FURTHER, HOWEVER, THAT THE FINAL INCLUSION OF EACH RELEASED PARTY IN THE CONFIRMATION ORDER IS SUBJECT TO THE ONGOING REVIEW AND FINAL APPROVAL OF THE RESTRUCTURING COMMITTEE.*

*UNDER THE PLAN, "**RELEASING PARTY**" OR "**RELEASING PARTIES**" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE PLAN ADMINISTRATOR, EACH PREPETITION AGENT, EACH PREPETITION LENDER, EACH DIP AGENT, AND EACH DIP LENDER; (B) EACH DEBTOR; (C) ALL HOLDERS OF CLAIMS THAT VOTE TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (D) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (E) ALL HOLDERS OF CLAIMS WHO ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (F) ALL HOLDERS OF CLAIMS WHO VOTE TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN; (G) ALL HOLDERS OF INTERESTS; (H) EACH CURRENT AFFILIATE OF EACH ENTITY IN CLAUSES (A) THROUGH (G); (I) EACH RELATED PARTY OF EACH ENTITY IN CLAUSES (A) THROUGH (H); AND (J) EACH DEBTOR RELATED PARTY; PROVIDED, HOWEVER, THAT EACH ENTITY THAT (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER, THAT ANY HOLDER OF INTERESTS WHO ACQUIRED SUCH INTERESTS AFTER THE VOTING RECORD DATE (AS SUCH TERM IS DEFINED IN THE DISCLOSURE STATEMENT ORDER) AND DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY; PROVIDED, FURTHER, HOWEVER,*

*THAT ANY HOLDER OF CLAIMS OR INTERESTS WHO DID NOT RECEIVE AN OPT OUT FORM SHALL NOT BE A RELEASING PARTY.*

*UNDER THE PLAN, "**RELATED PARTY**" MEANS, COLLECTIVELY, CURRENT AND FORMER DIRECTORS, MANAGERS, OFFICERS, EQUITY HOLDERS (REGARDLESS OF WHETHER SUCH INTERESTS ARE HELD DIRECTLY OR INDIRECTLY), AFFILIATED INVESTMENT FUNDS OR INVESTMENT VEHICLES, PREDECESSORS, PARTICIPANTS, SUCCESSORS, ASSIGNS (WHETHER BY OPERATION OF LAW OR OTHERWISE), SUBSIDIARIES, CURRENT, FORMER, AND FUTURE ASSOCIATED ENTITIES, MANAGED OR ADVISED ENTITIES, ACCOUNTS OR FUNDS, PARTNERS, LIMITED PARTNERS, GENERAL PARTNERS, PRINCIPALS, MEMBERS, MANAGEMENT COMPANIES, FUND ADVISORS, MANAGERS, FIDUCIARIES, TRUSTEES, EMPLOYEES, AGENTS (INCLUDING THE DISBURSING AGENT), RESTRUCTURING COMMITTEE MEMBERS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, AND OTHER PROFESSIONALS, REPRESENTATIVES ADVISORS, PREDECESSORS, SUCCESSORS, AND ASSIGNS, EACH SOLELY IN THEIR CAPACITY AS SUCH (INCLUDING ANY ATTORNEYS OR PROFESSIONALS RETAINED BY ANY CURRENT OR FORMER DIRECTOR OR MANAGER IN HIS OR HER CAPACITY AS DIRECTOR OR MANAGER OF AN ENTITY), AND THE RESPECTIVE HEIRS, EXECUTORS, ESTATES, SERVANTS AND NOMINEES OF THE FOREGOING.*

**Item 2. Certifications.**

By signing this Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

- that, as of December 15, 2026, either: (i) the undersigned is the Holder of Claims or Interests; or (ii) the undersigned is an authorized signatory for an Entity or Person that is the Holder of Claims or Interests;

- that the Holder has received a copy of the Notice of Non-Voting Status and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

- that the undersigned has made the same election with respect to all Claims or Interests; and

- that no other Opt-Out Form has been cast with respect to the Holder's Claims or Equity Interests, or, if any other Opt-Out Forms have been cast with respect to such Claims or Interests, such Opt-Out Forms are hereby revoked.

YOUR RECEIPT OF THIS OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM OR EQUITY INTEREST HAS BEEN OR WILL BE ALLOWED.

**Name of Holder:** ______________________________
(Print or Type)

**Signature:** ______________________________

**Name of Signatory:** ______________________________
(If other than Holder)

**Title:** ______________________________

**Address:** ______________________________

**Date Completed:** ______________________________

If your address or contact information has changed, please note the new information here.

**TO OPT OUT, PLEASE SUBMIT YOUR OPT-OUT FORM BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Opt-Out Portal. To submit your Opt-Out Form via the Balloting Agent's online portal, visit https://omniagentsolutions.com/TCP, click on the "Balloting" section of the website (the "E-Ballot Portal"), select "Electronic Opt-Out", and follow the instructions to submit your Opt-Out Form.**

**Omni's Opt-Out Portal is the sole manner in which forms will be accepted via electronic or online transmission. Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Via Paper Form. Complete, sign, and date this Opt-Out Form and return it promptly by first-class mail, overnight courier, or hand delivery to the address below.**

The Children's Place, Inc. Ballot Processing Center
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

**To arrange hand delivery of your Opt-Out Form, please contact the Balloting Agent via email at TCPInquiries@omniagnt.com (with "The Children's Place Opt-Out Form Delivery" in the subject line) at least 24 hours prior to your arrival at the Omni address above and provide the anticipated date and time of delivery.**

Parties that submit their Opt-Out Form using the Opt-Out Portal should NOT also submit a paper Opt-Out Form.

IF THE BALLOTING AGENT DOES NOT ACTUALLY RECEIVE THIS OPT-OUT FORM ON OR BEFORE 3:00 P.M. PREVAILING EASTERN TIME ON JANUARY 20, 2027, THEN YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.

OPT-OUT FORMS SENT BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.

**INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM**

1. Capitalized terms used in the Opt-Out Form or in these instructions (the "Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2. To ensure that your election is counted, you must complete the Opt-Out Form and take the following steps: (a) clearly indicate your decision to "opt out" of the Third-Party Release set forth in the Plan in Item 1 above; (b) make sure that the information required by Item 2 above has been correctly inserted; and (c) sign, date and return your Opt-Out Form in accordance with paragraph 3 directly below.

3. **Return of Opt-Out Form**: Your Opt-Out Form MUST be returned to the Balloting Agent so as to be **actually received** by the Balloting Agent on or before the Opt-Out Deadline, which is **3:00 p.m. (prevailing Eastern Time) on January 20, 2027.**

4. If an Opt-Out Form is received by the Balloting Agent after the Opt-Out Deadline, it will not be effective. Additionally, the following Opt-Out Forms will NOT be counted:

   - ANY OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE CLAIM OR EQUITY INTEREST;

   - ANY OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT OUT OF THE RELEASE;

   - ANY OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE BALLOTING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

   - ANY OPT-OUT FORM TRANSMITTED BY FACSIMILE OR EMAIL;

   - ANY UNSIGNED OPT-OUT FORM; OR

   - ANY OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SOLICITATION ORDER.

5. The method of delivery of Opt-Out Forms to the Balloting Agent is at the election and risk of each Holder of a Claim or Interest. Except as otherwise provided herein, such delivery will be deemed made to the Balloting Agent only when the Balloting Agent **actually receives** the executed Opt-Out Form. Holders should allow sufficient time to assure timely delivery.

6. If multiple Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest prior to the Opt-Out Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

7. The Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to Opt-Out of the Third-Party Release. Accordingly, at this time, Holders of Interests should not surrender certificates or instruments representing or evidencing their Interests, and neither the Debtors nor the Balloting Agent will accept delivery of any such certificates or instruments surrendered together with an Opt-Out Form.

8. The Opt-Out Form does not constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

9. Please be sure to sign and date your Opt-Out Form. If you are signing an Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Balloting Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Opt-Out Form

10. THE BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

**PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY!**

**IF YOU HAVE RECEIVED A DAMAGED OPT-OUT FORM OR HAVE LOST YOUR OPT-OUT FORM, OR IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-OUT FORM OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT THE BALLOTING AGENT AT:**

**(866) 205-3149 (Toll Free, U.S. and Canada) or +1 (818) 510-4678 (International)**

**Or via email at TCPInquiries@OmniAgnt.com**

**IF THE BALLOTING AGENT DOES NOT ACTUALLY RECEIVE THE OPT-OUT FORM ON OR BEFORE THE OPT-OUT DEADLINE, WHICH IS 3:00 P.M. PREVAILING EASTERN TIME ON JANUARY 20, 2027, THEN YOUR OPT-OUT ELECTION TRANSMITTED THEREBY WILL NOT BE EFFECTIVE.**

***ACCESS TO THE PLAN AND DISCLOSURE STATEMENT*: THE DISCLOSURE STATEMENT, PLAN, AND ORDER MAY BE ACCESSED, FREE OF CHARGE, AT: https://omniagentsolutions.com/TCP-Ballots, or by using the following QR Code:**

# EXHIBIT 5

## Cover Letter

Via First-Class Mail

**RE: The Children's Place, Inc., *et al.***
**Chapter 11 Case No. 26-22682 (SLM) (Jointly Administered)**

Dear Holders of Claims entitled to vote on the Plan,

You have received this letter and the enclosed materials because you are entitled to vote on the *Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (as modified, amended, or supplemented from time to time, the "Plan");[1]

The Children's Place, Inc.. and its affiliated debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") on November 8, 2026.

On [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) authorizing the Debtors, to solicit acceptances for the Plan; (b) conditionally approving the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and (e) for filing objections to the Plan.

Additionally, Article VIII of the Plan contains release, exculpation, and injunction provisions, and Article VIII.D of the Plan includes a third-party release. Thus, you are advised to review and consider the Plan carefully because your rights may be affected thereunder. You may elect not to grant the third-party release contained in Article VIII.D of the Plan whether or not you vote to accept the Plan, by returning a Ballot or Opt-Out Form, as applicable, checking the box to "opt-out" from the third-party release.

| |
|---|
| YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE. |

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Bankruptcy Court for distribution to Holders of Claims in connection with the solicitation of votes to accept the Plan. The Solicitation Package consists of the following, as applicable:

1. a copy of the Disclosure Statement, as conditionally approved by the Bankruptcy Court;
2. Ballot, together with detailed voting instructions and instructions on how to submit the Ballots, and a pre-addressed, postage prepaid return envelope;
3. this letter;
4. the Combined Hearing Notice;

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

5. the Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures); and

6. any additional documents that the Bankruptcy Court has ordered to be made available to Holders of Claims in the Voting Classes.

The Debtors have approved the filing of the Plan and the solicitation of votes to accept the Plan. The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims, and all other parties in interest. Moreover, the Debtors believe that any alternative to Confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims asserted in the Chapter 11 Cases.

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS IN YOUR BALLOT. THE VOTING DEADLINE IS JANUARY 20, 2027, AT 3:00 P.M. (PREVAILING EASTERN TIME).**

The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials if you received the materials in electronic format), please feel free to contact the Debtors' Balloting Agent, by: (a) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/TCP-Ballots, or by using the QR code below; (b) writing to The Children's Place, Inc. Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367; (c) emailing the Balloting Agent at TCPInquiries@OmniAgnt.com, referencing "The Children's Place – Solicitation Inquiry" in the subject line; or (d) calling the Balloting Agent at (866) 205-3149 (toll free, U.S. and Canada) or +1 (818) 510-4678 (international). You may obtain copies of any pleadings filed with the Bankruptcy Court for free by visiting the Debtors' restructuring website, https://omniagentsolutions.com/TCP. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER on the Bankruptcy Court's website at: https://www.njb.uscourts.gov/. Please be advised that Omni/the Balloting Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may not advise you as to whether you should vote to accept or reject the Plan or provide legal advice.

[*Remainder of Page Intentionally Left Blank*]

Sincerely,

________________________________
Rudy Morando, Co-CRO

# EXHIBIT 6

## Combined Hearing Notice

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**NOTICE OF HEARING TO CONSIDER CONFIRMATION OF THE CHAPTER 11 PLAN AND FINAL APPROVAL OF THE DISCLOSURE STATEMENT FILED BY THE DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES**

**PLEASE TAKE NOTICE THAT** on [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) authorizing The Children's Place, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of the Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider confirmation of the Plan and final approval of the Disclosure Statement will commence on **January 26, 2027, at [●]:00 a.m., (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "Combined Hearing") before the Honorable Judge Stacy L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Newark, NJ 07102.

**PLEASE BE ADVISED:** THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE BANKRUPTCY COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE BANKRUPTCY COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

**CRITICAL INFORMATION REGARDING VOTING ON THE PLAN**

**Voting Record Date**. The Court has approved **December 15, 2026**, as the record date (the "Voting Record Date") for purposes of determining which Holders of Claims in Class 3 Wells Fargo Credit Agreement Claims, Class 4 SLR Credit Agreement Claims, and Class 5 General Unsecured Claims (each a "Voting Class," and collectively, the "Voting Classes") that either (i) have been listed on the Debtors' Schedules or (ii) with respect to which a valid proof of claim (a "Proof of Claim") has been filed before December 15, 2026 (such Claims, "Known Eligible Claims"), are entitled to vote on the Plan.

For Holders of Claims that (a) (i) are not listed in the Schedules and (ii) with respect to which a valid Proof of Claim has not been filed as of December 15, 2026 (*i.e.*, the Voting Record Date) (such Claims, "*Unknown Eligible Claims*"), and (b) with respect to which a valid Proof of Claim is filed on or after the Voting Record Date but on or before January 6, 2027, at 11:59 p.m., prevailing Eastern Time, the general claims bar date (the "*Claims Bar Date*") established in connection with the *Order (I) Setting Bar Dates for Submitting*

[2] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

*Proofs of Claim, Including Requests for Payment Under Section 503(B)(9); (II) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date; (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim; (IV) Approving Notices Thereof; and (V) Granting Related Relief* [Docket No. [●]], Omni Agent Solutions, Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent"), shall serve the Solicitation Package to such Holder within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent.

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, or the Disclosure Statement Order, the Debtors shall cause a Ballot for Class 5 to be served on all counterparties to Unexpired Leases, including previously rejected Unexpired Leases. Any such party shall be eligible to cast a provisional vote to accept or reject the Plan by the Voting and Opt-Out Deadline on account of a Claim in an amount equal to the greater of (a) $1.00 and (b) the amount asserted in any Proof of Claim; provided, that the Debtors shall retain the right to object to the validity of such Claim and the amount asserted in any applicable Proof of Claim.

Regardless of whether a Holder has a Known Eligible Claim or an Unknown Eligible Claim, in each case, such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline (as defined below) for such Ballot to be counted.

**Voting and Opt-Out Deadline**. The deadline to vote on the Plan is **January 20, 2027, at 3:00 p.m. (prevailing Eastern Time)** (the "Voting and Opt-Out Deadline"). The Debtors may extend the Voting and Opt-Out Deadline without further order of the Court by filing a Notice on the Court's Docket. If you received the Solicitation Package, including a Ballot, and intend to vote on the Plan you must: (i) follow the instructions contained on your Ballot carefully; (ii) complete all of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is actually received by the Debtors' Claims and Noticing Agent, Omni Agent Solutions, Inc., on or before the Voting and Opt-Out Deadline**.**

***Failure to follow such instructions may disqualify your vote*.**

## CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN

**Objection Deadline.** The deadline for filing objections to the Plan and final approval of the Disclosure Statement is **January 20, 2027, at 3:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline"). Any objection to the relief sought at the Combined Hearing must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order"), and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[3] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be actually received on or before the Combined Objection Deadline:

| ***Debtors*** |
|---|

[3] The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

<table>
<tr><td colspan="2">The Children's Place, Inc.<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367</td></tr>
<tr><td colspan="2">Proposed Co-Counsel for the Debtors</td></tr>
<tr><td colspan="2">White & Case LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Attention: Gregory F. Pesce (gregory.pesce@whitecase.com);<br>Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparacriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com)</td></tr>
<tr><td colspan="2">Proposed Co-Counsel for the Debtors</td></tr>
<tr><td colspan="2">Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine (wusatine@coleschotz.com); Seth Van Aalten (svanaalten@coleschotz.com);<br>Justin R. Alberto (jalberto@coleschotz.com); and Daniel J. Harris (dharris@coleschotz.com)</td></tr>
<tr><td colspan="2">Counsel for the Committee</td></tr>
<tr><td colspan="2">[●] [Address] Attention: [●]</td></tr>
<tr><td colspan="2">United States Trustee</td></tr>
<tr><td colspan="2">Office of the United States Trustee<br>United States Trustee, Region 3<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 Attention: Fran Steele (Fran.B.Steele@usdoj.gov) and Aiden Murphy (Aiden.Murphy@usdoj.gov)</td></tr>
<tr><td colspan="2">Counsel to Wells Fargo Bank, National Association</td></tr>
<tr><td>Choate, Hall and Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attention: Kevin J. Simard (ksimard@choate.com) and Michael E. Comerford (mcomerford@choate.com)</td><td>McCarter & English, LLP<br>Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102<br>Attention: Joseph Lubertazzi (jlubertazzi@McCarter.com) and Jeffrey Testa (jtesta@mccarter.com)</td></tr>
<tr><td colspan="2">Counsel to Crystal Financial LLC d/b/a SLR Credit Solutions</td></tr>
<tr><td>Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts, 02110<br>Attention: Sandra J. Vrejan (sandra.vrejan@morganlewis.com) and Christopher Carter (christopher.carter@morganlewis.com)</td><td>McGrail & Bensinger LLP<br>888-C Eighth Avenue, #107<br>New York, New York, 10019<br>Attention: Ilana Volkov (ivolkov@mcgrailbensinger.com)</td></tr>
</table>

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. CONTACT THE CLAIMS AND NOTICING AGENT IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION.**

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you have any questions or would like paper copies of the Solicitation Package because receiving the Solicitation Package via email or USB flash drive imposes a hardship on you, please contact the Claims and Noticing Agent by: (i) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/TCP; (ii) calling the Claims and Noticing Agent at (866) 205-3149 (Toll-Free, U.S. and Canada) or (818) 510-4678 (International); (iii) contacting the Claims and Noticing Agent at TCPInquiries@OmniAgnt.com; or (iv) writing to the Claims and Noticing Agent at *The Children's Place, Inc. et al.*, Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://omniagentsolutions.com/TCP-Ballots, by using the QR code below, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein. Please be advised that the Claims and Noticing Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may not advise you as to whether you should vote to accept or reject the Plan.

**Filing the Initial Plan Supplement**. The Debtors will file the Plan Supplement (as defined in the Plan) by January 13, 2027, and will serve a notice of Plan Supplement on all Holders of Claims or Interests, the U.S. Trustee, and any party that has requested notice pursuant to Bankruptcy Rule 2002 (regardless of whether such parties are entitled to vote on the Plan), which will: (i) inform parties that the Debtors filed the Plan Supplement; (ii) list the information contained in the Plan Supplement; and (iii) explain how parties may obtain copies of the Plan Supplement.

## BINDING NATURE OF THE PLAN

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

Dated: December [●], 2026

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

/s/

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# EXHIBIT 7

## Plan Supplement Notice

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHILDREN'S PLACE, INC., *et al.*, | Case No. 26-22682 (SLM) |
| Debtors.[1] | (Jointly Administered) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**NOTICE OF FILING OF PLAN SUPPLEMENT**

**PLEASE TAKE NOTICE THAT** on [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) authorizing The Children's Place, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of the Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the Plan Supplement with the Court on January 13, 2027 [Docket No. [●]]. The Plan Supplement contains the following documents each as defined in the Plan: (a) the Schedule of Retained Causes of Action; (b) the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) the Schedule of Rejected Executory Contracts and Unexpired Leases; (d) the Plan Administrator Agreement and the identity of the Plan Administrator; (e) the Wind-Down Budget; (f) the Transactions Steps Memorandum; and (g) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **January 26, 2027**, at **[●]:00 a.m., (prevailing Eastern Time)**, or such other time that the Court determines, before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Newark, NJ 07102.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to confirmation of the Plan and final approval of the Disclosure Statement is **January 20, 2027, at 3:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline"). Any objection to the relief sought at the Combined Hearing must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[3] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) shall be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be actually received on or before the Combined Objection Deadline:

---

2 Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

3 The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

<table>
<tr><th colspan="2">Debtors</th></tr>
<tr><td colspan="2">The Children’s Place, Inc.<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367</td></tr>
<tr><th colspan="2">Proposed Co-Counsel for the Debtors</th></tr>
<tr><td colspan="2">White & Case LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Attention: Gregory F. Pesce (gregory.pesce@whitecase.com);<br>Andrew F. O’Neill (aoneill@whitecase.com); Amanda Parra Criste (aparacriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com)</td></tr>
<tr><th colspan="2">Proposed Co-Counsel for the Debtors</th></tr>
<tr><td colspan="2">Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine (wusatine@coleschotz.com); Seth Van Aalten (svanaalten@coleschotz.com);<br>Justin R. Alberto (jalberto@coleschotz.com); and Daniel J. Harris (dharris@coleschotz.com)</td></tr>
<tr><th colspan="2">Counsel for the Committee</th></tr>
<tr><td colspan="2">[●] [Address] Attention: [●]</td></tr>
<tr><th colspan="2">United States Trustee</th></tr>
<tr><td colspan="2">Office of the United States Trustee<br>United States Trustee, Region 3<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 Attention: Fran Steele (Fran.B.Steele@usdoj.gov) and Aiden Murphy (Aiden.Murphy@usdoj.gov)</td></tr>
<tr><th colspan="2">Counsel to Wells Fargo Bank, National Association</th></tr>
<tr><td>Choate, Hall and Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attention: Kevin J. Simard (ksimard@choate.com) and Michael E. Comerford (mcomerford@choate.com)</td><td>McCarter & English, LLP<br>Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102<br>Attention: Joseph Lubertazzi (jlubertazzi@McCarter.com) and Jeffrey Testa (jtesta@mccarter.com)</td></tr>
<tr><th colspan="2">Counsel to Crystal Financial LLC d/b/a SLR Credit Solutions</th></tr>
<tr><td>Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts, 02110<br>Attention: Sandra J. Vrejan (sandra.vrejan@morganlewis.com)<br>and Christopher Carter (christopher.carter@morganlewis.com)</td><td>McGrail & Bensinger LLP<br>888-C Eighth Avenue, #107<br>New York, New York, 10019<br>Attention: Ilana Volkov (ivolkov@mcgrailbensinger.com)</td></tr>
</table>

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents** you should contact Omni Agent Solutions, Inc., the Debtors' Claims and Noticing Agent in these Chapter 11 Cases, by: (i) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/TCP; (ii) calling the Claims and Noticing Agent at (866) 205-3149 (Toll-Free, U.S. and Canada) or (818) 510-4678 (International); (iii) contacting the Claims and Noticing Agent at TCPInquiries@OmniAgnt.com; or (iv) writing to the Claims and Noticing Agent at The Children's Place, *et al.,* Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://omniagentsolutions.com/TCP, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

Dated: [●], 2027

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

*/s/*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# EXHIBIT 8

## Notice of Assumption of Executory Contracts and Unexpired Leases

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>THE CHILDREN'S PLACE, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-22682 (SLM)<br><br>(Jointly Administered) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED OR ASSUMED AND ASSIGNED PURSUANT TO THE PLAN, (II) CURE COSTS, IF ANY, AND (III) RELATED PROCEDURES IN CONNECTION THEREWITH**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON SCHEDULE A ATTACHED HERETO. YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.[2]**

**PLEASE TAKE NOTICE THAT** on [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) authorizing The Children's Place, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of the Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[3] (b) conditionally approving the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, shall be deemed automatically rejected by the applicable Wind-Down Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) has been previously assumed or rejected by the Debtors pursuant to a Bankruptcy Court order; (c) is the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect to the proposed assumption and assignment of such contract) that is pending on the Effective Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan; or (e) is an Insurance Policy.

**PLEASE TAKE FURTHER NOTICE THAT** on [●] [●], 2026, the Debtors filed with the Court, as part of the *Plan Supplement for the Joint Plan of The Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Plan Supplement"), the Schedule

---

2 Nothing contained in the Plan or in any Schedule of Assumed Executory Contracts and Unexpired Leases shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. Furthermore, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases, as set forth in Article V of the Plan.

3 Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

of Assumed Executory Contracts and Unexpired Leases, which lists the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned, as applicable, by the Debtors pursuant to the Plan, if any.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you or your affiliate(s) are a party to an Executory Contract or Unexpired Lease that will be assumed or assumed and assigned pursuant to the Plan. Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan, including the Schedule of Assumed Executory Contracts and Unexpired Leases.

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in **Schedule A** attached hereto (the "Cure Costs"). Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there are no Cure Costs outstanding for such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure, as reflected on the notice or as otherwise agreed or determined by a Final Order of the Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described in the following sentence, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree; provided that nothing herein shall prevent the Wind-Down Debtors from paying any Cure despite the failure of the relevant counterparty to File an Executory Contract Objection. The Wind-Down Debtors may also settle any Cure without any further notice to or action, order, or approval of the Court. Any such objection will be scheduled to be heard by the Court at the next scheduled omnibus hearing, or such other time as requested by the Debtors or the Wind-Down Debtors, as applicable, and the objecting party. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption. In the event of a dispute regarding (i) the amount of any payments to cure such a default, (ii) the ability of the Wind-Down Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

**PLEASE TAKE FURTHER NOTICE THAT** any objection by a counterparty to the proposed Cure Costs or to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease under the Plan (an "Assumption Objection") must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[4] or, if not otherwise filed with the Clerk of the Court electronically, in hard

[4] The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** no later than **the applicable Assumption or Rejection Objection Deadline (as defined in the Plan)**:

<table>
<tr><th colspan="2">Debtors</th></tr>
<tr><td colspan="2">The Children's Place, Inc.<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367</td></tr>
<tr><th colspan="2">Proposed Co-Counsel for the Debtors</th></tr>
<tr><td colspan="2">White & Case LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Attention: Gregory F. Pesce (gregory.pesce@whitecase.com);<br>Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparacriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com)</td></tr>
<tr><th colspan="2">Proposed Co-Counsel for the Debtors</th></tr>
<tr><td colspan="2">Cole Schotz P.C.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine (wusatine@coleschotz.com); Seth Van Aalten (svanaalten@coleschotz.com);<br>Justin R. Alberto (jalberto@coleschotz.com); and Daniel J. Harris (dharris@coleschotz.com)</td></tr>
<tr><th colspan="2">Counsel for the Committee</th></tr>
<tr><td colspan="2">[●] [Address] Attention: [●]</td></tr>
<tr><th colspan="2">United States Trustee</th></tr>
<tr><td colspan="2">Office of the United States Trustee<br>United States Trustee, Region 3<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 Attention: Fran Steele (Fran.B.Steele@usdoj.gov) and Aiden Murphy (Aiden.Murphy@usdoj.gov)</td></tr>
<tr><th colspan="2">Counsel to Wells Fargo Bank, National Association</th></tr>
<tr><td>Choate, Hall and Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attention: Kevin J. Simard (ksimard@choate.com) and Michael E. Comerford (mcomerford@choate.com)</td><td>McCarter & English, LLP<br>Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102<br>Attention: Joseph Lubertazzi (jlubertazzi@McCarter.com) and Jeffrey Testa (jtesta@mccarter.com)</td></tr>
<tr><th colspan="2">Counsel to Crystal Financial LLC d/b/a SLR Credit Solutions</th></tr>
<tr><td>Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts, 02110<br>Attention: Sandra J. Vrejan (sandra.vrejan@morganlewis.com)<br>and Christopher Carter (christopher.carter@morganlewis.com)</td><td>McGrail & Bensinger LLP<br>888-C Eighth Avenue, #107<br>New York, New York, 10019<br>Attention: Ilana Volkov (ivolkov@mcgrailbensinger.com)</td></tr>
</table>

**PLEASE TAKE FURTHER NOTICE THAT** if you do not file an objection on or prior to the Assumption or Rejection Objection Deadline, then: **(i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct and (ii) you will be forever barred, estopped, and enjoined from (a) asserting any additional cure amount under the assumed Executory Contract or Unexpired Lease or (b) objecting to such proposed assumption or assumption and assignment, as applicable**. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or Cure Costs of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption, assumption and assignment, or Cure Costs.

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY (SOLELY TO THE EXTENT AGREED BETWEEN THE DEBTORS AND THE COUNTERPARTY TO AN APPLICABLE EXECUTORY CONTRACT OR UNEXPIRED LEASE), INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE THAT THE DEBTORS ASSUME SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM BASED UPON EXECUTORY CONTRACTS OR UNEXPIRED LEASES THAT HAVE BEEN ASSUMED IN THE CHAPTER 11 CASES, INCLUDING PURSUANT TO THE CONFIRMATION ORDER, AND OR WHICH ANY CURE HAS BEEN FULLY PAID PURSUANT TO ARTICLE V.D OF THE PLAN, SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT THE NEED FOR ANY OBJECTION THERETO OR ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** any Assumption Objection that complies with these procedures shall be heard at a date to be fixed by the Court.

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything to the contrary herein, the mere listing of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed or assumed and assigned by the Debtors at any time, and all rights of the Debtors with respect to such Executory Contract or Unexpired Lease are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume or assume and assign each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures set forth in Article V of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** nothing herein: (i) alters in any way the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease; (ii) creates a postpetition contract or agreement; or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Omni Agent Solutions, Inc., the Debtors' Claims and Noticing Agent in the Chapter 11 Cases (the "Claims and Noticing Agent"), by: (i) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/TCP; (ii) calling the Claims

and Noticing Agent at (866) 205-3149 (Toll-Free, U.S. and Canada) or (818) 510-4678 (International); (iii) contacting the Claims and Noticing Agent at TCPInquiries@OmniAgnt.com; or (iv) writing to the Claims and Noticing Agent at The Children's Place, Inc., *et al.*, Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://omniagentsolutions.com/TCP, or the Court's https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

[*Remainder of Page Intentionally Left Blank*]

Dated: [●], 2027

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

/s/

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

# EXHIBIT 9

## Notice of Rejection of Executory Contracts and Unexpired Leases

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| THE CHILDREN'S PLACE, INC., *et al.*, | Case No. 26-22682 (SLM) |
| Debtors.[1] | (Jointly Administered) |

[1] A complete list of each of the Debtors, including each Debtor's federal tax identification number, in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/TCP. The location of the Debtors' service address for purposes of these chapter 11 cases is 500 Plaza Drive, Secaucus, New Jersey 07094.

**NOTICE OF (I) EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES**
**TO BE REJECTED PURSUANT TO THE PLAN, AND**
**(II) RELATED PROCEDURES IN CONNECTION THEREWITH**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON SCHEDULE A ATTACHED HERETO. YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.**[2]

**PLEASE TAKE NOTICE THAT** on [______], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an order [Docket No.__] (the "Disclosure Statement Order"): (a) authorizing The Children's Place, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of the Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[3] (b) conditionally approving the *Disclosure Statement for the Joint Plan of The Children's Place, Inc. and Its Debtor Affiliates* [Docket No. ___] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** on [●] [●], 2026, the Debtors filed with the Court, as part of the *Plan Supplement for the Joint Plan of The Children's Place, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Plan Supplement"), the Schedule of Assumed Executory Contracts and Unexpired Leases, which lists the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned, as applicable, by the Debtors pursuant to the Plan, if any.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you or your affiliate(s) are a party to an Executory Contract or Unexpired Lease that is not included on the Schedule of Assumed Executory Contracts and Unexpired Leases and will be rejected pursuant to the Plan, subject to the exceptions in Article V.A of the Plan. Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Court within thirty days after the later of (i) the date of entry of an order of the Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, or (iii) the Effective Date. In

2 Nothing contained in the Plan or in any Schedule of Assumed Executory Contracts and Unexpired Leases shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder. Furthermore, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases, as set forth in Article V of the Plan.

3 Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Court and served on the Debtors no later than the applicable Assumption or Rejection Objection Deadline (as defined in the Plan).

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Court within such time will, absent further order of the Court to the contrary, be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind-Down Debtors, or the property of any of the foregoing without the need for any objection by the Debtors or the Wind-Down Debtors, as applicable, or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall, absent further order of the Court to the contrary, be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary**. All Allowed Claims arising from the rejection by any Debtor of any of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Wind-Down Debtors and Holder of such Claim.

**PLEASE TAKE FURTHER NOTICE THAT** any objection by a counterparty to the proposed rejection of an Executory Contract or Unexpired Lease under the Plan (a "Rejection Objection") must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[4] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** no later than **the applicable Assumption or Rejection Objection Deadline (as defined in the Plan)**:

| ***Debtors*** |
| --- |
| **The Children's Place, Inc.**<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367 |
| ***Proposed Co-Counsel for the Debtors*** |
| **White & Case LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Attention: Gregory F. Pesce (gregory.pesce@whitecase.com);<br>Andrew F. O'Neill (aoneill@whitecase.com); Amanda Parra Criste (aparacriste@whitecase.com); and Varoon Sachdev (varoon.sachdev@whitecase.com) |
| ***Proposed Co-Counsel for the Debtors*** |
| **Cole Schotz P.C.**<br>Court Plaza North, 25 Main Street |

4 The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

<table>
<tr><td colspan="2">Hackensack, New Jersey 07601<br>Attention: Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine (wusatine@coleschotz.com); Seth Van Aalten (svanaalten@coleschotz.com);<br>Justin R. Alberto (jalberto@coleschotz.com); and Daniel J. Harris (dharris@coleschotz.com)</td></tr>
<tr><td colspan="2">Counsel for the Committee</td></tr>
<tr><td colspan="2">[●] [Address] Attention: [●]</td></tr>
<tr><td colspan="2">United States Trustee</td></tr>
<tr><td colspan="2">Office of the United States Trustee<br>United States Trustee, Region 3<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 Attention: Fran Steele (Fran.B.Steele@usdoj.gov) and Aiden Murphy (Aiden.Murphy@usdoj.gov)</td></tr>
<tr><td colspan="2">Counsel to Wells Fargo Bank, National Association</td></tr>
<tr><td>Choate, Hall and Stewart LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>Attention: Kevin J. Simard (ksimard@choate.com) and Michael E. Comerford (mcomerford@choate.com)</td><td>McCarter & English, LLP<br>Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102<br>Attention: Joseph Lubertazzi (jlubertazzi@McCarter.com) and Jeffrey Testa (jtesta@mccarter.com)</td></tr>
<tr><td colspan="2">Counsel to Crystal Financial LLC d/b/a SLR Credit Solutions</td></tr>
<tr><td>Morgan, Lewis & Bockius LLP<br>One Federal Street<br>Boston, Massachusetts, 02110<br>Attention: Sandra J. Vrejan (sandra.vrejan@morganlewis.com) and Christopher Carter (christopher.carter@morganlewis.com)</td><td>McGrail & Bensinger LLP<br>888-C Eighth Avenue, #107<br>New York, New York, 10019<br>Attention: Ilana Volkov (ivolkov@mcgrailbensinger.com)</td></tr>
</table>

**PLEASE TAKE FURTHER NOTICE THAT** notwithstanding anything to the contrary herein, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume or assume and assign each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures set forth in Article V of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** nothing herein: (i) alters in any way the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease; (ii) creates a postpetition contract or agreement; or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, or related documents, you should contact Omni Agent Solutions, Inc., the Debtors' Claims and Noticing Agent in the Chapter 11 Cases (the "Claims and Noticing Agent"), by: (i) visiting the Debtors' restructuring website at: https://omniagentsolutions.com/TCP; (ii) calling the Claims and Noticing Agent at (866) 205-3149 (Toll-Free, U.S. and Canada) or (818) 510-4678 (International); (iii) contacting the Claims and Noticing Agent at TCPInquiries@OmniAgnt.com; or (iv) writing to the Claims and Noticing Agent at The Children's Place, Inc., *et al.*, Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367. You may also obtain copies of any pleadings

filed with the Court for free by visiting the Debtors' restructuring website, https://omniagentsolutions.com/TCP, or the Court's https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

[*Remainder of Page Intentionally Left Blank*]

Dated: [●], 2027

/s/

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gregory.pesce@whitecase.com

- and -

Andrew F. O'Neill (admitted *pro hac vice*)
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
aoneill@whitecase.com

- and -

Amanda Parra Criste (admitted *pro hac vice*)
Varoon Sachdev (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
aparracriste@whitecase.com
varoon.sachdev@whitecase.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota
Warren A. Usatine
Seth Van Aalten (admitted *pro hac vice*)
Justin R. Alberto (admitted *pro hac vice*)
Daniel J. Harris
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
msirota@coleschotz.com
wusatine@coleschotz.com
svanaalten@coleschotz.com
jalberto@coleschotz.com
dharris@coleschotz.com

*Proposed Co-Counsel to Debtors and Debtors in Possession*